WALTER J. LACK, SBN 57550
STEVEN C. SHUMAN, SBN 82828
**ENGSTROM, LIPSCOMB & LACK**
10100 SANTA MONICA BLVD., STE. 1200
LOS ANGELES, CA 90067-4113
TELEPHONE: (310) 552-3800
FACSIMILE: (310) 552-9434

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BEHFARIN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>PRUCO LIFE INSURANCE COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-05290-MWF-FFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br><br>2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3. **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.**<br><br>4. **DECLARATORY RELIEF**<br><br>5. **INJUNCTIVE RELIEF**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Richard Behfarin brings this class action complaint against Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America ("PICA") and Pruco Life Insurance Company of New Jersey ("Pruco NJ") (collectively, "Prudential" or "Defendants") to recover damages and/or restitution for Defendants' imposition of contractually unauthorized charges on owners of variable universal life insurance policies, traditional universal life insurance policies and any other type of universal life insurance policies whose premium payments become deficient to support the policy or who seek to reinstate a policy that has lapsed; to obtain a declaration that imposition of certain charges in those situations violates the policies and comprises an unfair business practice; and to secure an injunction halting the imposition of contractually unauthorized charges in those situations.  For his class action complaint, Plaintiff alleges as follows based upon his personal knowledge and upon information and belief, including investigation conducted by his attorneys.

## PRELIMINARY STATEMENT

1.     Permanent life insurance includes variable universal life insurance, traditional universal life insurance, and whole life insurance.  With variable universal life insurance, premiums are invested in financial markets, and the owners' equity in the policy—sometimes called the contract fund--depends in part on the performance of those investments.  The policy owner takes the investment risk.  With traditional universal life insurance, the insurance company pays a fixed interest rate on the premium paid in.  In either type of universal life insurance, planned premium payments may be established, but the owner of the policy has some flexibility in how much premium is paid.  Whole life insurance requires the policy owner to pay a set periodic premium for a promised death benefit, and the insurer takes the risk that market performance, combined with the premium paid in, will be sufficient to support the policy.

2.     Owners of universal life insurance, whether variable or traditional, build

1  up account values within their policies based on the premium paid plus investment

2  performance or credited interest, as the case may be, minus the cost of insurance and

3  administrative charges.  When the value of that account is not a positive number, such

4  as when the policy owner has not paid in enough premium or market performance has

5  been poor, a deficiency in premium occurs, resulting in insufficient value in the

6  policy to cover the accumulated cost of insurance and administrative charges.  That

7  deficiency must be cured within a limited amount of time—the grace period--or the

8  policy will lapse.  If a policy lapses, the owner has the option to reinstate the policy,

9  provided the insured meets certain stated qualifications and the owner pays certain

10  stated amounts of money.

11       3.     Defendants' universal life policies require that to cure a deficiency in

12  account value, the policy owner pay an amount of premium estimated to keep the

13  contract in force for three months.  Without contractual authorization, though,

14  Defendants impose on policy owners who have deficiencies they want to cure an

15  obligation to pay three months' worth of the maximum allowable premium under the

16  policy from the date of default, plus lapse and reinstatement payment loads not

17  described in the policy.  For policy owners who do not cure a deficiency, who suffer a

18  lapse as a result, and who then wish to reinstate, Defendants' universal life policies

19  require payment of the amount required to bring the cash value to zero on the date of

20  default, plus any deductions from the contract fund that occurred during the grace

21  period, plus sufficient premium after administrative charges to cover three months of

22  deductions from the contract fund after reinstatement.  The policy does not state the

23  rate of those contract fund deductions, or premium payments.  Without contractual

24  authorization, Defendants impose on policy owners who wish to reinstate an

25  obligation to pay three months' worth of the maximum allowable contract fund

26  deductions under the policy from the date of reinstatement, plus reinstatement

27  payment loads not described in the policy.  In addition, Defendants require insureds to

28  meet underwriting requirements for reinstatement that are more stringent than those

described in their policies.  Also, when insureds send in premium sufficient to cover three months of insurance costs at the rates Defendants have actually been charging rather than the maximum rates allowed by contract, Defendants return that premium, without any contractual authorization to do so, thereby manufacturing a lapse in the policy that then enables Defendants to re-underwrite the policy so as to avoid the risk it has been paid to undertake by forcing insureds out of coverage when they can no longer qualify for their original rate classification.

4.      On behalf of himself and the proposed class (as defined below), Plaintiff seeks damages and/or restitution for payments made by Defendants' universal life policy owners curing deficiencies or reinstating policies that exceeded those payments allowed by the policies, a declaration that Defendants have been imposing charges in excess of those permitted under the policies in those situations, and an injunction requiring Defendants to cease imposing the contractually unauthorized charges and committing the unfair practices alleged herein, together with the costs of suit and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 *U.S.C.* § 1332, as amended by the Class Action Fairness Act of 2005.

6.      This Court has personal jurisdiction over Defendants because they regularly do business in California and derive income from California by selling life insurance policies in California, and because many of the events hereinafter described, and similar events with respect to other California policy owners in the class, occurred in California.

7.      Venue is proper in this district pursuant to 28 *U.S.C.* § 1391(b) because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in this District, including the sale of the policy and the improper imposition of charges as described below.

///

## PARTIES

8.    Plaintiff Richard Behfarin is a citizen and resident of California who resides in Los Angeles County.

9.    Defendant Pruco Life Insurance Company is an Arizona corporation with its principal place of business located in Newark, New Jersey.  Pruco sells life insurance policies throughout the United States through agents located in various states, including California.

10.    Defendant The Prudential Insurance Company of America is a New Jersey corporation with its principal place of business located in Newark, New Jersey. PICA sells life insurance policies throughout the United States through agents located in various states, including California.

11.    Defendant Pruco Life Insurance Company of New Jersey is a New Jersey corporation with its principal place of business located in Newark, New Jersey. Pruco NJ sells life insurance policies throughout the United States through agents located in various states, including California.

12.    Pruco is a wholly-owned subsidiary of The Prudential Insurance Company of America, and Pruco NJ is a wholly-owned subsidiary of Pruco.

13.    Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1-10, but is informed and believes and thereon alleges that each such fictitiously-named defendant is responsible in some manner for the damages, improper practices, and abridgement of rights described in this First Amended Complaint.  Plaintiff will amend his First Amended Complaint to state the true names, identities or capacities of such fictitiously-named defendants when ascertained.

## COMMON ALLEGATIONS OF FACT

14.    In 2001, plaintiff Richard Behfarin acquired a $3,000,000 second-to-die flexible premium variable life insurance policy from Pruco on the lives of his parents, who were then 63 and 61 years old.  The policy, bearing No. VO 003 712, was

reduced to $2,000,000 in May, 2011.  The policy was a contract entered by plaintiff and Pruco whereby in return for plaintiff's payment of premium, as called for in the policy, Pruco would provide the death benefit and other consideration and benefits recited in the policy, including the benefit of allowing plaintiff to cure any defaults under the policy and reinstate the policy in the event it lapsed, all on the terms specified in the policy.   Plaintiff paid the premium necessary to keep the policy in force for more than 14 years.

15.     On January 4, 2016, the policy went into default.  Pruco's Vice-President of Operations, Kimberly King, sent a notice stating that to prevent a lapse of the policy with no value, plaintiff had to pay $47,457.28 by March 6, 2016, even though under the policy far less was due to satisfy the policy's cure provision, as detailed below.

16.     Plaintiff sent in $20,000 on January 29, 2016.  On February 3, 2016, the same Vice-President, Kimberly King, wrote seeking the remaining $27,457.28.  On February 17, 2016, the Manager of Customer Service, Linda Fitzcharles, returned the $20,000, and again said preventing lapse would require a $47,457.28 payment by March 6, 2016.  To that point, Pruco had not explained how it arrived at that number or why it was permitted to reject the $20,000, as no policy provision authorized return of that money.

17.     On March 9, 2016, Customer Service Representative Marybeth Bajda responded to a request from plaintiff for reinstatement, and enclosed a copy of the Default section of the policy.  She said reinstatement would require payment of $59,737.51 by March 30, 2016 along with a completed and signed reinstatement application.  The amount would increase after that date.  She broke down the amount as follows:

| | |
|---|---|
| Amount needed to bring the cash value to zero | $ 7,289.57 |
| Reinstatement payment loads | 12,065.39 |

6

| | |
|---|---|
| Three months of future charges | <u>40,382.55</u> |
| TOTAL | $59,737.51 |

18.     On March 17, 2016, plaintiff sent Pruco a check for $47,457.28 with a letter noting that his annual statement showed monthly policy charges of $3,135 and annual billed premium of $41,869.  Plaintiff noted based on those policy charges that the $20,000 he sent in January should have kept the policy in force for about six months, and that Pruco was wrong to conclude that sum was insufficient to cure the deficiency and to require plaintiff go through the reinstatement process.  Plaintiff asked that the premium be accepted without putting him through a reinstatement process.

19.     Following that letter, plaintiff raised the issue with his local California servicing agent, Jerry Minter, and discussed the issue by phone with Tina Marie Heebner, Pruco's Senior Analyst, Customer Service.  On April 28, 2016, Heebner wrote to plaintiff explaining that Pruco does a monthly default test to see if the accumulated contract fund covered the monthly deductions.  When the cash value dropped below zero, the policy fails the test and is in default.  When a default occurs, she said, Pruco sends a letter advising of the amount it estimated was necessary to keep the contract in force for three months *at the maximum cost of insurance charges* from the default date, and that amount must be paid by the end of the two-month grace period.  She set forth the following breakdown of the $47,457.28 that Pruco had demanded to avoid lapse, which Pruco had never done before:

| | |
|---|---|
| Three months of maximum cost of insurance charges | $40,339.32 |
| *Plus* lapse and reinstatement payment loads | 9,254.23 |
| *Less* a deduction applied when default or zero value occurs | <u>[ 2,136.27]</u> |
| TOTAL deficiency payment | $47,457.28 |

20.     Heebner's April 28, 2016 letter reiterated that reinstatement would

1  require payment of $59,737.51, and again set forth the same breakdown of that

2  number as had been in the March 9, 2016 letter from Customer Service

3  Representative Marybeth Bajda, except that Heebner described the $7,289.57 amount

4  as "Back Cost Repayment" and the $40,382.55 as "Minimum Payment for Future

5  Costs".  She declined plaintiff's request to forego reinstatement, saying "we must

6  adhere to the terms of the policy."

7          21.    On May 2, 2016, plaintiff wrote to Heebner stating he could not find any

8  policy provision supporting penalty charges above the $20,000 he had originally sent

9  in, supporting return of the $20,000 payment sent in January, or supporting the

10  amounts demanded for reinstatement of the policy.  Plaintiff further noted that

11  Heebner had not cited any policy provision justifying Pruco's position, even though

12  plaintiff had asked orally and in writing for such a citation.

13          22.    On May 5, 2016, plaintiff sent in a reinstatement application and the

14  $59,737.51 required.  Pruco cashed that check on May 12, 2016, but on May 17, 2016

15  Bajda wrote him that the application was incomplete and sent him a new one to fill

16  out.

17          23.    On May 20, 2016, Stanley Greene, a Registered Representative of Pruco

18  Securities, LLC, which "offered" the policy, wrote him, apparently in response to the

19  May 2, 2016 letter.  Greene pointed out that the guaranteed maximum monthly

20  insurance rates per $1,000 were shown on page 4A of the policy.  He stated that the

21  reinstatement charge is the amount that would result in a net invested premium equal

22  to the sum of the amount needed to bring the net cash value to zero as of the lapse

23  date, the unpaid charges during the grace period, any unpaid deductions during

24  default, three times the monthly charge for the first policy monthly date on or after

25  the date of reinstatement at guaranteed maximum cost of insurance rates, and a

26  loading charge using guaranteed rates.  He said the reinstatement charge does not

27  include a penalty, and the three months of charges based on maximum cost of

28  insurance rates are to assure the policy does not immediately become deficient again,

1    although they did not guarantee against that very outcome if investment performance

2    were catastrophically poor.

3         24.    On June 15, 2016, Bajda wrote to Jack Behfarin, plaintiff's father, that

4    he was declined for reinstatement because of his forgetfulness and use of Aricept, a

5    drug used to treat Alzheimer's-based dementia.  The letter says Jack Behfarin must

6    qualify for the same risk class as the policy that was originally issued in order to

7    obtain reinstatement.  Jack Behfarin had a preferred best rating class originally.  The

8    letter indicates that Jack Behfarin is entitled to know the specific information on

9    which denial was based, and its source.  On June 27, 2016, Jack Behfarin wrote to

10   Pruco asking for copies of all documents Pruco used in making the decision it

11   communicated on June 15, 2016, but he has not received those documents.  Pruco did

12   not request Jack Behfarin's medical records.  Had it done so, it would have known

13   that Jack Behfarin was using a low, starter level of Aricept, indicative of just very

14   early stages of dementia, which should not in itself make him completely uninsurable.

15                        **CLASS ACTION ALLEGATIONS**

16        25.    As noted above, Plaintiff brings this action on behalf of himself and a

17   nationwide class, defined as follows:

18        All persons in the United States and its territories who owned universal life

19   insurance policies issued by Defendants and who, within four years prior to the

20   commencement of this litigation, either:  (a) suffered deficiencies, defaults or lapses

21   of their policies and paid either maximum cost of insurance charges or lapse and

22   reinstatement payment loads, or both, to cure that deficiency or default or to reinstate

23   the lapsed policy; or (b) suffered the lapse of their policies because they were unable

24   to pay or chose not to pay maximum cost of insurance charges or lapse and

25   reinstatement payment loads, or both, to cure that deficiency or default or to reinstate

26   the lapsed policy; (c) suffered a lapse of their policies and paid either maximum cost

27   of insurance charges or reinstatement payment loads, or both, to reinstate their

28   policies; (d) suffered a lapse of their policies and could not or did not reinstate

because they were unable to pay or chose not to pay maximum cost of insurance charges or reinstatement payment loads, or both; or (e) suffered a lapse of their policies and could not reinstate because they were no longer qualified for the same risk classification but were still insurable for universal life at some risk classification.

26.     Upon information and belief, there are hundreds, if not thousands, of members of the class, geographically dispersed throughout the country.  Joinder of all members is therefore impracticable.

27.     Common questions of law and fact exist as to all class members such that those questions predominate over questions affecting Plaintiff or individual class members.  These common questions include, but are not limited to, the following:

A.     Whether Defendants have charged lapse and reinstatement payment loads to all policy owners seeking to cure defaults or seeking to reinstate.

B.     Whether lapse and reinstatement payment loads are authorized charges under the policies.

C.     Whether Defendants have imposed maximum cost of insurance rates in calculating the three months of cost of insurance charges required to cure defaults or reinstate.

D.     Whether the policies allow Defendants to impose maximum cost of insurance rates in calculating the three months of cost of insurance charges required to cure defaults or reinstate.

E.     Whether Pruco has denied reinstatement to insureds who no longer qualified for the same risk classification as they had when the policy was issued but were still insurable for universal life at some risk classification.

F.     Whether the policies allow Pruco to deny reinstatement to insureds who no longer qualified for the same risk classification as they had when the policy was issued but were still insurable for universal life

at some risk classification.

28.    In charging lapse and reinstatement payment loads and using maximum cost of insurance rates to calculate the three months of premium required for curing defaults and reinstating, and in declining to reinstate when insureds do not qualify for their original rate classification but do qualify for universal life insurance at a different rate classification, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other class members.  Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members.

29.    The factual and legal bases of Defendants' liability to Plaintiff and each class member are the same, resulting in injury to Plaintiff and each class member as a result of Defendants charging lapse and reinstatement payment loads and using maximum cost of insurance rates to calculate the three months of premium required for curing defaults and reinstating, and Defendants declining to reinstate when insureds do not qualify for their original rate classification but do qualify for universal life insurance at a different rate classification.

30.    Plaintiff will fairly and adequately represent and protect the interests of other class members.  Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions.  Both Plaintiff and his counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so.  Neither Plaintiff nor counsel has any interest adverse to other class members.

31.    Most class members would find the costs of litigating their claims prohibitive and therefore would have no effective remedy without a class action.  Further, class treatment of common questions of law and fact is superior to multiple, individual litigation or piecemeal adjudication because it preserves the resources of the courts and litigants and promotes consistency and efficiency of adjudication.

///

# FIRST CAUSE OF ACTION

## For Breach of Contract

32.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

33.     The Default provision of plaintiff's policy with Pruco provides in pertinent part as follows:

> "On each monthly date, we will determine the cash value.  If the cash value is greater than zero and the contract has no excess contract debt, the contract will remain in force until the next monthly date.  If the cash value is zero or less, the contract is in default unless it remains in force under the Death Benefit Guarantee.
>
> If the contract is in default, we will mail you a notice stating the amount we will need to keep the contract in force.  That amount will equal a premium which we estimate will keep the contract in force for three months from the date of default."

On information and belief, the policies of other class members contain substantially similar Default provisions.

34.     Nothing in the Default provision or elsewhere in the policy outlines or explains how Defendants will estimate the amount of premium that will keep the policy in force for three months from the date of default.

35.     The Reinstatement provision of plaintiff's policy states the following as one of the conditions of reinstatement:

"You must pay us a charge equal to: (a) an amount, if any, required to bring the cash value to zero on the date the contract went into default, plus (b) the deductions from the contract fund during the grace period following the date of default, plus (c) a premium that will be sufficient after administrative charges to cover the deductions from the contract fund for three monthly dates starting on the date of reinstatement."

On information and belief, the policies of other class members contain

1   substantially similar Reinstatement provisions.

2       36.     Nothing in the Reinstatement provision or elsewhere in the policy

3   outlines or explains how Defendants will estimate the amount of premium that will be

4   sufficient after administrative charges to cover deductions from the contract fund,

5   which essentially means the cost of insurance, for three months after reinstatement.

6       37.     On page 4A, plaintiff's policy contains a Table of Maximum Monthly

7   Insurance Rates per $1,000.  Pruco used the rate per $1,000 of insurance from this

8   Table to calculate the monthly amount of premium needed to keep the policy in force,

9   and then multiplied that result by three months.  This calculation yielded a three-

10  month figure of $40,339.32

11      38.     At the time of plaintiff's default in January, 2016, the highest monthly

12  cost of insurance in the prior year according to the 2015 annual statement was

13  $3,104.84, and the monthly administrative cost was $30.  That total, $3,134.84, times

14  three months would yield a premium estimate for curing a default of $9,404.52.

15  Pruco has not provided any more updated information as to the cost of insurance

16  charged under the policy for the months between default and lapse of the policy in

17  March, 2016.

18      39.     The policy plaintiff owned, and on information and belief, the Pruco,

19  PICA and Pruco NJ policies of other class members, do not allow Defendants to

20  charge the maximum monthly insurance rate in the event of default or reinstatement.

21  Just below the chart of maximum rates, the Maximum Monthly Insurance Rate Table

22  provides, "We may charge less than the maximum monthly rates.  From time to time,

23  we will consider the need to change the rates we charge.  We describe the factors we

24  use to determine such changes under General Provisions."

25      40.     The General Provisions of plaintiff's policy, and on information and

26  belief, the Pruco, PICA and Pruco NJ policies of other class members, include the

27  following language under the heading "Factors Subject to Change":

28      "Charges deducted from premium payments and the contract fund may change

from time to time, subject to the maximums shown in the contract data pages.  In deciding whether to change any of these charges, *we will periodically consider factors such as mortality, persistency, expenses, taxes and interest and/or investment experience to see if a change in our assumptions is needed.*  Charges for taxes attributable to premiums will be set at one rate for all contracts like this one.  *Changes in other factors will be by class.*  All changes will be determined only prospectively; that is, we will not recoup prior losses or distribute prior gains by means of these changes."

38.     Defendants contractually agreed to change its rates from less than maximum only based on the factors set out in the General Provisions.  The General Provisions allow such a change only based on mortality (the death rate), persistency (the policy retention rate, i.e. the flip side of the lapse rate), expenses (no increase of which is evident), taxes and interest, or investment experience.  Defendants also agreed that all changes would be by class (e.g. preferred best vs. standard, or smoker vs. non-smoker, or male vs. female), as contrasted with by individual policy holder, except for taxes and interest, which would be based on policy type.  Under the contract, the rates could not be raised to maximum just for plaintiff, or just for people whose policies become deficient or need reinstatement, nor is failure to pay premium or deficiency in the contract fund or exercise of the right to cure or reinstate a basis for raising rates to maximum levels.  An increase to the maximum rate would have to be made, for example, for all preferred best or standard risks.  There is no separate default or reinstatement rate provided in the contract.

39.     Based on the absence of any explanation of how Defendants will estimate the amount of premium sufficient to cure a default or reinstate, and based on the foregoing provisions limiting Defendants' ability under the contract to change the rates it charges, the reasonable expectation of plaintiff and any policy owner in either a default cure or reinstatement situation is that the premium would be calculated based on the cost of insurance Defendants were then charging, not the maximum

charge allowed by the policy.

40.     The policy of plaintiff, and on information and belief the Pruco, PICA and Pruco NJ policies of other class members, also contain no reference to lapse or reinstatement loads.  This is a completely fabricated charge insofar as the policy terms provide.  Defendants have never explained what these "loads" consist of, despite plaintiff's requests for such an explanation.  There is no notice of load charges, and no support for load charges, anywhere in the contract.

41.     The policy of plaintiff, and on information and belief the Pruco, PICA and Pruco NJ policies of other class members, also set forth only one circumstance in which Pruco can refuse premium, and that is when it increased the death benefit by more than the contract fund, which did not occur on plaintiff's policy.  Otherwise, the policy of plaintiff, and on information and belief the policies of other class members, do not authorize Defendants to return premium payments that are sufficient to cover three months' of insurance at the rates Defendants have been charging as the cost of insurance.

42.     Prior to the January 4, 2016 default notice, plaintiff had received default notices on approximately seven occasions and had paid the amount Pruco claimed was required to cure the default in each instance, unaware that the amounts required in those instances exceeded the amount allowed by the policy because they included lapse and reinstatement loads not authorized by the policy and they charged for three months of premium at the maximum cost of insurance rate permitted by the policy rather than the prevailing cost of insurance being charged to other policy owners with insureds in the same rate classification as plaintiff's father.  Also prior to January 4, 2016, plaintiff had reinstated the policy one time, and on that occasion also paid the amount Pruco claimed was required to reinstate, unaware that the amount required exceeded the amount allowed by the policy because it included reinstatement loads not authorized by the policy and it included three months of premium at the maximum cost of insurance rate permitted by the policy rather than the prevailing

cost of insurance being charged to other policy owners with insureds in the same rate classification as plaintiff's father.  Plaintiff suffered monetary losses as a result of these overcharges.

43.     The Reinstatement provision of plaintiff's policy, and on information and belief the Pruco, PICA and Pruco NJ policies of other class members, state the following as one of the conditions of reinstatement:

"You must prove to us that any Insured who was living when the contract went into default was insurable for the contract."

44.     This provision is, at best, ambiguous.  Defendants interpret it to require that each insured qualify for the same rate classification as that insured did at the time the policy was issued.  Because the provision does not explicitly say that, however, which it easily could have, the provision is also amenable to the interpretation that reinstatement requires only that an insured living at the time of default be insurable for the type of contract issued, in plaintiff's case a variable life insurance policy, irrespective of the specific rate classification.  The latter interpretation would comport with the reasonable expectations of the insured and the policy owner, in that an insured or policy owner typically would be seeking reinstatement sometime well after the origination of the policy, when an insured's health would have declined.  Defendants' interpretation does not align with the purpose of the policy, which is to provide permanent insurance on the person insured.  Defendants' interpretation would enable it to seize on the fortuity of a temporary lapse to avoid the risk of having to pay a claim in the future while still retaining years of premium paid in just because of the natural and expected deterioration of an insured's health and rating classification over time.

45.     Pruco breached the policy of plaintiff, and Pruco, PICA and Pruco NJ have breached the policies of other class members, by imposing lapse and reinstatement loads as a condition of curing defaults and reinstating policies when the policies do not provide for those loads, by charging the maximum cost of insurance

for the three months of premium required in the event of default or reinstatement when Defendants had been charging a lesser cost of insurance and had not increased the cost of insurance for any entire rate classification, and by refusing to reinstate policies of plaintiff and other class members when the insureds were still insurable but not at the same rate classification as they had been rated when the policies were acquired.

46.     Plaintiff has performed all obligations on his part to be performed under his policy, and on information and belief, all class members performed their obligations under their respective policies with Pruco, PICA and Pruco NJ as necessary to cure any defaults or reinstate their policies, or would have performed those obligations if not prevented from doing so by Defendants.

47.     As a direct and proximate result of the breaches of plaintiff's policy, and on information and belief, the breaches of the policies of other class members, plaintiff and other class members have suffered damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### For Breach of the Implied Covenant of Good Faith and Fair Dealing

48.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

49.     The ability to cure defaults under the policy and reinstate the policy by paying an amount estimated to cover the cost of insurance and administrative charges for three months, and nothing more, and the ability to reinstate if the insured is insurable without reference to rate classification, are benefits under the policy for which plaintiff made a claim.  On information and belief, all class members made a claim for one or more of those policy benefits.

50.     Defendants tortuously and in bad faith denied the claims of plaintiff and other members of the class for those benefits, thereby unreasonably withholding policy benefits.  In doing so, Defendants falsely represented the requirements of the

policies and deprived plaintiff and other members of the class of the benefits and protections of their policies.

51.     Defendants charged the maximum cost of insurance allowed and imposed charges not authorized by the policies to cure defaults and/or reinstate so that either Defendants would make money to which they were not contractually entitled and money they had never bargained for or warned the policy owner would be required, or Defendants would price policy owners out of their policies, which would enable Defendants to retain all premium previously paid, and all earnings on that premium, while never having to pay the death benefit for which the policy owners had—often for many years--paid their premium.

52.     Pruco tortiously and in bad faith denied reinstatement where insureds, including plaintiff's father, were still insurable for the universal life policies issued, but at a lesser rate classification, even though Pruco's reinstatement clause only requires insurability and at best, is patently ambiguous.  In doing so, Pruco falsely represented the requirements of the policies and deprived plaintiff and other members of the class of the benefits and protections of their policies.

53.     Defendants denied reinstatement to policy owners whose insureds qualified for lesser rate classifications but were still insurable so that Defendants could avoid having to pay death benefits on lives it had insured and for which it had collected premium, often for years.  Deterioration in the health of any insured over time is an expected consequence at the time of origination of a policy of life insurance.  Pruco knew that the health of plaintiff's insured had deteriorated from the time the policy originated when it determined the insured's rate classification had worsened, and seized on the lapse of the policy to avoid the very risk for which it had been collecting premium during the pendency of the policy.  This conduct is especially odious in those cases such as plaintiff's, where the policy lapsed because Pruco was overcharging the policy owner to cure by calculating the required three months of premium at maximum allowable cost of insurance rates under the policy

or was imposing lapse and reinstatement loads not allowed by the policy, and was improperly and without contractual authorization returning sums paid for curing or reinstating when those sums were sufficient based on rates then in effect. Pruco, in effect, was manufacturing the lapse and then taking advantage of that lapse to escape any further risk while pocketing whatever premium had been paid before the lapse, and any earnings on that premium.

54. Plaintiff is informed and believes, and thereon alleges, that Defendants have a pattern and practice of charging lapse and reinstatement loads without contractual authority, improperly charging premium required for curing defaults and reinstating at maximum allowed cost of insurance rates, and denying reinstatement to people who are insurable, just not at their original rate classification, thereby evidencing an intent to withhold policy benefits on a large scale basis, and harming numerous beneficiaries within the State of California and elsewhere.

55. As a direct and proximate result of the bad faith conduct by Defendants as described above, plaintiff and the other class members have been forced to engage the services of attorneys to secure the benefits owed under the policies, as described above, and have suffered damages in an amount to be proven at the time of trial, including but not limited to attorney fees incurred in proving entitlement to the cure and reinstatement benefits the policies provide in the event of default or lapse.

56. The acts of Defendants as described above were committed with malice, oppression, or fraud, and in conscious disregard of the rights of plaintiff and other members of the class for the improper motives of avoiding risk undertaken while retaining premium or, at the very least, obtaining money not owed under the policies, as described above. Those acts warrant imposition of punitive or exemplary damages in an amount to be determined at the time of trial.

57. The conduct described above was committed by, or was authorized or ratified by, managing agents and/or managerial employees at Defendants, including but not limited to those identified above, such that the conduct is deemed to be the

1   conduct of Defendants themselves.

2   ### THIRD CAUSE OF ACTION

3   ### For Violation of Business and Professions Code §17200, et seq.

4       58.    Plaintiff hereby incorporates by reference the foregoing allegations as if

5   fully set forth herein.

6       59.    California *Business & Professions Code* §§17200 *et seq.*, also known as

7   the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

8   competition," including any unlawful, unfair, fraudulent, or deceptive business act or

9   practice.

10      60.    Defendants acts, conduct and practices as alleged above were unfair and

11  deceptive.  Specifically, as to plaintiff and those class members in California,

12  Defendants imposed charges for lapse and reinstatement loads, and improperly

13  calculated premium owed for curing defaults and reinstating at the maximum rate

14  under the contract, all without any contractual authority to do so.  By doing the latter,

15  Defendants actually engaged in price discrimination in that it imposed a changed cost

16  on certain policy owners—those who were in default or who had lapsed policies and

17  sought reinstatement--that it did not impose on other policy owners in the same rate

18  classification, even though the General Provisions of the policies only allowed rate

19  changes by class.  Defendants typically, and in plaintiff's case, did not disclose the

20  basis for charging the cure premium or reinstatement premium it charged or the fact

21  that it was not adhering to a contractual requirement that it only change rates by

22  class, nor did it disclose that the contract did not allow for imposition of lapse and

23  reinstatement loads when it imposed those loads.  Policy owners subject to those

24  costs and charges were particularly vulnerable to these unfair and deceptive costs and

25  charges, as they either were in default under their policies or had suffered a lapse of

26  their policies, and thus had to act quickly and without questioning or protesting the

27  charges, or they faced a complete loss of their money invested in the policies in the

28  form of prior premium payments and earnings thereon.

61.   In the case of plaintiff, and typically in the cases of other class members in California, Defendants also acted unfairly and deceptively in requiring that policy owners seeking to reinstate establish that the insured qualify for the same rate classification as the insured did at policy origination, while not fully disclosing the true policy language. For example, Pruco asserted in correspondence that the insured had to qualify for the same risk class as the policy originally issued, and did not disclose that the Reinstatement provision actually only required that the insured have been insurable for the contract, not insurable at the same rate classification as at policy origination.  Pruco further acted unfairly and deceptively by offering to provide more information about its decision and then not responding to requests for that information.

62.   Defendants acts, conduct and practices as alleged above represent and constitute a pattern and practice on the part of Defendants in the treatment of its policy owners and insureds that is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers of its policies by tricking them into overpaying to cure defaults and reinstate policies.

63.   As a direct, proximate and immediate result of Defendants' unfair and deceptive business practices, plaintiff and the California class members have suffered the loss of sums paid to cure or reinstate in excess of the amounts required by contract, or have suffered the loss of their policies due to an inability to pay the overstated amounts needed to cure or reinstate or the inability of the insureds to qualify for reinstatement under the improper standard imposed.

64.   Pursuant to California *Business & Professions Code* §17203, plaintiff and the California class members seek an order of the Court restoring all monies that have been obtained by Defendants from them as a result of Defendants' unfair and deceptive acts or practices, and all insurance policies or benefits lost as a result of Defendants' unfair and deceptive acts or practices.

///

## FOURTH CAUSE OF ACTION

### For Declaratory Relief [28 U.S.C. §2201(a)]

65.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

66.     An actual and ripe controversy exists concerning the rights and obligations of the parties under the universal life policies issued by Defendants.

67.     Plaintiff seeks a declaration that under the Default and Reinstatement provisions of Policy No. VO 003 712 and similar provisions of universal life policies issued to other class members, including policies that remain in force, Defendants are not entitled to impose lapse and reinstatement loads as requirements for curing or reinstating and Defendants must charge the estimated three months of premium for curing or reinstating at the rates then in effect rather than at maximum contract rates when maximum rates were not already in effect.

68.     Plaintiff seeks a further declaration that under the Reinstatement provision of Policy No. VO 003 712 and similar provisions of universal life policies issued to other class members, including policies that remain in force, the policy owner is not required to prove that an insured living when the policy went into default was insurable at the same rate classification as at the origin of the policy, but need only prove that such an insured was insurable at some rate classification for the policy.

69.     Plaintiff is informed and believes that Defendants dispute the rights and obligations plaintiff contends exist under Default and Reinstatement provisions of the policy he obtained and under similar provisions of policies of other class members.  A judicial declaration is necessary and appropriate for the parties to ascertain their rights and legal relations under those policy provisions.

## FIFTH CAUSE OF ACTION

### For Injunctive Relief

70.     Plaintiff hereby incorporates by reference the foregoing allegations as if

fully set forth herein.

71.     Plaintiff seeks an order enjoining Defendants from charging lapse and reinstatement loads to cure defaults and reinstate policies; enjoining Defendants from calculating the three months of premium required for curing defaults or reinstating based on the maximum cost of insurance rates allowed by the policy, unless that is the rate Defendants have been charging under that policy; and enjoining Defendants from denying reinstatement when insureds are insurable but just not at the rate classification that applied upon policy origination.

72.     Plaintiff and the class members will suffer irreparable harm if Defendants are not enjoined from that conduct, in that many class members will be unable to pay the overcharges and therefore will be unable to keep their valuable insurance coverage in force or to reinstate it if it lapses, and many may be unable to reinstate due to natural and expected deterioration of the insured's health over time. That will result in the loss of financial protection for policy owners and/or their beneficiaries for which other investments cannot make up.  It would also make it far more difficult and costly to secure replacement coverage, if it is possible at all.

73.     Pursuant to California *Business & Professions Code* §17203, plaintiff and the California class members seek an injunction barring Defendants from charging lapse and reinstatement loads as a condition of policy owners curing defaults or reinstating, barring Defendants from calculating premium required for curing defaults and reinstating based on maximum contract insurance rates, and barring Defendants from rejecting reinstatement based on an insured's not qualifying for the same rate classification as at the time the policy originated if the insured is still insurable under a different rating classification.

74.     Plaintiff has standing pursuant to *Business & Professions Code* §17204 to seek injunctive relief.  As alleged herein, Plaintiff suffered injury in fact and lost money or property as a result of the unfair and deceptive conduct.

75.     Plaintiff has assumed the responsibility of enforcing the contract and, for

the California class members, the laws and public policies specified herein by suing on his own behalf and on behalf of other similarly-situated class members.  Plaintiff's action will enforce important rights affecting the public interest and will confer a significant benefit upon the general public and/or a large class of persons.  Plaintiff will incur a financial burden in pursuing this action in furtherance of the public interest, and the interest of justice counsel in favor of a separate award of attorneys' fees and costs.  Thus, an award of attorneys' fees and costs to Plaintiff as a private attorney general is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class, prays for the following relief:

1.     For an order certifying the class as defined above;

2.     For an award of damages in an amount to be proven at trial;

3.     For an award of restitution of California class members

4.     For a Declaration of the rights and legal relations of the parties, and that the Declaration provide that Defendants do not have the right under the policy to charge lapse and reinstatement loads to cure defaults or reinstate; that Defendants do not have the right under their policies to calculate premium needed to cure defaults and reinstate at the maximum cost of insurance rate, unless that was also the rate being charged at the time of default or lapse; and that Defendants may not deny reinstatement to anyone insurable, even if not at the same rate classification as at the time the policy originated.

5.     For a permanent injunction barring Defendants from charging lapse and reinstatement loads to cure defaults or reinstate; from calculating premium needed to cure defaults and reinstate at the maximum cost of insurance rate provided by the policy, unless that was also the rate being charged at the time of default or lapse; and barring Defendants from denying reinstatement to anyone insurable, even if not at the same rate classification as at the time the policy originated.

6.    For reasonable attorney's fees and expenses

7.    For taxable costs;

8.    For pre and post-judgment interest as allowed by law; and

9.    For any other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests trial by jury of all claims that are so triable.

Dated:  October 11, 2019                WALTER J. LACK
                                        STEVEN C. SHUMAN
                                        ENGSTROM, LIPSCOMB & LACK

                                        ROBERT MOBASSERI, ESQ.


                                        By:   _/s/ Steven C. Shuman_____
                                              Walter J. Lack, Esq.
                                              Steven C. Shuman, Esq.
                                              Robert Mobasseri, Esq.
                                              Attorneys for Plaintiff

421353

25

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2019, a true and correct copy of: **FIRST AMENDED CLASS ACTION COMPLAINT** was filed electronically and will be served via Notice of Electronic Filing under the Court's CM/ECF system this 17th day of October, 2019, to all parties with an email address on record, who have consented to electronic service in this action.

*/s/ Steven C. Shuman*

STEVEN C. SHUMAN

421353

26