1  WALTER J. LACK, SBN 57550
2  STEVEN C. SHUMAN, SBN 82828
   **ENGSTROM, LIPSCOMB & LACK**
3  10100 SANTA MONICA BLVD., STE. 1200
   LOS ANGELES, CA 90067-4113
4  TELEPHONE: (310) 552-3800
5  FACSIMILE: (310) 552-9434

6
7  Attorney for Plaintiffs

8              **UNITED STATES DISTRICT COURT**

9       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  RICHARD BEHFARIN, individually         CASE NO. 2:17-cv-05290-MWF-FFM
    and on behalf of a class of similarly
12  situated individuals,                   [Hon. Michael W. Fitzgerald, Judge]

13
                                            **NOTICE OF UNOPPOSED**
14           Plaintiffs,                    **MOTION AND MOTION FOR**
                                            **ATTORNEY FEES AND COSTS**
15  vs.                                     **AND INCENTIVE AWARD FOR**
                                            **CLASS REPRESENTATIVE;**
16                                          **DECLARATIONS OF STEVEN C.**
    PRUCO LIFE INSURANCE                    **SHUMAN AND RICHARD**
17  COMPANY, et al.,                        **BEHFARIN' [PROPOSED] ORDER**

18
             Defendants.
19
                                            **Hearing:      April 20, 2020**
20                                          **Time:         10:00 a.m.**
                                            **Courtroom: 5A**
21
22                                          **[Filed Concurrently with Declarations of Steven**
                                            **C. Shuman and Richard Behfarin; Proposed**
23                                          **Order]**

24                                          **Complaint filed: 7/18/17**
25

26  TO ALL PARTIES AND COUNSEL OF RECORD:

27      PLEASE TAKE NOTICE that on April 20, 2020, at 10:00 a.m., or at such

28  other date and time as the Court may set in Courtroom 5A of the United States

439669                          1              Case No. 2:17-cv-05290-MWF-FFM

District Court, located at 350 West First Street, Los Angeles, California, before the Hon. Michael W. Fitzgerald,  Settlement Class Counsel will move the Court for an Order Approving Awards of Attorney Fees, Costs, and Service and Incentive Payments for the Class Representative.

This Motion is made pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2)  on the ground that Class Counsel, in conjunction with their consultant, have effected a remarkable settlement, and the Class Representative contributed significantly to that successful result.

This Motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, and the Declarations of Steven C. Shuman and Richard Behfarin.

Dated:  February 11, 2020   WALTER J. LACK
           STEVEN C. SHUMAN
           ENGSTROM, LIPSCOMB & LACK

           ROBERT MOBASSERI, ESQ.


        By: _/S/ Steven C. Shuman_____
          Walter J. Lack, Esq.
          Steven C. Shuman, Esq.
          Robert Mobasseri, Esq.
          Attorneys for Plaintiff

# TABLE OF CONTENTS

PAGE

NOTICE OF UNOPPOSED MOTION .......................................................................... 1

MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION ............................. 1

INTRODUCTION ......................................................................................................... 1

II.     CLASS COUNSEL HAVE EARNED A $3,500,000 FEE AWARD ............ 2

        A.     Background of the Litigation ................................................. 3

        B.     Discovery ................................................................................ 4

        C.     Original Class Certification Motion ...................................... 5

        D.     The Class Settlement .............................................................. 5

        E.     Preliminary Certification of Settlement Class and Approval of
               Settlement ............................................................................... 9

III.    CLASS COUNSEL'S REQUESTED FEE IS REASONABLE ..................... 9

        A.     The Court Should Calculate Class Counsels' Fee Using the
               Percentage of the Fund Method ........................................... 10

        B.     The Value of This Settlement Generated by Counsel's Efforts
               is at Least $19,562,792 ....................................................... 11

        C.     The Requested Fee Is Below the Ninth Circuit Benchmark ............... 12

        D.     Relevant Considerations Supporting Reasonability ........................... 13

        E.     The Lodestar Cross-Check Supports Reasonableness of Fee ............. 19

IV.     CLASS COUNSEL'S EXPENSES WERE REASONABLY AND
        NECESSARILY INCURRED .......................................................................... 22

V.    THE REQUESTED INCENTIVE AWARD TO THE NAMED
       PLAINTIFF IS APPROPRIATE AND WARRANTED .............................23

VI.    CONCLUSION.................................................................................25

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989).....................................................................11

6

*Aichele v. City of L.A.*,
7
   No. CV 12–10863–DMG, 2015 WL 5286028 (C.D. Cal. Sept. 9,
8
   2015) ...............................................................................................................10, 20

9

*In re American Equity Annuity Practices and Sales Litigation*,
10
   2:05cv6735 CAS, 2014 WL 12586112 (CD Cal. Jan. 29, 2014).....15, 16, 18, 20

11

*In re Anthem, Inc. Data Breach Litig.*,
12
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17,
   2018) .....................................................................................................................15

13

*Bellinghausen v. Tractor Supply Co.*,
14
   306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................19, 20

15

*Boeing Co. v. Van Gemert*,
16
   444 U.S. 472, 478 (1980)......................................................................................10

17

*In re Bluetooth Headsets Prods. Liab. Litig.*,
18
   654 F.3d 935 (9th Cir. 2011) ................................................................................14

19

*Carlin v. DairyAmerica, Inc.* (E.D. Cal. 2019)
20
   380 F.Supp.3d 998 ...........................................................................................23, 24

21

*Coffman v. Pruco Life Ins. Co.*,
22
   No. 10–CV– 03663(DMC)(MF), 2011 WL 4550152 (D.N.J. Sept. 29,
23
   2011) .....................................................................................................................16

24

*Covillo v. Specialtys Café*,
25
   No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)................19

26

*Craft v. Cty. of San Bernardino*,
27
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................................................21

28

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

*de Mira v. Heartland Emp't Serv.*,
    No. 12-CV-04092 LHK, 2014 WL 1026282 (N.D. Cal. Mar. 13,
    2014) ........................................................................................13

*Fleisher v. Phoenix Life Ins. Co.*,
    Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814
    (S.D.N.Y Sept. 9, 2015)..............................................................12

*Feller v. Transamerica Life Insurance Company*,
    16-cv-01378 ...................................................................14, 18, 25

*Frame v. Hilman*,
    No. 01-CV-2193 ..........................................................................15

*Glass v. UBS Financial Services, Inc.*
    C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. 2007)....................19

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015).............20

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...........................................................22

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).....................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1029 (9th Cir. 1998) ............................................10

*In re Heritage Bond Litig.*,
    Nos. 02-ML-1745 DT ...................................................................13

*In re High-Tech Emp. Antitrust Litig.*,
    11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)...................20

*Hopkins v. Stryker Sales Corp.*,
    No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6,
    2013......................................................................................20

*In re Immune Response Sec. Litig.*,
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ...........................................22

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

*Iorio v. Allianz Life Ins. of N. America,*
    05-CV-0633 (S.D. Cal.) .................................................................................. 25

*Keller v. NCAA,*
    Nos. C 09-1967 CW, C 09-3329 CW, 2015 WL 8916392 (N.D. Cal.
    Dec. 15, 2015) ............................................................................................ 13

*In re Liboderm Antitrust Litig.,*
    No. 3:14-md-02521-WHO (N.D. Cal. Sept. 12, 2018) ...................................... 13

*In re: Managed Care Litig., Class Plaintiffs v. Aetna, Inc.,*
    No. 00-1334-MD-Moreno, 2003 WL 22850070 (S.D. Fla. Oct. 24,
    2003) ........................................................................................................ 11

*Martin v. Ameripride Services, Inc.,*
    No. 8-cv-440-MMA, 2011 WL 2313604 ........................................................ 13

*In re Media Vision Tech. Sec. Litig.,*
    913 F.Supp. 1362 (N.D. Cal. 1996) .............................................................. 22

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................*passim*

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ........................................................ 11, 12, 13, 19

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d at 379 ...................................................................................... 12, 16

*In re Rite Aid Corp. Securities Litigation,*
    396 F.3d 294 (3d Cir. 2005) ........................................................................ 18

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ....................................................................... 24

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ................................................................ 10, 12

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 9

*Steiner v. Am. Broadcasting Co.,*
    248 Fed. App'x 780 (9th Cir. 2007) .............................................................. 21

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

*Stern v. New Cingular Wireless Servs., Inc.*,
  No. 8:09-CV-01112-CAS, 2010 WL 11531076 (C.D. Cal. Nov. 22, 2010) (Snyder, J.).................................................................................10

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995)................................................24, 25

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
  No. C 06-0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013)...................13

*Vizcaino v. Microsoft Corp.*,
  142 F. Supp. 2d 1299 (W.D. Wash. 2001), aff'd, 290 F.3d 1043 (9th Cir. 2002).................................................................................14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).................................................*passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
  19 F.3d 1291 (9th Cir. 1994).................................................17, 18

*Wininger v. SI Mgmt. L.P.*,
  301 F.3d 1115 (9th Cir. 2002).......................................................22

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)................................................17

*Yue v. Conseco Life Ins. Co.*,
  No. 2:11-cv-09506-DSF(SH) (C.D. Cal.), Dkt. 153 .................................15

*Zucker v. Occidental Petroleum Corp.*,
  192 F.3d 1323 (9th Cir. 1999).......................................................10

**Statutes**

B&P Code § 17200, et seq............................................................4

**Court Rules**

Fed. Rule Civ. Proc. 23.............................................................16

Rule 23(a) and 23(b)(3).............................................................9

Rule 23(c)..........................................................................9

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARD FOR CLASS REPRESENTATIVE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 26 ................................................................................................................5

Rule 30(b)(6) .......................................................................................................4

Rules 33 and 34 ..................................................................................................5

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

### I. INTRODUCTION

Class Counsel have successfully secured an excellent life insurance class action settlement for the Class. The Settlement requires that Defendants Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (together and collectively, Defendants," or "Prudential,"), provide immediate benefits in the form of reinstatement of previously lapsed life insurance or monetary compensation to qualified members of a class of more than 32,000 affected policies subject to the challenged conduct, and to change its business practices going forward for the benefit of at least 13,000 current Policyowners.  This is an exceptional recovery because it allows qualified policyholders to reinstate lapsed policies without medical underwriting or cost for the period of lapse on terms that restore the pre-lapse status quo, or, if the insured is deceased, to recover a settlement equal to a percentage of the death benefit of a policy that was not in force at the time of death, or to recover basic cash relief of $250.  By even the most conservative actuarial evaluation, this settlement affords more than $20,000,000 in benefits to the Class.

The monetary and non-monetary recovery and benefits afforded by the Settlement are further enhanced by Prudential's agreement to pay (a) approximately $500,000 in notice and settlement administration costs and (b) up to $3,500,000 in attorneys' fees and $500,000 in costs and expenses as may be approved by the Court – amounts that would otherwise be borne by the Settlement Class.  The Settlement also secures valuable current and prospective relief that will protect Settlement Class Members by ensuring that the amount billed to cure a default or to reinstate a policy upon lapse will be calculated based on current rates (or less), and not Guaranteed Rates, i.e. maximum allowed rates under the insurance contract.  [Stip §III.C.1] This will benefit thousands of current and future policyholders.

1    Class Counsel prosecuted the class claims and generated the Settlement Relief

2    on a purely contingent basis, with no guarantee of recovering their fees and expenses.

3    By securing Prudential's agreement to fund attorneys' fees and costs without reducing

4    Class Members' recovery, Class Counsel achieved a result for the class that is

5    extraordinary, and more than individual class members could have hoped to achieve

6    had they filed suit individually and borne their own legal fees and costs for doing so.

7    [Stip §IX.A]

8    Based on the results obtained for the Class in this costly, complex and risky

9    litigation, the requested fee award of $3,500,000 is fair and reasonable and represents

10   17.89 % of the total Class recovery. Indeed, a much higher percentage award could

11   easily be justified when this case is compared with other large, complex class

12   settlements in this district and others. Moreover, a lodestar cross-check yields a 4.4

13   multiplier – a figure within the range of cross-check multipliers accepted by this

14   Court and the Ninth Circuit.

15   Class Counsel also respectfully request Court approval of $500,000 in

16   expenses, also to be paid by Defendants. The vast majority of expenses incurred were

17   well-justified expert and consultant fees incurred to ensure a fully informed

18   assessment of the strengths and weaknesses of the class claims. This was no small

19   undertaking, as the whole topic of earned premiums, credits and lapses in universal

20   and variable universal life policies is technically daunting. Finally, Class Counsel ask

21   Court approval of $50,000 as a service award for the named Plaintiff, an amount

22   which appropriately compensates him for his very active involvement in spearheading

23   efforts in successfully representing over 45,000 other Policyholders who benefit from

24   the Settlement.

25   **II.    CLASS COUNSEL HAVE EARNED A $3,500,000 FEE AWARD**

26   As set forth at length in the concurrently filed Declaration of Steven C.

27   Shuman, Class Counsel devoted extensive effort and resources to prosecuting this

28   litigation against Defendants, among the largest life insurance carriers in the United

States.  Defendants defended themselves vigorously and ably through highly experienced and resourceful counsel of its own. Through each stage of this protracted litigation, Class Counsel effectively advanced the interests of the policyholders.

A.    **Background of the Litigation**

As demonstrated in the Motion for Preliminary Certification of Settlement Class [Dkt. No. 74], in 2001, plaintiff Richard Behfarin acquired a $3,000,000 Survivorship Variable Universal Life Insurance policy issued by Pruco on his parents as the insureds.  In universal and variable universal life insurance policies, premium paid, plus interest or earnings on the accumulated premium, go into an account against which the monthly cost of insurance and the policy charges or "loads"(the premium taxes and sales and administrative charges) are charged.  As long as the premium payments and credits or earnings in the account exceed the cost of insurance and policy charges, the policy owner can choose to pay less than the premium planned at the outset.  If a deficiency develops in the account, though, the policyowner is in default.  If the policyowner does not cure the default, the policy lapses.  If the policy lapses, the policyowner has the right to reinstate (if they qualify) for a stated period of time, provided they pay the estimated cost of keeping the policy in force for three months.

In 2016, Behfarin received a notice from Pruco that the policy was in default and to prevent a lapse, he had to pay $47,457.28.  Behfarin's efforts to cure (with a payment exceeding three months of cost of insurance and loads at current rates) were rejected.  Pruco instead demanded premium calculated at its "guaranteed" rate, not the then-current rate, and even at that, declined Behfarin's post-lapse application for reinstatement and tender of premium because his father, one of the persons insured, no longer medically qualified.  Mr. Behfarin, with the assistance of life and disability analyst Steven Roth, showed remarkable initiative in pursuing reinstatement informally, and failing that, he brought this action.  He and Roth surmised, correctly, that what had happened in his case had happened to others.

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

On July 18, 2017, Behfarin filed this action individually and on behalf of a proposed class of universal and variable universal policyholders who had been charged premium at guaranteed rates to cure defaults or reinstate policies rather than at current rates, and those whose reinstatement was denied while they were still insurable. For purposes of this Motion, we call the practice "default/lapse" practice.

Behfarin sued for breach of contract, breach of the implied covenant of good faith, violation of B&P Code §17200, et seq., declaratory relief, and injunctive relief. [Dkt. No. 1] Pruco timely answered the complaint. [Dkt. No. 15]

**B.    Discovery**

Class Counsel commenced targeted discovery. That discovery included two sets of written interrogatories to Defendants, two sets of Requests to Produce, Requests for Admissions and a deposition notice of Pruco's Rule 30(b)(6) witnesses, on 32 discrete topics. This discovery yielded written responses and a rolling production of over 60,000 pages, including randomly selected individual policy files, pursuant to a protocol negotiated by the attorneys. That effort disclosed that many of Defendants' different policy forms contained similar policy provisions on default and reinstatement. Defendants had commonly charged the cost of insurance at guaranteed rather than current rates for policyowners to cure when they had defaulted (in the absence of a no-lapse guarantee providing for lower amounts) and had done so universally when policyowners received quotes to reinstate after lapse. Among the three Defendants, there are 32,585 lapsed policies during the class period as to which guaranteed charges were potentially applicable to the request for payment to cure a default or applied to charges for reinstatement (or both).

Class Counsel worked closely with their expert and insurance industry consultant, Theodore Affleck and Steven Roth, respectively. Plaintiff Behfarin worked alongside counsel, flagging issues and reading discovery responses. He also prepared for and sat for a deposition and he responded to written discovery, including written interrogatories and a document production request. The work accomplished by

Class Counsel and plaintiff included: (i) preparation of the pleadings and review and analysis of the Rule 26 disclosures; (ii) designing and executing a discovery plan; (iii) meeting and conferring over the content and quality of the responses and production; (iv) negotiation of a workable protective order; (v) page-by-page analysis of the discovery responses and documents produced in response to two separate sets each of Requests for Production and Interrogatories (Rules 33 and 34); (vi) consultation with the life insurance expert and consultant familiar with these insurance products, the economics and practices of the products and the regulatory rules and standards in the states in which they are offered; (vii) development of the datasets and production by Mr. Affleck of a detailed written report analyzing files produced by Defendants for application of current vs. guaranteed rates; (viii) defending a deposition of Behfarin; (ix) preparing the original motion for class certification, and the associated applications to seal documents Defendants had designated as protectable; and (x) meetings and conversations with Defendants' attorneys regarding discovery disputes, exchanges of data, and the procedural and substantive issues posed by the litigation. Shuman Dec. ¶¶17-42.

## C. Original Class Certification Motion

Armed with the product of the discovery he had conducted, on September 28, 2018, Plaintiff filed his Motion for Class Certification. [Dkt. No. 35] That motion was supported by an expert declaration with ten sealed exhibits drawn from Pruco's production of data and manuals, and by a Declaration of Steven Shuman, with 260 pages of sealed exhibits. With the Motion pending, the parties extended deadlines by stipulation to accommodate settlement discussions before a seasoned neutral, and this Court granted those extensions. [Dkt. Nos. 54, 57, 61]

## D. The Class Settlement

With the assistance of JAMS neutral the Hon. William J. Cahill, the parties engaged in prolonged negotiations spanning nearly four months. The negotiation

1  process included three full-day mediation sessions and multiple phone conversations
2  and e-mail correspondence both with and without the mediator.

3      Before the mediation, Class Counsel also prepared a detailed 25-page
4  mediation brief with 150 pages of exhibits and engaged in pre-mediation phone calls
5  with the mediator and defense counsel, to stage the process effectively. The mediation
6  brief covered all aspects of both class certification and the merits of the case, as well
7  as potential settlement structures. Counsel also researched other life insurance class
8  actions and the settlements in those actions to ensure that every issue meaningful to
9  the entire class would be aired. Shuman Dec. ¶¶48-52.

10     The parties participated in a series of full-day mediation sessions before Judge
11 Cahill. The first such session was on January 25, 2019, followed by another on
12 February 20, 2019. The mediation process nearly derailed but after conference calls
13 with Judge Cahill on March 1, 2019 and April 26, 2019 and finally, a third full-day
14 mediation session at JAMS on April 30, 2019, impasses were broken. With Judge
15 Cahill's patient guidance, this last session went well into the evening hours, and
16 produced an agreement in principle with a term sheet. Messrs. Behfarin and Roth
17 attended every mediation session, sat in on calls and were copied with e-mails between
18 sessions. Shuman Dec. ¶¶53-59

19     Counsel then went to work negotiating the Stipulation of Settlement, the Class
20 Notice (website and mail versions), Claim Forms for the different categories of relief,
21 a non-disclosure agreement and contract with the Claims Administrator, Reinstatement
22 Process Guidelines and Scoring Guidelines for the Claims Administrator, sets of
23 Frequently Asked Questions (website and call center versions), an Escrow Agreement
24 for the handling of funds, and other items needed to administer the settlement. The
25 drafting process went on over several months with a series of drafts of each document
26 being exchanged, critiqued and edited. Shuman Dec. ¶60. A number of legal issues
27 were analyzed and addressed during this process as well.
28

The product of all that effort is a highly successful result for members of the Class because they receive significant and immediate benefits. Every qualified Settlement Class Member with a living insured will get substantial relief by way of prompt reinstatement without medical or other underwriting, with no retroactive premium during the period of lapse, or if they prefer, the minimum cash recovery of $250. Class Members whose insureds are deceased will receive a percentage of the death benefit under the lapsed policy as a settlement payment or the minimum cash recovery of $250. Defendants have changed procedures so the challenged practice will not occur now or in the future. This is a benefit to all policyholders – particularly the elderly, who had been at risk of losing their policies due to Defendants' business practices. Shuman Dec. ¶¶65-67, 73-74.

Plaintiff fully outlined the features of the settlement when applying for preliminary approval of the Class Action Settlement. Briefly, the Class benefits include relief in three categories, depending on the status of the Settlement Class Member:

***The Lapsed/Alive Population*** (Class Members associated with policies that lapsed for a final time during the Class Period and have not been reinstated where there is at least one living insured). [Stip §I.G].

This group encompasses approximately 32,378 Class Members who are the owners of approximately 32,360 policies. These Class Members get relief that returns them to the status quo. If they qualify, these Class Members may reinstate the Class Policy on the same terms as existed at the time of final lapse, upon paying amounts required to make up deficiencies in the policyowner's account at time of default,, and premium owed between default and lapse (at then-current rates), plus three months of advance premium at the "Current Rate", and all without medical or other underwriting [Stip §III.A.1]. No payment would be required for the period during which the policy was lapsed. These Class Members will be subject to a form

of screening -- the Gating Rules—to ensure that they experienced and were impacted by the challenged practice; if the Gating Rules apply to a claimant, that claimant will nonetheless recover the Basic Relief of $250.

Members of the Lapsed/Alive Population may also be eligible for "enhanced" relief consisting of premium forgiveness in years 4 and 5 after reinstatement. Enhanced relief is available to those claimants for whom Defendants have a record of having received but not approved a timely application for reinstatement following the lapse of their policy, who pay all required premium during the first three years after reinstatement and who have a policy in force when year 4 begins. [Stip §III.B.1].  As of the Notice date, there were 134 Class Members in this "enhanced relief" group.

**The Lapsed/Deceased Population** (Class Members associated with policies that lapsed for a final time during the Class Period and were not reinstated where the insured(s) are deceased). [Stip §I.G].  This group is believed to account for approximately 331 policies and approximately 1,268 identified Class Members as of the Notice date, based on information from Prudential's records.

Relief for these claimants will be an individualized monetary Settlement Payment calculated by a Claim Scoring Process administered by the Claims Administrator using Defendants' records and data, and applying a scoring system with a range of zero to three.  These Class Members will be eligible for Basic Relief ($250) or payment of a settlement amount that is a percentage of death benefit minus an equal percentage of premium that would have been paid to calculate the actual award, plus 3% interest from the date of death.

**Relief for Current Policyholders**.  This group is comprised of 13,070 Class Members, owning 12,932 policies.  Those policies are in force, as of this writing, and those policyholders are now protected by Defendants' agreement to end the challenged business practices and to ensure that the amount billed to cure a default or to reinstate a policy will be calculated on current rates (or less), and not on

439669

8

Case No. 2:17-cv-05290-MWF-FFM

1   "Guaranteed Rates."  [Stip §III.C.1]

2          In addition to these tangible and intangible but quantifiable benefits to the

3   Class, Defendants have also agreed to pay Class Counsel's costs and expenses up to

4   $500,000 (including consultants and experts), attorneys' fees up to $3,500,000

5   without objection, an incentive award to Mr. Behfarin of up to $50,000 without

6   objection, and all costs of administering the Settlement. Shuman Dec. ¶¶73-74.

7   **E.      Preliminary Certification of Settlement Class and Approval of**

8   **        Settlement**

9          On November 18, 2019, Plaintiff moved for an order granting preliminary

10  certification of the settlement class and preliminary approval of the Class Action

11  Settlement and directing notice to the Class, appointing Class Counsel and Class

12  Representative, scheduling a final approval hearing, and setting deadlines for

13  exclusion from the Class and objections to the Settlement.  The Court heard oral

14  argument and on November 26, 2019, this Court issued its detailed Order finding that

15  proposed settlement to be procedurally and substantively fair, but deferring ruling on

16  the issues now presented in this application/motion:  the fee award and incentive

17  Award.  The Court found that the proposed class meets the requirements of Fed. Rule

18  Civ. Proc. 23(a) and 23(b)(3) and that the proposed notices and dissemination

19  procedure appeared to be effective, meeting the requirements of Fed. Rule Civ. Proc.

20  23(c).  Preliminary certification was granted, and deadlines and hearings were

21  scheduled as part of that order, including the instant hearing. Shuman Dec. ¶¶70-72.

22          The parties conducted training sessions with the Settlement Administrator and

23  the notification and claim process is well underway.  Shuman Dec. ¶75.

24  **III.    CLASS COUNSEL'S REQUESTED FEE IS REASONABLE**

25         Class Counsel have earned a common fund fee award to compensate them for

26  the benefits they generated on behalf of the Settlement Class. *Staton v. Boeing Co.,*

27  327 F.3d 938, 967 (9th Cir. 2003) ("Under the 'common fund' doctrine, 'a litigant or

a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

### A.    The Court Should Calculate Class Counsels' Fee Using the Percentage of the Fund Method

"In a class action, the district court must exercise its inherent authority to ensure that the amount and mode of payment of attorneys' fees are fair and appropriate." *Stern v. New Cingular Wireless Servs., Inc.*, No. 8:09-CV-01112-CAS, 2010 WL 11531076, at *3 (C.D. Cal. Nov. 22, 2010) (Snyder, J.) (citing *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)). "In calculating attorneys' fees in class actions, the district court has discretion to use either a percentage or lodestar method in order to calculate the attorneys' fees to be awarded to counsel." Id. (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).  In this Circuit, "the primary basis of the fee award remains the percentage method," while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("*Vizcaino II*"). *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (approving calculation of attorney's fees in common fund class action based on percentage of the total fund).

Many courts and commentators have recognized that the percentage of the fund analysis is preferable to the loadstar approach "because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Aichele v. City of L.A.*, No. CV 12–10863–DMG, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (citing cases). "[A] number of salutary effects can be achieved by this procedure, including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the

court and providing a degree of predictability to fee awards." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989).

Class Counsel respectfully request that the Court approve of a fee of $3,500,000 which equates to 17.89% of the present value of benefits made available to the Settlement Class through the efforts of Counsel and their consultants. Those benefits are: (1) $19,562,792  or more present value of settlement; (2) the $3.5 million fee contribution by Defendants; (3) costs and expenses up to $500,000 (4) Defendants' agreement to pay approximately $500,000 in class notice and administration costs. Shuman Decl. ¶¶84-85, 100-101.  These payments will not diminish the relief for Class Members, they are not opposed by Defendants and they were never discussed during mediation until the Class benefits had already been negotiated, all at arms' length.

## B.    The Value of This Settlement Generated by Counsel's Efforts is at Least $19,562,792.

Defendants agreed to a Class Settlement that features a common fund valued at $19,562,792 or more,[1] plus payment of $3.5 million in attorneys' fees, $500,000 in costs and at least an additional $500,000 in notice and administrative expenses that would otherwise by borne by the Settlement Class. Shuman Decl. ¶¶84-85, 100-101. All these settlement elements benefit the Class.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (explaining that, when utilizing "percentage of the fund" method, the court may calculate the fee award "as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"); *In re: Managed Care Litig., Class Plaintiffs v. Aetna, Inc.*, No. 00-1334-MD-Moreno, 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003) (adding attorneys' fees, paid by defendant to class counsel, to the total settlement fund when performing

---

[1] Exhibit 4 to the Declaration of Steven C. Shuman is the report of Cary Lakenbach and Chuck Petri explaining their actuarial valuation of the settlement. The most conservative present cash value placed by him/them is $19,562,792

439669

11

Case No. 2:17-cv-05290-MWF-FFM

a percentage-of-the-fund cross-check for reasonableness of attorneys' fees).

The Court can be confident that $20 million is a conservative value of the benefits achieved by the Settlement, for it does not include the value of the other Settlement Relief generated by Class Counsel in the form of prospective relief: Defendants have agreed to end the challenged business practices and to ensure that the amount billed to cure a default or to reinstate a policy will be calculated on current rates (or less), and not on "Guaranteed Rates." [Stip §III.C.1]. This is an immediate benefit to over 13,000 policyholders.

Courts have considered and included the value of similar prospective relief in assessing the reasonableness of a percentage fee award. For example, in *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814 (S.D.N.Y Sept. 9, 2015), counsel achieved a settlement in a cost-of-insurance case that included a rate freeze and other prospective benefits. The Court included the value of prospective relief in assessing the settlement's value, for the purpose of calculating attorney's fees. Id. at *15 ("In calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of the both the monetary and non-monetary benefits conferred on the Class.") (citing cases).

## C.    The Requested Fee Is Below the Ninth Circuit Benchmark

"[I]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained, with 20–30% as the usual range." *Vizcaino II*, 290 F.3d at 1047. The benchmark is merely a starting point; a percent that a District Court "may adjust . . . when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, *supra*, 904 F.2d at 1311) *and see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 955 (quoting *Vizcaino II*, 290 F.3d at 1048). Here, the percentage of the aggregate available monetary benefits sought by Class Counsel

is also presumptively reasonable because it is significantly less than the benchmark
amount awarded in common fund cases. Indeed, in numerous cases with cash funds of
a size similar to the fund created by this Settlement, courts in this circuit have
awarded a percentage of the fund at or above the benchmark.[2]

### D.    Relevant Considerations Supporting Reasonability

Factors that may be considered in determining the reasonability of an award,
based on a percentage-of-recovery method (or lodestar) are: "(1) the results achieved;
(2) the risks of litigation; (3) the skill required and the quality of work; (4) the
contingent nature of the fee; (5) the burdens carried by class counsel; and (6) awards
made in similar cases." *Martin v. Ameripride Services, Inc.,* No. 8-cv-440-MMA,
2011 WL 2313604 at *8, citing *Vizcaino II*, 290 F.3d at 1048-50.

The Ninth Circuit has further explained that *Vizcaino II* "does not purport to
establish an exhaustive list." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at
955. Other factors have been established for determining the reasonableness of a
lodestar multiplier (which substantially overlap with the *Vizcaino II* factors). These
factors include: (1) the time and labor required, (2) the novelty and difficulty of the
questions involved, (3) the skill requisite to perform the legal service properly, (4) the
preclusion of other employment by the attorney due to acceptance of the case, (5) the
customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed
by the client or the circumstances, (8) the amount involved and the results obtained,

---

[2] See *In re Heritage Bond Litig.*, Nos. 02-ML-1745 DT, et al., 2005 WL 1594403, at *18 n.12 (C.D. Cal. June 10, 2005) (noting that "[f]ederal courts have consistently approved of attorney fee awards over the 25% benchmark[,]" and that in "over 200 cases . . . a fee of 30% or higher was awarded."). *See also Keller v. NCAA*, Nos. C 09-1967 CW, C 09-3329 CW, 2015 WL 8916392, at *4 (N.D. Cal. Dec. 15, 2015) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases.") (quoting *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *1 (ND. Cal. Apr. 22, 2010)); *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (explaining that 30% of a common fund "is well within the usual range of percentages awarded"). In fact, "in most common fund cases, the award exceeds th[e] [25%] benchmark." *de Mira v. Heartland Emp't Serv.*, No. 12-CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)). *See also*, e.g., *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal. Sept. 12, 2018) (awarding attorneys $85.6 million of a $270.75 million settlement, amounting to approximately 31% of the total fund).

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

(9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001) ("*Vizcaino I*"), aff'd, 290 F.3d 1043 (9th Cir. 2002).

These factors all support an upward adjustment from the Ninth Circuit's 25% benchmark, and so they necessarily also support a 17.89% request.

***The Results Obtained for the Class:*** The most critical factor in evaluating the reasonableness of a fee request is the degree of success in achieving results for the class. *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Outstanding results merit a higher fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046 (awarding a fee of 28 percent where class counsel achieved "triple the average recovery in securities class action settlements").

This Settlement offers an extraordinary benefit to Class Members by allowing qualified policyowners to reinstate lapsed policies without medical underwriting or cost for the period of lapse, or, if the insured is deceased, to recover a portion of the death benefit of a policy that was not in force at the time of death, or to recover basic cash relief of $250.  Current policyholders will never face the same issues because Defendants have ended the challenged business practice.  This settlement affords more than $19,500,000 worth of benefits to the Class.  This does better than restoring the status quo; those qualified Class Members enjoy premium-free coverage during the lapse window, and if they fall in the subgroup eligible for "enhanced relief" they will also enjoy premium relief in the fourth and fifth years after reinstatement as well.

This result compares well to other approved insurance industry settlements, both in dollars and in percentage of claimed damages recovered. See, e.g., *Feller v. Transamerica Life Insurance Company*, 16-cv-01378 CAS, (C.D. Cal. Feb. 6, 2019) [Dkt. No 444] (common fund of $195 million reduced in part by opt-outs, fees and

costs in cost-of-insurance litigation; fee of 25% of net fund, and 16% of effective fund approved); *In re American Equity Annuity Practices and Sales Litigation*, 2:05cv6735 CAS, 2014 WL 12586112 (CD Cal. Jan. 29, 2014) [Dkt. No. 251] (settlement valued at $129.2 million; counsel's below benchmark request for fees and costs of $7,750,000 approved); *Yue v. Conseco Life Ins. Co.*, No. 2:11-cv-09506-DSF(SH) (C.D. Cal.), Dkt. 153 (explaining that settlement, which provides for cost of insurance rate reductions, represents "an aggregate present value cost to Conseco of approximately $73 million (including administrative costs and attorneys' fees), $60 million of which represents the present value of COI rate reductions.

Moreover, the proposed Settlement achieves a result that is not only outstanding but expeditious as well. Expediency is essential given the advanced age of many Settlement Class Members and the inevitable lengthy delays were the case to be litigated to conclusion. The numbers of Class Members in the "Lapsed/Deceased" population demonstrates that several hundred insureds have already passed away. If Plaintiff had not settled expeditiously, the risk, expense, and likely duration of continued litigation would have taken an immediate, continuing and difficult toll on the Settlement Class Members who bought and relied on life insurance coverage to serve their needs as they aged. As in *Frame v. Hilman*, No. 01-CV-2193 H(LAB), 2002 WL 34520817, at *10 (S.D. Cal. July 31, 2002), "this case is exceptional among reported cases given the rapid resolution and the substantial amount ready for immediate distribution to the [policyholders]."

The Settlement also provides extraordinary prospective relief for the Settlement Class Members. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *11 (N.D. Cal. Aug. 17, 2018) (value of nonmonetary relief is a "relevant circumstance" in determining that attorneys were entitled to 27% of a $115 million cash common fund). By bringing an end to the challenged business practice, Class Counsel have protected the Settlement Class Members now and into

1  the future.

2      ***The risks of the litigation and the Novelty and Complexity of the Issues:*** "The

3  risk that further litigation might result in Plaintiffs not recovering at all, particularly a

4  case involving complicated legal issues, is a significant factor in the award of fees."

5  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046-47, *and see In re Pac. Enters. Sec.*

6  *Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (upholding fee award "because of the

7  complexity of the issues and the risks"); *see also, e.g., In re Am. Equity Annuity*

8  *Practices & Sales Litig., supra*, 2014 WL 12586112, at *6 ("In determining

9  reasonable compensation to Class Counsel, the Court is mindful that this litigation

10 was especially complex. As the Court observed for several years, the litigation called

11 upon a high level of skill and experience in class actions for Plaintiffs to succeed

12 against Defendant . . . , which also had first-rate legal representation.").

13     This litigation was indisputably complicated and risky, in large part because of

14 the technical policy language that hadn't been litigated before. The law was unsettled

15 in this area. Shuman Decl. ¶17. Class Counsel undertook the litigation despite the

16 risk that resolution of the issue could devolve into a "battle of the experts" on

17 actuarial and rate-making standards and on causation. Those risks also translated into

18 a risk that the contemplated Class might not be certified under Rule 23. The range of

19 potential outcomes included a possible zero recovery. A 1996 Federal Judicial Center

20 report, "Empirical Study of Class Actions in Four Federal District Courts," concluded

21 that only 31.7% of filed class cases resulted in a successful outcome for plaintiffs, and

22 that in those cases, fees were "generally in the traditional range of approximately one-

23 third of the total settlement."

24     The novelty of issues increased the level of risk. This case demanded Class

25 Counsel's utmost skill in developing a favorable record; indeed, the judicial

26 landscape is littered with unsuccessful challenges to life insurers' practices. One such

27 case involved this same defendant: *Coffman v. Pruco Life Ins. Co.*, No. 10–CV–

28

03663(DMC)(MF), 2011 WL 4550152, at *3-4 (D.N.J. Sept. 29, 2011) (dismissing breach of contract claim where policy listed maximum monthly rates and gave insurer discretion to charge less or up to the maximum, reasoning that insurer only promised "that the charge would not exceed the maximum set forth in the Policy"). Well-funded and resourceful defendants, like Defendants, present a daunting challenge to any claimant.

*The Skill Required and Quality of Work:* The effort and skill displayed by counsel is an additional factor used in determining a proper fee. *Vizcaino II*, 290 F.3d at 1048; *In re Omnivision*, 559 F. Supp. 2d at 1047. Class counsel is not only highly experienced in class action litigation generally, but also in insurance rate and bad faith litigation specifically. Class Counsel was able to formulate targeted discovery that went to the heart of the dispute in a highly cost-effective manner. Shuman Decl. ¶¶6-9, 24-37 ; *see, e.g., In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) ("But for the cooperation and efficiency of counsel, the lodestar of plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its managements of the case. Instead, counsel moved the case along expeditiously, and the court determines that the time and labor spent to be reasonable and fully supportive [of the awarded attorney fee]."). As a consequence, despite its complexity this litigation moved expeditiously and culminated in a prompt, favorable settlement.

*Contingent Nature of the Representation and Burdens Carried by Class Counsel:* Attorneys are entitled to a larger fee award when their compensation is contingent in nature. *See Vizcaino II,* 290 F.3d at 1048-50. It is an "established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.* 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who might not otherwise

1    be able to afford it.  *Id.*

2         Class Counsel faced significant risk from contingent fee litigation because they

3    expended substantial time and money without guaranteed repayment, and they turned

4    away other work to do so. Class Counsel assumed the risk of representation,

5    including advancing over $100,000 in potentially non-recoverable litigation expenses,

6    on a completely contingent basis (not counting fees of Mr. Roth, who agreed to defer

7    payment). Shuman Decl. ¶¶82-83. This assumption of risk justifies a fee paid as a

8    percentage of recovery. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 ("This

9    substantial outlay, when there is a risk that none of it will be recovered, further

10   supports the award of the requested fees.").

11        ***Undesirability of the Case:***  This case was offered to one of the class counsel

12   who handled *Feller v. Transamerica Life Insurance Company, supra,* and he declined

13   to take the case.  Shuman Dec. ¶102.

14        ***Awards in Similar Cases:***  Throughout this brief, Plaintiff discusses awards in

15   comparable cases, including *Feller v. Transamerica Life Insurance Company, supra*

16   (common fund of $195 million reduced in part by opt-outs, fees and costs in cost-of-

17   insurance litigation; fee of 25% of net fund, and 16% of effective fund approved); *In

18   re American Equity Annuity Practices and Sales Litigation, supra,* (settlement valued

19   at $129.2 million; counsel's below-benchmark request of fees and costs of $7,750

20   million fee approved). *See also In re Rite Aid Corp. Securities Litigation*, 396 F.3d

21   294, 303 (3d Cir. 2005), citing three studies ("[O]ne study of securities class action

22   settlements over $10 million ... found an average percentage fee recovery of 31%; a

23   second study by the Federal Judicial Center of all class actions resolved or settled

24   over a four-year period ... found a median percentage recovery range of 27-30%; and

25   a third study of class action settlements between $100 million and $200 million ...

26   found recoveries in the 25-30% range were 'fairly standard.' ')

27

28        The award sought here is at the low end of contingent awards in class actions,

1    and should be deemed reasonable.

2    **Reaction of the Class:**  It is too early to provide a complete accounting of

3    Class participation in the Class Settlement, but the preliminary reports from the

4    Settlement Administrator demonstrates an enthusiastic rate of "hits" on the settlement

5    website. The Class Notice is reaching its audience and the Class Members are

6    downloading reinstatement forms and guidelines.  Shuman Decl. ¶75.  No objections

7    or requests for exclusion have yet been reported to Class Counsel.

8        **E.    The Lodestar Cross-Check Supports Reasonableness of Fee**

9        While not required, particularly where an early settlement produces an

10   exceptional result (*see, e.g., Glass v. UBS Financial Services, Inc.* C-06-4068 MMC,

11   2007 WL 221862 at *16 (N.D. Cal. 2007) the Court may conduct a lodestar cross-

12   check to confirm the reasonableness of a requested percentage fee award. *In re Online*

13   *DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("a crosscheck using the lodestar

14   method can confirm that a percentage of recovery amount does not award counsel an

15   exorbitant hourly rate") (internal quotation marks and citation omitted). The lodestar

16   cross-check calculation need not entail "mathematical precision nor bean counting,"

17   and the Court may rely on summaries submitted by the attorneys rather than

18   reviewing actual billing records. *Covillo v. Specialtys Café*, No. C-11-00594 DMR,

19   2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (citing *In re Rite Aid Corp. Sec.*

20   *Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)); see also, e.*g., Bellinghausen v. Tractor*

21   *Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (accepting sworn declarations

22   submitted by counsel).

23       Class Counsel provide declarations reporting, after the exercise of billing

24   judgment, 789.65 hours of time, for a total lodestar of $796,164. Shuman Decl. ¶¶86-

25   96.  The rates used in the calculation are those established by the so-called "Laffey"

26   Matrix" and adjusted by means of the federal Locality Pay Map.  The Laffey Matrix,

27   so named because of the case in which it originated, is a table of rates for legal

professionals published by the U.S. Department of Justice for the Washington D.C.
region, based on the attorney's years of experience. It has been adjusted for inflation
by the Consumer Price Index, and is adjusted for locale by the Locality Pay Map
published by the United States General Services Administration's Office of Personnel
Management. Shuman Decl. ¶88.

This analysis produces rates consistent with those routinely approved by Courts
in this Circuit in cases of this complexity. *See, e.g., Ybarra v. Board of Trustees of
Supplemental Income Trust Fund et al.*, SACV 17-2091 JVS (C.D. Cal. Sept 30,
2019) (hourly rates of $900 and $875 approved as reasonable in this community); *In
re American Equity Annuity Practices and Sales Litigation*, *supra*, 2014 WL
12586112 (hourly rates up to $850 for partners); *In re High-Tech Emp. Antitrust
Litig.*, 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015)
(finding reasonable "billing rates for partners [that] range from about $490 to $975 ...
[and] billing rates for paralegals, law clerks, and litigation support staff [that] range
from about $190 to $430, with most in the $300 range."); *Aichele v. City of L.A.*, CV
12-10863-DMG, 2015 WL 5286028 at *7 (rates of $875 to $1000) *Gutierrez v. Wells
Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May
21, 2015) (finding reasonable rates for Bay Area attorneys of between $475 to $975
for partners, $300 to $490 for associates, and $150 to 430 for litigation support and
paralegals).

The next step in a lodestar cross-check is to divide the fees sought by the
lodestar to arrive at the multiplier. *Bellinghausen*, 306 F.R.D. at 265. "The purpose of
this multiplier is to account for the risk Class Counsel assumes when they take on a
contingent-fee case." Id. (quoting *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-
LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013)). If the multiplier falls within
an acceptable range, it further supports the conclusion that the fees sought are, in fact,
reasonable. *See Vizcaino II*, 290 F.3d at 1051.

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

1    Class Counsel's lodestar yields a multiplier of 4.4 well-within the accepted

2   range within this Circuit. Shuman Dec. ¶95. In *Steiner v. Am. Broadcasting Co.*, 248

3   Fed. App'x 780 (9th Cir. 2007), the Ninth Circuit affirmed a percentage award

4   yielding a 6.83 multiplier, explaining that "[a]lthough this multiplier is higher than

5   those in many common fund cases . . . it still falls well within the range of multipliers

6   that courts have allowed." Id. at 783. In *Vizcaino II*, the Ninth Circuit published as an

7   appendix a sample of federal cases between 1996 and 2001 that created common

8   funds ranging from $50 million to $200 million. 290 F.3d at 1047–48. The lodestar

9   multiples in the appendix ranged from 0.6 to 8.5. Id.

10    The calculation of hours worked depicted above does not take into

11   consideration the substantial hours of work Class Counsel will certainly perform

12   following submission of this motion, such as preparing for and attending the final

13   fairness hearing, dealing with class member inquiries, objections, opt-outs and

14   otherwise bringing this matter to conclusion. For this reason, Class Counsel added the

15   value of the estimated number of hours that will be needed in the future, and that

16   resulted in the 4.4 multiplier, which as shown above is a lower multiple of Class

17   Counsel's lodestar than many cases have allowed. Shuman Decl. ¶95.

18    The reasonableness of the multiplier is further justified by the efficiency with

19   which Class Counsel settled this matter to the benefit of the Class. As stated in *Craft*

20   *v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008), "plaintiffs'

21   counsel's time in this case is likely as low as it is due to plaintiffs' counsel

22   exceptional experience in litigation of this type. Without such expertise, it is likely

23   that the hours would have been significantly higher to achieve the same result. Other

24   counsel, even those experienced in civil rights litigation, would likely have had to

25   expend considerably more time to accomplish the same result." Id. at 1123 (awarding

26   25% of a class fund, with a multiplier approximately 5.2 times the lodestar in the

27   case).

28

Class Counsel here should likewise not see their efforts undervalued merely because they were experienced and efficient. *See also, Vizcaino II*, 290 F.3d at 1050 n.5 (noting that counsel should not "necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"). The lodestar cross-check confirms again the reasonableness of the requested 17.89% fee award.

## IV.    CLASS COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED

Class Counsel seek Court approval of $500,000, in costs and expenses necessarily incurred in the prosecution of this action. Shuman Decl. ¶97. All submitted expenses are of the sort typically billed by attorneys to paying clients. See generally *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Because Class Counsel advanced or incurred all of these necessary expenses without assurance that they would ever be recouped, they had every incentive to economize. Decl. ¶¶80-81.

Costs are properly awarded in this case. An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Expense and cost awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002). The out-of-pocket costs and expenses that would be charged to a paying client are reasonable and necessary. *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177 (S.D. Cal. 2007) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996). Reimbursable costs include: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and

investigators; and (9) mediation fees." *Carlin v. DairyAmerica, Inc.* (E.D. Cal. 2019) 380 F.Supp.3d 998, 1023–1024. Under *Carlin*, "reasonableness" of costs is to be given a liberal interpretation. *Id.* at 1024.

The four most significant expenses were for expert Theodore Affleck, Consultant Steven Roth, expert Actuarial Services and JAMS Neutral Hon. Judge Cahill. The case could not have been resolved without their efforts, and those efforts were prodigious. Shuman Dec.¶¶38-40, 47, 51, 53, 55-59, 98-99, 102-104. These gentlemen earned their fees and Class Counsel should be reimbursed for these necessary and reasonably incurred costs. Counsel have also identified their necessary and reasonably incurred costs exclusive of experts and consultants in the total amount of $32,836.47. Shuman Dec. ¶97.

Although Class Counsel incurred costs in excess of the amount that Defendants have agreed to reimburse when the full value of experts and consultants is considered, Counsel is capping the request at $500,000. Shuman Dec. ¶97. Counsel was able to do that because Steven Roth agreed to limit his fee request to the differential between the $500,000 cap and Class Counsel's other costs. Shuman Dec. ¶106.

Mr. Affleck's important contributions are described above. Mr. Roth added another dimension of expertise in functioning as a consultant. Mr. Roth is both a licensed life and disability insurance agent and a licensed life and disability analyst. He devoted significant efforts on behalf of the class to the prosecution and resolution of this case. His efforts in reviewing the technical issues and discovery were instrumental. Mr. Roth's evaluation and significant contributions support his cost submission. Shuman Dec. ¶¶101-105.

## V.    THE REQUESTED INCENTIVE AWARD TO THE NAMED PLAINTIFF IS APPROPRIATE AND WARRANTED

Incentive awards for named plaintiffs are provided to encourage them to undertake the responsibilities and risks of representing the classes and to recognize

the time and effort spent in the case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (explaining that such awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"). A court has discretion to approve incentive awards based on, *inter alia*, the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff requests that the Court approve an incentive in the amount of $50,000 for Plaintiff Richard Behfarin. Defendants do not challenge or contest that award, and it will not erode the benefits available to the Class. Shuman Decl. ¶¶109, 111. *Carlin v. DairyAmerica, Inc.*, *supra*, 380 F.Supp.3d at 1029 surveyed incentive awards in other cases, some of which were $50,000 or more, and concluded in a case where the incentive award would come out of the common fund, that each of the four class representatives should get $45,000. In the present case, one class representative had to shoulder the entire burden, the incentive award will not reduce a common fund, and the defendants do not oppose it.

Mr. Behfarin showed remarkable initiative in pursuing this claim through resolution. He put in impressive hours to assist counsel in discovery and attended every mediation session. He negotiated the terms of the Settlement and the Stipulation, side-by-side with Counsel, and pushed both Class Counsel and the defendants for the best possible settlement. He brought expertise to the case beyond a normal policyholder due to his having been licensed as a life agent. He also selflessly sacrificed potentially more lucrative personal claims in the interest of assuring representativeness and typicality. Shuman Dec. ¶¶53, 58, 108-109. If the case had gone badly, he would stand alone as non-prevailing party. An award of $50,000 is

NOTICE OF UNOPPOSED MOTION AND MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARD FOR CLASS REPRESENTATIVE

particularly reasonable, and is consistent with incentive and service awards previously approved in this Circuit.. See, e.g., *Van Vranken,* 901 F.Supp.294, 299($50,000 incentive award); *Feller supra,*, 16-cv-01378 CAS [Dkt. No 444]   ($80,000 divided among 8 Class Representatives); *Iorio v. Allianz Life Ins. of N. America,* 05-CV-0633 (S.D. Cal.) ($25,000 each to Class Representatives).

The Class Representative's efforts, time, risk, and personal sacrifice should not go unrecognized, particularly where the defendant itself has agreed to the amount and to pay it above and beyond the relief for the Class. Plaintiff respectfully requests that the Court approve the service award or $50,000 requested

## VI.   CONCLUSION

Class Counsel, the Class Representative and their consultants worked tirelessly to secure this Class Settlement that will benefit over 40,000 Class Members.  The policy owners all owned universal or variable universal life insurance, sometimes for years.  When the policies lapsed, some faced unexpectedly steep reinstatement premiums and charges that resulted in their walking away from their coverage.  This Settlement allows those individuals to reinstate on fair terms, a value to the Class well in excess of $19,500,000.  Class Counsel has earned and requests that the Court award $3.5 million in attorney's fees and $500,000 in costs.  The fees sought are reasonable and were fairly earned.

Richard Behfarin spearheaded this class action from the very beginning.  He invested hundreds of hours in this matter for the benefit of the class and he put his own reputation on the line.  For his tireless contributions to the success of this matter, he should be awarded $50,000 as an incentive award. Defendants have agreed not to contest the fee, cost and incentive awards sought herein.  If not awarded in their entirety, they revert not to the Class, but to Defendants, and that would be unconscionable.  Mr. Behfarin and Class Counsel have earned these awards and respectfully request that the Court approve them in their entirety.

1

2  Dated:  February 11, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WALTER J. LACK

STEVEN C. SHUMAN
ENGSTROM, LIPSCOMB & LACK

ROBERT MOBASSERI, ESQ.

By:  _/s/ Steven C. Shuman_____
        Walter J. Lack, Esq.
        Steven C. Shuman, Esq.
        Robert Mobasseri, Esq.
        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2020, a true and correct copy of:

**MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE UNDER FED. R. CIV.P. 23(e) AND (g) AND IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES AND INCENTIVE AWARD FOR CLASS REPRESENTATIVE** was filed electronically and will be served via Notice of Electronic Filing under the Court's CM/ECF system this 11TH day of February, 2020, to all parties with an email address on record, who have consented to electronic service in this action.

*/S/ Steven C. Shuman*

STEVEN C. SHUMAN