

WALTER J. LACK, SBN 57550
STEVEN C. SHUMAN, SBN 82828
**ENGSTROM, LIPSCOMB & LACK**
10100 SANTA MONICA BLVD., STE. 1200
LOS ANGELES, CA 90067-4113
TELEPHONE: (310) 552-3800
FACSIMILE:  (310) 552-9434

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

RICHARD BEHFARIN, individually
and on behalf of a class of similarly
situated individuals,

           Plaintiff(s),

vs.

PRUCO LIFE INSURANCE
COMPANY, et al.

           Defendants.

CASE NO.  2:17-cv-05290-MWF-FFM

**PLAINTIFF'S NOTICE OF
MOTION AND MOTION FOR
FINAL CERTIFICATION OF
SETTLEMENT CLASS AND FINAL
APPROVAL OF PROPOSED
NATIONWIDE CLASS
SETTLEMENT AGREEMENT,
AND APPROVAL OF NOTICE
UNDER FED. R. CIV.P. 23(e) AND
(g); [PROPOSED] ORDER**

**Hearing:**     **April 20, 2020**
**Time:**        **10:00 a.m.**
**Courtroom: 5A**
**Judge:  Hon. Michael W. Fitzgerald**

[Filed Concurrently with Declarations of Steven
C. Shuman and Cameron R. Azari and
[Proposed] Order]

**Complaint filed:  7/18/17**

439765

i

Case No. 2:17-cv-05290-MWF-FFM

# TABLE OF CONTENTS

PAGE

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES:

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND OF THE LITIGATION ........................................................ 3

       A.     Summary of the Facts and Allegations ................................................ 3

       B.     Course of Proceedings and Facts From Discovery .............................. 4

       C.     Settlement Background Facts ............................................................... 5

III.   SUMMARY OF THE SETTLEMENT ............................................................ 8

       A.     The Settlement Class ........................................................................... 8

       B.     The Settlement Benefits ...................................................................... 8

       C.     Notice, Opt-Out, and Release Provisions........................................... 12

       D.     Appointment of the Class Representative and Class Counsel, and
              Payments of Attorneys' Fees, Expenses, and Service Awards.......... 13

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE
       SETTLEMENT ............................................................................................. 13

       A.     The Settlement is Fair, Reasonable and Adequate............................. 13

              1.    The Settlement is Presumptively Fair, Reasonable and
                    Adequate for Two Reasons....................................................... 15

              2.    Plaintiff Faced Risks in Proceeding Despite the Relative
                    Strength of the Claims ............................................................. 16

              3.    The Risk, Expense, Complexity, and Likely Duration of
                    Further Litigation Warrants Approval of the Settlement ......... 17

              4.    Plaintiff Faced a Risk of Not Maintaining Class Action
                    Status ...................................................................................... 18

              5.    The Amount Offered in Settlement Militates in Favor of
                    Approval................................................................................... 18

6.  Extensive Discovery and a Motion for Class Certification Occurred Before the Settlement.................................................20

7.  Experienced Plaintiff's Counsel Believe the Settlement is Fair, Reasonable and Adequate. ................................................21

8.  The Presence of a Governmental Participant...........................22

9.  The Reaction of the Class Members to the Proposed Settlement.......................................................................22

B.  The Court Should Approve Final Certification of the Settlement Class .........................................................................23

1.  The Settlement Class Satisfies Rule 23(b)(3)..............................23

2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)..........................................................................24

V.  CONCLUSION .........................................................................25

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*Adams v. InterCon Sec. Sys., Inc.,*
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...............15

6

7
*Anderson v. Nextel Retail Stores, LLC,*
   Nos. CV 07–4480–SVW ...................................................................................15

8

9
*In re Apollo Grp. Inc. Sec. Litig.,*
   Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–

10
   2334–PHX–JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................21

11
*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
   789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................20

12

13
*In re Celera Corp. Sec. Litig.,*
   No. 5:10-cv02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20,

14
   2015) ..................................................................................................................18

15

16
*In re China Intelligent Lighting & Elecs., Inc.,*
   No. CV 11-2768 PSG, 2015 WL 2765018 (C.D. Cal. Mar. 9, 2015) ...............18

17

18
*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ..........................................................................13

19

20
*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,*
   270 F.R.D. 521 (N.D. Cal. 2010) ......................................................................23

21

22
*In re Elan Sec. Litig.,*
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ..............................................................20

23

24
*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ............................................................................24

25

26
*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ...............14

27

28
*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ...............................................................................23

439765                              iv              Case No. 2:17-cv-05290-MWF-FFM

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL
APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................14, 15, 25

*In re Immune Response Sec. Litig.*,
   497 F.Supp. 2d 1166 (S.D. Cal. 2007) ...........................................................15

*Kleiner v. First Nat'l Bank of Atlanta*,
   97 F.R.D. 683 (N.D. Ga. 1983) ......................................................................25

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017),
   appeal dismissed, No. 17-16621, 2017 WL 5502713 (9th Cir. Sept.
   21, 2017) .........................................................................................................17

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ..........................................................................14

*Linney v. Cellular Alaska P'ship*,
   Nos. C-96-3008 DLJ, et al., 1997 WL 450064, at *5 (N.D. Cal. July
   18, 1997) aff'd, 151 F.3d 1234 (9th Cir. 1998) ..............................................15

*Louie v. Kaiser Found. Health Plan, Inc.*,
   No. 08cv0795 IEG RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) .............23

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ...........................................................16

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) .....................................................................20

*In re Med. Capital Sec. Litig.*,
   No. SACV-09-1048 DOC, 2011 WL 5067208 (C.D. Cal. July 26,
   2011) ...............................................................................................................25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).....................................................................14

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*,
   268 F.R.D. 652 (S.D. Cal. 2010) .....................................................................25

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006)......................................................................25

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL
APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

*Nobles v. MBNA Corp.*,
   No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)................14

*In re NVIDIA Corp. Derivative Litig.*,
   No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22,
   2008) .................................................................................................................14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San
   Francisco*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................14, 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995). In its Preliminary Approval Order,
   the Court...........................................................................................................23

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................17

*Schlagal v. Learning Tree Int'l*,
   No. CV 98-6384 ABC (EX), 1999 WL 672306 (C.D. Cal. Feb. 23,
   1999) .................................................................................................................24

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ............................................................................12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..........................................................14, 23, 24

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..........................................................................13

*True v. Am. Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D.Cal. 2010) .............................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................................24

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..........................................................................25

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL
APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

*Wren v. RGIS Inventory Specialists,*
    No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................15

*Yue v. Conseco Life Ins. Co,*
    282 F.R.D. 469 (C .D . Cal. 2012).................................................................23

**Statutes**

B&P Code § 17200, et seq.........................................................................................4

**Federal Rules**

Fed. R. Civ. P. 23.............................................................................................2, 14

Rule 23(a)..................................................................................................................23

Rule 23(a)(1)'s.........................................................................................................23

Rule 23(a)(2)'s.........................................................................................................23

Rule 23(b)(3)............................................................................................................24

Fed. R. Civ. P. 23(a); 23(b)(3); 23(e)...............................................................2, 23

Fed. R. Civ. P. 23(e)........................................................................................2, 3, 12

Fed.R.Civ.Proc. 23(e) and (g).....................................................................3, 1, 3, 7

Fed. Rule Civ. Proc. 23(a); 23(b)(3)..................................................................7

Rule 23(g).................................................................................................................13

**Other Authorities**

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11:41
    (4th ed. 2002).....................................................................................................14

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 20, 2020, at 10:00 a.m., or at such other date and time as the Court may set in Courtroom 5A of the United States District Court, located at 350 West First Street, Los Angeles, California, before the Hon. Michael W. Fitzgerald, Plaintiff's counsel, on behalf of Plaintiff and a preliminarily approved Settlement Class of certain holders of universal and variable universal life policies issued by Defendants Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (together and collectively, "Defendants," or "Prudential,"), will and hereby do move the Court for an order

1. Finally certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and 23(e);

2. Finding that the Notice Program has been adequate and reasonable and has met the requirements of Fed. R. Civ. P. 23, and has constituted the best practical notice under the circumstances;

3. Granting final approval to the Settlement under Fed. R. Civ. P. 23(e); and

4. Directing the entry of Final Judgment dismissing the Action (including all individual and Class claims presented thereby) on the merits and with prejudice.

This Motion is based on (i) this Notice of Motion and Motion; (ii) the Memorandum in Support of Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement; (iii) the Declaration and Supplemental Declaration of Class Counsel in Support of Plaintiff's Motion for Final Approval of Class Action Settlement; (iv) the Declaration of Cameron R. Azari of Epiq Class Actions & Claims Solutions, Inc. Regarding Notification to the Class; (vi) the Court's file in this case, including the Court's Order re Plaintiff's Motion for Preliminary Certification of Settlement Class, Appointment of Class Representative

1    and Class Counsel, Preliminary Approval of Class Action Settlement, and Direction

2    of Notice Under Fed.R.Civ.Proc. 23(e) and (g); and (vii) such other matters as may be

3    presented at the time of the hearing.   A proposed Final Order and Judgment is

4    submitted herewith.

5

6    Dated:  February 18, 2020                WALTER J. LACK
                                             STEVEN C. SHUMAN
7                                            ENGSTROM, LIPSCOMB & LACK

8
                                             ROBERT MOBASSERI, ESQ.
9

10

11                                     By:  _/S/ Steven C. Shuman_____
                                           Walter J. Lack, Esq.
12                                         Steven C. Shuman, Esq.
                                           Robert Mobasseri, Esq.
13                                         Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL
APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE UNDER FED. R. CIV.P. 23(e) AND (g)**

Plaintiff Richard Behfarin, individually and on behalf of the proposed Settlement Class, respectfully submits this Memorandum in support of Plaintiff's Motion for Final Approval of Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement.

## I.    INTRODUCTION

Plaintiff seeks final approval of a class action settlement that makes available substantial and comprehensive relief for former policyholders who suffered from the alleged wrongful conduct, and that reflects changes to a business practice to assure current policyholders are not affected by the alleged wrongful conduct.  The proposed nationwide settlement would resolve all claims raised or that could have been raised against Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Defendants," or "Prudential") arising out of or related to the conduct alleged in *Behfarin v. Pruco Life Insurance Company, et al.* as further set forth in the Settlement Release.

The terms of the proposed settlement are memorialized in the Stipulation of Settlement and its exhibits (included as revised) (collectively the "Settlement"), attached as Exhibit 1 to the Supplemental Declaration of Steven C. Shuman ("Shuman Supp. Dec.") in support of this Motion.

Plaintiff alleged that Defendants had a practice of billing amounts in excess of those allowed under their universal and variable universal life insurance policies for the holders of those policies to cure or reinstate when they defaulted on their premium payments or lapsed their policies.  Plaintiff contends the amounts required were billed not at the then current rates Defendants were charging the policyholders for the

439765                                    1                    Case No. 2:17-cv-05290-MWF-FFM

insurance, but at the maximum allowable, or guaranteed, rates under the policies, which Plaintiff contends was not permitted by the policies. The Settlement provides the following benefits to Settlement Class members:

> • Former Policyholders with at least one living insured (the "Lapsed/Alive Population") may reinstate their policies without medical underwriting and without the payment of premium for the time since lapse, provided the policyholders meet certain "gating rules", sign representations establishing standing and occurrence and impact of the alleged conduct, and pay the amounts required for reinstatement, including three months' future premium at current rates (and other applicable charges).

> • Former Policyholders where all insureds are deceased (the "Lapsed/Deceased Population") will receive a cash payment equal to a percentage of the death benefit reduced by an equal percentage of the premium between lapse and death, plus interest, with the percentage (or minimum payment of $250) corresponding to a score on a zero to three scale measuring, according to agreed guidelines, how clear a link exists in Prudential's records of communications with policyowners between the challenged conduct and the lapse, as determined by an independent Claims Administrator.

> • Prudential has changed how it will bill current policyholders for curing defaults and reinstating policies to assure use of current rates (in the absence of a no-lapse guarantee that provides for a lower amount), not guaranteed rates.

The Settlement thus will provide immediate benefit in the form of reinstatement or monetary compensation to qualified members of a class of more than 32,000 policies potentially subject to the challenged conduct, and the change in practice described above for at least 13,500 current Policyowners. Declaration of Steven C. Shuman in Support of Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement and

439765                                   2                    Case No. 2:17-cv-05290-MWF-FFM

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL
APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

Approval of Notice Under Fed. R. Civ. P. 23(e) and (g) and in Support of Motion for Attorney Fees, Costs and Expenses and Incentive Award for Class Representative [Document No. 92-1] ("Shuman Dec.") ¶75 and Ex. 2.

Plaintiff and Class counsel believe this settlement is fair, reasonable, adequate, and in the best interests of Plaintiff and the other Settlement Class Members. Shuman Dec. ¶69. For that reason, and those that follow, the Court should grant final approval to the proposed Settlement pursuant to Fed. R. Civ. Proc. 23(e).

## II.    BACKGROUND OF THE LITIGATION

### A. Summary of the Facts and Allegations.

In 2001, plaintiff Richard Behfarin acquired a $3,000,000 Survivorship Variable Universal Life Insurance policy issued by Pruco on his parents as the insureds. In universal and variable universal life insurance policies, premium paid, plus interest or earnings on the accumulated premium, go into an account. Each month, the cost of insurance and certain policy charges or "loads", i.e., the premium taxes and sales and administrative charges, are charged against that account at a particular rate. As long as the premium payments and credits or earnings in the account exceed the cost of insurance and policy charges, the policy owner can choose to pay less than the premium planned at the outset. If a deficiency develops in the account, though, the policyowner is in default. If the policyowner does not cure the default, the policy lapses. If the policy lapses, the policyowner has the right to reinstate (if they qualify) for a stated period of time. Declaration of Theodore Affleck (Affleck Dec.) in Support of Motion for Class Certification, ¶¶6-7 [Doc. 51-2; 47 or 48]

On January 4, 2016, Behfarin received a notice from Prudential that the policy went into default and that to prevent a lapse with no value, he had to pay $47,457.28 by March 6, 2016. His policy said to cure a default, the policyowner must pay a sum Prudential estimates will keep the contract in force for three months from the date of

default, which he read to mean the cost of insurance and loads. To reinstate after a lapse, the policyowner had to pay enough premium to make up any shortfall in the premium account since the default and keep the policy in force for three months (plus, where applicable, the amount required to bring the policy's cash value to zero, and other charges).

Behfarin sent in $20,000 on January 29, 2016. Since his monthly charges for the cost of insurance and the loads were running about $3,500, that should have been ample to cure the default. Prudential insisted on getting the full $47,457.28. Behfarin engaged in further correspondence with Prudential in which Prudential told him it was charging the three months at the guaranteed rates, meaning the maximum allowable rates, rather than the current rates charged pre-default. Behfarin's policy lapsed, and Prudential wrote again that it was charging the three months for reinstatement at the guaranteed rates. Behfarin then paid the requested amount. Pruco denied reinstatement because Behfarin's father no longer medically qualified.

### B. Course of Proceedings and Facts From Discovery

On July 18, 2017, Behfarin filed an action individually and on behalf of a proposed class of universal and variable universal policyholders who had been charged premium at guaranteed rates to cure defaults or reinstate policies rather than at current rates, and those whose reinstatement was denied while they were still insurable at some price. Behfarin sued for breach of contract, breach of the implied covenant of good faith, violation of B&P Code §17200, et seq., declaratory relief, and injunctive relief. [Doc. 1] Pruco timely answered the complaint. [Doc. 15]

Discovery disclosed that many different policy forms of Prudential contained similar policy provisions for curing defaults and reinstating after lapse as Behfarin's policy, and where there was not a no-lapse guarantee providing for a lower amount, Prudential had commonly billed the cost of insurance at guaranteed rather than current rates for policyowners to cure when they had defaulted and had done so universally for policyowners to reinstate after lapse. Among the three Defendants,

there are 32,645 lapsed policies during the class period as to which guaranteed charges applied to the request for payment to cure a default or reinstate (or both). Shuman Dec. ¶75, Ex. 2

On September 28, 2018, Plaintiff filed his Motion for Class Certification. [Doc. 35] The parties thereafter stipulated to extend several deadlines in order to accommodate settlement discussions through the vehicle of a multi-session mediation. [Docs. 53, 56, 58] The Court granted those extensions. [Docs. 54, 57, 61]

### C. Settlement Background Facts

With the assistance Hon. William J. Cahill, a highly regarded mediator associated with JAMS who had handled multiple other class action mediations, the parties conducted extensive negotiations spanning nearly four months. The negotiation process included three full-day mediation sessions and multiple phone conversations and e-mail correspondence both with and without the mediator.

Plaintiff conducted extensive formal discovery and investigation of the claims, defenses, and underlying events and transactions involved in the action. The investigation included: (i) review and analysis of the discovery responses and over 60,000 pages of documents produced as well as preparation of discovery; (ii) consultation with highly-experienced, retained life insurance experts familiar with these insurance products, one of whom prepared a long written report analyzing files produced by Prudential for application of current vs. guaranteed rates; (iii) defending a deposition of Behfarin; (iv) negotiating a protective order and preparing motions to seal documents and for class certification; (v) meetings and conversations with Prudential's attorneys regarding discovery disputes, exchanges of data, and the staging and merits of the litigation; (v) preparation of pleadings; and (vi) research of similar litigation. Shuman Dec. ¶¶ 17-40.

Before the mediation, Plaintiff's counsel also prepared a 24-page mediation brief with 150 pages of exhibits and engaged in pre-mediation phone calls with the mediator and defense counsel. The mediation brief covered all aspects of both class

certification and the merits of the case, as well as potential settlement structures. Counsel also researched other life insurance class actions. Shuman Dec. ¶48.

The parties participated in a full-day mediation session before Judge Cahill on January 25, 2019. They attended a second full-day session on February 20, 2019 and engaged in conference calls with Judge Cahill on March 1, 2019 and April 26, 2019.

The negotiations were conducted among highly-qualified counsel on an arm's length basis, without collusion of any kind. In fact, negotiations at times became contentious and the mediation process very nearly derailed at one point; Judge Cahill persuaded the parties to resume negotiations in a series of weekend telephone calls that resolved the impasse.

The parties conducted a third full-day mediation session at JAMS on April 30, 2019, reached an agreement in principle and, working into the evening, finalized a written term sheet with Judge Cahill's guidance. Behfarin attended every mediation session, and some calls and the exchange of e-mails between sessions. Shuman Dec. ¶¶47-59.

The parties then devoted substantial effort to negotiating and preparing the necessary settlement documentation, which includes the Stipulation of Settlement, the Class Notice (website and mail versions), Claim Forms for the different categories of relief, a non-disclosure agreement and contract with the Claims Administrator, Reinstatement Process Guidelines and Scoring Guidelines for the Claims Administrator, and other items needed to administer the settlement. They exchanged, reviewed, and revised several drafts, and continued negotiation over matters not specified in the April 30, 2019 Term Sheet. Shuman Dec. ¶60.

Before and during this process, Plaintiff's counsel analyzed the contested legal and factual issues to evaluate Defendants' contentions and defenses, and balanced the strength of the Settlement Class Members' claims with the litigation risks presented by Prudential's defenses. This included the defense that a class could not be certified because policyowners may have lapsed policies for reasons other than the challenged

practice, creating differences among putative class members. Plaintiff's counsel advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class.  Plaintiff's counsel believe that the proposed Settlement is fair and reasonable, and is a highly successful result for members of the proposed Class because it provides significant and immediate benefits to the Class. Every qualified Settlement Class Member with a living insured will be able to get substantial relief by way of prompt reinstatement without medical or other underwriting, with no retroactive premium during the period of lapse, and Class Members whose insureds are deceased will receive a settlement payment based on a percentage of the death benefit under the lapsed policy or a minimum recovery.  The Settlement focuses relief on those actually victimized by the practice sued upon, largely eliminating a potential defense to certification. Also, Defendants have changed procedures so the challenged practice will not occur in the future.  Shuman Dec. ¶¶32-66.

Upon completion of the settlement documents, Plaintiff filed his Motion for Preliminary Certification of Class, Appointment of Class Representative and Class Counsel, Preliminary Approval of Class Action Settlement and Direction of Notice under Fed. R. Civ. Proc. 23(e) and (g). [Doc. 74].  The Court heard oral argument on that Motion on November 18, 2019, and on November 26, 2019, this Court issued its detailed Order finding that proposed settlement to be procedurally and substantively fair.  The Court found that the proposed class meets the requirements of Fed. Rule Civ. Proc. 23(a) and 23(b)(3) and that the proposed notices and dissemination procedure appeared to be effective, meeting the requirements of Fed. Rule Civ. Proc. 23(c).  Preliminary certification was granted, and deadlines and hearings were scheduled as part of that order, including the instant hearing. [Doc. 87] Shuman Dec. ¶¶70-72.

///

///

## III.   SUMMARY OF THE SETTLEMENT

### A. The Settlement Class

The Stipulation of Settlement defines the Settlement Class as follows:
"All Policyowners of Class Policies and, where all Policyowners and
insureds of a Class Policy are deceased, then also any designated
beneficiary(s) of that Class Policy at time of final lapse."
Shuman Dec. ¶45, Ex. 1, §§II.zz and V.D.

The Stipulation of Settlement defines "Class Policy(ies)" as follows:
"One or more individual universal life or variable universal life
insurance policies issued by a Defendant, as to which Guaranteed
Charges were applicable to the calculation of the deficiency and/or
reinstatement amount, and which policy either entered into default or
lapsed between July 18, 2013 and the date of Preliminary Approval, or
which had default cured or was reinstated on or after July 18, 2013 and
remains in force on the date of Preliminary Approval."
Shuman Dec. ¶68, Ex. 1, §§II.m and V.D.

The Stipulation of Settlement defines "Class Period" as "July 18, 2013 to and
through the date of Preliminary Approval." Shuman Dec. ¶68, Ex. 1, §II.l.

### B. The Settlement Benefits

The Stipulation of Settlement ("Stip") (Shuman Dec. Ex. 1) provides
immediate, crucial benefits to current policyholders and former policyholders of
thousands of policies potentially impacted by the challenged practice. The Stip
provides relief in three categories, depending on the status of the Settlement Class
Member:

#### The Lapsed/Alive Population

This category of Class Member consists of persons who owned policies that
lapsed for a final time during the Class Period and have not been reinstated where
there is at least one living insured [Stip §I.G].

Authorized claimants in this category will get an opportunity to reinstate the Class Policy on the same terms as existed at the time of final lapse. Authorized Claimants will have to pay amounts required to make up deficiencies in the policyowner's account at time of default, and premium owed between default and lapse (at then-current rates). They also will pay three months of advance premium at the "Current Rate" as of the date of reinstatement, and all without medical or other underwriting [Stip §III.A.1]. This relief will return Class Members in this category to the status quo. For them, it is complete relief because they will have their policies back just as if they had paid the appropriate amount to cure or reinstate at the time of their default or lapse, and without having had to pay premium while their policies were lapsed. Subject to other administrative conditions and "Gating Rules" [Stip §III.B] this relief is available to those Claimants in this group who submit a Claim Form certifying, among other things, ownership, standing and that at least one insured is alive [Stip §III.A.3].

The Gating Rules and Claim Form certifications are intended to cull out Class Members not affected or harmed by the practice sued upon. For example, for certain Class Members, Prudential did not request payment of more than three months' premium at default (e.g., if a no-lapse guarantee was applicable); and those Class Members, if they had a policy of $250,000 or more would also not have received a reinstatement quote absent a request. The Gating Rules thus disqualify them if no timely application to reinstate was received. Also, as to any size policy, if the amount Prudential requested at default and reinstatement to keep the policy in force would have kept the policy in force for 3.5 months or less (at Current Rates), they are gated out since they were not affected by the challenged practice. If a Gating Rule applies, the claimant will be entitled to the Basic Relief of $250. Any Class Member eligible for Reinstatement (i.e., not disqualified by the Gating Rules) must certify that he or she did not deliberately decide to discontinue the Class Policy before final default, would have kept the policy in force if the insurer had required just three months'

premium at then current rates, did not replace the policy with other insurance before default or lapse, is not an investor who acquired the policy without having an insurable interest in the insured, does not presently intend to transfer the policy, is claiming under a policy with at least one living insured, is the policyowner, and will assume responsibility if someone makes a conflicting claim of ownership. The proposed Claim Form is available on a hosted website. (Stip. Ex. E).

Members of the Lapsed/Alive Population may also be eligible for "enhanced" relief consisting of premium forgiveness in years 4 and 5 after reinstatement. Enhanced relief is available to those claimants for whom Defendants have a record of having received but not approved a timely application for reinstatement following the lapse of their policy, who pay all required premium during the first three years after reinstatement and who have a policy in force when year 4 begins. [Stip §III.B.1].

**The Lapsed/Deceased Population**

This category of Class Member consists of persons who owned or have a beneficial interest in policies that lapsed for a final time during the Class Period and were not reinstated where the insured(s) are deceased [Stip §I.G]. Relief for Authorized Claimants in this category will be an individualized monetary Settlement Payment calculated by a Claim Scoring Process administered by the Claims Administrator using Defendants' records and data. The Claims Administrator will determine the Claim Score on a scale of zero to three. That will trigger application of either Basic Relief ($250) or a settlement amount based on a percentage of death benefit minus a corresponding percentage of premium that would have been paid to calculate the actual award, plus 3% interest from the date of death.

The Scoring Guidelines [Stip Ex. D] provide the criteria the Claims Administrator applies to assign a Claim Score that determines the percentage of death benefit used to determine the amount paid. The Claim Score produced by applying those Scoring Guidelines will reflect the strength of the evidence that the practice sued upon may have impacted the lapse or failure to reinstate. A score of 3 means

Prudential's records show a clear link between the conduct alleged and the policy lapse or failure to reinstate. A score of 2 means Prudential's records tend to show the conduct alleged was a significant reason for the lapse or failure to reinstate, but the records are not decisive; a score of 1 means Prudential's records tend to show the conduct alleged was not a significant reason for lapse or failure to reinstate, but the records are not decisive; and a score of zero means the conduct alleged did not occur or clear evidence in Prudential's records shows the policy lapsed or was not reinstated for unrelated reasons. This process is subject to limited right of appeal to Judge Cahill. [Stip §III.B.5.]

A score of 3 entitles a claimant to recover an amount equal to 75% of the death benefit on the claimant's policy minus 75% of the premium that would have been required to reinstate the policy and keep it in force to date of death. A score of 2 entitles a claimant to recover a settlement amount equal to 55% of the death benefit on the claimant's policy minus 55% of the premium that would have been required to reinstate the policy and keep it in force to date of death. A score of 1 entitles a claimant to recover a settlement amount equal to 5% of the death benefit on the claimant's policy minus 5% of the premium that would have been required to reinstate the policy and keep it in force to date of death. In each instance, the Claims Administrator and Defendants will calculate the amounts they owe to the claimants and also pay 3% interest on the award from the date of death. A score of zero will entitle a claimant to recover $250. [Stip §III.C.6.]

**Relief for Current Policyholders**

For the benefit of all current and future universal and variable universal policyholders, Defendants have agreed to end the challenged business practices and to ensure that the amount billed to cure a default or to reinstate a policy will be calculated based on current rates (or less), and not Guaranteed Rates. [Stip §III.C.1] This benefit will apply to more than 13,000 current and future policyholders.

///

## C. Notice, Opt-Out, and Release Provisions

Claims Administrator Epiq Class Action and Mass Tort Solutions ("Epiq")
implemented the approved Class Notice Program as directed by the Court's
Preliminary Approval Order [Doc. 87, pp. 27-28, ¶13]. Specifically, commencing on
January 10, 2020, Epiq sent summary notice of the Settlement by U.S. Mail to all
Class Members, and notice via e-mail with a link to the website to all Class Members
with known e-mail addresses. As required by the Stipulation of Settlement, Epiq has
done standard skip tracing for Class Members whose notice is returned. [Stip §VI.E
and F] Declaration of Cameron R. Azari in Support of Motion for Final Certification
of Settlement Class and Final Approval of Proposed Nationwide Class Settlement
Agreement and Approval of Notice Under Fed. R. Civ. P. 23(e) ("Azari Dec."), ¶¶13-
26. Dissemination of notice of the pendency of a proposed class settlement by direct
mail satisfies the due process requirement that notice "be reasonably calculated, under
all the circumstances, to apprise interested parties of the pendency of the action and
afford them an opportunity to present their objections." *Silber v. Mabon*, 18 F.3d
1449, 1454 (9th Cir. 1994). The Court specifically found the Notice Program satisfied
the requirements of due process. [Docket 87, p. 27, ¶12]

Settlement Class Members have until February 25, 2020 to exclude
themselves from the Class by sending a Request for Exclusion to the Claims
Administrator. [Stip §VII.A] A Class Member who does not request exclusion may
object to the fairness, reasonableness, or adequacy of the proposed Settlement by
filing a written statement of objection with the Court by February 25, 2020. [Stip
§VII.D] [Doc. 87, pp.29-32]

Once the Settlement becomes final, Plaintiff and Class Members will release
and discharge Prudential from any and all claims that have been, could have been,
may be, or could be alleged or asserted in this action that directly or indirectly
concern any Class Policy, including but not limited to claims concerning the amount
of monies or other requirements that were requested by or on behalf of Prudential in

order to keep a Class Policy that has entered default in force or to reinstate a Class

Policy after lapse; claims arising from any acts, omissions, facts, matters, transactions

or occurrences directly or indirectly alleged, asserted, described, set forth or referred

to in the action; and claims related to Prudential's declination or refusal of an attempt

to cure a default or reinstate a Class Policy, for any reason.  The Released Claims are

set forth in detail in the Settlement Agreement and Class Notice.  [Stip §IV.A.2 and

B]

However, nothing in the Settlement alters contractual rights under an existing

policy or a reinstated Class Policy, including the right to benefits that become payable

under the express written terms of the policy reinstated by Prudential pursuant to the

Settlement.  [Stip §IV.C.3]

### D. Appointment of the Class Representative and Class Counsel, and Payments of Attorneys' Fees, Expenses, and Service Awards.

In its Preliminary Approval Order, the Court (a) appointed Richard Behfarin as

the Settlement Class Representative, (b) appointed Engstrom, Lipscomb & Lack and

Robert B. Mobasseri as Settlement Class Counsel, and (c) confirmed these proposed

appointments satisfy Rule 23(g). [Doc. 87, pp. 20-21 and p. 26, ¶¶8-9]

### IV. THE COURT SHOULD GIVE FINAL APPROVAL TO THE SETTLEMENT

### A. The Settlement is Fair, Reasonable and Adequate

While the approval of the proposed Settlement is committed to the sound

discretion of the Court, settlements of complex class actions prior to trial are strongly

favored. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). As a

matter of "express public policy," federal courts favor and encourage settlements,

particularly in class actions, where the costs, delays, and risks of continued litigation

might otherwise overwhelm any potential benefit the class could hope to obtain. *Id.*

(noting the "strong judicial policy that favors settlements, particularly where complex

class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

1  (9th Cir. 2008) (same); see generally, 4 Herbert B. Newberg & Alba Conte, Newberg

2  on Class Actions § 11:41 (4th ed. 2002) (same, collecting cases).

3      Settlements are particularly favored "in class actions and other complex cases

4  where substantial judicial resources can be conserved by avoiding formal litigation."

5  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL

6  5382544, at *2 (N.D. Cal. Dec. 22, 2008).

7      "Although Rule 23 imposes strict procedural requirements on the approval of

8      a class settlement, a district court's only role in reviewing the substance of that

9      settlement is to ensure that it is 'fair, adequate, and free from collusion.'"

10  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v.

11  Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)); see also *Officers for Justice v.

12  Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

13  1982) (a class action settlement should be reviewed under "the universally applied

14  standard [of] whether the settlement is fundamentally fair, adequate and reasonable").

15      Additionally, "[i]t is the settlement taken as a whole, rather than the individual

16  component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*,

17  327 F.3d 938, 960 (9th Cir. 2003).

18      When class counsel is experienced and supports the settlement, and the

19  agreement was reached after arm's-length negotiations, courts give a presumption of

20  fairness to the settlement. See *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL

21  1854965, at *2 (N.D. Cal. June 29, 2009); *Nat'l Rural Telecomms. Coop. v.

22  DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Ellis v. Naval Air Rework

23  Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981). As

24  additional factors for determining whether a settlement is fair, reasonable, and

25  adequate, the Ninth Circuit has identified:

26      "the strength of the plaintiffs' case; the risk, expense, complexity, and likely

27  duration of further litigation; the risk of maintaining class action status throughout the

28  trial; the amount offered in settlement; the extent of discovery completed and the

439765                                      14                      Case No. 2:17-cv-05290-MWF-FFM

stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

*Hanlon,* 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.

As shown below, not only is the proposed Settlement presumptively fair since it was reached in a procedurally fair manner by experienced class counsel with Judge Cahill's guidance, but here almost all of the other relevant factors identified by the Ninth Circuit support final approval as well. For each and all these reasons, the Settlement merits final approval.

### 1.    The Settlement is Presumptively Fair, Reasonable and Adequate For Two Reasons.

Because the Settlement Agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, and only after extensive discovery, it is entitled to a presumption of fairness. *Anderson v. Nextel Retail Stores, LLC,* Nos. CV 07–4480–SVW (FFMx), et al., 2010 WL 8591002, at *15 (C.D. Cal. Apr. 12, 2010); see also, *In re Immune Response Sec. Litig.,* 497 F.Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("the fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair," quoting *Linney v. Cellular Alaska P'ship,* Nos. C-96-3008 DLJ, et al., 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) aff'd, 151 F.3d 1234 (9th Cir. 1998) (alterations in original)); *Adams v. InterCon Sec. Sys., Inc.,* No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Moreover, as noted above, a presumption of fairness exists "if the settlement is recommended by class counsel after arms'-length bargaining." *Wren v. RGIS*

*Inventory Specialists,* No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal.
Apr. 1, 2011) (citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions
§11:42 (4th ed. 2002)).  Here, each side amassed substantial evidence by means of
extensive discovery.  Shuman Dec. ¶¶24-37.  Based on that discovery, Class Counsel
have concluded that the proposed Settlement is fair, reasonable, and adequate.
Shuman Dec. ¶69. Courts give counsel's opinion considerable weight because they
are closest to the facts and risks associated with the litigation. *Low v. Trump Univ.,*
*LLC,* 246 F. Supp. 3d 1295, 1302-03 (S.D. Cal. 2017) (Settlement recommendation
by experienced counsel entitled to great weight and presumption of reasonableness.).
Here, Class Counsel has a thorough understanding of the merits and risks of the
claims and defenses asserted in the case and experience in life insurance litigation and
these types of policies.  Class Counsel's belief in the fairness and reasonableness of
the Settlement merits a presumption of reasonableness.

## 2. Plaintiff Faced Risks in Proceeding Despite the Relative Strength of the Claims.

While Plaintiff remains convinced of the merits of the claims, a candid
assessment discloses some significant risks in pressing those claims through
continued litigation.  Most dauntingly, Plaintiff could not be certain a class could be
certified.  Prudential contends that people allow policies to default and lapse for
myriad reasons—simple inability to afford them, lack of any further need for them
due to changes in circumstances, or replacement with other insurance that may be
cheaper or better in some respect, for example—and that overbilling for curing a
deficiency or reinstating would just be one of those reasons.  Consequently, plaintiff
faced a risk of being unable to meet the commonality requirement for certification.

Plaintiff also was concerned that if Prudential could mount an attack on him as
class representative, the action would fail for lack of any other class representative, as
no one had emerged as willing and able to fill that role despite some modest
advertising efforts Plaintiff made to find another class representative.

On the merits, Plaintiff faced a battle of experts over industry standards concerning advance payment requirements in the event of cure or reinstatement of the types of policies involved and concerning interpretation of the provision in Prudential's policy forms.  For all these reasons, the path to certification of a class and victory on the merits presented challenges and risks that warranted settling on the terms agreed upon, which afford nearly full compensation for the lapsed/alive group, substantial compensation for the much smaller lapsed/deceased group, and complete elimination of the risk of recurrence for current and future policyholders.

### 3. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Warrants Approval of the Settlement.

Proceeding to trial in this action would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals that could extend the case for years. See, e.g., *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), appeal dismissed, No. 17-16621, 2017 WL 5502713 (9th Cir. Sept. 21, 2017), and aff'd, 737 F. App'x 341 (9th Cir. 2018). Absent a settlement agreement, Plaintiff would face a significant battle over certification, possibly a summary judgment motion concerning the meaning of the policy language, additional discovery concerning the merits of the case because discovery by agreement was phased in this case, post-trial motions and appeals, all of which would have greatly delayed recovery for class members. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Moreover, as stated above, were this case to proceed to trial, it would undoubtedly have become the proverbial "battle of the experts," with the Parties advancing competing actuarial and underwriting analyses to show when improper rates were or were not charged, the life expectancies and other data impacting the value of policies lost, normal lapse rates compared to defendants' lapse rates as an attack on causation, when insureds on lapsed policies were uninsurable so as to preclude reinstatement, and potentially other topics.  See, e.g., *Kumar*, 2017 WL

2902898 at *7 (granting final approval in settlement of claims implicating a "battle of the experts"); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv02604-EJD, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (same); *In re China Intelligent Lighting & Elecs., Inc.*, No. CV 11-2768 PSG (SSx), 2015 WL 2765018, at *4 (C.D. Cal. Mar. 9, 2015) (same). There was also the risk that the jury would be unable to resolve the highly complex actuarial and contract interpretation issues underlying Plaintiff's theory of the case, and it would take only one juror to defeat Plaintiff's claim.

        **4.**      **Plaintiff Faced a Risk of Not Maintaining Class Action Status.**

As stated above, Plaintiff faced a genuine risk of not securing class status in this case due to the myriad other reasons for which people allow policies to lapse. Causation presented a significant hurdle in this case that would affect class certification as well as the merits. Proving the reasons for which thousands of people over several years allowed policies to lapse would have been challenging to say the least. This factor thus augers in favor of settlement.

        **5.**      **The Amount Offered in Settlement Militates in Favor of Approval.**

Plaintiff has achieved a highly beneficial settlement for the Class. Anyone affected by the challenged conduct with at least one insured still alive, if an Authorized Claimant, will be able to restore the status quo without having to pay premium for the time the policy was lapsed and without having to go through the underwriting of a normal reinstatement. For insureds now uninsurable or whose rating classification has deteriorated, that is a huge opportunity. For those insurable at the same rate classification, the settlement affords a chance to restore a policy and save the substantial premium they would have paid during the lapse period.

For the owners of policies that have lapsed and whose insureds are all deceased, the settlement offers to Authorized Claimants an opportunity to recover an amount equating to the majority of the death benefit (less a corresponding portion of unpaid premium to date of death) if Prudential's records indicate it was likely or

highly likely that the lapse resulted from the challenged conduct.   The chance for aggrieved Class Members to recover a sum equating to a substantial portion of the death benefit they would have had likewise is a tremendous benefit.

Members of either of those groups within the Class who do not want to reinstate and who pass the gating rules, or who do not qualify for the percentage-of-death-benefit equivalent, still get a significant benefit from the Settlement because they can collect $250 just for submitting the claim form.

Current policyholders reap the benefit of never having to worry about these overcharges in the event they need to cure or reinstate because Prudential has agreed in response to this litigation to change its practice so that it charges at current rates in those circumstances.

Plaintiff has retained Actuarial Strategies, an independent actuarial firm, to value the opportunity created by this Settlement. Depending on assumptions made, Actuarial Strategies has valued the Settlement as being worth from $19,562,792 to $93,249,879.  In addition to the reinstatement relief for Class Members with living insureds, the individualized relief for Class Members whose insureds are all deceased, and the change-of-practice relief for current policyholders, Prudential has agreed to pay up to $3.5 million in attorneys' fees, up to $500,000 in costs of Plaintiff's counsel, up to $50,000 toward an incentive award for Plaintiff, and at least an additional $500,000 in notice and administrative expenses that would otherwise be borne by the Settlement Class. All these settlement elements benefit the Class. Shuman Decl. ¶¶84-85, 100-101, and Exhibit 4 (the Actual Strategies report).

Thus, the amount offered in Settlement is nearly full relief for the lapsed/alive group, substantial relief for the lapsed/deceased group, complete relief from concern about the challenged practice for current policyholders, and payment by the Defendants of all administrative costs of the Settlement as well as Plaintiff's attorney fees and costs and Plaintiff's own incentive award.  By any measure, the Settlement is very favorable to the Class and merits the Court's approval.

### 6.    Extensive Discovery and a Motion for Class Certification Occurred Before the Settlement.

This was no quick settlement. Through extensive discovery, each side amassed substantial factual evidence and expert testimony in support of their positions, and Plaintiff filed a motion for class certification, all before any settlement discussions occurred, which demonstrates Plaintiff's serious commitment to litigating this case on behalf of all Class Members.

The pertinent question is whether class counsel have sufficient information to ensure "effective representation." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Courts have repeatedly explained that it does not matter whether the discovery is labelled "formal" or "informal;" instead "the pertinent inquiry is what facts and information have been provided." Id. at 967; see also *McBean v. City of New York*, 233 F.R.D. 377, 384-85 (S.D.N.Y. 2006); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005).

Here, discovery included two sets of written interrogatories to Defendants, two sets of Requests to Produce, and Requests for Admissions.  This discovery yielded written responses and a rolling production of over 60,000 pages, including randomly selected individual policy files, pursuant to a protocol negotiated by the attorneys. That effort disclosed that many of Defendants' different policy forms contained similar policy provisions on default and reinstatement.  Defendants had commonly charged the cost of insurance at guaranteed rather than current rates for policyowners to cure when they had defaulted (in the absence of a no-lapse guarantee providing for lower amounts) and had done so universally when policyowners received quotes to reinstate after lapse.   Among the Defendants, there are 32,585 lapsed policies during the class period as to which guaranteed charges were potentially applicable to the request for payment to cure a default or applied to charges for reinstatement (or both).

Class Counsel worked closely with their expert and insurance industry consultant, Theodore Affleck and Steven Roth, respectively, who are familiar with

these insurance products, the economics and practices of the products and the
regulatory rules and standards in the states in which they are offered, and one of whom
developed an analytical framework and produced a detailed written report analyzing
the files produced by Defendants for application of current vs. guaranteed rates.
Plaintiff sat for a deposition and helped prepare planned respondes to written
discovery, including written interrogatories and a document production request, all of
which provided information to Plaintiff's counsel.  Shuman Dec. ¶¶17-42.  Class
Counsel were thus well-informed of the important facts and relevant legal issues when
negotiating this Settlement.

### 7.    Experienced Plaintiff's Counsel Believe the Settlement is Fair, Reasonable, and Adequate.

Courts recognize that the opinions of experienced counsel supporting a
settlement after vigorous arm's-length negotiations are entitled to considerable weight
in the final approval analysis. As one court put it:

> "Great weight is accorded to the recommendation of counsel, who are
> most closely acquainted with the facts of the underlying litigation. This
> is because parties represented by competent counsel are better
> positioned than courts to produce a settlement that fairly reflects each
> party's expected outcome in the litigation. Thus, the trial judge, absent
> fraud, collusion, or the like, should be hesitant to substitute its own
> judgment for that of counsel."

*In re Apollo Grp. Inc. Sec. Litig.*, Nos. CV 04–2147–PHX–JAT, CV 04–2204–
PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677, at *2 (D. Ariz. Apr. 20,
2012) (internal quotations and citation omitted); accord, *In re Washington Pub.
Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (noting that
"[c]ounsels' opinions warrant great weight both because of their considerable
familiarity with this litigation and because of their extensive experience in similar
actions"); see also *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079

(C.D.Cal. 2010) (holding that class counsel's views that settlement was reasonable weighed in favor of settlement).

Class Counsel here have extensive experience litigating complex class actions and in life insurance cases involving issues other than just death claims. Counsel have invested many hundreds of hours steeped in the detail of this case, and as shown above, compiled extensive data to inform their judgment on the case. Counsel believe the Settlement is fair, reasonable, and adequate. Shuman Dec. ¶69. The Court should give considerable weight to that judgment in light of the legal authority above and counsel's experience and information.

### 8.    The Presence of a Governmental Participant

This is not a case in which Plaintiffs piggy-backed claims initiated by or prosecuted by a government agency. Additionally, despite service of the CAFA notice, the Parties have received no indication of disapproval from any government agency. Azari Dec. ¶12.

### 9.    The Reaction of the Class Members to the Proposed Settlement

The deadline for objections is February 25, 2020. Class Counsel will respond to all objections through a reply memorandum or separate responsive brief, which is due April 6, 2020, if any are filed. Thus far, there have been no objections and only one policy opting-out to the knowledge of Class Counsel. As reflected in the reports of the Claims Administrator, nearly 700 claims had been submitted by February 5, 2020 and as of February 6, 2020, nearly 3,400 people had looked at an aggregate of nearly 16,000 website pages, with another 730 people having called the Claims Administrator seeking further information about the Settlement. As of February 13, 2020, Epiq had received 765 claims, the website had received 3,499 visits on which an aggregate of 16,421 pages got hits, and Epiq had fielded 757 phone calls. Azari Dec. ¶¶28, 30, 32. The reaction of the Class Members thus is significant in numbers and overwhelmingly positive with nearly two months left in the claim period.

## B. The Court Should Approve Final Certification of the Settlement Class.

Courts favor the use of settlement classes "to foster negotiated solutions to [class] actions." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). A settlement class in complex litigation "actually enhances absent class members' opt out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). In its Preliminary Approval Order, the Court provisionally certified the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e). Doc 87, pp. 15-19 and p.25 ¶5. Nothing with respect to class certification has materially changed since preliminary certification.

### 1.    The Settlement Class Satisfies the Four Requirements of Rule 23(a)

First, the Settlement Class encompasses approximately 32,645 Policies, easily satisfying the impracticability standard under Rule 23(a)(1)'s numerosity requirement, and that does not even count the more than 13,000 current policies impacted by the Settlement. Shuman Dec. Ex. 2; *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir. 2003) (15,000 satisfied numerosity); *Yue v. Conseco Life Ins. Co,* 282 F.R.D. 469, 475 (C .D . Cal. 2012) ("*Yue*") (over 3,000 sufficient); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,* 270 F.R.D. 521, 528 (N.D. Cal. 2010) ("*Conseco*") (10,000 satisfied numerosity); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 WL 4473183, at *3 (S.D. Cal. Oct. 6, 2008) (770 class members were "far too numerous to be joined as plaintiffs in this lawsuit").

Second, Rule 23(a)(2)'s requirement of commonality is readily satisfied because Plaintiff's claims are based on the disputed interpretation of standardized contract language of the Policies, which Prudential must construe consistently for all Policyholders. Doc. 87, pp. 15-16; *In re Conseco Life Ins. Co. LifeTrend Ins. Sales &*

*Mktg. Litig.*, 270 F.R.D. 521, 529-30 (N.D. Cal. 2010) (concluding commonality satisfied where "interpretation of the standard written policy language will present a question common to the class"). The key issue central to the validity of each policyowner's claim can be determined in one stroke, which is the hallmark of commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Third, typicality is satisfied because Plaintiff and Settlement Class Members assert precisely the same claims challenging Prudential's contractual authority to charge advance premium at guaranteed rates to cure or reinstate, based on identical material terms in all of the form contracts. Doc. 87, p. 16; *Schlagal v. Learning Tree Int'l,* No. CV 98-6384 ABC (EX), 1999 WL 672306, at *3 (C.D. Cal. Feb. 23, 1999) (typicality met where the plaintiff's claims "stem from the same event or course of conduct as other class members' claims and are based on the same legal theory as the absent members"). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same [ ] conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Finally, class representation is adequate because (1) Class Counsel are qualified and competent to vigorously prosecute the action and (2) the interests of the Settlement Class Representatives are not antagonistic to the interests of the Settlement Class. Doc. 87 pp. 16-17; *Staton*, 327 F.3d at 957.

### 2.     The Settlement Class Satisfies Rule 23(b)(3)

The Settlement Class also satisfies the predominance and superiority requirements of Rule 23(b)(3).

Here, a common nucleus of operative facts and shared legal claims dominate the litigation, and whether Prudential had the contractual authority to impose charges at guaranteed rates on premium required to cure or reinstate posed the predominant common question. This claim turns on the common actions of Prudential in imposing those charges in violation of the uniform express terms of standardized policy

contracts. See generally, *In re Med. Capital Sec. Litig.*, No. SACV-09-1048 DOC
(RNBx), 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely
certify class actions involving breaches of form contracts."); *Kleiner v. First Nat'l
Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D. Ga. 1983) (claims arising from
interpretation of form contract appropriate for class action); *Negrete v. Allianz Life
Ins. Co. of N. Am.*, 238 F.R.D. 482, 496 (C.D. Cal. 2006) (certifying annuity class
based on misrepresentations in company's standardized sales materials); *In re Nat'l
Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652 (S.D. Cal. 2010) (same).

   If Prudential breached its contract as to the named Plaintiff when imposing the
charges to cure or reinstate at guaranteed, rather than current, rates, then it breached
the same standardized contract as to the other members of the Settlement Class.

   A class-wide resolution of Plaintiff's claims here is furthermore superior to
"other available methods for the fair and efficient adjudication of the controversy."
*Hanlon*, 150 F.3d at 1023. As in *Hanlon*, it is neither economically feasible nor
judicially efficient for tens of thousands of former Prudential policyowners to
challenge the amount of the charges to cure or reinstate on an individual basis. Doc.
87, p.18; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.
2010) (class certification proper where "recovery on an individual basis would be
dwarfed by the cost of litigating on an individual basis").

## V. CONCLUSION

   For the foregoing reasons, Plaintiffs respectfully request that the Court enter
its Order , in the form submitted herewith as a Final Order and Judgment.

Dated:  February 18, 2020          WALTER J. LACK
                                   STEVEN C. SHUMAN
                                   ENGSTROM, LIPSCOMB & LACK

                                   ROBERT MOBASSERI, ESQ.

                                   By:  */s/ Steven C. Shuman*
                                        Steven C. Shuman, Esq.
                                        Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, a true and correct copy of: **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE UNDER FED. R. CIV.P. 23(e) AND (g); [PROPOSED] ORDER** was filed electronically and will be served via Notice of Electronic Filing under the Court's CM/ECF system this 18th day of February, 2020, to all parties with an email address on record, who have consented to electronic service in this action.

/S/ Steven C. Shuman

STEVEN C. SHUMAN

439765                                     27                   Case No. 2:17-cv-05290-MWF-FFM

NOTICE OF MOTION & MOTION FOR FINAL CERTIFICAION OF SETTLEMENT CLASS & FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE