WALTER J. LACK, (SBN 57550)
STEVEN C. SHUMAN, (SBN 82828)
**ENGSTROM, LIPSCOMB & LACK**
10100 SANTA MONICA BLVD., Ste. 1200
LOS ANGELES, CA 90067-4113
TELEPHONE: (310) 552-3800
FACSIMILE:  (310) 552-9434
EMAIL: sshuman@elllaw.com
Attorney for Plaintiff RICHARD BEHFARIN

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BEHFARIN, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> PRUCO LIFE INSURANCE COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY, and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.  2:17-cv-05290-MWF-FFM <br><br> [Hon. Michael W. Fitzgerald, Judge] <br><br> **SUPPLEMENTAL DECLARATION OF STEVEN C. SHUMAN IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE UNDER FED. R. CIV.P. 23(e) AND (g)** <br><br> [Filed concurrently with Notice of Motion and Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement and Approval of Notice Under Fed. R. Civ. P. 23(e) and (g), and Declaration of Cameron Azari, and [Proposed Order]] <br><br> **Hearing Date;    April 20,2020 <br> Time:             10:00 a.m. <br> Courtroom:        5A <br> Complaint filed: 7/18/17** |

1.    I am an attorney licensed to practice in the State of California and I am admitted to practice in all the United States District Courts in California as well as the United States Court of Appeals for the Ninth Circuit.  I am a member of the law

V3:439772

1

firm of Engstrom, Lipscomb & Lack, APC, one of the attorneys of record for Plaintiff Richard Behfarin ("Plaintiff") and one of the attorneys appointed as Class Counsel in this case pursuant to this Court's November 26, 2019 Order appointing us to serve in that capacity.   [Dkt 87].

2.    I have personal knowledge of the facts herein, and if called as a witness I could and would competently testify to them, except as to those stated on information and belief, and as to those facts, I believe them to be true.

3.    I previously filed a lengthy Declaration in Support of Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement, and Approval of Notice Under Fed. R. Civl P. 23(e) and (g), and in Support of Motion for Attorneys' Fees, Costs and Expenses and Incentive Award for Class Representative. [Dkt 92-1]. Exhibit 1 to that Declaration was the Stipulation for Settlement in this case, but it was incomplete.  We included only the body of the Stipulation for Settlement and omitted to attach the exhibits to that document.  To provide a copy of the entire Stipulation for Settlement, including the latest revisions of the exhibits to that document, I am submitting this Supplemental Declaration in Support of Plaintiff's Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement, and Approval of Notice Under Fed. R. Civl P. 23(e) and (g).  The full Stipulation for Settlement, with all exhibits as revised, is attached as Exhibit 1 to this Supplemental Declaration.

4.    To distinguish the two declarations in the Memorandum supporting the Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement, and Approval of Notice Under Fed. R. Civl P. 23(e) and (g), I have referred to my initial Declaration, which covers that motion and the Motion for Attorneys' Fees, Costs and Expense and Incentive Award for Class Representative, as the "Shuman Dec." I have referred to this Supplemental

V3:439772

2

1   Declaration in that Memorandum as the "Shuman Supp. Dec."

2       I declare under penalty of perjury under the laws of the United States of

3   America that the foregoing is true and correct.  Executed this 18th day of February,

4   2020.

Steven C. Shuman

DECLARATION OF STEVEN C. SHUMAN IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS & FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, a true and correct copy of: **SUPPLEMENTAL DECLARATION OF STEVEN C. SHUMAN IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE UNDER FED. R. CIV.P. 23(e) AND (g)** was filed electronically and will be served via Notice of Electronic Filing under the Court's CM/ECF system this 18TH day of February, 2020, to all parties with an email address on record, who have consented to electronic service in this action.

/S/ Steven C. Shuman

STEVEN C. SHUMAN

V3:439772

4

DECLARATION OF STEVEN C. SHUMAN IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS & FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT & APPROVAL OF NOTICE

# EXHIBIT 1

**FINAL - EXECUTION VERSION**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| RICHARD BEHFARIN, individually and on behalf of a class of similarly situated individuals, | No. 2:17-cv-05290-MWF-FFM |
| Plaintiff, | |
| v. | |
| PRUCO LIFE INSURANCE COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY, | |
| Defendants. | |

## STIPULATION OF SETTLEMENT AND RELEASE

## Table of Contents

| | | Page |
|---|---|---|
| I. | RECITALS | 1 |
| II. | DEFINITIONS | 6 |
| III. | SETTLEMENT RELIEF | 10 |
| A. | Reinstatement Relief for the Lapsed/Alive Population | 10 |
| 1. | Reinstatement Relief: General | 10 |
| 2. | Reinstatement Relief: Gating Rules and Exceptions | 11 |
| 3. | Reinstatement Relief: Required Claimant Certifications | 12 |
| 4. | Basic Relief Alternative. | 13 |
| 5. | Reinstatement Relief:  Entire Policy Interest Represented.. | 13 |
| 6. | Reinstatement Relief:  Process for Implementation. | 14 |
| 7. | Claims Administrator is Sole Determiner of Authorized Claimants | 14 |
| 8. | Reinstated Class Policies: Tax Treatment.. | 14 |
| B. | Enhanced Reinstatement Relief for Lapsed/Alive Claimants Who Qualify. | 14 |
| 1. | Enhanced Relief: General | 14 |
| 2. | Enhanced Relief: Criteria and Benefit | 15 |
| 3. | Enhanced Relief:  Effect of Loans, Policy Changes Requested by the Policyowner and Performance of Variable Contracts. | 16 |
| C. | Individualized Relief for the Lapsed/Deceased Population | 16 |
| 1. | Individualized Relief:  General. | 16 |
| 2. | Individualized Relief:  Scoring Structure. | 17 |
| 3. | Individualized Relief:  Scoring Records and Data | 17 |
| 4. | Individualizeed Relief:  Claims Administrator to Apply Final Score. | 18 |
| 5. | Individualized Relief:  Potential for Limited Appeal to Special Master. | 18 |
| 6. | Individualized Relief:  Settlement Payment Amounts | 19 |
| 7. | Individualized Relief: Settlement Payment Nature | 19 |
| 8. | Individualized Relief: Settlement Payment Calculation and Timing. | 20 |
| 9. | Individualized Relief:  Establishing a Claim | 21 |
| 10. | Individualized Relief:  Authorized Claimants. | 21 |

     11.  Claims Administrator is Sole Determiner of Authorized Claimants ...................... 21

  D.  Change to Business Practice for Current Policyowners and Owners of Reinstated
Class Policies. .................................................................................................................. 22

     1.  Charges at Default and Lapse/Reinstatement ................................................ 22


**IV.**    **RELEASE OF CLAIMS** ......................................................................................... **22**

  A.  General Matters Regarding Release ............................................................................... 22

  B.  Released Claims ............................................................................................................... 23

  C.  Settlement Class Release And Waiver ........................................................................... 24

     1.  Release ........................................................................................................... 24

     2.  Covenant Not to Sue and Release as Bar ..................................................... 25

     3.  Contract Rights Remain ............................................................................... 25

     4.  Claims for Fees and Costs Released ............................................................. 26

     5.  Unknown Claims Released ........................................................................... 26

     6.  Release and Waiver Upon Participation in Claims Process .......................... 26


**V.**    **PRELIMINARY APPROVAL** ............................................................................ **27**

  A.  Reasonable Best Efforts to Effectuate Settlement.. ...................................................... 27

  B.  Motion for Preliminary Approval and Stay. ................................................................. 27

  C.  No Further Action to Litigate ........................................................................................ 28

  D.  Stipulation to Certification of a Settlement Class ......................................................... 28

  E.  Plaintiff is Settlement Participant ................................................................................. 28


**VI.**   **NOTICE TO THE CLASS AND COMMUNICATIONS WITH SETTLEMENT
CLASS MEMBERS ("Notice Plan") ................................................................. 29**

  A.  Notice to Settlement Class. ............................................................................................ 29

  B.  Notice List. ..................................................................................................................... 29

  C.  Notice List is Not Settlement Class List. ...................................................................... 30

  D.  Classification of Individuals on Notice List Not Dispositive ....................................... 30

  E.  Direct Notice via Email ................................................................................................. 30

  F.  Direct Notice via U.S. Mail .......................................................................................... 31

     1.  Indicator for Lapsed/Deceased .................................................................... 31

2.   Indicator for Lapsed/Alive Enhanced Relief Eligible. ........................................... 31

3.   Effect of Incorrect Classification for Notice Purposes .......................................... 32

G.   Settlement Website ..................................................................................................... 32

H.   CAFA Notice .............................................................................................................. 33

I.   Phone Bank and Right of Communication with Claimants ........................................ 33

**VII.   REQUESTS FOR EXCLUSION AND OBJECTIONS TO SETTLEMENT ........... 35**

A.   Requests for Exclusion or "Opt-Outs" ...................................................................... 35

B.   Action Upon Requests for Exclusion ......................................................................... 36

C.   Exclusion Valid Only if Served by Authorized Person And On Behalf of All. ......... 36

D.   Objections to Settlement ............................................................................................ 36

E.   Objector Required to Disclose Interest ...................................................................... 37

F.   No Solicitation of Objection or Request to Opt Out .................................................. 37

G.   Settlement Class Members Otherwise Bound. ........................................................... 38

**VIII.   CLAIMS ADMINISTRATION ............................................................................ 38**

A.   Claims Administrator Appointment. ........................................................................... 38

B.   Claims Administration Recordkeeping (General). ..................................................... 38

C.   Notice Obligations Rest with Claims Administrator. ................................................. 38

D.   Supervision of Claims Administrator. ........................................................................ 38

E.   Claims Administrator's Determination of Authorized Claimants. ............................. 40

F.   Claims Administrator's Interface with Prudential. .................................................... 41

G.   No Recourse by Claimant for Determinations Regarding Authorized Claimants. ...... 41

H.   Audit Rights. .............................................................................................................. 42

I.   Confidentiality of Claims ............................................................................................ 42

J.   Investigation, Reporting and Treatment of Potentially Fraudulent Claims. ............... 43

K.   Claims Administrator to Establish Escrow Account. ................................................. 43

L.   Qualified Settlement Fund ......................................................................................... 44

M.   Funding Escrow Account ........................................................................................... 45

G.   Reversion from Escrow Account. .............................................................................. 45

**IX.   ATTORNEYS' FEES, COSTS AND EXPENSES ................................................... 45**

A.   Application for Attorneys' Fees and Costs. ............................................................... 45

B.   Fee Award and Incentive Award Not Part of Settlement .......................................... 46

| | C. | Payment of Fee Award | 46 |
|---|---|---|---|
| | D. | Incentive Award Class Counsel | 46 |
| | E. | No Liability for Any Other Amount or Expense | 47 |
| **X.** | | **FINAL APPROVAL AND FINAL ORDER AND JUDGMENT** | **47** |
| **XI.** | | **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION, MODIFICATION.** | **49** |
| | A. | Effective Date | 49 |
| | B. | Termination | 50 |
| | C. | No Termination Due to Fee Award | 50 |
| | D. | Exclusion Limit Triggering Termination | 50 |
| | E. | Effect of Termination | 50 |
| **XII.** | | **REPRESENTATIONS AND WARRANTIES** | **51** |
| | A. | Cooperation | 51 |
| | B. | Final and Complete Resolution; Non-Disparagement | 52 |
| | C. | Publicity and Non-Disparagement. | 52 |
| | D. | Representation by Counsel; Agreement Prepared by all Parties | 53 |
| | E. | No Admissions | 53 |
| | F. | Certification for Settlement Purposes Only | 55 |
| | G. | Settlement and Claims Administration Process Final: No Recourse | 56 |
| | H. | Headings. | 56 |
| | I. | Non-Waiver. | 56 |
| | J. | Exhibits Incorporated. | 56 |
| | K. | Entire Agreement | 56 |
| | L. | Each Party Bears Costs | 57 |
| | M. | No Assignment | 57 |
| | N. | Authority | 57 |
| | O. | Execution | 57 |
| | P. | Binding Upon Successors | 57 |
| | Q. | Court Retains Exclusive Jurisdiction | 58 |
| | R. | Applicable Law and Venue. | 58 |
| | S. | Notice to Parties | 58 |
| | T. | Return of Discovery Documents | 59 |
| | U. | Modification of Time Deadlines | 59 |

Case 2:17-cv-05290-MWF-FFM   Document 79-1   Filed 10/21/19   Page 49 of 108   Page ID #:1370

**FINAL - EXECUTION VERSION**

Case 2:17-cv-05290-MWF-FFM   Document 91   Filed 02/18/20   Page 96 of 198   Page
ID #:1571

**FINAL - EXECUTION VERSION**

This Stipulation of Settlement and Release ("Settlement Agreement" or "Stipulation"), dated October _____, 2019, is made and entered into by and among Plaintiff Richard Behfarin ("Behfarin"), individually and on behalf of the proposed Settlement Class (defined below), and Defendants Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (together and collectively, "Defendants" or "Prudential") (together the "Parties"), through their counsel of record.  This Settlement Agreement, inclusive of the Exhibits hereto, is intended to fully, finally and forever resolve, discharge, settle, release and dismiss with prejudice the above-captioned putative class action, the Released Claims as defined herein, and all issues and matters related thereto, upon, subject to, and as further specified by, the terms and conditions hereof.

## I.      RECITALS

A.      **WHEREAS,** Plaintiff Behfarin commenced a putative class action against Defendant Pruco and other unnamed individuals/entities captioned, *Richard Behfarin et al. v. Pruco Life Insurance Company and Does 1-10, inclusive*, Case No. 2:17-cv-05290-MWF-FFM (C.D. California), as amended to include all Defendants (the "Action"), seeking to represent a nationwide class of persons who owned universal life or variable universal life insurance policies issued by Defendants which policies defaulted and/or lapsed between July 18, 2013 and the present;

B.      **WHEREAS**, Plaintiff alleged that Defendants requested payments from Policyowners applying Guaranteed Charges that were in excess of the amounts allowed under Defendants' universal and variable universal life insurance contracts when such policies went into default or lapsed, including by imposing increased, improper, and undisclosed loads and cost of insurance charges calculated at maximum rates and based on criteria not specified in the

**FINAL - EXECUTION VERSION**

contract to cure default or reinstate a lapsed policy;

      **C.**    **WHEREAS**, Plaintiff alleged that certain of Defendants' universal life and variable universal life Policyowners experienced policy lapse and were not able to reinstate after Defendants requested payment of three months of premium calculated at Guaranteed Charges in order to cure a default or deficiency or to reinstate the policy;

      **D.**    **WHEREAS**, Plaintiff alleged that, during the alleged Class Period, Defendants sent notices to certain of its universal and variable universal life Policyowners upon policy default, during grace periods and/or upon policy lapse, which specified amounts owed to cure a default and prevent lapse or to reinstate policies following lapse, that were allegedly incorrect or inconsistent with policy requirements or terms;

      **E.**    **WHEREAS,** Plaintiff further alleged that, during the alleged Class Period, certain Policyowners were unable to reinstate their policies following a policy default and lapse caused by the above practices, due to other policy provisions and conditions, which caused injury;

      **F.**    **WHEREAS**, Plaintiff alleged that Defendants' conduct described in the Action constituted breach of contract, breach of the duty of good faith and fair dealing, and violations of the California Unfair Competition Law, Bus. & Prof. Code §§17200 *et seq*., and similar laws of other United States jurisdictions;

      **G.**    **WHEREAS**, the proposed class that Plaintiff moved to certify in the Action in his motion for class certification included persons who owned or had a beneficial interest in: (i) policies that lapsed for a final time during the Class Period and have not been reinstated to date where there is at least one living insured (the "Lapsed/Alive Population"); (ii) policies that lapsed for a final time during the Class Period and were not reinstated where the insured(s) are deceased (the "Lapsed/Deceased Population"); and (iii) policies that went into default or lapsed

2

Case 2:17-cv-05290-MWF-FFM   Document 78-1   Filed 10/11/19   Page 92 of 198   Page
ID #:1253

**FINAL - EXECUTION VERSION**

for which payment was made during the Class Period to cure the default or to reinstate after lapse where there is at least one living insured and the policy remains in force (the "Current Policyowner Population"), (taken together, the "Settlement Class" and "Class Policies" as more specifically defined below);

     **H.**     **WHEREAS**, Plaintiff sought damages and declaratory and injunctive relief for those Class Policies and Settlement Class Members in the Lapsed/Alive and Lapsed/Deceased Populations, and sought declaratory and injunctive relief for those Class Policies and Settlement Class Members in the Current Policyowner Population in recognition of the fact that only the amount of premium needed to bring the policy current based on Current Charges (as defined below) was applied as payment, and that all amounts in excess of Current Charges were invested in the Class Policy's contract fund;

     **I.**     **WHEREAS**, Defendants deny all alleged and implied wrongful acts and practices, dispute any injury or liability, dispute Plaintiff's ability to certify any litigation class, and have vigorously defended the Action;

     **J.**     **WHEREAS**, during the pendency of the Action, counsel for Plaintiff and the putative class conducted discovery and investigation into the claims and allegations raised by the Complaint and were provided by Defendants with extensive documentation, electronic data, and other information in connection therewith, including over 60,790 pages of documents, dozens of Interrogatory responses and responses to Requests to Admit, extensive data on the class population, and policy records related to numerous randomly selected Policyowners (names and personal identifying information redacted), pursuant to Plaintiff's requests;

     **K.**     **WHEREAS**, the Parties retained insurance and actuarial experts regarding the allegations in the Action and the appropriateness of class certification, which experts reviewed

all documents, electronic data, discovery responses and the randomly selected sample
Policyowner records and considered the widely varying circumstances of Policyowners and the
decisions made regarding policies entering default and/or lapse;

**L.      WHEREAS**, on January 25, 2019, the Parties and counsel participated in an
initial mediation session before the Honorable William J. Cahill (Ret.) of JAMS to evaluate and
commence negotiation of a potential class-wide settlement;

**M.      WHEREAS**, with the assistance of Judge Cahill, the Parties continued settlement
discussions and negotiations through two additional in-person mediation sessions in February,
2019 and April, 2019, as well as numerous communications between these in-person mediation
sessions to continue negotiations;

**N.      WHEREAS**, these efforts culminated on April 30, 2019, when the Parties
reached an agreement in principle, subject to the negotiation of a stipulation of settlement and
release and approval of the class-wide settlement by the Court;

**O.      WHEREAS**, this Settlement Agreement was reached as the result of extensive,
good-faith, and arm's length negotiations between the Parties and their counsel, including with
the assistance of the Honorable William J. Cahill (Ret.) of JAMS;

**P.      WHEREAS,** this Settlement Agreement, together with all Exhibits hereto,
supersedes all prior negotiations, drafts, discussions and term sheets, and reflects the final and
binding agreement between the Parties;

**Q.      WHEREAS**, before entering into this Settlement Agreement, the Parties, by and
through their respective counsel, conducted a thorough investigation and evaluation of the
relevant law, facts, allegations and defenses to assess the merits of the claims and potential
claims in the Action to determine the strengths and weaknesses of the case as well as the

**FINAL - EXECUTION VERSION**

appropriateness of class certification and the legal and factual grounds for opposition thereto;

    **R.**    **WHEREAS**, the Parties and their respective counsel have taken into account the risks, uncertainties, delays, and expenses involved in prosecuting and defending the Action, and other relevant considerations, and have concluded that it is in their respective best interests, including the interests of the proposed Settlement Class, to compromise and to fully and finally resolve and settle the Action in the manner and on the terms and conditions set forth in this Settlement Agreement, and have determined that this Settlement Agreement is fair, adequate, and reasonable and in the best interests of the Settlement Class; and

    **S.**    **WHEREAS**, Defendants continue to deny all allegations of fault, wrongdoing, and liability whatsoever against them and maintain that their practices have at all times been lawful and proper, deny all allegations that Plaintiff, or any member of the proposed Settlement Class, suffered any damages or harm by reason of any alleged conduct, statement, act, or omission of Defendant(s) or that Plaintiff could establish any damages or entitlement to injunctive relief on a class-wide basis, and deny that any putative class could meet the requirements for certification as a litigation class.

    **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by, between and among Plaintiff (individually and on behalf of the entire Settlement Class) and Defendants, that, in consideration of the benefits flowing to the parties from the Settlement Agreement, the Action and the matters that were or could have been raised in the Action and/or that arise out of or are related to the alleged facts at issue in the Action hereby are settled, compromised and dismissed on the merits and with prejudice, and all Released Claims as against the Releasees shall be released, upon and subject to the terms and conditions set forth below and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

FINAL - EXECUTION VERSION

## II.    DEFINITIONS

As used in this Settlement Agreement and the annexed Exhibits, which are an integral

part of this Settlement Agreement and are incorporated in their entirety herein, the following

terms shall have the following meanings (unless a part or subpart of this Settlement Agreement

or its Exhibits otherwise provides):

a.    **"Action"** means the matter captioned, *Richard Behfarin et al. v. Pruco et al.*, Case No. 2:17-cv-05290-MWF-FFM (C.D. California), as amended to include all Defendants, brought in the United States District Court for the Central District of California.

b.    "**Agent**" means any agent or other representative of Prudential (including brokers and independent contractors appointed by Prudential) in respect of the solicitation, negotiation, sale, delivery and/or servicing of one or more Class Policies which is/are the subject of a Claim.

c.    **"Authorized Claimant"** means any Claimant whose Claim for recovery has been allowed by the Claims Administrator pursuant to the terms of the Settlement Agreement.

d.    **"Basic Relief"** means the amount of $250.

e.    **"Claim"** means a claim by a Claimant submitted to the Claims Administrator.

f.    **"Claim Form"** means the form submitted by a Claimant to tender a Claim.

g.    **"Claimant"** means: (a) for the Lapsed/Alive Population, all such person(s) or entity(ies) having, individually or together, an ownership interest in a Class Policy which is the subject of a Claim; and (b) for the Lapsed/Deceased Population, all such person(s) or entity(ies) who were, individually or together, a Policyowner of a Class Policy which is the subject of a Claim, or if all Policyowners on a Class Policy are also deceased then a designated beneficiary at the time of final lapse of a Class Policy which is the subject of a Claim.

h.    **"Claims Administration Expenses"** means the expenses incurred by the Claims Administrator in fulfilling the obligations described throughout this Settlement Agreement, including, but not limited to, providing Notice (including CAFA notice), managing the Settlement Website, receiving, processing and determining Claims, responding to inquiries from the Settlement Class, mailing payments (where applicable) for Authorized Claimants, and related services, including serving as Escrow Agent and paying taxes and tax expenses related to the Escrow Account (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants retained by the Claims Administrator).

i.    **"Claims Administrator"** means Epiq Class Action & Claims Solutions, Inc., or such other reputable administration company that has been selected jointly by the Parties and approved by the Court to perform the Claims Administration duties set forth in this Settlement

FINAL - EXECUTION VERSION

Agreement.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class to disclose all information required by the Claims Administrator to perform the duties and functions ascribed to it herein.

      j.      **"Class Counsel"** means the law firm of Engstrom, Lipscomb & Lack, together with Robert B. Mobasseri, P.C.

      k.      **"Class Notice"** or **"Notice"** means the notices distributed pursuant to the Notice Plan at Section VI of this Settlement Agreement, and includes, collectively, the Summary Notice mailed to persons and entities associated with Class Policies and related materials and the Notice on the Settlement Website informing the Settlement Class of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be provided in the manner set forth herein, consistent with the requirements of Due Process and Rule 23, and is substantially in the form of Exhibits A and B hereto.

      l.      **"Class Period"** means July 18, 2013 to and through the date of Preliminary Approval.

      m.      **"Class Policy"** or **"Class Policies"** means one or more individual universal life or variable universal life insurance policies issued by a Defendant, as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or restatement amount, and which policy either entered into default or lapsed between July 18, 2013 and the date of Preliminary Approval, or which had default cured or was reinstated on or after July 18, 2013 and remains in force on the date of Preliminary Approval.

      n.      **"Class Representative"** or **"Plaintiff"** means the named Plaintiff in the Action, Richard Behfarin.

      o.      **"Court"** means the United States District Court for the Central District of California.

      p.      **"Current Charge(s)"** means, with respect to a Class Policy, the monthly cost of insurance then applicable to a particular policy, along with applicable charges including, but not limited to, sales loads and administrative fees.

      q.      **"Current Rate(s)"** means, with respect to a Class Policy, the monthly cost of insurance rate applicable to the particular policy and insured.

      r.      **"Defendant"** or **"Defendants"** means, individually or collectively, Prudential, as defined herein.

      s.      **"Defendants' Counsel"** means Dentons US LLP.

      t.      **"Effective Date"** means the first date by which all of the events and conditions set forth in Section XI.A. have occurred.

      u.      **"Escrow Account"** means the separate, interest-bearing account to be established by the Claims Administrator under terms acceptable to all Parties at a depository institution

FINAL - EXECUTION VERSION

insured by the Federal Deposit Insurance Corporation, wherein any funds payable by Prudential prior to distribution to Authorized Claimants, or to be utilized for payment of claims administration, tax expenses, the Fee Award or the Incentive Award, shall be deposited and held in escrow.

      v.      "**Escrow Agent**" means the Claims Administrator.

      w.      "**Execution Date**" means the date on which this Settlement Agreement is executed by the last party to do so.

      x.      "**Fee Award**" means the amount of attorneys' fees, costs and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid from the Escrow Account funded by Prudential.

      y.      "**Final Approval Hearing**" means the hearing at or after which the Court will make its decision whether to finally approve the Settlement as fair, reasonable and adequate.

      z.      "**Final Order and Judgment**" means the order issued by the Court approving the Proposed Settlement and the judgment entered pursuant to that order after the Final Approval Hearing.

      aa.      "**Final Settlement Date**" means the date on which the Settlement (as approved by the Final Order and Judgment) becomes "Final".  For purposes of the Settlement:  (1) if no appeal has been taken from the Final Order and Judgment, "Final" means that the time to appeal therefrom has expired; or (2) if any appeal has been taken from the Final Order and Judgment, "Final" means that all appeals therefrom, including any petition for rehearing or reargument, petition for rehearing *en banc* and petitions for *certiorari* or any other form of review have been finally disposed of in a manner that affirms the Final Order and Judgment.

      bb.      "**Guaranteed Charge(s)**" means, with respect to a Class Policy, the monthly cost of insurance that a Policyowner would be charged with respect to a particular policy and insured if calculated based on Guaranteed Rate(s), along with guaranteed maximum applicable charges including, but not limited to, sales loads and administrative fees.

      cc.      "**Guaranteed Rate(s)**" means, with respect to a Class Policy, the monthly cost of insurance rate applicable to the particular policy and insured that is guaranteed by the policy contract as a rate that cannot be exceeded when determining the Current Rate.

      dd.      "**Incentive Award**" means any award by the Court to the Class Representative as described in Section IX.D.

      ee.      "**Lapsed/Alive Population**" means Settlement Class Members associated with Class Policies that lapsed for a final time during the Class Period and have not been reinstated to date where there is at least one living insured.

      ff.      "**Lapsed/Deceased Population**" means Settlement Class Members associated with policies that lapsed for a final time during the Class Period and were not reinstated where the insured(s) are deceased.

gg.   **"Limited Appeal"** means the limited right of an Authorized Claimant for Individualized Relief to pursue an appeal to the Special Master at his or her own expense as described at Section III.C.5.

hh.   **"Notice Date"** means the date when the Class Notice is first mailed or published.

ii.   **"Notice Plan"** means the plan for distribution of notice to the Settlement Class and communications with Settlement Class Members described in Section VI below.

jj.   **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a person within the Settlement Class must be made.

kk.   **"Plaintiff"** means the named plaintiff in the Action, Richard Behfarin.

ll.   **"Policyowner(s)"** means owners of one or more Class Policy(ies).  Excluded from the definition are persons or entities who signed a release in connection with the settlement of a claim, complaint, action, lawsuit or proceeding, pending or threatened, that released Prudential with respect to such Policy(ies).

mm.   **"Preliminary Approval Order"** means the anticipated order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing that Class Notice be provided.

nn.   **"Proposed Settlement"** means the terms of settlement as set forth in this Settlement Agreement.

oo.   **"Prudential"** means The Prudential Insurance Company of America, Pruco Life Insurance Company, and Pruco Life Insurance Company of New Jersey.

pp.   **"Reinstated Class Policy"** means an insurance policy issued by Prudential which is/was reinstated pursuant to Section III.A. herein.

qq.   **"Reinstatement Amount"** means the amount requested by Prudential to reinstate a Class Policy if such relief is awarded pursuant to this Settlement.

rr.   **"Reinstatement Process Guidelines"** means the document by the same name attached as Exhibit C hereto, and consists of rules and procedures that will govern the process by which a Reinstated Class Policy will be offered and reinstated by Prudential if such relief is awarded under the Settlement.

ss.   **"Releasees"** means Pruco Life Insurance Company, The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey, individually and collectively, and all of their current, former and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, employees, agents, independent contractors, brokers, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns, or any of them.

tt.     **"Releasing Parties"** means Plaintiff and Settlement Class Members who do not validly and timely opt out of the Settlement Class, all beneficiaries of Class Policies, and with respect to each Class Policy, all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, agents, consultants, officers, partners, principals, members, attorneys, accountants, financial and other advisors, shareholders, investment advisors, and legal representatives.

uu.     **"Scoring Factor"** shall have the meaning set forth in the Scoring Guidelines.

vv.     **"Scoring Guidelines"** means the "Claims Administration and Scoring Guidelines for the Lapsed/Deceased Population" attached hereto as Exhibit D, and shall serve (substantially in the form attached) as a manual of procedures governing the Scoring Process.

ww.     **"Scoring Process"** means the procedures for presentation to and evaluation of Claims by the Claims Administrator, as described in the Scoring Guidelines.

xx.     **"Secondary Guarantee"** or **"No Lapse Guarantee"** means a contract provision (or provisions) in a Class Policy that ensures that, for a certain period of time, the subject policy will stay in effect even if there is insufficient value in the contract fund to cover policy charges.

yy.     **"Settlement"** means the Proposed Settlement, with such modifications as are made and approved by the Court, as set forth in the Final Order and Judgment.

zz.     **"Settlement Class Members"** means all Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are also deceased, then also any designated beneficiary(ies) of that Class Policy at time of final lapse.

aaa.     **"Special Master"** means the Honorable William J. Cahill, (Ret.) of JAMS, or if he is unable or unwilling to serve in that capacity, an alternative JAMS neutral selected by the parties, located in JAMS' Los Angeles, Century City or San Francisco offices.

bbb.     **"Tax Expenses"** means the expenses and costs incurred by the Claims Administrator in connection with determining the amount of, and paying, any taxes owed with respect to the Escrow Account (including, without limitation, expenses of tax attorneys and accountants).

All other capitalized terms used in this document shall have the meanings ascribed to

them by this Stipulation and the Exhibits hereto, including the Scoring Guidelines.

## III.     SETTLEMENT RELIEF

### A.     Reinstatement Relief for the Lapsed/Alive Population.

**1.     Reinstatement Relief: General**.  Prudential will offer Authorized Claimants who

fall within the Lapsed/Alive Population and who have not timely and validly excluded

themselves from the Settlement, the opportunity to reinstate their Class Policy/ies, upon the same

contract terms and face amount as existed at the time of final lapse, without underwriting, at

Current Rates and Current Charges as of the date of reinstatement, but subject to both (a) the

Gating Rules, exceptions and process set forth at Section III.A.2. below, and (b) Claimants'

timely submission of a completed Claim Form, including qualifying answers to the required

Certifications on the Claim Form such that the Claims Administrator determines Claimant to be

an Authorized Claimant  ("Reinstatement Relief").

2.       **Reinstatement Relief: Gating Rules and Exceptions**.  The Reinstatement Relief

described at Paragraph III.A.1, *supra*, is subject to all of the following:

> a.       **Gating Rule 1.**  Reinstatement Relief will not be available, and the
> Claimant may receive only Basic Relief (if all other conditions are satisfied) if:
> (i) the Class Policy had a face amount of $250,000 or higher at the time of final
> default and lapse;
> (ii) at the time of final default, no more than three months' premium at Current
> Rates, plus applicable loads or fees, was requested by Prudential to cure the
> default, either due to the presence of a Secondary Guarantee or otherwise; and
> (iii) following final default and lapse, no application to reinstate the subject Class
> Policy was timely received by Prudential.
>
> b.       **Gating Rule 2:**  Reinstatement Relief will not be available, and the
> Claimant may receive only Basic Relief (if all other conditions are satisfied) if, at
> the time of final default and lapse, the amount requested by Prudential to cure the
> default or reinstate following lapse would have kept the policy in force for three
> and one-half (3.5) months or less, based on Current Charges.
>
> c.       **Gating Process.**  Prudential will provide the Claims Administrator with
> data from Prudential's records sufficient to enable the Claims Administrator to
> apply Gating Rule 1 and Gating Rule 2 (collectively, the "Gating Rules") to Class
> Policies.  Claimants to whom these Gating Rules apply will have any Claim Form
> submitted considered as a Claim for Basic Relief.  Claim Forms requesting any
> other type of relief will not be accepted as to Class Policies to which the Gating
> Rules apply and shall have no force or effect.

FINAL - EXECUTION VERSION

3.     **Reinstatement Relief: Required Claimant Certifications.**  Any Claimant in the Lapsed/Alive Population who submits a Claim requesting Reinstatement Relief must timely submit a Claim Form, in the form attached hereto as Exhibit E, that includes, among other things, the following Certifications made under penalty of perjury.  These Certifications are continuing Certifications that shall serve as attestations up to the date upon which a Reinstated Class Policy is reinstated.  Claim Forms submitted by Claimants who do not or cannot certify to the Certifications below will be deemed Claims for Basic Relief.  The Certifications include:

a.     **No Prior Decision to Discontinue Policy.**  Claimant and/or any Policyowner of the subject Class Policy did not make a deliberate decision to discontinue the Class Policy prior to default, for any reason.

b.     **Amount Requested by Prudential Directly Impacted Policy Lapse.**  If Prudential had requested that Claimant and/or any Policyowner of the subject Class Policy pay a lower amount to cure the default or reinstate the policy that was equal to no more than three months of premium based on Current Charges plus required loads/administrative fees, Claimant and/or any Policyowner would have paid that amount and kept the Class Policy in force.

c.     **No Replacement/Purchase of Other Insurance.**  Claimant and/or any Policyowner of the subject Class Policy did not replace (formally or informally) the face amount of insurance of the subject Class Policy with any other life insurance prior to notice of final default.  Further, Claimant and/or any Policyowner did not replace the face amount of the subject Class Policy with any other life insurance in an amount equal to or more than 50% of the face amount of the subject Class Policy, after default and before lapse.  Claimant consents to Prudential checking Medical Information Bureau ("MIB") records to determine if there is evidence of replacement, and to contact identified carriers for follow up as necessary to investigate if this statement is true and correct

d.     **Owner of Record After Final Lapse.**  Claimant and/or any insured or Policyowner of the subject Class Policy is not a life settlement company, investor, or other person or entity who acquired the subject Class Policy  (or any right to the subject Class Policy under the Settlement) after final lapse without having any familial or employment relationship with the person whose life is insured by the subject Class Policy.

e.     **No Present Intent to Sell/Transfer to Third Party.**  Claimant and all Policyowner(s) of the subject Class Policy represent that they have no present intent to sell or transfer the subject Class Policy, if reinstated, or any right with respect to the subject Class Policy, to a life settlement company, investor or

FINAL - EXECUTION VERSION

individual or entity with whom the insured has no familial or employment relationship.

**f.**     **Insured is Alive**.  At least one insured on the subject Class Policy is alive as of the date of the Claim Form and date of proposed reinstatement.

**g.**     **Claimant Entitled to Act.**  Claimant is the Policyowner, has the right to act with respect to the Class Policy, assumes any and all responsibility for the liability that may result from filing a Claim in the event anyone else asserts ownership of the Class Policy or files a claim on the same Class Policy.

4.     **Basic Relief Alternative.**  Claimants subject to the Gating Rules/Exceptions described above at Section III.A.2, and Claimants who are unable to truthfully sign the requisite Claimant Certifications described above at Section III.A.3, or any other Claimant who elects such relief, shall be eligible for Basic Relief.  Basic Relief shall be payable only once per each Class Policy after timely submission of a completed Claim Form.  No Claimant and no Class Policy shall be eligible for both an offer of Reinstatement Relief and Basic Relief.

5.     **Reinstatement Relief:  Entire Policy Interest Represented**.  If more than one person or entity has an ownership interest or ownership right in a Class Policy in the Lapsed/Alive Population, all persons having such an interest or right in such Class Policy must either assign their rights by written instrument or act jointly in exercising any right to Reinstatement Relief, Enhanced Relief (as set forth at Section III.B below) or any right to Object to this Settlement or Exclude a Class Policy from this Settlement (as set forth at Section VII below).  If, absent such assignment, a Class Policy is reinstated at the request of less than all persons or entities with an ownership interest or ownership right, the entire Settlement Class and all Class Policies (and Releasing Parties) will be subject to the Release herein, and the Policyowner(s) exercising the right to Reinstatement Relief will assume all obligations as well as all potential liability to any individual or entity who asserts an interest in the Class Policy.

6. **Reinstatement Relief: Process for Implementation.** Any Claimant who passes all of the Gating Rules and who submits a timely Claim Form seeking reinstatement, including making all of the required Certifications, if found by the Claims Administrator to be an Authorized Claimant, will be offered reinstatement of the subject Class Policy without underwriting, subject to payment of the required Reinstatement Amount. Additional processes and procedures governing reinstatement are set forth in the Reinstatement Process Guidelines, Exhibit C hereto including, but not limited to, the provision of information, including the applicable Reinstatement Amount and charges, fees and required premium payments going forward.

7. **Claims Administrator is Sole Determiner of Authorized Claimants.** All decisions regarding whether or not a Claimant is an Authorized Claimant and eligible for Reinstatement Relief will rest with the Claims Administrator. There shall be no recourse to any Defendant or Released Party or their counsel, or to the Class Representative or Class Counsel, or to the Claims Administrator or the Court, for any determination made by the Claims Administrator as to whom Reinstatement Relief will be offered. Policyowners shall retain such reinstatement rights as may exist in the terms of their Prudential contracts without regard to this Settlement Agreement.

8. **Reinstated Class Policies: Tax Treatment**. Reinstated Class Policies will be administered by Prudential to comply with the definition of life insurance under federal tax law.

B. **Enhanced Reinstatement Relief for Lapsed/Alive Claimants Who Qualify.**

1. **Enhanced Relief: General**. Class Policies may be entitled to "Enhanced Relief", as described in this Section III.B., if Prudential's existing records confirm that the Policyowner submitted a timely application for reinstatement pursuant to that policy's contract terms, the final

**FINAL - EXECUTION VERSION**

lapse occurred during the Class Period but before February 25, 2019, and an application for reinstatement was submitted and not approved.  Claimants who may be eligible for Enhanced Relief will be identified by Prudential before sending Class Notice, and will be provided an Enhanced Relief Claim Form, subject to an individual access code as set forth at Section VI.F.2.

     2.    **Enhanced Relief: Criteria and Benefit.**  To receive Enhanced Relief, Claimants must:  (a) be identified by Prudential as qualifying for Enhanced Relief based on existing Prudential records reflecting that a timely application for reinstatement was submitted and not approved; (b) pass all Gating Rules (see above Section III.A.2.); (c) timely submit a completed Claim Form including all required Certifications; (d) complete reinstatement of the subject Class Policy, including payment of the required Reinstatement Amount pursuant to the Reinstatement Process Guidelines; and (e) pay all required premiums necessary to keep the Reinstated Class Policy in force for the first three years following the Reinstatement Date ("Reinstatement Years 1, 2 and 3").  For Claimants who are determined by the Claims Administrator to meet (a)-(c), and determined by Prudential to meet (d)-(e) above, at the beginning of the fourth and fifth year following the Reinstatement Date, Prudential will pay on the Policyowner's behalf and apply to the policy the amount of premium (inclusive of all premium/tax loads) necessary to satisfy the cost of insurance for the policy, based on the then-Current Rates and Current Charges for that year.  All other amounts, if any, that may be necessary to keep the Reinstated Class Policy in force and/or to satisfy policy terms (such as, for example, a rider or secondary guarantee) will remain the responsibility of the Policyowner.  At the beginning of the sixth year following reinstatement, the owner(s) of the Reinstated Class Policy who receive Enhanced Relief will again be required to make premium payments based on then-Current Rates and Current Charges.

FINAL - EXECUTION VERSION

3.     **Enhanced Relief:  Effect of Loans, Policy Changes Requested by the Policyowner and Performance of Variable Contracts.**  An award of Enhanced Relief will have no impact on a Claimant's/Reinstated Class Policy owner's obligation to pay interest and/or principal payments as may be due on loans taken against the cash value of subject policy. Claimants/Reinstated Class Policy owners who receive Enhanced Relief will be responsible for the payment of loan interest and/or principal during the fourth and fifth years following reinstatement; and failure to repay such amounts, if due, will put the policy at risk of lapse. Further, if a Reinstated Class Policy owner makes or requests any change to the Reinstated Class Policy that effects its performance, such as (without limitation) a loan, withdrawal, surrender, a change in the policy's face amount, or any other change, this may prevent the Reinstated Class Policy from remaining in force, and the policy's continuation would not be guaranteed. Defendants make no representations or warranties regarding the impact of any such change if made by the Policyowner.  In addition, for Reinstated Class Policy(ies) that are variable universal life contracts, investment performance will affect the policy's cash value and additional payment of premium may be required beyond the amounts Prudential will contribute as described in Section III.B.2 above.

C.     **Individualized Relief for the Lapsed/Deceased Population**

1.     **Individualized Relief:  General.**  Prudential will offer individualized relief to Authorized Claimants who fall within the Lapsed/Deceased Population, and who have not timely and validly excluded themselves from the Settlement.  The individualized relief will be in the form of a monetary Settlement Payment (defined below), the amount of which will be determined by a Claim Scoring Process.  The Claim Scoring Process is based on an individual analysis and determination of each Claim according to Scoring Guidelines developed and agreed

**FINAL - EXECUTION VERSION**

to by the Parties, and attached as Exhibit D hereto.  The Scoring Guidelines set forth Scoring

Factors, the process and rules that apply to the Scoring Factors and the remedies available to the

Lapsed/Deceased Population based on the information and data contained in Prudential's

records.  Taken as a whole, the Scoring Process provides for a particularized review of the

Claims that are filed, with a remedy reflective of the evidence available in Prudential's records

related to the Class Policy and the risks and uncertainties of litigation.

2.	**Individualized Relief:  Scoring Structure**:  Claims will be scored based upon a

four-tiered, 3-2-1-0 scale, as described in detail in the Scoring Guidelines.  The Scoring

Guidelines establish rules as to the significance of certain facts/factors that may be present in

Class Policy records.  Mutually agreeable guidelines and training will be provided by the Parties

to the Claims Administrator, who will conduct all of the scoring and determine Final Scores.

3.	**Individualized Relief:  Scoring Records and Data**.  Scoring by the Claims

Administrator will be based on the Prudential records and data specified in the Scoring

Guidelines for all Class Policies in the Lapsed/Deceased Population as to which a Claim has

been made.  The records identified in the Scoring Guidelines as to Class Policies on which a

Claim is made will be provided to the Claims Administrator by Prudential in the manner

maintained by Prudential in its regular course of business.  No information relevant to the

Scoring Factors or the determination of whether a Claimant is an Authorized Claimant will be

redacted before information is provided to the Claims Administrator.  The Claims Administrator

may request that Prudential provide recordings of specific telephone calls identified in

Prudential's written file records which were made within the time period beginning ninety (90)

days prior to the date of the default that led to the final lapse and ending ninety (90) days after

the date of final lapse, but may do so if and only if the Claims Administrator determines that the

FINAL - EXECUTION VERSION

written record is not sufficiently clear and that audio telephone call recordings (in addition to the available notes of conversations, which appear in each file where relevant) could provide important additional guidance in applying the Scoring Factors.

4.     **Individualized Relief:  Claims Administrator to Apply Final Score.**  For each Claim where a timely, completed Claim Form is submitted by an Authorized Claimant, the Claims Administrator will have two separate scorers review the Claim, apply the Scoring Factors and assign a Score.  If the two individual scorers agree on the Score, that becomes the Final Score.  If the two scorers do not agree, the Claim will be sent to a third scorer at the Claims Administrator (without the scores of the two prior reviewers) who will review all documentation, data and audio call recordings (if any previously were requested) and will serve as tie-breaker and/or final scorer.  The third scorer's determination will be the Final Score, which will be reported by the Claims Administrator to the Claimant by letter.  Claimants will not receive an analysis or the specific reasons for the scores they received.

5.     **Individualized Relief:  Potential for Limited Appeal to Special Master.**  An Authorized Claimant can pursue a Limited Appeal if the claim was decided by tie-breaker (i.e., third scorer).  Limited Appeals will be referred to the Honorable William J. Cahill (Ret.) of JAMS for review.  If Judge Cahill becomes unavailable for this purpose, an alternative JAMS Los Angeles, Century City or San Francisco neutral selected by the parties will serve as Special Master.  The cost of the Limited Appeal will be $1,000, payable exclusively by the Claimant, to JAMS.  Limited Appeals can be taken within ten (10) days of receipt of the Final Score, and only by an Authorized Claimant in a tie-breaker situation where the Final Score has been determined by a third scorer.  Appeals may not be taken by any other person or entity including, but not limited to, any Defendant or Class Counsel.  Judge Cahill will review the file independently,

**FINAL - EXECUTION VERSION**

without information about the Claims Administrator's evaluation of the case or assigned score.

Judge Cahill's determination of a Limited Appeal will be final, and will not be subject to any

challenge or further appeal.  The Settlement Class and Defendants waive any right of recourse to

the Court for purposes of challenging any particular Final Score applied by the Claims

Administrator or Judge Cahill.

6.　　**Individualized Relief:  Settlement Payment Amounts.**  The Claims

Administrator will pay, from the Escrow Account, Settlement Payments to Authorized Claimants

whose claims are scored as part of the Scoring Process.  The amount of a Settlement Payment

will be determined by the Final Score, as follows:

> a.　　**Final Score 3.**  For a Final Score of 3, the Settlement Payment will be equal to 75% of the death benefit amount of the subject Class Policy as of the date of death, reduced by 75% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

> b.　　**Final Score 2.**  For a Final Score of 2, the Settlement Payment will be equal to 55% of the death benefit amount of the subject Class Policy as of the date of death, reduced by 55% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

> c.　　**Final Score 1.**  For a Final Score of 1, the Settlement Payment will be equal to 5% of the death benefit amount of the subject Class Policy as of the date of death, reduced by 5% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

> d.　　**Final Score 0.**  For a Final Score of 0, Basic Relief will be paid.

7.　　**Individualized Relief: Settlement Payment Nature**.  Amounts required to be

paid hereunder will be funded by Prudential and paid out of the Escrow Account.  The parties

agree that all payments will be made exclusively as a compromise and shall be deemed  a

Settlement Payment.  Under no circumstance will a Settlement Payment be considered a death

benefit payment (or any other type of payment) under the terms of a Class Policy.

8.     **Individualized Relief: Settlement Payment Calculation and Timing.**  All

Settlement Payments will be calculated after Final Scores have been applied to all Claimants,

and after all Limited Appeals pursuant to Section III.C.5. above are finally adjudicated, as

follows.

a.     Within ten (10) days of the date on which all Claims received a Final Score, the Claims Administrator will provide to Prudential the list of Authorized Claimants including the policy number for each Class Policy and the Final Score applied to each Claim.

b.     For each Claim that receives a Final Score of 3, 2 or 1, Prudential will calculate the death benefit and the minimum premium payment (using Current Rates and Charges) on the Class Policy that would have been required to reinstate the Class Policy and have it stayed in force from time of final lapse to the date of death, and within ten (10) business days, provide the results to the Claims Administrator.

c.     Based upon the Final Score, and within ten (10) days of receiving the calculations provided by Prudential set forth in the above subparagraph (b), the Claims Administrator will determine the Settlement Payment including interest and inform Prudential of the amount required in the Escrow Account to fund all Settlement Payments.

d.     Within ten (10) business days following receipt of notice from the Claims Administrator of the amount required in the Escrow Account to fund all Settlement Payments, Prudential shall cause sufficient monies to be paid into that Escrow Account.

e.     Settlement Payments will not be issued to Authorized Claimants unless and until the Settlement becomes Final.  Once the Settlement becomes Final, the Claims Administrator shall issue checks for the Settlement Payments as promptly as possible, but in no more than sixty (60) days following the Settlement becoming Final.

f.     The Claims Administrator shall perform an address trace for any undeliverable check following receipt of any undeliverable check, and shall re-

send the check within sixty (60) days if a different address is found. If a check for
a Settlement Payment mailed to an Authorized Claimant and not returned as
undeliverable is not cashed within one hundred eighty (180) calendar days, the
funds shall revert back to the Escrow Account.

9.      **Individualized Relief:  Establishing a Claim**.  To be eligible for Individualized

Relief, a Claimant must timely complete and submit a Claim Form, in the form attached as

Exhibit F.  In addition to the items on the Claim Form, the Claimant must provide due proof of

death of all insureds on the Class Policy to the extent that the Claims Administrator may require,

and provide all materials and information that are required by the Claims Administrator as

further detailed in the Scoring Guidelines (which requirements are intended to mirror what

generally would be required in the ordinary course of Prudential's business to substantiate a

death).  The Claimant must certify, under penalty of perjury, that the Claimant stands in the

shoes of the Policyowner of the Class Policy and/or otherwise is entitled to collect a Settlement

Payment made with respect to the Class Policy and will distribute such Settlement Payment in

whole or in relevant part to any other individual or entity who has a recognized interest therein.

10.     **Individualized Relief:  Authorized Claimants:**  Notwithstanding any other

provision in this Stipulation, where more than one person or entity has an ownership interest or

right in a Class Policy, all persons claiming such an interest or right in such Policy must (a) act

jointly in exercising any right (including any right to exclude him or herself from the Class or to

object to this Settlement) created under this Stipulation; and (b) assume all responsibilities and

liabilities associated with distribution of the Settlement Payment under law, including making

any payments that may be owed to others.

11.     **Claims Administrator is Sole Determiner of Authorized Claimants.**  All

decisions as to whether a Claimant is an Authorized Claimant will rest with the Claims

Administrator.  With respect to the Settlement Class and all Class Policies, there shall be no

recourse to any Defendant or Releasee or its counsel, or to the Class Representative or Class

Counsel, or the Court, for any determination made by the Claims Administrator as to whom

Settlement Payment will be directed.  Likewise, there shall be no ability to challenge, nor any

recourse or right to recover, from the Claims Administrator for determinations made under this

Settlement Agreement.

> **D.** **Change to Business Practice for Current Policyowners and Owners of Reinstated Class Policies.**

> 1. **Charges at Default and Lapse/Reinstatement**:  Defendants will maintain

policies and procedures to ensure that, from the date of this Settlement Agreement going

forward, with respect to universal life and variable universal life policies issued by a Defendant

in the United States and that remain in force, in the absence of a contract term providing for a

different or lower amount or a different calculation formula (such as, for example, a Secondary

Guarantee against lapse, or a prior signed settlement and/or release agreement with the

Policyowner), and in the absence of a state statutory or regulatory or administrative directive to

the contrary, the amount requested to cure a default or to reinstate a policy will be calculated by

reference to Current Rates and then-Current Charges and not by reference to Guaranteed Rates.

## IV.   RELEASE OF CLAIMS

> **A.** **General Matters Regarding Release.**

> 1. The obligations incurred pursuant to this Stipulation are in consideration of: (a)

the full and final disposition of the Action as against Defendants; and (b) the Releases provided

for herein.

> 2. Pursuant to the Final Order and Judgment, without further action by anyone, upon

the Effective Date of the Settlement, Plaintiff, the Settlement Class, and the Releasing Parties, as

more specifically set out below at Section IV.C.: (i) have and shall be deemed to have fully,

finally, and forever waived, released, relinquished, discharged, and dismissed each and every one
of the Plaintiff's and Settlement Class' claims against each and every one of the Releasees; (ii)
have and shall be deemed to have covenanted not to sue, directly or indirectly, any of the
Releasees with respect to any or all of the Settlement Class claims; and (iii) shall forever be
barred and enjoined from directly or indirectly, filing, commencing, instituting, prosecuting,
maintaining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or
other proceeding in any jurisdiction, or before any administrative body (including any state
Department of Insurance or other regulatory entity) whether in the United States or elsewhere, on
their own behalf or in a representative capacity, that is based upon or arises out of any or all of
the Released Claims as more fully set forth in Section IV.B..  Plaintiff, the Settlement Class and
the Releasing Parties, shall be bound whether or not a valid and timely Claim Form is required or
submitted, or any other action is taken to obtain recovery as a result of the Settlement
Agreement.  This Release shall not apply to any Settlement Class Member who or which submits
a valid request for exclusion from the Class related to a Class Policy per Section VII below.

       3.     Nothing in this Settlement Agreement or the Final Order and Judgment, shall bar
any action by any of the Parties or their successors or assigns to enforce or effectuate the terms
of this Stipulation or the Final Order and Judgment.

       **B.**     **Released Claims.**  The Released Claims under this Settlement Agreement include
all claims that have been, could have been, may be, or could be alleged or asserted in this Action
regarding or concerning directly or indirectly any Class Policy, by Plaintiff, any Settlement Class
Member, or any Releasing Party, against any of the Releasees (individually or together) either in
the Action or in any other court action or before any administrative body (including any state
Department of Insurance or other regulatory commission), tribunal or arbitration panel, and that

FINAL - EXECUTION VERSION

are made on the basis of, connected with, arise out of, or are related to, in whole or in part,

claims that were raised or that could have been raised in the Action, which include without

limitation those regarding:

(i)     Any or all of the acts, omissions, facts, matters, transactions or
        occurrences that were directly or indirectly alleged, asserted, described, set
        forth or referred to in the Action;

(ii)    The amount of monies or other requirements that were requested by or on
        behalf of Prudential in order to keep a Class Policy that has entered default
        in force or to reinstate a Class Policy after lapse including, but not limited
        to, premium and all fees, charges and other monies, verifications or
        documentation requested;

(iii)   Claims, acts or omissions regarding the method of, and/or administration
        of, and/or communication regarding, the calculations by or on behalf of
        Prudential of the amount of monies that were requested, including in order
        to keep a Class Policy that has entered default in force or to reinstate a
        Class Policy after lapse, and including but not limited to premium, fees,
        charges and other monies or requirements.  This includes but is not limited
        to any and all claims regarding:

        (a) premiums;
        (b) cost of insurance charges, rates and assumptions;
        (c) administrative fees or loads;
        (d) underwriting or other requirements; and/or
        (e) other policy costs.

(iv)    Claims regarding Prudential's policies and procedures concerning default,
        grace periods, lapse or reinstatement, including, but not limited to, claims
        concerning communications, notices, absence or omission of
        communications or specific information regarding grace periods, default
        or lapse, or the timing thereof, and claims relating to notice to identified
        third parties, including, but not limited to, any claims made under any
        state's law, regulation or administrative directive; and

(v)     Claims related to Prudential's declination or refusal of an attempt to cure a
        default or reinstate a Class Policy, for any reason.

**C.      Settlement Class Release And Waiver**

1.      **Release.**  Plaintiff, the Settlement Class and the Releasing Parties associated with

the Lapsed/Alive and Lapsed/Deceased Populations each hereby individually expressly agrees

that he/she/they/it shall not now or hereafter institute, maintain or assert against any Releasee(s), either directly or indirectly, on his/her/their/its own behalf or on behalf of the Settlement Class, any Class Policy, or any person, and release and discharge each Releasee from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, related to, based upon, arising out of, in whole or in part, the Released Claims.  For those Reinstated Class Policies that are reinstated under this Settlement Agreement more than five years following default, and were issued under either the 1980 or 2001 CSO mortality table, this Release does not include claims for monetary loss that result directly from Prudential's administration of those policies under the guideline premium limitation ("GPL") and cash value corridor ("CVC") test of section 7702(c) and (d) of the Internal Revenue Code.

2. **Covenant Not to Sue and Release as Bar.**  Plaintiff, the Settlement Class and the Releasing Parties each individually covenant not to bring any Released Claim and expressly agree that this Release will be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by the release(s) contained herein in respect to Class Policies.

3. **Contract Rights Remain.**  Except as specifically provided for herein, nothing in this Settlement Agreement shall be deemed to alter contractual rights under a current policy or a Reinstated Class Policy, including to make a claim for benefits that will become payable in the future pursuant to the express written terms of the policy issued by Prudential; provided, however, that this provision shall not entitle a Settlement Class Member to assert claims which relate to the allegations in the Action or to the Released Claims described in Section IV.B. above.

4.      **Claims for Fees and Costs Released.**  Without in any way limiting the scope of the Release, this Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiff's Counsel, Class Counsel or any other counsel representing Plaintiff or any Settlement Class Members (including counsel to Claimants), or by Plaintiffs or the Settlement Class, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement and/or the Released Claims except to the extent otherwise specified herein.

5.      **Unknown Claims Released.**  Except as otherwise provided herein, it is the intention of Plaintiff and the Settlement Class in executing this Settlement Agreement and Release to fully, finally and forever settle and release all matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed pertaining to the Released Claims and Class Policies as set forth above, including "Unknown Claims."  Unknown Claims mean any claim as to any Class Policy which was not known or suspected by any member of the Settlement Class to exist in his, her or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement Agreement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiff and the Settlement Class shall expressly waive, and each of the other Settlement Class Members shall be deemed to have waived, and by operation of the Final Order and Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of

FINAL - EXECUTION VERSION

> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Plaintiff and the Settlement Class acknowledge that they may hereafter discover facts, legal

theories, or authorities in addition to or different from those which he, she or it now knows or

believes to be true with respect to the subject matter of the Released Claims and acknowledge,

and each of the other Settlement Class Members shall be deemed by operation of law to have

acknowledged, that the foregoing waiver was separately bargained for and a key element of the

Settlement Agreement.

6.      **Release and Waiver Upon Participation in the Claim Process**.  In addition to

the Release and Waiver by Plaintiff, Settlement Class Members, and Releasing Parties, as

described in Section IV  above and incorporated in the Final Order and Judgment, the Parties

agree that all Claimants submitting Claims shall also individually acknowledge the Release (as

reflected in Part III of the Claim Form) in favor of the Defendants and the other Releasees.


## V.      PRELIMINARY APPROVAL

A.      **Reasonable Best Efforts to Effectuate Settlement.**  The Parties agree to

cooperate with one another to the extent reasonably necessary and to use their reasonable best

efforts to effectuate and implement the terms and conditions of this Settlement Agreement.

B.      **Motion for Preliminary Approval and Stay.**  Following execution of this

Stipulation, and by no later than October 11, 2019 or such later date as set by the Court in the

Action, Class Counsel will submit this Settlement Agreement to the Court and shall move for

entry of the Preliminary Approval Order in the form attached hereto as Exhibit G.  Class Counsel

agrees to provide Defendants' counsel with draft copies of all pleadings and supporting

documents that Class Counsel intends to file in support of this Agreement and Settlement,

including Plaintiff's Motion for Preliminary Approval no later than seven (7) business days prior

to filing.  Defendants agree that the motion shall be unopposed provided that it is consistent with

this Settlement Agreement.

**C.     No Further Action to Litigate.**  From the date of this Stipulation through the

Effective Date of the Settlement, the Parties agree, other than for those matters necessary to

implement and effectuate the Settlement itself: (a) not to take any steps to prosecute, or assist

any other person or entity to prosecute, any of the Released Claims against any Releasee; and (b)

not to initiate or participate in any proceedings arising out of, based upon or concerning any of

the Released Claims against any Releasee.  To the extent consistent with their ethical obligations,

Class Counsel represent that they do not have any clients on whose behalf they presently plan to

(a) prosecute, or assist in prosecuting, any of the Released Claims against any of the Releasees;

and (b) initiate or participate in any proceedings arising out of, based upon or concerning any of

the Released Claims against any of the Releasees, including by opting out of or objecting to this

Settlement Agreement.

**D.     Stipulation to Certification of a Settlement Class.**  The Parties hereby stipulate

for purposes of the Settlement only that the following Settlement Class should be certified

pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e):

> All Policyowners of Class Policies and, where all Policyowners and insureds of a
> Class Policy are deceased, then also any designated beneficiary(ies) of that Class
> Policy at the time of final lapse.

> Class Policies include all individual universal life or variable universal life
> insurance policies issued by a Defendant as to which Guaranteed Charges were
> applicable to the calculation of the deficiency and/or reinstatement amount, and
> which policy either entered into default or lapsed between July 18, 2013 and the
> date of Preliminary Approval, or which had default cured or was reinstated on or
> after July 18, 2013 and remains in force on the date of Preliminary Approval.

**E.     Plaintiff is Settlement Participant.**  Plaintiff agrees that he will not request

FINAL - EXECUTION VERSION

exclusion from the Settlement Class, will not object to the Proposed Settlement, and will not file

an appeal from or seek review of the Final Order and Judgment, or any alternative order

approving the Proposed Settlement terms.

## VI.   NOTICE TO THE CLASS AND COMMUNICATIONS WITH SETTLEMENT CLASS MEMBERS ("Notice Plan")

**A.      Notice to Settlement Class.**  In the event that the Court Preliminarily Approves

the Settlement, Notice of the terms of the Settlement and the date of the Settlement Hearing

scheduled by the Court to consider the fairness, adequacy and reasonableness of the Settlement

shall be provided pursuant to the Notice Plan below, in accordance with Rule 23 of the Federal

Rules of Civil Procedure.  The Notice shall explain the general terms of the Settlement, the

general terms of the proposed Fee Award and Incentive Award, and a description of Settlement

Class Members' rights to object to the Settlement, request exclusion from the Settlement Class,

and appear at the Settlement Hearing.

**B.      Notice List**.  For the purposes of identifying and providing notice to the

Settlement Class, within twenty-one (21) calendar days of the date of entry of the Preliminary

Approval Order, Prudential shall provide to the Claims Administrator, to the extent available in

Prudential records at that time, the names and last known U.S. Mail addresses of persons to

whom Class Notice should be provided, and to the extent recorded by Prudential in policy

records, email addresses, divided into the following categories:

1.      For Current Policyowners, the Policyowner(s) of record.

2.      For Class Policies in the Lapsed/Alive population, all Policyowners of

record at the time of final lapse of the Class Policy.

3.      For Class Policies in the Lapsed/Deceased population: (i) all Policyowners

of record at the time of final lapse of the Class Policy; (ii) to the extent available in Prudential's

FINAL - EXECUTION VERSION

records, the Administrator(trix) or other address for the Estate(s) of the insured(s) on the Class

Policy; and (iii) to the extent available in Prudential's records, the beneficiary or beneficiaries on

the Class Policy.

     **C.**    **Notice List is Not Settlement Class List**.  The mere mailing of a Class Notice to

a person or entity will not render such person or entity a part of the Settlement Class or otherwise

entitle such person to participate in the Settlement as a Claimant.  The Notice List is not and

shall not be interpreted as or deemed to be a list of Settlement Class Members or Authorized

Claimants.  The Notice List is designed solely for purposes of ensuring that notice is provided to

anyone who potentially could be a member of the Settlement Class.  Rights, if any, to Settlement

benefits under this Settlement Agreement, shall be determined in accordance with the provisions

of this Settlement Agreement, and not by reference to the list prepared for Notice purposes.

     **D.**    **Classification of Individuals on Notice List Not Dispositive.**  Plaintiff and the

Settlement Class acknowledge and understand that Prudential's records may not, and likely will

not in every case, accurately reflect whether a Class Policy falls within the Lapsed/Alive or

Lapsed/Deceased population.  Because lapsed policies are no longer active at Prudential,

Prudential's records may not be complete, and deaths typically would not be reported to

Prudential on lapsed policies.  Information will be provided for reference by the Claims

Administrator alone, and will not be deemed conclusive or determinative of the population in

which a Claim may belong.  Claimants will have the opportunity to make a Claim for that relief

they believe to be appropriate for the particular circumstances of the Class Policy.

     **E.**    **Direct Notice via Email.**  No later than twenty-eight (28) days from the date on

which the Claims Administrator receives the complete Notice List from Prudential, the Claims

Administrator shall send Notice via email substantially in the form attached as Exhibit H, along

30

Case 2:17-cv-05290-MWF-FFM   Document 78-1   Filed 10/11/19   Page 96 of 198   Page
ID #:1307

**FINAL - EXECUTION VERSION**

with an electronic link to the Settlement Website and Claim Form, to all individuals on the
Notice List for whom a valid email address was provided by Prudential.  The Claims
Administrator shall also provide these individuals with Direct Notice via U.S. Mail as provided
in Paragraph F below.

       **F.**     **Direct Notice via U.S. Mail.**  No later than the twenty-eight (28) days from the
date on which the Claims Administrator receives the complete Notice List from Prudential, the
Claims Administrator shall send Summary Notice by U.S. Mail substantially in the form attached
as Exhibit A to all persons on the Notice List.  In order to provide the best notice practicable, the
Claims Administrator will run the Notice List through the United States Postal Service's
National Change of Address database before mailing, and in the event that Notices are returned
as undeliverable, will perform a standard skip trace in an effort to ascertain the current address of
the particular person in question, and if such an address is ascertained, shall re-send the Notice to
the new address within three (3) business days of ascertaining the address.

       1.     **Indicator for Lapsed/Deceased**.  For Class Policies believed to be within
the Lapsed/Deceased population, the Summary Notice will include an indicator directing persons
receiving notice to the Claim Form for Individualized Relief.

       2.     **Indicator for Lapsed/Alive Enhanced Relief Eligible**.  For Class
Policies believed to be within the Lapsed/Alive population who also are believed to be eligible
for Enhanced Relief, the Summary Notice will include a statement so indicating and will direct
persons receiving notice to the Claim Form for Reinstatement with Enhanced Relief.  The notice
will include an individual access code that enables only that individual notice recipient to access
the Claim Form for Reinstatement with Enhanced Relief, which shall not be generally available
on the Settlement Website.

3.    **Effect of Incorrect Classification for Notice Purposes.**  (a) If a Class

Policy is incorrectly identified for Notice purposes as within the Lapsed/Deceased Population but

is actually within the Lapsed/Alive Population, a Claimant will have the opportunity on the

Settlement Website to locate and complete the appropriate Claim Form for Reinstatement Relief

or Basic Relief; (b) If a Class Policy is either: (i) incorrectly identified for Notice purposes as

within the Lapsed/Alive population but is actually within the Lapsed/Deceased population, or (ii)

all insureds on a Class Policy identified for Notice purposes as within the Lapsed/Alive

Population pass away during the Claims Period but before a Claim Form is submitted, the

Claimant will have the opportunity on the Settlement Website to find and complete the

appropriate Claim Form for Individual Relief or Basic Relief; (c) If a Class Policy is identified as

within the Lapsed/Alive population, a Claimant files a Claim Form for Reinstatement Relief, and

that Claimant is determined by the Claims Administrator to be an Authorized Claimant, but

before the Reinstatement Amount is paid all insureds pass away, the Claim will be treated as one

for Individualized Relief and subject to the Scoring Process; however, if the Reinstatement

Amount has been paid the Reinstated Class Policy will be treated as reinstated and a death claim

processed; (d) In the event that the Class Policy belonged to a Current Policyowner, if that policy

lapsed for the final time on or after April 30, 2019, no relief other than the relief described at

Section III.D.1. is available.

G.    **Settlement Website.**  No later than two (2) days prior to the date on which Direct

Notice is to be mailed, notice shall be provided on a website at an available settlement URL

(such as, for example, www.lapsedpolicysettlement.com) which shall be obtained, administered

and maintained by the Claims Administrator and shall include the ability to file Claim Forms on-

line.  The Settlement Class and all Claimants agree that Claim Forms, if submitted electronically,

will reflect an electronic signature and will be binding for purposes of applicable law and contain

a statement to that effect. A complete copy of the submitted electronic form will be promptly

emailed to the Claimant. The Notice provided on the Settlement Website shall be substantially

in the form of Exhibit B hereto. A paper Claim Form will be provided to Claimants upon

request. In the cases where the paper Claim Form is used, it will conspicuously notify the

Claimant to retain a copy of the completed Claim Form. The Claims Administrator will provide

a copy of the submitted Claim Form to Claimants, or anyone acting on their behalf, within ten

(10) days of a request for same.

  **H.**  **CAFA Notice**. Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after

this Stipulation is filed with the Court, the Claims Administrator shall cause to be served upon

the appropriate State Officials in each U.S. State in which Settlement Class Members reside, and

the Attorney General of the United States, notice of the proposed settlement as required by law.

The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described

in this Paragraph is provided.

  **I.**  **Telephone Bank and Right of Communication with Claimants**. Prudential

expressly reserves the right to communicate with and respond to inquiries from the Settlement

Class Members orally and/or in writing in connection with the Settlement, and it may do so

through any appropriate means, including (without limitation) in the following respects:

    (a)  The Claims Administrator will establish a telephone bank with a toll-free

    "800" telephone number for responding to general inquiries from the Settlement Class

    about the Settlement. Prudential, with participation of Class Counsel as described below,

    will be responsible for (i) educating and training the telephone representatives about the

    background of the Action, product concepts relevant to the Settlement, and the notice,

terms and chronology of the Settlement, (ii)  training the telephone representatives to

answer potential Claimants' and Policyowners' inquiries specifically relating to the

Settlement, (iii) providing scripts and model questions and answers for the telephone

representatives to use in answering potential Claimants' and Policyowners' inquiries, and

(iv) taking any other steps to promote accurate and efficient communications with

potential Claimants and Policyowners.  Class Counsel may monitor the education and

training process and review and comment on/edit drafts of telephone scripts before their

use and by observing training sessions to ensure proper communication and conformance

to the Settlement.  It is the intention of the Parties that this process be mutually agreeable

for adequacy and fairness.

(b)       Prudential may continue to process and respond to insured, beneficiary or

Policyowner complaints, including complaints submitted to Prudential by regulators, in

the usual course of business notwithstanding that some complaints may be about Class

Policies or originate with Settlement Class Members and may concern claims relating to

Class Policies that otherwise could be eligible for relief under the Settlement Agreement;

provided, however, that after the Class Notice mailing and before the implementation of

Settlement Relief for a particular Class Policy, any offer of relief by Prudential in

response to any such complaint concerning a Class Policy will be accompanied by a copy

of the Settlement Agreement.

(c)       With respect to Class Policies in the Lapsed/Alive population, once a

Claim Form seeking Reinstatement Relief has been submitted and verified by the Claims

Administrator and the Claimant is found to be an Authorized Claimant, the Claims

Administrator will provide information to enable the Claimant to obtain the necessary

information and take all necessary steps to effectuate the reinstatement of a Reinstated

Class Policy, as set forth in the Reinstatement Process Guidelines.  Once an Authorized

Claimant pursues Reinstatement Relief, communications can take place directly between

Prudential and Claimant without requiring the participation of Class Counsel, although

the Claimant can choose to involve Class Counsel at his/her/its discretion.  In the event

that the Claimant chooses not to proceed with Reinstatement Relief, the Claimant will be

directed back to the Claims Administrator and the Claim will be treated as a Claim for

Basic Relief.

## VII.   REQUESTS FOR EXCLUSION AND OBJECTIONS TO SETTLEMENT

**A.     Requests for Exclusion or "Opt Outs".**  A Settlement Class Member may

request to be excluded from the Settlement Class by sending a timely written request postmarked

on or before the Objection/Exclusion Deadline approved by the Court and specified in the

Notice.  To exercise the right to be excluded (or "opt out"), a Settlement Class Member must

timely send a written request for exclusion to the Claims Administrator providing (1) his/her

name and address; (2) the Policy Number of the applicable Class Policy(ies), (3) a statement that

the Person seeking exclusion is authorized to act on behalf of the Class Policy, including

compliance with paragraph Section III.C.10.; (4) a signature, (4) the name and civil action

number of the case and (5) a clear statement that he or she, on behalf of the Class Policy

associated with them, wishes to be excluded from the Settlement Class for purposes of this

Settlement.  A request to be excluded that does not include all of this information, or that is sent

to an address other than that designated in the Notice, or that is not postmarked within the time

specified, or is not sent by an authorized person as defined at Section VII.C. (below), shall be

invalid, and the person(s) or entity(ies) serving such a request and the subject Class Policy shall

be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved.  Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not:  (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.  The request for exclusion must be personally signed by each person or entity requesting exclusion.  No request for exclusion may be made on behalf of a group of Class Policies owned by different Policyowners.  So-called "mass" opt outs and/or attempts to opt out a "class" shall not be allowed.

**B.      Action Upon Requests for Exclusion.**  Upon receiving any request(s) for exclusion, the Claims Administrator shall stamp on the original the date it was received and shall promptly notify Class Counsel and Defendants' Counsel of such request(s) no later than two (2) calendar days after receiving any request.  The Claims Administrator shall indicate whether such request is timely received, and provide copies of the request(s) for exclusion, the mailing envelope, and any accompanying documentation, by email.

**C.      Exclusion Valid Only if Served by Authorized Person And On Behalf of All.**  Any request for exclusion that is served by a person who is not a Settlement Class Member or an attorney representing a Settlement Class Member shall not be valid, and the person serving the attempted exclusion and the Class Policy shall remain subject to all terms of this Settlement Agreement.  Likewise, any request for exclusion that purport to opt out fewer than all Policyowners and/or all designated beneficiary(ies) at the time of final lapse of a Class Policy shall not be valid.

**D.      Objections to Settlement.**  Any Settlement Class Member who has not filed a written request for exclusion for all of his/her/its Class Policies and who wishes to object to the

fairness, reasonableness or adequacy of this Stipulation or the Proposed Settlement must present

on a timely basis pursuant to the Court's anticipated Preliminary Approval Order the objection in

writing, which must be personally signed by the objector, and must include:  (1) the objector's

name and address; (2) an explanation of the basis upon which the objector claims to be a

Settlement Class Member, including the Policy Number of the applicable Class Policy(ies), and a

statement that the Person seeking to object is authorized to act on behalf of the Class Policy, per

Section III.C.10. above; (3) all grounds for the objection, including all citations to legal authority

and evidence supporting the objection; (4) the name and contact information of any and all

attorneys, brokers, advisors or others who are representing, advising, or in any way assisting the

objector in connection with the preparation or submission of the objection or who may profit

from the pursuit of the objection (the "Objecting Attorneys and Advisors"); and (5) a statement

indicating whether the objector intends to appear at the Final Approval Hearing (either

personally or through counsel who files an appearance with the Court in accordance with the

Local Rules).  Any attorney who wishes to appear must file an appearance so indicating.

     **E.**    **Objector Required to Disclose Interest.**  If a Settlement Class Member or any of

the Objecting Attorneys and Advisors has objected to any class action settlement in a different

case where the objector or the Objecting Attorneys or Advisors asked for or received any

payment in exchange for dismissal of the objection, or any related appeal, without any

modification to the settlement, then the objection must include a statement identifying each such

case by full case caption and amount of payment received.

     **F.**    **No Solicitation of Objection or Request to Opt Out.**  The Parties and their

counsel agree that the decision to opt out should be left to the individual Settlement Class

Members.  At no time shall any Party or their respective counsel seek to solicit or otherwise

encourage Settlement Class Members or any other persons to opt out of the Settlement, submit

written objections to the Settlement or encourage Settlement Class Members to appeal the

Court's Final Order and Judgment.

**G.    Settlement Class Members Otherwise Bound.**  Any Settlement Class Member

who does not, in accordance with the terms and conditions of this Settlement Agreement, seek

exclusion from the Settlement Class or timely file a valid Claim Form, and any Class Policy as to

which exclusion is not sought or a valid Claim Form submitted, shall not be entitled to receive

any payment or benefits pursuant to this Stipulation, but will otherwise be bound by all of the

terms of this Stipulation, including the terms of the Final Order and Judgment to be entered in

the Action and the Releases provided for in the Stipulation, and will be barred from bringing any

action (or having any action brought on his/her/its behalf) against any of the Released Parties

concerning the Released Claims.

## VIII.    CLAIMS ADMINISTRATION

**A.    Claims Administrator Appointment**.  As part of the Preliminary Approval

Order, the Parties shall seek appointment of the Claims Administrator.  The Claims

Administrator shall administer the Settlement, including, but not limited to, executing the Notice

Plan, receiving, reviewing, scoring and approving or denying Claims submitted by the

Settlement Class to determine Authorized Claimants, acting as Escrow Agent and overseeing the

distribution of all Settlement Payments, Basic Payments, Claims Administration Expenses, Fee

Awards and Incentive Awards, and such other duties as the Parties or the Court may assign,

consistent with this Stipulation and the Exhibits hereto.  The Claims Administrator shall be

subject to the jurisdiction of the Court.

FINAL - EXECUTION VERSION

B.      **Claims Administrator Recordkeeping (General).**  The Claims Administrator

shall maintain reasonably detailed records of all of its activities under this Settlement Agreement,

including all records required by applicable law in accordance with its normal business practices.

Such records, other than records regarding the Scoring Process as applied to individual Claims

(which will not be made available to the Parties except as subject to Audit pursuant to Section

VIII.H. below), will be made available to Class Counsel and Defendants' Counsel upon

reasonable request.  The Claims Administrator shall also provide reports and other information to

the Court as the Court may require.

C.      **Notice Obligations Rest with Claims Administrator.**  In accordance with the

terms of the Preliminary Approval Order to be entered by the Court, the Parties shall cause the

Claims Administrator to create a Settlement Website and provide the Notices and Claim Form to

the Settlement Class as set forth in Section VI above, and establish a P.O. Box to be identified in

the Notice and a toll-free interactive voice-response telephone system and call center.  To the

extent that notice is required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715,

Defendants' Counsel shall direct the Claims Administrator to timely provide such notice to the

required State and Federal officials, as those terms are defined in the statute.

D.      **Supervision of Claims Administrator.**  Prudential and Class Counsel shall be

jointly responsible for generally supervising the administration of the Settlement subject to such

supervision and direction of the Court as may be necessary or as circumstances may require, and

subject to those provisions of this Settlement Agreement that rest all specific Claim

determinations within the sole authority of the Claims Administrator.  The Parties shall jointly

have the right, but not the obligation, to instruct the Claims Administrator to waive upon mutual

agreement what they deem to be formal or technical defects in any Claim Forms submitted in the

interests of achieving substantial justice.

      **E.**      **Claims Administrator's Determination of Authorized Claimant.**  For purposes

of determining the extent, if any, to which a Claimant shall be entitled to be treated as an

Authorized Claimant, the following conditions shall apply, in addition to the specific

requirements herein for a Claimant to receive Reinstatement Relief, Enhanced Reinstatement

Relief, Individualized Relief, or Basic Relief:

      a.      Each Claimant shall be required to submit a Claim Form, substantially in the forms attached hereto as Exhibits E and F, including such certification as are contained therein;

      b.      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Settlement Class Member who fails to submit a Claim Form by such date, or such other date as may be ordered by the Court, shall be forever barred from participating in the relief afforded by this Stipulation (other than the relief at  Section III.D.1.), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Order and Judgment, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Releasees with respect to any Released Claims.  A Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator.

      c.      Each Claimant and each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Settlement Agreement whether the Claim is an Authorized Claim and the Claimant an Authorized Claimant.

      d.      Claim Forms that do not meet the submission requirements or are not timely submitted may be rejected.  Prior to rejecting a Claim in whole or in part, for reasons other than timeliness (a non-curable deficiency), the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.

FINAL - EXECUTION VERSION

F. **Claims Administrator Interface with Prudential.** The Claims Administrator shall have the following specific obligations related to the determinations it is to make regarding whether a Claimant is an Authorized Claimant and determination of the relief to be awarded:

1. For the Lapsed/Deceased population:

   a. Provide a list of Claimants to Prudential as to whom data and documents are requested for the Scoring Process, including names, Class Policy numbers and the verified date of death;

   b. Request call recordings from Prudential where a scorer has determined they are necessary to the Scoring Process;

   c. Provide Prudential with a list of Final Scores to enable Prudential to calculate the premium relevant to the Settlement Payment, pursuant to Section III.C.8,; and

   d. Provide Prudential with amounts to deposit in the Escrow Account, as needed, to cover Basic Payments and Settlement Payments.

2. For the Lapsed/Alive population:

   a. Provide a list of Claimants to Prudential to obtain data to enable the application of Gating Rules;

   b. Provide a list of Claimants to Prudential who failed to certify as obligated by the Claim Form and who qualify for Basic Relief;

   c. Provide a list of Claimants to Prudential who are Authorized Claimants for Basic Relief to enable Prudential to fund the Escrow Account as necessary;

   d. Provide a list of Claimants to Prudential who are Authorized Claimants for Reinstatement Relief to enable communications regarding Reinstated Class Policies; and

   e. Provide a list to Prudential of Claimants who are Authorized Claimants for Enhanced Relief to enable Prudential to identify such Reinstated Class Policies for later implementation of the relief if the conditions precedent are met.

G. **No Recourse by Claimant for Determinations Regarding Authorized Claimants.** No Claimant or Policyowner shall have any claim against Plaintiff, Class Counsel, the Claims Administrator or any other agent designated by Class Counsel, or the Defendants, Releasees and/or their respective counsel, arising from the relief provided or distributions made

substantially in accordance with the Settlement Agreement or any order of the Court.  Plaintiff,

Defendants, their respective counsel, and all other Releasees shall have no liability whatsoever

for the determination, administration, scoring or calculation of any Claim determination made by

the Claims Administrator including, but not limited to, the determination as to whether to accept

any Claimant as an Authorized Claimant or with respect to the amount or nature of relief

awarded.

       **H.**     **Audit Rights.**  In furtherance of the Parties' general obligation to supervise the

Claims Administrator, the Parties and their counsel will be permitted to audit the Scoring Process

as it is applied to up to 30% of all Claims subject thereto.  The purpose of the Audit is

exclusively to assess whether the Claims Administrator is appropriately following the Scoring

Guidelines and the terms of this Settlement Agreement.  The Audit will commence within thirty

(30) days of the commencement of the Scoring Process, and prior to the scoring of 50% of the

Claims.  The Audit will be subject to the Protective Order in this case, and any materials

obtained or reviewed in connection therewith shall be used for purposes of the Audit only, except

that Prudential reserves and retains the right to use materials provided from its own files and

records for its own legitimate business purposes.  The Special Master will adjudicate any dispute

between the parties regarding the Claims Administration process, applying the terms of this

Settlement Agreement inclusive of the Exhibits hereto.  The Scoring Process will not conclude

prior to the conclusion of the Audit.  Each side will bear its own costs concerning any audit

activity and will divide equally any costs attributable to the Special Master's involvement in

resolving Party disputes.

       **I.**     **Confidentiality of Claims.**  Claims documents in this case, and all materials and

data held by the Claims Administrator regarding Prudential Policyowners, Class Policies and/or

FINAL - EXECUTION VERSION

the Settlement Class shall be strictly confidential and not subject to publication or disclosure.  No person other than the Parties, the Claims Administrator, the Special Master and the Court shall be permitted to obtain or review any Claim Form, or any decision of the Claims Administrator with respect to accepting or rejecting any Claim, except as provided for herein or upon Court Order for good cause shown.

**J.    Investigation, Reporting and Treatment of Potentially Fraudulent Claims.**

Notwithstanding Paragraph I above (confidentiality) and anything else to the contrary in this Agreement, if the Claims Administrator or any Party has reason to believe that a false or fraudulent Claim has been submitted in this Settlement, or that any Claim has been submitted under false pretenses, or contrary to the required Certifications, that a person or persons have acquired the rights to a Class Policy as an investor for the purposes of making a claim in this Settlement, the Claims Administrator may reject the Claim.  The Claims Administrator shall bring any such situation to the attention of the Parties.  In addition, either Party may bring any such Claim(s) and all evidence relating thereto to the attention of the Special Master and/or Court and request that the Claim be investigated by the Parties and/or directly set aside and not honored in this Settlement, and/or that the Claimant(s) shall be limited to Basic Relief, and may further request any other relief that is equitable and proper under the circumstances.

**K.    Claims Administrator to Establish Escrow Account**.  The Claims Administrator will establish the Escrow Account, which shall be used to pay: (a) any Taxes and Tax Expenses; (b) any Notice and Claims Administration Expenses; (c) any Fee Award awarded by the Court; (d) any Incentive Award awarded by the Court to the Class Representative; and (e) all Settlement Payments awarded pursuant to the Scoring Process and all Basic Payments awarded to Authorized Claimants.  Except as provided herein or pursuant to orders of the Court,

**FINAL - EXECUTION VERSION**

all funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall

remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or

returned pursuant to the terms of this Settlement Agreement and/or further order of the Court.

The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States

Treasury Bills or United States Treasury Notes (or a mutual fund invested solely in instruments

backed by the full faith and credit of the United States) and shall collect and reinvest all interest

accrued thereon, except that any residual cash balances up to the amount that is insured by the

FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the

yield on United States Treasury Bills or Treasury Notes is negative, in lieu of purchasing such

Treasury Bills or Treasury Notes, all or any portion of the funds held by the Escrow Agent may

be deposited in any account that is fully insured by the FDIC or backed by the full faith and

credit of the United States.  All income or gains earned, or any loss incurred, shall be credited to

(or debited from) the Escrow Account.  Releasees shall have no responsibility for, interest in, or

liability whatsoever with respect to investment or other decisions by the Escrow Agent.

      **L.**    **Qualified Settlement Fund**.  The Parties agree that the Escrow Account is

intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-

1 and that the Claims Administrator, as administrator of the fund within the meaning of Treasury

Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all

informational and other tax returns as may be necessary or appropriate (including, without

limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Escrow Account.

The Claims Administrator shall also be responsible for causing payment to be made from the

Escrow Account of any Taxes and Tax Expenses owed.  The Releasees shall not have any

liability or responsibility for any such Taxes or Tax Expenses, or any required filings regarding same.

      **M.**    **Funding Escrow Account.**  No later than thirty (30) days following Preliminary Approval, Prudential will cause $500,000 to be deposited in the Escrow Account for purposes of initial Claims Administration Expenses, pending the Claims Administrator providing detailed information on the number of Basic Payments to be made and the total amounts of Settlement Payments and Claims Administration Expenses ultimately owing.  Upon receipt of detailed information from the Claims Administrator indicating the additional moneys that are required to be deposited in the Escrow Account for purposes of paying Claims Administration Expenses, a Fee Award or Incentive Award, Basic Payments or Settlement Payments, Prudential shall, no later than ten (10) days thereafter, cause the additional funds to be deposited in the Escrow Account.

      **N.**    **Reversion from Escrow Account to Prudential.**  If after the latter of: (i) one hundred eighty (180) calendar days following the last Settlement Payment check having been sent, and (ii) all Claims Administration expenses, the Fee Award and Incentive Award and any Taxes and Tax Expenses due or owing, have been paid, funds remain in the Escrow Account, all such funds shall be refunded by the Claims Administrator to Defendants based upon written instructions provided by Defendants' Counsel.

## IX.    ATTORNEYS' FEES, COSTS AND EXPENSES

      **A.**    **Application for Attorneys' Fees and Costs**.  Class Counsel may apply to the Court for an award of Attorneys' Fees in the Action not to exceed a total of $3.5 million, plus up to $500,000.00 in costs and expenses (the "Fee Award"), payable by Defendants.  Defendants shall take no position with respect to the Fee Award provided that it is consistent with this

FINAL - EXECUTION VERSION

Settlement Agreement.  The amount shall be specified in the Notice, which shall also indicate

that Settlement Class Members will not be required to pay any portion of the Fee Award.

> **B.**      **Fee Award and Incentive Award Not Part of Settlement.**  The procedures for,

and the allowance or disallowance by the Court of, any Fee Award or Incentive Award are to be

considered by the Court separately from the Court's consideration of the fairness, reasonableness

and adequacy of the Settlement set forth in this Stipulation.  Any order or proceeding related to

the application for a Fee Award, or any appeal from any Fee Award or Incentive Award or other

order relating thereto, shall not operate to terminate or cancel this Settlement Agreement, nor

affect or delay the finality of the Judgment.

> **C.**      **Payment of Fee Award.**  Upon the Court's approval of a Fee Award, the Fee

Award amount shall be payable by the Claims Administrator from the Escrow Fund within ten

(10) days after entry of the latter of (i) the Court's Final Order and Judgment approving the

Settlement, and (ii) the Court's Fee Award, subject to Class Counsel providing all payment

routing information and tax I.D. numbers for Class Counsel; and (iii) the Effective Date.

Payment of the Fee Award shall be made from the Escrow Account by wire transfer to

Engstrom, Lipscomb & Lack in accordance with wire instructions to be provided by Steven C.

Shuman of that firm, and completion of necessary forms, including, but not limited to, W-9

forms.  Class Counsel shall be solely responsible for allocating and distributing the Fee Award

among counsel for the Class.

> **D.**      **Incentive Award.**  Class Counsel may apply to the Court for an Incentive Award,

payable by Defendants, to the Class Representative from the Escrow Account, in recognition of

his efforts on behalf of the Settlement Class, in the amount of no more than fifty thousand dollars

($50,000.00).  Defendants shall take no position with respect to the Incentive Award, provided

that it is consistent with this Settlement Agreement.  Payment should be delivered care of Class

Counsel ten (10) business days after the Effective Date.

E. **No Liability for Any Other Amount or Expense.**  Neither Prudential nor its

current, former and future parents, subsidiaries, affiliates, partners, predecessors, successors and

assigns, nor any of their respective past, present and future officers, directors, employees, agents,

principals, independent contractors, brokers, representatives, attorneys, heirs, administrators,

executors, predecessors, successors and assigns shall be liable or obligated to pay any fees,

expenses, costs or disbursements to, or incur any expense on behalf of, any person, either

directly or indirectly, in connection with the Action, this Stipulation, or the Proposed Settlement,

other than the amount or amounts expressly provided for in this Settlement Agreement.

## X. FINAL APPROVAL AND FINAL ORDER AND JUDGMENT

At or after the Final Approval Hearing, and upon the Court's approval of this Settlement

Agreement, the Parties will request from the Court entry of a Final Order and Judgment.  The

Final Order and Judgment will (among other things):

(a) Find that the Court has jurisdiction over the subject matter and the parties

to approve the Stipulation of Settlement and Release and all Exhibits thereto;

(b) approve the Proposed Settlement as fair, reasonable and adequate; direct

the Parties and their counsel to comply with and consummate the terms of the Settlement

Agreement; and declare the Settlement Agreement to be binding on all Settlement Class

Members and Class Policies and preclusive in all pending and future lawsuits or other

proceedings;

(c) Certify the Class for settlement purposes only as follows pursuant to

Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e):

FINAL - EXECUTION VERSION

All Policyowners of Class Policies and, where all Policyowners and insureds of a
Class Policy are deceased, then also any designated beneficiary(ies) of that Class
Policy at the time of final lapse.

Class Policies include all individual universal life or variable universal life insurance
policies issued by a Defendant as to which Guaranteed Charges were applicable to the
calculation of the deficiency and/or reinstatement amount, and which policy either
entered into default or lapsed between July 18, 2013 and the date of Preliminary
Approval, or which had default cured or was reinstated on or after July 18, 2013 and
remains in force on the date of Preliminary Approval.

      (d)     Find that the Class Notice and the Notice Plan implemented pursuant to

the Settlement Agreement (i) constitute reasonable and the best practicable notice; (ii) constitute

notice that is reasonably calculated, under the circumstances, to apprise Policyowners of the

pendency of the Action, their right to object to or exclude themselves from the Proposed

Settlement and to appear at the Final Approval Hearing; (iii) constitute due, adequate and

sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of due

process, the Federal Rules of Civil Procedure, and the Rules of the Court;

      (e)     find that Class Counsel and the Plaintiff adequately represented the Class

for purposes of entering into and implementing the Settlement;

      (f)     dismiss the Action on the merits and with prejudice, without fees or costs

to any party except as provided in the Stipulation;

      (g)     incorporate the Release set forth above in Section IV, and forever

discharge the Releasees from any claims or liabilities constituting the Released Claims;

      (h)     permanently bar and enjoin (i) Plaintiff, Settlement Class Members who

do not execute and timely file a valid Request for Exclusion from the Settlement Class, and all

Releasing Parties from filing, commencing, prosecuting, participating or intervening in any

lawsuit in any jurisdiction based on or relating to the facts and circumstances underlying the

claims and causes of action in the Action and/or the Released Claims, and (ii) all Settlement

Class Members from organizing Policyowners into a separate class for purposes of pursuing as a
purported class action any lawsuit (including by seeking to amend a pending complaint to
include class allegations, or seeking class certification in a pending action) based on or relating
to the claims and causes of action, or the facts and circumstances relating thereto, in the Action
and/or the Released Claims;

> (i) protect the confidentiality of Claims documents, all materials and data
held by the Claims Administrator regarding Prudential Policyowners, Class Policies and/or the
Settlement Class; and

> (j) retain jurisdiction over the administration of the Settlement, to supervise
the Settlement relief, to protect and effectuate the Final Order and Judgment, and for any other
necessary purpose.

## XI. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION, MODIFICATION.

**A. Effective Date.** This Settlement Agreement shall not become effective unless and
until each of the following events occurs, and the Effective Date of the Settlement Agreement
shall be the date upon which the last (in time) of the following events occurs:

1. The Settlement Agreement has been executed by the Parties and their counsel;

2. The Court has entered the Preliminary Approval Order and has certified the class
for Settlement purposes;

3. The Court has entered an order finally approving the Settlement Agreement,
following Notice to the Settlement Class and a Final Approval Hearing, as provided in the
Federal Rules of Civil Procedure, and has entered the Final Order and Judgment or an alternative
judgment consistent with this Settlement Agreement in all material respects; and

4. The Final Order and Judgment has become Final.

**B.** **Termination.** The Stipulation may be terminated at the sole option and

discretion of Defendants or Plaintiff if (a) the Court, or any appellate court(s), rejects, modifies

or denies approval of any portion of the Proposed Settlement that the terminating party in its (or

their) sole judgment and discretion reasonably determines is material and adverse to the

terminating party; or (b) the Court, or any appellate court(s), does not enter or completely affirm,

or alters or expands, any portion of the Final Order and Judgment that the terminating party in its

(or their) sole judgment and discretion reasonably determines is material and adverse to the

terminating party; or (c) the opt out limit at Paragraph D below is triggered. The terminating

party must provide written Notice in accordance with Section XII.S. to the other party of its

election to withdraw from and terminate the Stipulation as provided in this Paragraph B, no later

than twenty (20) days after receiving conclusive written notice of the event prompting the

termination.

**C.** **No Termination Due to Fee Award.** Notwithstanding the preceding subsection,

and consistent with Section IX.B. the Parties may not terminate the Stipulation because of the

amount of the Fee Award authorized by the Court or any appellate court(s), or the rejection or

reduction of the Plaintiff's Incentive Award.

**D.** **Exclusion Limit Triggering Termination.** Defendants may unilaterally

withdraw from and terminate the Settlement Agreement if five percent (5%) or more of Class

Policies and/or the Settlement Class validly elect to exclude themselves from the Settlement.

Such withdrawal and termination by Defendants must be made no later than twenty (20) days

after the expiration of the time period during which such exclusions must be filed and receipt of

notice of this event.

**E.** **Effect of Termination.** If this Settlement Agreement is terminated or fails to

FINAL - EXECUTION VERSION

become effective for the reasons set forth in Paragraphs B-D above, the Parties shall be restored

to their respective positions in the Action as of the date of the signing of this Settlement

Agreement, unless Class Counsel and Defendants' Counsel mutually agree in writing to proceed

with the Settlement Agreement or agree to modify the Settlement Agreement to cure the reason

for rejection, denial, modification, non-affirmance, alteration or expansion.  If this Settlement

Agreement is terminated or fails to become effective, any Final Order and Judgment or other

order entered by the Court in accordance with the terms of this Agreement shall be treated as

vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the

Action as if this Settlement Agreement had never been entered into.  Within five (5) business

days after written notification of termination as provided in this Agreement is sent to the other

Parties, the Escrow Account (including accrued interest thereon), less any Claims Administration

costs actually incurred, paid or payable and less any taxes and Tax Expenses paid, due or owing,

shall be refunded by the Claims Administrator to Defendants based upon written instructions

provided by Defendants' Counsel.

## XII.    REPRESENTATIONS AND WARRANTIES

**A.      Cooperation.**  The Parties (a) acknowledge, represent and warrant that it is their

intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and

other legal obligations, to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Settlement Agreement, to exercise their reasonable

best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement, to

secure final approval, and to defend the Final Judgment through any and all appeals.  Class

Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval

of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment,

FINAL - EXECUTION VERSION

and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

**B.      Final and Complete Resolution; Non-Disparagement.**  The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendants, or each or any of them, in bad faith or without a reasonable basis.

**C.      Publicity and Non-Disparagement.**

1.      Except in connection with a motion for Preliminary Approval, the dissemination of Notice, the Settlement Website, or as otherwise expressly provided for in this Settlement Agreement, Plaintiff and Plaintiff's Counsel will not make any public statements, including but not limiting to issuing any press releases, giving any interviews, posting on any online media including, but not limited to, websites or social media, or publishing, assisting, or facilitating the publication of any articles or similar content, or otherwise market or promote the settlement of the Action or this Settlement Agreement, without prior written approval of Prudential.  This Settlement Agreement does not constitute such approval.  Plaintiff's Counsel will not disparage Prudential, its Policies, or the Settlement Agreement in the media, through any public statements, online postings, interviews, or publications, or otherwise.  The Parties agree that this non-disparagement obligation is a material term of this Settlement Agreement and that Prudential shall be entitled to pursue all remedies and damages available in a court of competent jurisdiction, including, but not limited to, injunctive relief.  The Parties stipulate that such a material breach would cause irreparable harm for which no adequate remedy at law exists.

2.     Notwithstanding any other provision in this Settlement Agreement, (a) the Parties shall have the right to disclose the Settlement to regulators and to comply with their financial, legal, reporting, Court, and securities obligations, (b) the Parties shall have the right to take actions to enforce the Settlement Agreement to the extent necessary, (c) Defendants' Counsel and Class Counsel shall have the right to communicate with their clients regarding the Action and the Settlement, (d) Prudential shall have the right to communicate with its shareholders concerning the Action and the Settlement.  The Parties' rights to communicate with Settlement Class Members and the Claims Administrator regarding the Action and the Settlement are addressed in this Settlement Agreement at Section VI.  Prudential shall have the right to communicate with all of its Policyowners in the ordinary course of its business, including specifically as recognized in Section VI.I. herein.

D.     **Representation by Counsel; Agreement Prepared by All Parties.**  The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.  This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among them.  Because all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

E.     **No Admissions.**  Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Settlement Agreement nor the Settlement contained herein or any term, provision or definition therein, nor any act or communication performed or

**FINAL - EXECUTION VERSION**

document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Stipulation or the Settlement:

1.  is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Releasees, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claim, the truth of any fact alleged by the Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the reasonableness of the Settlement or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

2.  is, may be deemed, or shall be used, offered or received against any Releasee, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Releasees, or any of them;

3.  is, may be deemed, or shall be used, offered or received against the Releasees, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Party(ies), or supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the Settlement, this Stipulation, and any acts performed and/or documents executed in furtherance of or pursuant to this Stipulation and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement.  Further, if this Settlement Agreement is approved by the Court, any Party or any of the Releasees may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based

**FINAL - EXECUTION VERSION**

on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or

reduction, or any other theory of claim preclusion or issue preclusion or similar defense or

counterclaim;

4.      is, may be deemed, or shall be construed against Plaintiff, the Settlement Class,

the Releasing Parties, or each or any of them, or against the Releasees, or each or any of them, as

an admission or concession that the consideration to be given hereunder represents an amount

equal to, less than or greater than that amount that could have or would have been recovered after

trial; and

5.      is, may be deemed, or shall be construed as or received in evidence as an

admission or concession against Plaintiff, the Settlement Class, the Releasing Parties, or each

and any of them, or against the Releasees, or each or any of them, that any of Plaintiff's claims

are with or without merit or that damages recoverable in the Action would have exceeded or

would have been less than any particular amount.

**F.      Certification for Settlement Purposes Only.**  The Parties acknowledge that (a)

any certification of the Settlement Class as set forth in this Agreement, including certification of

the Settlement Class for settlement purposes in the context of Preliminary Approval, shall not be

deemed a concession that certification of a litigation class is appropriate, or that the Settlement

Class definition would be appropriate for a litigation class, nor would Defendants be precluded

from challenging class certification in further proceedings in the Action or in any other action if

the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is

not finally approved by the Court for any reason whatsoever, then any certification of the

Settlement Class will be void, the Parties and the Action shall be restored to the *status quo ante*,

and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification

proceedings in the Action or in any other action; and (c) no agreements made by or entered into by Defendants in connection with the Settlement may be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

      **G.**    **Settlement and Claims Administration Process Final: No Recourse.** No person or entity shall have any claim against the Class Representative, Class Counsel, the Claims Administrator or any other agent designated by Class Counsel, or the Releasees and/or their counsel arising from distributions from the Escrow Account made substantially in accordance with this Agreement. The Parties and their respective counsel, and all other Releasees, shall have no liability whatsoever for the investment or distribution of the Escrow Account or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Escrow Account, or any losses incurred in connection therewith.

      **H.**    **Headings.** The headings used herein are used for the purpose of convenience only and are not meant to have and shall not be given legal effect.

      **I.**    **Non-Waiver.** The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

      **J.**    **Exhibits Incorporated.** All of the Exhibits to this Settlement Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

      **K.**    **Entire Agreement.** This Settlement Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the

matters set forth herein.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

      **L.**      **Each Party Bears Costs.**  Except as otherwise provided herein, each Party shall bear its own costs.

      **M.**      **No Assignment.**  Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Releasees to any other Person or Party and that he is fully entitled to release the same.

      **N.**      **Authority.**  Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

      **O.**      **Execution.**  This Settlement Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

      **P.**      **Binding Upon Successors.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, the Settlement Class, the Releasing Parties and the Releasees.

FINAL - EXECUTION VERSION

      **Q.**     **Court Retains Exclusive Jurisdiction.**  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement.  All Parties, the Settlement Class, the Releasing Parties and the Releasees submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

      **R.**     **Applicable Law and Venue.**  This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California**.**  Any action to enforce this Settlement Agreement, the Preliminary Approval Order or the Final Order and Judgment, shall be commenced and maintained only in the United States District Court for the Central District of California.

      **S.**     **Notice to Parties**.  Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the Parties as follows, with copies to the undersigned counsel:

      For Prudential:

      Lisa Wolmart
      Vice President and Corporate Counsel
      Enterprise Litigation Group
      The Prudential Insurance Company of America
      751 Broad Street
      Newark, NJ  07102

      With a copy to:

      Laura Geist
      Dentons US LLP
      1999 Harrison Street, Suite 1300
      Oakland, CA 94612-4709

      For the Class:

      Steven C. Shuman
      Engstrom, Lipscomb & Lack

FINAL - EXECUTION VERSION

10100 N. Santa Monica Blvd. #1200
Los Angeles, CA  90067

**T.     Return of Discovery Documents.**  No later than ten (10) days after payment of

Attorneys' Fees and Costs and Expenses pursuant to Section IX above (unless the time is

extended by agreement of the Parties), Plaintiff, Class Counsel, and all persons with whom they

have shared information provided by Prudential in this case pursuant to the Protective Order

herein, will return to Prudential all documents (and all copies of such documents in whatever

form made or maintained) produced by Prudential in the Action.

**U.     Modification of Time Deadlines.**  The Parties reserve the right, subject to the

Court's approval, to make any reasonable extensions of time that might be necessary to carry out

any of the provisions of the Stipulation.

**IN WITNESS WHEREOF**, the undersigned stipulate and have entered into this

Settlement Agreement as of the **11** day of October, 2019.

APPROVED AND AGREED TO BY AND ON BEHALF OF THE NAMED PLAINTIFF, IN
HIS INDIVIDUAL AND REPRESENTATIVE CAPACITIES

BY: _____     Date: 10-11-2019

Print Name:  Richard Behfarin

APPROVED AND AGREED TO BY DEFENDANTS PRUCO LIFE INSURANCE
COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND PRUCO
LIFE INSURANCE COMPANY OF NEW JERSEY

BY: _____     Date: 10/9/2019

Print Name:  Kent Sluyter

112711495/US_Active

59

FINAL - EXECUTION VERSION

**APPROVED AS TO FORM:**

ENGSTROM, LIPSCOMB & LACK
LAW OFFICES OF ROBERT B. MOBASERRI, PC

BY: *Steven C. Shuman*                Date: 10/11/19

Print Name: *Steven C. Shuman*

ATTORNEYS FOR PLAINTIFF RICHARD BEHFARIN AND THE PUTATIVE
SETTLEMENT CLASS

DENTONS US LLP

BY: *Laura L Geist*                Date: 10.9.19

Print Name: *Laura L. Geist*

ATTORNEYS FOR DEFENDANTS PRUCO LIFE INSURANCE COMPANY, THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND PRUCO LIFE INSURANCE
COMPANY OF NEW JERSEY

112711495/US_Active

# EXHIBIT A

Prudential Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

**Unique ID:**
<<UniqueID>>

**COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT**

**If you are or were an owner or
beneficiary of a Prudential universal or
variable universal life insurance policy
that entered default or lapsed between
July 18, 2013 and [date of approval],
your rights will be affected and you
may be entitled to relief.**

www.LapsedPolicySettlement.com

<<BARCODE>>

<<NAME LINE 1>>
<<NAME LINE 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A Settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured or were reinstated between July 17, 2013 and [Prelim Approval] ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(s) may also be Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the Policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your Policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** Enter your Unique ID (shown on the front of this Postcard) on the settlement website to be directed to the Claim Form that appears correct for you based on Prudential's records. You must submit a timely and properly completed Claim Form **no later than Month Day, 2019**. Claim Forms are available online atwww.LapsedPolicySettlement.com or by contacting the Settlement Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF**.

**What are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **Month Day, 2019**. If you exclude yourself, you cannot get settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If you stay in the Settlement Class, you may object to the Settlement in writing by **Month Day, 2019**. The Detailed Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **Month Day 2019** to consider whether to approve the Settlement; whether to approve Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000); and whether to award the Class Representative $50,000 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit the website.

Prudential Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

**Unique ID:**
<<UniqueID>>

**COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT**

**If you are or were an owner or
beneficiary of a Prudential universal or
variable universal life insurance policy
that entered default or lapsed between
July 18, 2013 and [date of approval],
your rights will be affected and you
may be entitled to relief.**

www.LapsedPolicySettlement.com

<<BARCODE>>

<<NAME LINE 1>>
<<NAME LINE 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A Settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured or were reinstated between July 17, 2013 and [Prelim Approval] ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(s) may also be Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the Policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your Policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** *You may be eligible for Reinstatement with Enhanced Relief.* Enter your Unique ID (shown on the front of this Postcard) on the settlement website to be directed to the Claim Form that is correct for you based on Prudential's records. You must submit a timely and properly completed Claim Form **no later than Month Day, 2019**. Claim Forms are available online at www.LapsedPolicySettlement.com or by contacting the Settlement Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF**.

**What are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **Month Day, 2019**. If you exclude yourself, you cannot get settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If you stay in the Settlement Class, you may object to the Settlement in writing by **Month Day, 2019**. The Detailed Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **Month Day 2019** to consider whether to approve the Settlement; whether to approve Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000); and whether to award the Class Representative $50,000 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit the website.

Prudential Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

**Unique ID:**
<<UniqueID>>

**COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT**

**If you are or were an owner or
beneficiary of a Prudential universal or
variable universal life insurance policy
that entered default or lapsed between
July 18, 2013 and [date of approval],
your rights will be affected and you
may be entitled to relief.**

www.LapsedPolicySettlement.com

<<BARCODE>>

<<NAME LINE 1>>
<<NAME LINE 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A Settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured or were reinstated between July 17, 2013 and [Prelim Approval] ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(s) may also be Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the Policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your Policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** *Current Policyowners do not need to submit a claim to benefit from the settlement relief and should not submit a Claim Form.* If you are eligible to make a claim on a lapsed policy, you must submit a timely and properly completed Claim Form **no later than Month Day, 2019**. Claim Forms are available online at www.LapsedPolicySettlement.com or by contacting the Settlement Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF**.

**What are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **Month Day, 2019**. If you exclude yourself, you cannot get settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If you stay in the Settlement Class, you may object to the Settlement in writing by **Month Day, 2019**. The Detailed Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **Month Day 2019** to consider whether to approve the Settlement; whether to approve Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000); and whether to award the Class Representative $50,000 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit the website.

# EXHIBIT B

**IF YOU ARE OR WERE A POLICYOWNER OR BENEFICIARY OF ONE OR MORE UNIVERSAL LIFE OR VARIABLE UNIVERSAL LIFE INSURANCE POLICIES ISSUED BY PRUDENTIAL THAT DEFAULTED, LAPSED, WAS CURED OR WAS REINSTATED BETWEEN JULY 18, 2013 AND NOVEMBER 26, 2019, YOU MAY BE ENTITLED TO RELIEF FROM A CLASS ACTION SETTLEMENT**

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

*Be sure to carefully read this entire notice and all of the relief sections to ensure that you fully understand the benefits of this settlement to you, as well as your options.*

## OVERVIEW

- A Settlement has been reached in a class action lawsuit against Pruco Life Insurance Company, The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (together, "Defendants" or "**Prudential**.")

- The class action lawsuit (the "**Action**") alleges that Prudential requested payments from policy owners in excess of the amounts provided for under certain universal and variable universal life insurance contracts issued by Prudential when those policies entered default or lapsed.

  o Plaintiff complained about undisclosed charges and cost of insurance calculated at maximum guaranteed rates rather than at current rates for payments due at default or reinstatement;

  o Plaintiff claimed that he remitted premiums more than sufficient to cure the default within the grace period under his policy and his policy was improperly lapsed;

  o Plaintiff claimed that the amount of these charges prevented him from curing default or reinstating his policy;

  o Plaintiff also claimed that Prudential sent notices to policy owners specifying amounts owed to cure a default and thereby prevent lapse, or to reinstate policies following lapse, that were incorrect, excessive, and/or inconsistent with policy requirements or terms; and

  o Plaintiff claimed that Prudential's conduct constituted breach of contract and breach of the duty of good faith and fair dealing, and violated the California Unfair Competition Law, Bus. & Prof. Code §§17200 et seq. and similar laws of other United States jurisdictions.

- Your Prudential policy is included in the Settlement if it is an individual universal life or variable universal life insurance policy for which Guaranteed Charges (i.e. the maximum allowed charges under the policy rather than the then Current Charges) were applicable to the calculation of the deficiency amount requested to cure a default and/or the reinstatement amount requested to reinstate a lapsed policy, and the policy entered into default, lapsed, was cured or was reinstated between July 18, 2013 and November 26, 2019 (the "**Class Period**") and remains in force on November 26, 2019 (policies fitting this description are referred to as the "**Class Policies**").

- You are included in the Settlement as a **Policyowner** if you are or were an owner (in whole or in part) of one or more Class Policies, unless you previously signed a settlement agreement with Prudential resolving a complaint or lawsuit that released Prudential from any claims relating to your Policy.  If all Policyowners and insureds on a Class Policy are deceased, and you were a designated beneficiary at the time of final lapse of that Class Policy, you are also included in the Settlement Class.

- Those included in the Settlement Class may be eligible to receive the relief described below.  A copy of the Settlement Agreement, which defines all initial capitalized terms used in this Notice, is available on the Settlement Website.

- **Read this notice carefully. Your legal rights are affected whether you act, or do not act.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | If a Class Policy has lapsed and is no longer in force, the only way to receive Settlement relief is to submit a Claim Form.<br><br>If you are a current Policyowner, you cannot (and do not need to) submit a Claim Form.  A change in the way your Policy is administered, agreed to in this Settlement, will apply to your Policy if you default and/or lapse. |
| **EXCLUDE YOURSELF** | If you exclude yourself from the Settlement, you will receive no Settlement relief, but will retain any rights you currently have to sue Prudential about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you do not like the Settlement.  You remain part of the Class if you choose this option. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement.  You remain part of the Class if you choose this option. |
| **DO NOTHING** | If you are a former Policyowner or were a designated beneficiary of a Class Policy (defined above) that lapsed and is no longer in force, you will not get Settlement relief if you do nothing.<br><br>If you are a current Policyowner a change in the way your Policy is administered, agreed to in this Settlement, will apply to your Policy if you default and/or lapse even if you do nothing.<br><br>Either way, if you do nothing you give up your rights to sue Prudential and other persons on certain claims as described in the Release below. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

**Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com**

2

# BASIC INFORMATION

## 1. Why was this notice issued?

A Court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and your options before the Court decides whether to give final approval of the Settlement. This Notice explains the Action, the Settlement, and your legal rights.

The Honorable Michael W. Fitzgerald, of the U.S. District Court for the Central District of California, is overseeing this case. The case is called *Richard Behfarin v. Pruco Life Ins. Company et al.*, Case No. 2:17-cv-05290-MWF-FFM (C.D. California). The person who sued is called the Plaintiff. The Defendants are Pruco Life Insurance Company, The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey. The Claims Administrator is Epiq Class Action & Claims Solutions, Inc.

## 2. What is a class action?

In a class action, one or more people, called class representatives (in this case, Richard Behfarin), sue on behalf of a group or "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except those who exclude themselves from the Class.

## 3. What is this lawsuit about?

This Action alleges that Prudential requested payments from policyowners in excess of the amounts provided for under the terms of certain universal and variable universal life insurance policies issued by Prudential to cure or reinstate those policies when those policies entered default or lapsed. The Action also raises other allegations regarding how Prudential administers these contracts. You can view a copy of the Complaint on the Settlement Website at www.LapsedPolicySettlement.com. The Action is also described in the Settlement Agreement.

Prudential denies all allegations of wrongdoing. The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with litigation.

## 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or Prudential should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get Settlement relief sooner rather than, if at all, after the completion of a trial.

# WHO'S INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am in the Settlement Class?

The Court decided that everyone who fits the following description is a member of the **Settlement Class**:

All Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are deceased, then also any designated beneficiary(s) of that Class Policy at the time of final lapse.

Class Policies include all individual universal life or variable universal life insurance policies issued by a Defendant as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed

between July 18, 2013 and November 26, 2019, or which had default cured or was reinstated on or after July 18, 2013 and remains in force on November 26, 2019.

This definition includes:

(i) Policies that lapsed for a final time during the Class Period and have not been reinstated to date where there is at least one living insured (the **"Lapsed/Alive"** Population);

(ii) Policies that lapsed for a final time during the Class Period and were not reinstated where the insured(s) are deceased (the **"Lapsed/Deceased"** Population); and

(iii) Policies that went into default or lapsed for which payment was made during the Class Period to cure the default or to reinstate after lapse where there is at least one living insured and the policy remains in-force (the **"Current Policyowner"** Population).

# THE SETTLEMENT BENEFITS

## 6. What does the Settlement provide?

The relief provided by the Settlement is different depending on the circumstances of your Prudential Policy. As described in this Notice, <u>not all Prudential Policies were affected by the conduct alleged in the Action</u>, and <u>different Policies were affected differently</u>. The availability of relief depends upon *whether and how* you may have been affected.

For Class Policies that are lapsed, where the Authorized Claimant (as defined by the Settlement Agreement) is in the Lapsed/Alive Population, Prudential will make available either: (i) a one-time payment of $250 **("Basic Relief")** or (ii) the opportunity to reinstate the Class Policy, with the same contract terms, insured and face amount of insurance as existed at the time of final lapse, without medical questions or examinations, review of medical records or other underwriting (but subject to certain rules, exceptions and process set forth in the Settlement Agreement) ("**Reinstatement Relief**"). What relief you get depends upon *whether* and *how* you were affected by the conduct alleged in the Action. If your Prudential Policy is in this population, you should review the questions below entitled "**What is Basic Relief**" and "**What is Reinstatement Relief**?"

For Class Policies that are lapsed, where the Authorized Claimant (as defined by the Settlement Agreement) is in the Lapsed/Deceased Population, Prudential will make available a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process. What relief you get depends upon *whether* and *how* you were affected by the conduct alleged in the Action. It also depends upon the Claim Scoring Process result. If your Prudential Policy is in this population, you should review the question below entitled "**What is Individualized Relief**."

For Class Policies that are still in force, the Current Policyholder Population, Prudential has agreed to change the way your Policy is administered at default or lapse. You do not need to do anything to benefit from this change.

A detailed description of the Settlement benefits can be found in the Settlement Agreement at www.LapsedPolicySettlement.com.

## 7. What is Reinstatement Relief?

Reinstatement Relief is available to those in the Lapsed/Alive Population, where the Class Policy is lapsed and at least one insured is still living. If this does not describe you, you can skip this question.

Reinstatement Relief is available if you are an Authorized Claimant and both the Claim Form and Prudential data reflect that the Class Policy was affected by the conduct challenged in the Action. *In*

*other words*:  You may qualify for Reinstatement Relief <u>if</u> Prudential requested payments on your Policy when it defaulted and/or to reinstate that equaled more than three months' premium at then Current Rates, plus applicable loads or fees, to cure the default and/or to reinstate the Policy.  Current Rates means the monthly cost of insurance rate then applicable to the Policy and the insured based on the insured(s)' age.

You will <u>**not**</u> qualify for Reinstatement Relief if certain **Gating Rules described in the Settlement Agreement apply to you.  If a Gating Rule applies**, your Policy may be eligible for Basic Relief.

To receive Reinstatement Relief, you will also be required to make certain statements on your Claim Form, which are made under penalty of perjury.  If you cannot truthfully make these statements, you will not qualify for Reinstatement Relief.  You may, however, still qualify for Basic Relief.  Please read the answer to Question 10 below, "What is Basic Relief?"

The required statements that you must make to receive Reinstatement Relief are listed on the Claim Form located at www.LapsedPolicySettlement.com. Please review the statements in detail prior to filing a claim.  In addition, the Claim Form will include additional information about submitting a claim for Reinstatement Relief, including what will be required of you if your claim is approved.

If your Class Policy is owned by more than one living person or entity, you must act jointly in exercising any right to Reinstatement Relief.  You can still reinstate the Policy with fewer than all original Policyowners; all owners, however, will be bound by the Settlement.

The Claims Administrator will determine if you qualify for Reinstatement Relief.  If your Claim to reinstate your Class Policy is approved, you are required to pay sufficient premium to keep the Reinstated Class Policy in force for the time the policy requires, at Current Charges.  Your obligations and other information regarding Reinstatement Relief are provided in the Settlement Agreement at www.LapsedPolicySettlement.com.  After your Claim is evaluated and approved, you will be put in contact with Prudential to receive information about all applicable charges, fees and premium payments (including loads, costs and expenses of every kind) necessary to reinstate the Policy and keep your Policy in force and to finalize reinstatement of your Class Policy.  If at any point you choose not to proceed with reinstatement, your Claim will be considered one for Basic Relief.

Policyowners shall otherwise retain such rights, if any, to reinstatement of their policies as exist in the terms of their Prudential contracts without regard to the Settlement Agreement

Reinstated Class Policies will be administered to comply with the definition of life insurance under federal tax law.

## 8. Do I qualify for Enhanced Relief?

If you are in the Lapsed/Alive population and submit a Claim Form for Reinstatement Relief, meet all qualifications for that Reinstatement Relief, submit a timely application to reinstate and complete the reinstatement process, you may also qualify for Enhanced Relief.

To receive Enhanced Relief, you must:

a.  Have been identified by Prudential as qualifying, based on existing Prudential records reflecting that after the final lapse of your Policy a timely application for reinstatement was submitted and then not approved;

b.  Pass all Gating Rules described in the Settlement Agreement;

c.  Timely submit a completed Claim Form including all required Certifications; and

d.  Complete timely reinstatement of your Policy by paying required amounts.

If the Claims Administrator determines you meet all of the above (a)-(d), you must then timely pay all required premium necessary for the Reinstated Class Policy to be in force at the end of the first three years.

Provided that your Policy is in-force at the beginning of the fourth policy year following the date of reinstatement, Prudential will, on the Policyowner's behalf, pay and apply to the policy the amount of premium (inclusive of all premium/tax loads) necessary to satisfy the cost of insurance for the policy, based on the then-Current Rates and Current Charges for the fourth and fifth years.

Additional details are contained in the Settlement Agreement at www.LapsedPolicySettlement.com.

## 9. What is Individualized Relief?

Individualized Relief may be available for those in the Lapsed/Deceased Population where a Class Policy is lapsed and all insureds are deceased.  If this does not describe you, you can skip this question.

For Authorized Claimants, Individualized Relief will consist of a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process.  The Scoring Process is based on an individual analysis and determination of each Claim according to Scoring Guidelines.

The Scoring Guidelines apply certain Scoring Factors based on specified Prudential records related to your Policy.  The Score will depend upon what the records reflect regarding whether, and how, you may have been impacted (if at all) by the conduct alleged in the Action. The Scoring Guidelines are an exhibit to the Settlement Agreement located at www.LapsedPolicySettlement.com.

Claims will be scored by the Claims Administrator based upon a four-tiered, 3-2-1-0 scale, with a minimum payment of $250 for a Score 0, and other payments ranging from 5% to 75% of the death benefit amount of the policy on the date of death, reduced by the same percentage of the amount the Policy holder would have been required to pay to reinstate and keep the policy in force, plus interest.

To be eligible for Individualized Relief, a Claimant must timely complete and submit a Claim Form and must provide due proof of death of all insureds on the Class Policy, as described more fully in the Settlement Agreement.  The Claimant must also certify, under penalty of perjury, that Claimant stands in the shoes of the Policyowner of the Class Policy and/or otherwise is entitled to collect a Settlement Payment made with respect to the Class Policy and will distribute such Settlement Payment in whole or in relevant part to any other individual or entity who has a recognized interest therein.

Any payment as Individualized Relief will be made exclusively as a compromise and release of claims in the Action and shall be considered exclusively a Settlement Payment.

## 10. What is Basic Relief?

With respect to any Class Policy that is lapsed (i.e., you are not a current Policyholder), you may elect to receive Basic Relief, a check for $250, instead of Reinstatement Relief or Individualized Relief. You may also receive Basic Relief if your Policy is lapsed and you do not qualify for other relief under the Settlement.

## 11. Can I contest my relief, and when will I get my relief?

All decisions as to whether or not you are eligible for relief under the Settlement and are an Authorized Claimant will be made by the independent Claims Administrator.  With respect to the Settlement Class and all Class Policies, there shall be no recourse to or against any Defendant or Released Party or their counsel, or to or against the Class Representative or Class Counsel, or the Court, for any determination made by the Claims Administrator.  Also, there shall be no ability to

**Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com**

6

challenge, nor any recourse to or right to recover from, the Claims Administrator for determinations made under the Settlement Agreement.

However, if you qualify for Individualized Relief and you are unhappy with the Score that is applied, you may, in some circumstances, have an opportunity to appeal your Score to a Special Master. The appeal may or may not result in a higher Score. The cost of any such appeal is payable by you and is $1,000, payable in advance. More details on the limited appeal rights are included in the Settlement Agreement.

The hearing to consider the fairness of the Settlement is scheduled for **April 20, 2020**. If the Court approves the Settlement, eligible Class Members whose claims were approved by the Claims Administrator can proceed with Reinstatement Relief, and/or, if entitled to a monetary payment, will receive their payment after the Settlement has been finally approved and/or after any appeals process is complete. Any monetary payments will be made in the form of a check, and all checks will expire and become void 180 days after they are issued. If not cashed, the funds will revert back to the Escrow Account described in the Settlement Agreement.

# HOW TO GET BENEFITS

## 12. How do I get relief?

If you are a Policyowner of a Class Policy in the Lapsed/Alive Population, or a Policyowner or designated beneficiary of record of a Class Policy in the Lapsed/Deceased Population, and want to receive Settlement relief, you must complete and submit a Claim Form and any other required documentation, by **March 31, 2020**. Claim Forms can be found and submitted on-line or you may receive and submit a Claim Form in the mail. To submit a Claim Form on-line or to request a paper copy, go to the Settlement Website at www.LapsedPolicySettlement.com or call toll free, 1-855-915-0909.

The Claims Administrator will evaluate and determine the status of your claim based on the terms of the Settlement Agreement.

Do not mail or deliver your Claim Form to the court, the Parties to this action, or their counsel. Submit your Claim Form only to the Claims Administrator.

You are required to submit true and correct information when completing the Claim Form. This includes any attestations and warranties you are required to make in the Claim Form. Failure to provide true and correct information can result in denial of your Claim under the Settlement; or if your Class Policy is reinstated, Prudential terminating the policy and denying any Policy benefits and taking any other action that may be appropriate.

# REMAINING IN THE SETTLEMENT

## 13. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue Prudential and other Released Parties for the claims being resolved by this Settlement. (See the section about the Release below). The specific claims you are giving up are also described in the Settlement Agreement. You will be "releasing" Prudential, its affiliates and their employees and representatives as described in Section IV of the Settlement Agreement. Unless you exclude yourself (*see* Question 18), you are "releasing" the claims, regardless of whether you submit a claim or not. The Settlement Agreement is available through the "court documents" link on the Settlement Website.

**Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com**

7

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions about this release or what this release means, you can contact the Claims Administrator for free or contact your own lawyer at your own expense.

## 14. What happens if I do nothing at all?

If you have a lapsed Policy and you do nothing, you will be bound by the Settlement Agreement Release, and you won't get any benefits from this Settlement and won't be able to start a lawsuit or be part of any other lawsuit against Prudential for the claims being resolved by this Settlement.

If you are a current Policyowner, you may be affected positively by a change in the way your Policy is administered by Prudential if you default and/or lapse. This is so whether you exclude yourself from the Settlement Class or do nothing.

# THE RELEASES, DISCHARGE AND COVENANT NOT TO SUE UNDER THE SETTLEMENT

## 15. What does the Release say?

If you do not request to be excluded from the Settlement Class, when the Settlement becomes final you will have released the claims described below and you will be bound by the releases in the Settlement Agreement including the covenant not to sue, even if you do not file a Claim Form.

The parties bound by the Release (the "Releasing Parties") include: Plaintiff and Settlement Class Members who do not validly and timely opt out of the Settlement Class, all beneficiaries of Class Policies, and with respect to each Class Policy, all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, agents, consultants, officers, partners, principals, members, attorneys, accountants, financial and other advisors, shareholders, investment advisors, and legal representatives.

The parties receiving a Release (the "Releasees") include: Pruco Life Insurance Company, The Prudential Insurance Company of America and Pruco Life Insurance Company of New Jersey, individually and collectively, and all of their current, former and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, employees, agents, independent contractors, brokers, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns, or any of them.

Without further action by anyone, upon the Effective Date of the Settlement, Plaintiff, the Settlement Class, and the Releasing Parties: (i) have and shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Plaintiff's and Settlement Class' claims against each and every one of the Releasees; (ii) have and shall be deemed to have covenanted not to sue, directly or indirectly, any of the Releasees with respect to any or all of the Released Claims; and (iii) shall forever be barred and enjoined from directly or indirectly, filing, commencing, instituting, prosecuting, maintaining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, or before any administrative body (including any state Department of Insurance or other regulatory commission) whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any or all of the Released Claims.

**Released Claims.** The Released Claims include all claims that have been, could have been, may be or could be alleged or asserted in this Action regarding or concerning directly or indirectly any Class Policy, by Plaintiff, any Settlement Class Member, or any Releasing Party, against any of the

Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com

8

Releasees (individually or together) either in the Action or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel, and that are made on the basis of, connected with, arising out of, or related to, in whole or in part, claims that were raised or that could have been raised in the Action, which include without limitation those regarding:

(i)     Any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Action;

(ii)    The amount of monies or other requirements that were requested by or on behalf of Prudential in order to keep a Class Policy that has entered default in force or to reinstate a Class Policy after lapse, including but not limited to premium and all fees, charges and other monies, verifications or documentation requested;

(iii)   Claims, acts and omissions regarding the method of, and/or administration of, and/or communication regarding, the calculations by or on behalf of Prudential of the amount of monies that were requested, including in order to keep a Class Policy that has entered default in force or to reinstate a Class Policy after lapse, and including but not limited to premium, fees, charges and other monies or requirements.  This includes but is not limited to any and all claims regarding:

(a) premiums;

(b) cost of insurance charges, rates and assumptions;

(c) administrative fees or loads;

(d) underwriting or other requirements; and/or

(e) other policy costs.

(iv)    Claims regarding Prudential's policies and procedures concerning default, grace periods, lapse or reinstatement, including but not limited to claims concerning communications, notices, absence or omission of communications or specific information regarding grace periods, default or lapse, or the timing thereof, and claims relating to notice to identified third parties, including but not limited to any claims made under any state's law, regulation or administrative directive; and

(v)     Claims related to Prudential's declination or refusal of an attempt to cure a default or reinstate a Class Policy, for any reason.

Plaintiff, the Settlement Class and the Releasing Parties each individually expressly agrees that he/she/they/it shall not now or hereafter institute, maintain or assert against any Releasee(s), either directly or indirectly, on his/her/their/its own behalf or on behalf of the Settlement Class, any Class Policy, or any person, and release and discharge each Releasee from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, related to, based upon, arising out of, in whole or in part, the Released Claims.  For those Reinstated Class Policies that are reinstated under this Settlement Agreement more than five years following lapse, and were issued under either the 1980 or 2001 CSO mortality table, this Release does not include claims for monetary loss that result directly from Prudential's administration of those policies under the guideline premium limitation ("GPL") and cash value corridor ("CVC") test of section 7702(c) and (d) of the Internal Revenue Code.

**Covenant Not to Sue and Release as Bar.**  Plaintiff, the Settlement Class and the Releasing Parties each individually covenant not to bring any Released Claim and expressly agree that this Release will

be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by the Release(s) contained herein in respect to Class Policies.

**Release includes Unknown Claims.**  Although the Release set forth above is not a general release, such Release constitutes a waiver of Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Release set forth above also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  The Settlement Class acknowledges that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the Release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts. In entering and making this Agreement, the Settling Parties assume the risk of any mistake of fact or law, and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

There are additional provisions in the Settlement Agreement regarding this Release.  Please refer to the Settlement Agreement for additional information.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in the case?

The Court has appointed Steven C. Shuman of Engstrom, Lipscomb & Lack and Robert B. Mobasseri Esq. of Law Office of Robert B. Mobasseri, to be the attorneys representing the Settlement Class. They are called "Class Counsel."  They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 17. How will the lawyers be paid?

Class Counsel attorneys' fees and costs shall be paid by Prudential in an amount to be determined by the Court.  Class Counsel will file with the Court and post on the Settlement Website its request for attorneys' fees and expense reimbursement by **February 11, 2020**.  The request for attorneys' fees and expense reimbursement will seek no more than $3.5 million in fees and $500,000 in expenses; Prudential has agreed not to object to awards in those amounts, but the Court may award less than those amounts.  Under the Settlement Agreement, Prudential will be responsible for payment of the amounts awarded by the Court, and it will not reduce the amount of Settlement relief, if any, provided to the members of the Settlement Class.

Subject to approval by the Court, the Class Representative will file with the Court and post on the Settlement Website by **February 11, 2020** a request for a payment of an incentive award of no more than $50,000 payable by Prudential for his services in helping to bring and settle this case.

**Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com**

**10**

# EXCLUDING YOURSELF FROM THE SETTLEMENT

**18. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must mail or otherwise deliver a letter ("Request for Exclusion") stating that <u>you want to be excluded</u> from the *Richard Behfarin v. Pruco Life Ins. Company et al.*, Case No. 17-cv-05290-MWF-FFM (C.D. California) settlement.

The letter must include: (1) your name and address; (2) the Policy Number of the applicable Class Policy(ies); (3) a statement that you are authorized to act on behalf of the Class Policy; (4) your signature; (4) the name and civil action number of the case; and (5) a clear statement that you, on behalf of the Class Policy, wish to be excluded from the Settlement Class for purposes of this Settlement.

A Request for Exclusion that does not include all of this information, or that is sent to an address other than that designated, or that is not postmarked within the time specified, or is not sent by an authorized representative, shall be invalid.  You must mail or deliver your Request for Exclusion no later than **February 25, 2020,** to:

<div align="center">

Behfarin v. Pruco Settlement
PO Box 6869
Portland, OR 97228-6869

</div>

If your Prudential Policy is owned by more than one person or entity, you must act jointly in exercising any right to exclude yourself from the Settlement.

**19. If I do not exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Prudential for the claims being resolved by this Settlement.

**20. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, do not submit a Claim Form to ask for benefits.

# OBJECTING TO THE SETTLEMENT

**21. How do I object to the Settlement?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it. The Court will consider your views.  To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Richard Behfarin v. Pruco Life Ins. Company et al.*, Case No. 17-cv-05290-MWF-FFM (C.D. California) and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member including the Policy Number of the applicable Class Policy(ies), and a statement that the person seeking to object is authorized to act on behalf of the Class Policy, the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption.

**Questions? Call 1-855-915-0909 Toll Free, or Visit www.LapsedPolicySettlement.com**

**11**

You must **also** mail or deliver a copy of your letter or brief to Class Counsel **and** Prudential's Counsel listed below.

If you want to also appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 23), you must say so in your letter or brief. You must file the objection with the Court, and mail a copy to both Class Counsel and Prudential's Counsel, addressed as shown below and postmarked no later than **February 25, 2020.**

| Court | Class Counsel | Prudential's Counsel |
|---|---|---|
| The Honorable Michael W. Fitzgerald United States District Court for the Central District of California First Street Courthouse 350 West First Street, Courtroom 5A Los Angeles, CA 90012 | Steven C. Shuman Engstrom, Lipscomb & Lack 10100 Santa Monica Blvd. Suite 1200 Los Angeles, CA 90067 | Laura L. Geist Dentons US LLP 1999 Harrison Street Suite 1300 Oakland, CA 94612 |

### 22. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 23. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at **10:00 a.m.** on **April 20, 2020,** in Courtroom 5A at First Street Courthouse, 350 West First Street, Los Angeles, California 90012. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate and in the best interests of the Class; to consider Class Counsel's request for attorneys' fees and expenses; and to consider the request for an incentive award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.LapsedPolicySettlement.com or call 1-855-915-0909. If, however, you timely objected in writing to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such Final Approval Hearing.

### 24. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but this is not required.

### 25. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the Settlement a statement saying that it is your

"Notice of Intent to Appear in *Richard Behfarin v. Pruco Life Ins. Co. et al.* Case No. 2:17-cv-05290-MWF-FFM (C.D. California)." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. If you filed an objection on or by **February 25, 2020**, and an attorney intends to appear on your behalf at the hearing, your attorney must file a separate Notice of Intention to Appear by **March 30, 2020**.

## GETTING MORE INFORMATION

| 26. Where do I get more information? |
|---|

This Notice summarizes the Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at the Settlement Website at www.LapsedPolicySettlement.com. You may also write with questions to Behfarin v. Pruco Settlement, P.O. Box 6869, Portland, OR 97228-6869. You can call the Claims Administrator at 1-855-915-0909, if you have any questions. Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the Settlement Website.

To the extent you (or any potential Claimant) communicate with any agent, financial professional, producer, advisor or representative regarding the Settlement, or seek or obtain advice about making a claim for reinstatement, those communications will be deemed to be exclusively on behalf of you (the Claimant), and not authorized, directed or made by, or on behalf of Prudential. No agent, financial professional or producers (including independent appointed agents and brokers and/or Prudential agents) are authorized by Prudential to act on the Company's behalf with respect to the Settlement, including providing any advice regarding participation in the Settlement by you or any potential Claimant.

## DO NOT CONTACT THE COURT REGARDING THIS NOTICE.

Dated: November 26, 2019          BY ORDER OF THE COURT.
                                 Clerk of the United States District Court
                                 Central District of California

# EXHIBIT C

SETTLEMENT EXHIBIT C

<u>UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA</u>
*Richard Behfarin v. Pruco Life Ins. Co., The Prudential Ins. Co. of America and Pruco Life Ins. Co. of New Jersey*, Case No. 2:17-cv-05290-MWF-FFM

# REINSTATEMENT GUIDELINES
# FOR SETTLEMENT CLASS POLICIES

These Reinstatement Guidelines describe the process by which Policyowners whose Class Policies lapsed for a final time during the Class Period and for which there is at least one living insured (the **"Lapsed/Alive"** Population), and who are found by the Claims Administrator[1] to be Authorized Claimants, can obtain a Reinstated Class Policy.

These Guidelines are in accordance with the Stipulation of Settlement and Release ("Settlement Agreement") and have been approved by the Court. They can be modified only by written agreement of the Parties, subject to approval by the Special Master.

## <u>How to Submit a Claim For Reinstatement Relief</u>

Policyowners in the Lapsed/Alive Population must submit a Claim Form to the Claims Administrator to request Reinstatement Relief.

Reinstatement Relief consists of the opportunity to reinstate a Class Policy, without underwriting, on the same contract terms (including the same insured and face amount of insurance) as existed at the time of final lapse. To have a Class Policy considered for Reinstatement Relief, a Claimant must timely complete and submit a Claim Form to the Claims Administrator, in the form attached to the Settlement Agreement as Exhibit E.

There are three ways to obtain a Claim Form and submit a Claim for Reinstatement Relief to the Claims Administrator:

1)  Complete an online Claim Form available on the Settlement Website at www.lapsedpolicysettlement.com no later than 11:59 p.m. PST, March 31, 2020.

2)  Download and print a copy of the Claim Form from the Settlement Website, and then mail the completed Claim Form via U.S. Mail postmarked no later than March 31, 2020 to the address indicated on the Claim Form, or

---

[1] Unless otherwise set forth herein, initial capitalized terms have the same definitions as set forth in the Settlement Agreement. In the event of any inconsistency, the provisions of the Settlement Agreement control.

3)     Request a copy of the Claim Form from the Claims Administrator, and then mail the completed Claim Form via U.S. Mail postmarked no later than March 31, 2020 to the address indicated on the Claim Form.

Claims postmarked or submitted after March 31, 2020 will not be accepted and Claimants submitting such late forms will not be eligible for relief.

## The Claim Form

The Claim Form requires that each Claimant provide certain identifying information and make all required certifications to facilitate the Claims Administrator's verification of Claim eligibility, including a determination as to whether the Claimant is an Authorized Claimant under the terms of the Settlement Agreement.

All information provided on the Claim Form will be checked by the Claims Administrator against the Class Policy and other Prudential Records provided pursuant to the Settlement, as well as other sources such as public records. The Claimant must pass all Gating Rules and make all required certifications to be approved for Reinstatement Relief.

**Failure to make all required certifications and provide true and accurate information may result in denial of the Claim for Reinstatement Relief.**

If more than one person or entity has an ownership interest or ownership right in a Class Policy in the Lapsed/Alive Population, all persons having such an interest or right in such Class Policy must either assign their rights by written instrument or act jointly in exercising any right to Reinstatement Relief.

If a Class Policy is reinstated notwithstanding the absence of such assignment or joint request of all original Policyowners, the entire Settlement Class and all Class Policies (and Releasing Parties) will be still be subject to the Settlement Agreement, and the Policyowner(s) requesting reinstatement of the Reinstated Class Policy will assume all obligations as well as all potential liability to any individual or entity who asserts an interest in the Class Policy.

## Obtaining Information to Assist in Deciding Whether to Proceed with Reinstatement

Commencing after the Settlement is approved by the Court and becomes Final, Claimants will first receive a notification letter from the Claims Administrator informing them whether they have been determined to be an Authorized Claimant and their Claim for Reinstatement Relief has been approved.

Those Authorized Claimants whose Claims for Reinstatement Relief have been approved will subsequently receive a second notification letter setting forth the Reinstatement Amount that will need to be paid to reinstate the Policy (the "Reinstatement Amount") and a Request for Reinstatement form, which must be completed to obtain a Reinstated Class Policy.

The second notification letter will also advise the Authorized Claimant that they may call a Prudential representative, on a dedicated line, to request a settlement-related policy illustration ("settlement illustration"), within the timeframe described below. The settlement illustration, where requested, will be provided with a cover letter and in the form attached hereto as Appendix 1, and will be provided for settlement purposes only, solely to aid the Authorized Claimant in understanding the premium amounts (on a guaranteed and non-guaranteed basis) that may be required to keep the Reinstated Class Policy in force through the policy's premium period. This is exclusively to enable the Authorized Claimant to make an informed decision regarding whether to pursue reinstatement under the terms of the Settlement. Settlement illustrations will differ somewhat in form or format from the examples attached in light of differences between various Class Policy types. Additionally, the settlement illustration form or format may vary from what is shown in Appendix 1 for accuracy or for operational reasons.

The Prudential representative will also be available to assist the Authorized Claimant with questions concerning, among other matters, the premium payments that may be needed to keep the policy in force following reinstatement and the premium amount to be periodically billed to them for the Reinstated Class Policy (the "Billed Premium"). The Prudential representative will also be available to answer questions regarding adjustments to face value, beneficiary changes, address of record changes, premium payment mode changes, ownership changes and policy riders. Any and all permitted policy changes may be submitted only after a Class Policy has been reinstated.

**<u>Timing of Reinstatement</u>**

Reinstated Class Policies will not be issued prior to the Settlement being approved in all material respects and the Settlement becoming Final.

Commencing 10 days after the Settlement becomes Final, Epiq will commence the process of sending the first notification letter to inform Claimants whether or not their claim for Reinstatement Relief has been Authorized. Epiq will then send the second notification letter which will set forth the Reinstatement Amount and include a Request for Reinstatement form, which must be completed to obtain a Reinstated Class Policy.

Authorized Claimants can then proceed with the process for Issuance of a Reinstated Class Policy as described above. Authorized Claimants who wish to obtain policy illustrations should request them no more than 15 days after receipt of the second notification letter to facilitate timely receipt. Reinstatement quotes will be valid until the date shown on the quote letter. A completed Request for Reinstatement form, along with payment, must be received by Prudential on or prior to that date.

Inbound call volumes and requests for illustrations may be high. Prudential will endeavor to answer calls and prepare policy illustrations in an efficient manner.

**Process for Issuance of Reinstated Class Policy**

Authorized Claimants will need to submit a Request for Reinstatement form and pay the required Reinstatement Amount to Prudential on or prior to the date shown on the second notice letter from the Claims Administrator to obtain a Reinstated Class Policy.  The Request for Reinstatement form will allow the Authorized Claimant to change the Billed Premium amount and payment mode (monthly (if paid by EFT), quarterly or annually), and the address of record for the Reinstated Class Policy to which notices will be sent.  If no address of record and/or Billed Premium amount and payment mode is provided, the address of record and/or Billed Premium amount and payment mode will be as reflected on Prudential's records as of the date of final lapse, unless at the time of lapse the Class Policy was on a monthly payment mode, in which event the payment mode will be quarterly.  If the Request for Reinstatement form is not submitted and/or required Reinstatement Amount is not paid within the stated period, Prudential will so advise the Claims Administrator.  The Claims Administrator will then treat the claim of the Authorized Claimant as one for Basic Relief only, and inform the Authorized Claimant of this in writing.

**Authorized Claimants Eligible for Enhanced Relief**

If an Authorized Claimant is eligible for Enhanced Relief, the same process described in the preceding paragraph for obtaining a Reinstated Class Policy will apply.

If a Class Policy eligible for Enhanced Relief is reinstated, and the Authorized Claimant pays all required premiums for the first three years following the Reinstatement Date, then Prudential will pay on the Authorized Claimant's behalf and apply to the policy the amount of premium (inclusive of all premium/tax loads) necessary to satisfy the cost of insurance for the policy in years 4 and 5 following reinstatement.  All other amounts, if any, that may be necessary to keep the Reinstated Class Policy in force and/or to satisfy policy terms will remain the responsibility of the Authorized Claimant.  At the beginning of the sixth year following reinstatement, the Authorized Claimant who receives Enhanced Relief will again be required to make all premium payments to keep the Reinstated Class Policy in force to Prudential based on then-Current Rates and Current Charges.

An award of Enhanced Relief will have no impact on an Authorized Claimant's obligation to pay interest and/or principal payments as may be due on loans taken against the cash value of the Reinstated Policy.  This includes that Authorized Claimants who receive Enhanced Relief will be responsible for the payment of loan interest and/or principal during the fourth- and fifth-years following reinstatement, and failure to repay such amounts, if due, will put the policy at risk of lapse.  Further, if an Authorized Claimant makes or requests any change to the Reinstated Class Policy that affects its performance, such as (without limitation) a loan, withdrawal, surrender, a change in the policy's face amount, or any other change, this may

prevent the Reinstated Class Policy from remaining in-force, and the policy's continuation would not be guaranteed.  In addition, for Reinstated Class Policy(ies) that are variable universal life contracts, investment performance will affect the policy's cash value and additional payment of premium by the Authorized Claimant may be required in the fourth and fifth years following reinstatement beyond the amount to be satisfied by Prudential described in paragraph III.C.2 of the Settlement Agreement and in the preceding paragraph.

No Reinstated Class Policy will be in force and eligible for payment of death benefit amounts unless and until the amount requested to reinstate the Class Policy is paid.

The Reinstated Class Policy will be subject to that policy's terms and conditions.  All Settlement Class Members are subject to the Settlement Agreement and Release and the Orders of the Court.

## <u>Request for Reinstatement</u>

The undersigned hereby request(s) reinstatement of Policy No. _____ under the terms of the class action settlement in *Behfarin v. Pruco Life Insurance Company, et. al.,* United States District Court, Central District of California, Case No. No. 2:17-cv-05290-MWF-FFM.

1.  The Policyowner address of record for this policy shall be:

    _____

    _____

    _____

    _____

2.  The billed premium amount for this policy shall be:

    _____ (insert dollar amount)

3.  This amount shall be payable (check one box only):

    _____ Annually

    _____ Semi-Annually

    _____ Quarterly

    _____ Monthly (must be accompanied by a properly completed EFT form)[2]

_____     _____
Policyowner/Authorized Claimant Signature            Date

_____
Print Name

_____     _____
Policyowner/Authorized Claimant Signature            Date

_____
Print Name

112756233
_____

[2] If not accompanied by a properly completed EFT form, the policy will be placed on a quarterly mode and the billed premium amount adjusted accordingly.

# Addenda 1

## Cover Letter for Illustrations

Hello Bob,

You are receiving this letter as an Authorized Claimant whose Claim for Reinstatement Relief was approved by the Claims Administrator pursuant to the court-approved settlement ("Settlement") in *Richard Behfarin et al. v. Pruco Life Insurance Company et al.*, Case No. 2:17-cv-05290-MWF-FFM (C.D. California). Pursuant to the Reinstatement Guidelines in the Settlement, you requested a settlement illustration from Prudential.

Your [PruLife® Universal Protector] policy [V1234567] is currently lapsed and is no longer in effect. The attached settlement illustration is provided pursuant to your request under the terms of the Settlement. The purpose of this settlement illustration is solely to aid you, the Authorized Claimant, in understanding the premium amounts that may be required to keep the Reinstated Class Policy in force on a going forward basis, so that you can make an informed decision regarding whether to pursue reinstatement. The Court authorized Prudential to provide this settlement illustration to you even though the policy is not currently in force.

This settlement illustration shows the amounts required to keep the policy in force through the policy's premium period based on "non-guaranteed values" that are derived from using both current charges and interest crediting assumptions. Please note that for variable universal life policies, the settlement illustration assumes certain levels of policy account value performance that may or may not be achieved. This Settlement illustration is based on the Settlement terms, the reinstatement amount provided to you by the Claims Administrator that must be paid to reinstate the policy under the Settlement and certain assumptions. These assumptions include, but are not limited to, that the reinstatement amount of $XXXX.XX is received by Prudential on or prior to MM/DD/YYYY, and that, upon that payment, this policy returns to active status. The settlement illustration shows guaranteed values and non-guaranteed values, for example, cost of insurance amounts, fees and interest. Non-guaranteed values are subject to change.

Please note that the premium amounts required to keep the policy in force through the policy's premium period (or other duration) may be more than the billed premium when your policy lapsed. You may change the billed premium amount at the time you submit the Request for Reinstatement form or after the policy is reinstated. If you do not do so, the billed premium amount will remain the same as at the time of lapse.

Please also note, under the Settlement, you must reinstate the policy on the terms that existed at the time of final lapse. As such, this illustration further assumes that no policy changes that impact the assumptions of this illustration are made after reinstatement.

Any request to reinstate this policy must strictly comply with the reinstatement procedures outlined in the Settlement Agreement, the Reinstatement Guidelines For Settlement Class Policies, along with any instructions provided by the Claims Administrator or Prudential.

If any of the following occur: the amount or timing of the premiums you pay differs from what is shown in the settlement illustration; policy changes are made; policy loans or withdrawals are taken; optional benefits are elected; we change interest rates; or we increase fees or charges subject to the terms of the policy, the policy may not last as long as shown in the settlement illustration. Additionally, for variable universal life policies, actual investment performance may be different than as illustrated. This means you may have to pay premiums in addition to those shown in the settlement illustration.

I hope this provides you with the information you wanted. Please contact me if you have additional questions.

Sincerely,

Marie

# Addenda 2

## UL Illustrations

LAPSED POLICY ILLUSTRATION
FOR SETTLEMENT PURPOSES ONLY
ISSUED PURSUANT TO COURT ORDER, BEHFARIN ET AL. V. PRUCO ET AL.

**Prudential**

*S002*

*Issued by: **Pruco Life Insurance Company**, located at 213 Washington Street, Newark, NJ 07102-2992, a Prudential Financial company solely responsible for its own financial condition and contractual obligations.*

*Prudential, the Prudential logo and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities.*

**PruLife® Universal Plus
Life Insurance Policy
Individual Basic Inforce Illustration**

PruLife® Universal Plus is a flexible premium universal life insurance policy that covers the life of one insured. It offers protection with flexibility in premium payments and a choice of death benefit types. The death benefit is payable upon the death of the insured. This illustration is intended to show how guaranteed and non-guaranteed interest rates and charges can affect policy values.

This inforce illustration has been designed to provide a current status of this policy based on past premium payments, and any loans and/or withdrawals previously taken in conjunction with actual interest rates credited and policy charges from the Issue Date through the Policy Values Date of this illustration. It is also designed to show how future premium payments and any loans, withdrawals or policy changes may affect cash values and death benefits in the future based on stated assumptions about interest rates and policy charges. This is an illustration and not a contract. If there is a discrepancy between this illustration and the policy, the policy shall be considered correct.

The non-guaranteed amounts shown after the Policy Values Date are not predictions or guarantees of future results.

This illustration assumes that the currently illustrated non-guaranteed elements used will not change for all years shown. This is not likely to occur, and actual results may be different than those shown.

| | |
|---|---|
| **Policy Number:** | **Vxxxxxxx** |
| **Policy Issue Date:** | **08/17/2002** |
| **Policy Values Date:** | **02/12/2020** |
| **Illustration Presented to:** | **N H K** |
| **For use in the state of:** | **Indiana** |

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES. THIS ILLUSTRATION ID IS  02132020150551

| **Prepared by:** | Prudential Financial | Telephone Number: 888-743-7111 |
|---|---|---|
| | Prudential Financial | |
| | 213 Washington Street | |
| | Newark, NJ 07102 | |

**Summary of Policy Information**

This inforce illustration and the values shown on the Policy Status Report that follows have been produced based on the following policy and underwriting information.

| | |
|---|---|
| **PolicyValues Date:** | 02/12/2020 |
| **Policy Number:** | Vxxxxxxx |
| **Insured's Name** | N H K |
| **Sex, Issue Age** | Male, Issue Age 66 |
| **Current Basic Insurance Amount** | $175,000 |
| **Death Benefit Type** | Type A (Fixed) Death Benefit |

**Cash Value Accumulation Test**

**Living Needs Benefit Rider**

**Underwriting Information**

The following information reflects the current underwriting status of the Insured on this policy.

| | |
|---|---|
| **Underwriting Classification** | Preferred Non-Smoker |

**Policy Status Report**

A summary of important policy information as of the
Policy Values Date.

---

<div style="border:1px solid">

**Policy Status**

**Policy #** Vxxxxxxx
**Policy Issue Date** 08/17/2002
**Policy Values Date** 02/12/2020

| | |
|---|---|
| **Current Billed Premium and billing frequency:** | $600.00 Annual |
| **Current Short-Term Premium:** | $4,668.50 |
| **Contract Fund:** | $2,321.10 |
| **Cash Value:** | $1,923.97 |
| **Death Benefit:** | $175,000.00 |
| **Total Premium Outlay to Date:** | $16,770.13 |
| **1035 Exchange Amount Received:** | $27,022.20 |

</div>

---

The current Short-Term premium shown above is based on the current policy and insured's information as of the Policy Values Date only.

The reports that follow show results based on current interest crediting rates and current charges. The reports assume that these crediting rates and charges are applied to policy values beginning as of the Policy Values Date.

All guarantees, if any, are based on the claims-paying ability of the issuer.

**Inforce Illustration Assumptions**

The reports that follow are based on the Summary of Policy Information assuming the following future transactions are made to the policy.

### The following future transactions are assumed in this illustration:

- Reinstatement payment amount of $4,056.39 received by Prudential on or prior to **02/12/2020**.

- Premium payment of $2,575.00 received by Prudential on or prior to **02/17/2020.**

- Premium payments in future policy years.

This policy is currently lapsed and is no longer in effect.  This illustration is provided to an Authorized Claimant whose Claim for Reinstatement Relief has been approved by the Claims Administrator pursuant to the terms of the court-approved settlement ("Settlement") in Richard Behfarin et al. v. Pruco Life Insurance Company et al., Case No. 2:17-cv-05290-MWF-FFM (C.D. California).  The purpose of this illustration is solely to aid the Authorized Claimant in understanding the premium amounts that may be required to keep the Reinstated Class Policy in force on a going forward basis, so that the Authorized Claimant can make an informed decision regarding whether to pursue reinstatement.  The Court has authorized Prudential to provide this illustration for that sole purpose.

Furthermore, this illustration is based on the assumptions set forth herein.  These assumptions include, but are not limited to, that the reinstatement amount of $4,056.39 is received by Prudential on or prior to 02/12/2020 and that, upon that payment, this policy has returned to active status.  It further assumes that a one-time drop-in of $2,575,00 is received by Prudential on or prior to 02/17/2020 to maintain the policy until its next anniversary.  It is also based on non-guaranteed values, which are subject to change.  Please note that, pursuant to the terms of the Settlement, the Authorized Claimant must reinstate the policy on its terms at the time of final lapse.  As such, this illustration assumes that no policy changes have been made.  Any request to reinstate this policy must strictly comply with the reinstatement procedures outlined in the Settlement Agreement and Exhibit C thereto, the Reinstatement Guidelines For Settlement Class Policies, along with any instructions related thereto that are provided by the Claims Administrator or Prudential.

**Glossary of Terms**

| | |
|---|---|
| **Admin. & Transaction Charges** | **Administration Charges** are intended to compensate us for things such as processing claims, keeping records and communicating with policyowners. **Transaction Charges** include such things as processing policy changes, transfers and surrenders. |
| **Age** | The age of the insured at the beginning of each policy year. |
| **Annual Premium Outlay** | The annual payment amount. The premium shown in the first illustrated year includes only those premiums paid from the Policy Values Date to the next policy anniversary. However, policy values reflect all premiums paid up to and including Policy Values Date. All subsequent premiums are assumed to be paid on the first day of each policy year. If you make payments more frequently than annually, they are assumed to be made on the first day of each premium payment period. |
| **Basic Insurance Amount** | This is the face amount of your Policy. |
| **Cash Value** | The amount you would receive, based on the assumptions used in this illustration, if you surrendered the policy. This amount is equal to the Contract Fund minus any Surrender Charges which are deducted during the first 20 policy years or to attained age 98, whichever comes first, and the first 20 years (or age 98) of any post issue increase in the Basic Insurance Amount. The Cash Value does not reflect any taxes that may be due upon surrender of the policy. The value shown in the illustration is as of the end of the policy year. |
| **Cash Value Accumulation Test** | The policy owner selected the Cash Value Accumulation Test definition of life insurance at the time the policy was purchased. This election may not be changed. |
| **Charge for Extras** | The additional charge for any temporary extra ratings and aviation, occupational and avocation extras. |
| **Contract Fund** | The value of the policy illustrated as of the end of each policy year. The Contract Fund may vary and includes any outstanding loan principal plus loan interest credited and does not include any surrender charges. |
| **Cost of Additional Riders** | The annualized charges for the cost of the Rider(s). |
| **Cost of Insurance** | The annualized charges for providing insurance coverage. |
| **Current, Midpoint and Guaranteed Maximum Charges** | The Current Charges are the amounts that we illustrate as current and these charges are not guaranteed. We can increase the current charges without giving advance notice, but we cannot charge more than the Guaranteed Maximum Charges. Midpoint charges are an assumed rate of charges that represents an average of the current and guaranteed. |
| **Death Benefit** | The amount payable under the policy upon the death of the insured. The amount shown in the illustration is as of the end of the policy year. |
| **Death Benefit Guarantee** | A guarantee that the policy will remain in effect, provided you pay sufficient premiums and you do not take loans. This guarantee will depend on such factors as the amount and timing of premiums paid and withdrawals taken, and changes made to the policy. If your frequency of premium payments is other than annual, the annualized premium needed to maintain the guarantee will be higher than the annual premium. The current premiums that underlie the Death Benefit Guarantee (short-term, limited guarantee (target) or |

lifetime if applicable) are shown in the Policy Status Report section of this illustration. Refer to the Policy for more information.

Keep in mind the Death Benefit Guarantee may be in effect for different periods if the amount or timing of premiums differs from that shown on the Policy Status Report, or if any changes are made to the policy.

The first illustrated policy year is a partial year. Therefore, a Death Benefit Guarantee shown in the first illustrated year applies only from the Policy Values Date to the next policy anniversary. Please note that this is different from other illustrated years marked with the "<" symbol that indicates a Death Benefit Guarantee for the entire year.

**Guaranteed Interest Rate**

The minimum annual interest rate that will be credited to the Contract Fund. The Guaranteed interest rate is 4%.

**Illustrated Interest Rate**

The illustrated non-guaranteed interest rate credited to the non-loaned portion of the Contract Fund. The current interest rate is 4.00% and we may change this rate from time to time. Any loaned portion is credited with a guaranteed rate of 4.00%. The interest rate used in this illustration is 4.00%.

**Lapse**

Lapse occurs when the policy's Death Benefit Guarantee is not in effect, the policy's Cash Value is zero, and coverage ends. The illustration will show "END" in the year of lapse

Assuming premiums are paid as illustrated and based on the interest rate(s) and assumed charges listed below, the policy will lapse in the month and year shown.

| **Assumptions** | **Lapse** |
|---|---|
| Guaranteed Minimum Interest Rate of 4.00% and Maximum Charges | April 2020 |

This illustration assumes that the currently illustrated non-guaranteed elements used will not change for all years shown. This is not likely to occur, and actual results may be different than those shown.

**Midpoint Cash Value, Midpoint Contract Fund, Midpoint Death Benefit**

Non-guaranteed results based upon assumptions of interest and charges that are an average of the guaranteed and current assumptions.

**Policy Values Date**

The date on which policy values were calculated. This is the starting point for the calculation of all illustrated values.

**Premium-Based Admin. Charges**

A charge that is deducted from premiums paid into the policy. The maximum administration charge is 7.50%.

**Sales Charge**

This charge helps cover our policy selling costs.

**Surrender Charges**

Surrender charges may apply within the first 20 policy years or to attained age 98, whichever comes first, of initial base policy coverage and the first 20 years (or age 98) of any base policy coverage added after issue, if you make a withdrawal on a policy with a Type A (Fixed) death benefit, reduce the Basic Insurance Amount, or surrender the policy. In any year illustrated, the surrender charge is equal to the difference between Contract Fund and Cash Value.

**Year**                    Year is the policy year illustrated.  The premium shown in the first illustrated year
                            includes only those premiums paid from the Policy Values Date to the next policy
                            anniversary.  However, policy values reflect all premiums paid up to and including the
                            Policy Values Date.  All subsequent premiums are assumed to be paid on the first day of
                            each policy year.  If you make payments more frequently than annually, they are
                            assumed to be made on the first day of each premium payment period.

## Comparative Values

Comparative Values show how the policy would perform under the indicated assumptions of interest rates and charges.

Policy # Vxxxxxxx
N H K, Male, 66, Preferred Non-Smoker
$175,000 PruLife® Universal Plus, Type A (Fixed)
Death Benefit Cash Value Accumulation Test
Next Scheduled Annual Premium: $14,623.00

| Year | Age | Annual Premium Outlay | Guaranteed Results Based on Minimum Interest Rate of 4.00% and Maximum Charges | | | Non-Guaranteed Results Based on Illustrated Interest Rate of 4.00% and Current Charges | | |
|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Contract Fund | Cash Value | Death Benefit |
| 18* | 83 | 2575 | 0 | END‡ | END‡ | 1022 | 625 | 175000 |
| 19 | 84 | 14623 | | | | 7243 | 6978 | 175000 |
| 20 | 85 | 14623 | | | | 13319 | 13187 | 175000 |
| | | --------- | | | | | | |
| Total | | 31821 | | | | | | |
| | | | | | | | | |
| 21 | 86 | 14623 | | | | 19225 | 19225 | 175000 |
| 22 | 87 | 14623 | | | | 25045 | 25045 | 175000 |
| 23 | 88 | 14623 | | | | 30789 | 30789 | 175000 |
| 24 | 89 | 14623 | | | | 36497 | 36497 | 175000 |
| 25 | 90 | 14623 | | | | 42011 | 42011 | 175000 |
| 26 | 91 | 14623 | | | | 47048 | 47048 | 175000 |
| 27 | 92 | 14623 | | | | 51818 | 51818 | 175000 |
| 28 | 93 | 14623 | | | | 56238 | 56238 | 175000 |
| 29 | 94 | 14623 | | | | 60088 | 60088 | 175000 |
| 30 | 95 | 14623 | | | | 62849 | 62849 | 175000 |
| | | --------- | | | | | | |
| Total | | 178051 | | | | | | |
| | | | | | | | | |
| 31 | 96 | 14623 | | | | 63320 | 63320 | 175000 |
| 32 | 97 | 14623 | | | | 58681 | 58681 | 175000 |
| 33 | 98 | 14623 | | | | 42116 | 42116 | 175000 |
| 34 | 99 | 14623 | | | | 22 | 22 | 175000 |
| | | --------- | | | | | | |
| Total | | 236543 | | | | | | |

* Refer to the definition of Year in the Glossary for more information regarding values in the first illustrated year.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 10.

Results labeled as non-guaranteed are not guaranteed.  They are based on assumptions that are not likely to continue unchanged in future years and are subject to change by the insurer. Actual results may be different.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  02132020150551

**Charges and Expenses**

This report shows deductions that are currently made from illustrated premium payments and the Contract Fund for this illustration.

Policy # Vxxxxxxx

N H K, Male, 66, Preferred Non-Smoker

$175,000 PruLife® Universal Plus

Type A (Fixed) Death Benefit

Cash Value Accumulation Test

Next Scheduled Annual Premium: $14,623.00

**Non-guaranteed results based on Illustrated Interest Rate of 4.00% and Current Charges.**

| | | Deductions from Premiums | | Deductions from the Contract Fund | | | | | Policy Values | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | Annual Premium Outlay | Premium Based Admin Charges | Sales Charge | Admin. & Transaction Charges | Cost of Insurance | Charges for Extras | Cost of Additional Riders | Sum of Deductions | Contract Fund | Cash Value | Death Benefit |
| 18* | 2575 | 97 | 52 | 48 | 3730 | 0 | 0 | 3926 | 1022 | 625 | 175000 |
| 19 | 14623 | 548 | 292 | 96 | 7886 | 0 | 0 | 8823 | 7243 | 6978 | 175000 |
| 20 | 14623 | 548 | 292 | 96 | 8272 | 0 | 0 | 9209 | 13319 | 13187 | 175000 |
| Total | 31821 | | | | | | | 21958 | | | |
| 21 | 14623 | 548 | 292 | 96 | 8677 | 0 | 0 | 9613 | 19225 | 19225 | 175000 |
| 22 | 14623 | 548 | 292 | 96 | 8992 | 0 | 0 | 9929 | 25045 | 25045 | 175000 |
| 23 | 14623 | 548 | 292 | 96 | 9295 | 0 | 0 | 10232 | 30789 | 30789 | 175000 |
| 24 | 14623 | 548 | 292 | 96 | 9555 | 0 | 0 | 10492 | 36497 | 36497 | 175000 |
| 25 | 14623 | 548 | 292 | 96 | 9968 | 0 | 0 | 10905 | 42011 | 42011 | 175000 |
| 26 | 14623 | 548 | 292 | 96 | 10652 | 0 | 0 | 11588 | 47048 | 47048 | 175000 |
| 27 | 14623 | 548 | 292 | 96 | 11111 | 0 | 0 | 12048 | 51818 | 51818 | 175000 |
| 28 | 14623 | 548 | 292 | 96 | 11641 | 0 | 0 | 12577 | 56238 | 56238 | 175000 |
| 29 | 14623 | 548 | 292 | 96 | 12372 | 0 | 0 | 13309 | 60088 | 60088 | 175000 |
| 30 | 14623 | 548 | 292 | 96 | 13590 | 0 | 0 | 14527 | 62849 | 62849 | 175000 |
| Total | 178051 | | | | | | | 137180 | | | |
| 31 | 14623 | 548 | 292 | 96 | 15941 | 0 | 0 | 16878 | 63320 | 63320 | 175000 |
| 32 | 14623 | 548 | 292 | 96 | 20968 | 0 | 0 | 21905 | 58681 | 58681 | 175000 |
| 33 | 14623 | 548 | 292 | 96 | 32476 | 0 | 0 | 33413 | 42116 | 42116 | 175000 |
| 34 | 14623 | 548 | 292 | 96 | 56862 | 0 | 0 | 57799 | 22 | 22 | 175000 |
| Total | 236543 | | | | | | | 267175 | | | |

* Refer to the definition of Year in the Glossary for more information regarding values in the first illustrated year.

See the Comparative Values Report on page 8 for an illustration of guarantees.

Results labeled as non-guaranteed are not guaranteed. They are based on assumptions that are not likely to continue unchanged in future years and are subject to change by the insurer. Actual results may be different.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES. THIS ILLUSTRATION ID IS  02132020150551

**Additional Information**

**Modified Endowment Contract (MEC)**

The Internal Revenue Code limits the amount of money that can be paid in life insurance premiums and still receive favorable income tax treatment with respect to policy distributions (i.e., loans, withdrawals, pledges and assignments). If premiums exceed the limit, the policy is classified as a modified endowment contract (MEC). A policy may also become a MEC if, at any time during the life of the policy:

- the death benefit is decreased or increased, or
- riders or benefits are removed, added, decreased or increased

Distributions from a MEC are taxed less favorably than distributions from a policy that is not a MEC. If a policy is a MEC, any distribution will be taxed on an income-first basis. This means that any amount distributed will be considered taxable earnings to the extent there is a gain in the policy. The gain in the policy is equal to the amount by which the Contract Fund exceeds the Cost Basis of the policy. In general, Cost Basis equals premiums paid minus previous distributions (but not loans or assignments treated as distributions in the case of a MEC) plus prior reported taxable gain.

If a policy becomes a MEC, any distribution made in the two years prior to the policy becoming a MEC is taxable on an income-first basis in the current year.

A distribution from a MEC may also be subject to a 10 percent penalty tax if made before the owner reaches age 59 ½. If a corporation or trust owns the policy, the penalty tax applies for any year in which a distribution is made.

Although a policy may be a MEC, it does not lose the benefit of income tax deferral for policy values which are not distributed, and does not lose the benefit of a generally income tax free death benefit upon the death of the insured.

As illustrated, with a non-guaranteed interest rate of 4.00% and current charges, the policy will not become a MEC. The Policy may become a MEC under certain circumstances if interest rates and charges are different than the interest rates and charges assumed in this illustration. Additional illustrations may be requested to determine if the Policy would become a MEC using different assumptions about interest rates and charges.

We have presented this information based on our understanding of tax law. You may wish to consult with your tax adviser if you have any tax questions since neither we nor our representatives can provide tax advice.

**Income Tax Information**

The tax information and assumptions in this illustration are not intended to provide legal or tax advice. Some calculations may vary significantly depending upon the income tax rate assumptions used. We make no representations that the income tax rate assumptions used here are appropriate for your situation. You and your tax adviser are responsible for selecting the tax assumptions that are appropriate. You may request additional illustrations based on other income tax rate assumptions.

Unless otherwise indicated, this illustration only addresses income tax consequences, and does not address any other possible tax consequences, such as estate taxation of life insurance or investments. This illustration assumes the policy is owned by N H K. If actual ownership is different, the tax consequences may also be different.

Withdrawals from the policy may be taxable to the extent they exceed the Cost Basis, and in limited cases, upon a distribution associated with a reduction in benefits during the first 15 policy years.  If the policy is not a MEC and you take no loans and withdrawals, there are no income tax consequences associated with ownership of the policy.

If the policy is transferred, exchanged, or ends (whether illustrated or not), there may be income tax consequences that are not shown here.  If there is an outstanding loan, the amount borrowed may become taxable to the extent that the policy's Net Cash Value, together with any outstanding loan amount, exceeds the policyowner's cost basis in the policy.

The illustration assumes that loan interest is not deductible for income tax purposes.

The policyowner's assumed income tax rate is 34.0%.

**Policy Charges and Expenses**

There are a number of charges and expenses to cover the cost of providing benefits such as:

- Deductions from premiums to cover administrative charges attributable to premiums and sales charges.
- Deductions to cover mortality and expense risk charges.
- Monthly deductions from the Contract Fund to cover policy administration and cost of insurance charges and, if necessary, charges for extra ratings and the cost of riders.
- Administrative charges assessed when certain events occur such as a withdrawal or a decrease in the policy's Basic Insurance Amount.

**Time Value of Money**

This illustration does not take into consideration the time value of money.  As a result, the illustration does not take into consideration that, because of interest, a dollar paid today is more valuable than a dollar paid in the future.

| | | |
|---|---|---|
| **Form Number[s]** | For use in: | Indiana |
| | PruLife® Universal Plus | UL-2001-IN |
| | Living Needs Benefit Rider (at issue) | ORD 87241-90-P |
| | Living Needs Benefit Rider (after issue) | ORD 87335-90 |
| **Illustration Version Information** | The following provides the specific system version information used to create this illustration: *(This information can provide an accurate record of the exact system components used to produce this illustration.)* | |

Palette: <19L - DQTEeK0N3r  Y357DGF>
CalcServer: <20.011.30579>
PDFPREPROCESSOR.EXE:     <2020.01.30.580>  Server ID: P20318
PLIAPPLET.INFORCEONLINE: <2020.01.30.580>
PLIAPPLET.INTSEN:  <2020.01.30.580>
PLIAPPLET.INTSENANDCLASSIC:  <2020.01.30.580>
PRUOEIOR.OCX:  <2020.01.30.580>
INSENR.DLL:    <2020.01.30.580>

ISP Life Passkey Version 69.00 - DOTUTZVLYUKVKZGFGZFSVRAWXUYSSS
RATE BASIS: Original (181)

# Addenda 3

## Variable UL Illustrations



LAPSED POLICY ILLUSTRATION
FOR SETTLEMENT PURPOSES ONLY
ISSUED PURSUANT TO COURT ORDER, BEHFARIN ET AL. V. PRUCO ET AL.



*S002*

*Issued by: Pruco Life Insurance Company located at 213 Washington Street, Newark, NJ 07102-2992, and offered by prospectus only through Pruco Securities, LLC (Member SIPC), located at 751 Broad Street, Newark, NJ 07102-3777, or through broker-dealers that have selling agreements with Pruco Securities, LLC. Both are Prudential Financial companies and each is solely responsible for its own financial condition and contractual obligations.*

*Prudential, the Prudential logo and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities.*

# Variable Universal Life
# Life Insurance Policy
# Individual Basic Inforce Illustration

Variable Universal Life is a flexible premium, variable universal life insurance policy that covers the life of one insured. It offers protection with flexibility in premium payments and a choice of death benefit types. The death benefit is payable upon the death of the insured. This illustration is intended to show how various assumed hypothetical rates of return and levels of charges can affect policy values. The policy provides no guaranteed policy values.

This inforce illustration has been designed to provide a current status of this policy based on past premium payments, and any loans and withdrawals previously taken, rates of return and policy charges from the Issue Date through the Policy Values Date of this illustration. It is also designed to show how future premium payments and any loans, withdrawals or policy changes may affect cash values and death benefits in the future based on stated assumptions about hypothetical rates of return and policy charges. This is an illustration and not a contract. If there is a discrepancy between this illustration and the policy, the policy shall be considered correct.

The non-guaranteed amounts shown after the Policy Values Date are not predictions or guarantees of future results.

This illustration assumes that the currently illustrated non-guaranteed elements used will not change for all years shown. Keep in mind that investment returns fluctuate and actual results will be different from those illustrated, even if the actual investment return averages the same as an illustrated rate of return.

**Policy Number:**               Vxxxxxxx

**Policy Issue Date:**           11/13/2000

**Policy Values Date:**          01/23/2020

**Illustration Presented to:**   **J P H**

**For use in the state of:**     **Pennsylvania**

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES. THIS ILLUSTRATION ID IS 01292020145509

**Prepared by:**     Prudential Financial
                     213 Washington Street
                     Newark, NJ 07102

**Terms to Help You Understand Your Illustration**

| | |
|---|---|
| **Age** | The age of the insured at the beginning of each policy year. |
| **Annual Premium Outlay** | The annualized payment amount. The premium shown in the first illustrated year includes only those premiums paid from the Policy Values Date to the next policy anniversary.  However, policy values reflect all premiums paid up to and including Policy Values Date.  All subsequent premiums are assumed to be paid on the first day of each policy year.   If you make payments more frequently than annually, they are assumed to be made on the first day of each premium payment period. |
| **Basic Insurance Amount** | This is the face amount of your Policy. |
| **Cash Value** | The amount you would receive, based on the assumptions used in this illustration, if you surrendered the policy. This amount is equal to the Contract Fund minus any Surrender Charges that may apply within the first 10 policy years or attained age 98, whichever comes first, and within the first 10 years (or age 98) of any post issue increase in the Basic Insurance Amount. The Cash Value does not reflect any taxes that may be due upon surrender of the policy.  The value shown in the illustration is as of the end of the policy year. |
| **Cash Value Accumulation Test** | This illustration uses the Cash Value Accumulation Test.  The Cash Value Accumulation Test is a test to meet the definition of life insurance requirement as defined by the Internal Revenue Code 7702. |
| **Contract Fund** | The value of the policy illustrated as of the end of each policy year.  The Contract Fund may vary and includes any outstanding loan principal plus loan interest credited and does not include any surrender charges. |
| **Death Benefit** | The amount payable under the policy upon the death of the  insured.  The amount shown in the illustration is as of the end of the policy year. |
| **Current, and Maximum Charges** | The Current Charges are the amounts that we now charge and these charges are not guaranteed. We can increase the current charges without giving advance notice, but we cannot charge more than the Guaranteed Maximum Charges. |
| **Death Benefit Guarantee** | The No-Lapse Guarantee is referred to as the Death Benefit Guarantee in the Policy.  A No-Lapse Guarantee provides that the policy will remain in effect, regardless of investment results, provided you pay sufficient premiums and you do not take loans. This guarantee will depend on such factors as the amount and timing of premiums paid and withdrawals taken, and changes made to the policy.  If your frequency of premium payments is other than annual, the annualized premium needed to maintain the guarantee will be higher than the annual premium. All guarantees, if any, are based on the claims-paying ability of the issuer.  The current premiums that underlie the Death Benefit Guarantee (short-term, limited guarantee (target) or lifetime if applicable) are shown in the Policy Status Report section of this illustration.  Refer to the Policy for more information.<br><br>Keep in mind the Death Benefit Guarantee may be in effect for different periods if the amount or timing of premiums differs from that shown on the Policy Status Report, or if any changes are made to the policy.<br><br>The first illustrated policy year is a partial year. Therefore, a Death Benefit Guarantee shown in the first illustrated year applies only from the Policy Values Date to the next policy anniversary. Please note that this is different from other illustrated years marked with the "<" symbol that indicates a Death Benefit Guarantee for the entire year. |
| **Death Benefit Guarantee** | Death Benefit Guarantee Charge is a monthly charge of $0.01 per $1,000 of Basic Insurance |

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202145509

| | |
|---|---|
| **Charge** | Amount, deducted from the Contract Fund to compensate Pruco Life for the risk it assumes by guaranteeing that, no matter how unfavorable investment experience may be, the Contract will not lapse so long as the requirements of the Death Benefit Guarantee are satisfied. |
| **Lapse** | Lapse occurs when the policy's Death Benefit Guarantee is not in effect, the policy's Cash Value is zero, and coverage ends. The illustration will show "END" in the year of lapse. |

Assuming premiums are paid as illustrated and based on the hypothetical annual gross returns and assumed charges listed below, the policy will lapse in the month and year shown.

| **Assumptions** | **Lapse** |
|---|---|
| Hypothetical Annual Gross Return of 8.00% (Net 6.31%) and Maximum Charges | January 2045 |
| Alternative Annual Gross Return 6.00% (Net 4.64%) and Current Charges | August 2061 |
| Alternative Annual Gross Return 6.00% (Net 4.31%) and Maximum Charges | January 2043 |
| 0.00% (Net -1.69%) Annual Gross Return and Maximum Charges | June 2039 |

Keep in mind that investment returns fluctuate and actual results will be different from those illustrated, even if the actual investment return averages the same as an illustrated rate of return.

Refer to page 12 for information about the hypothetical annual gross rates of return used in this illustration.

| | |
|---|---|
| **Policy Values Date** | The date on which policy values were calculated. This is the starting point for the calculation of all illustrated values. |
| **Surrender Charges** | Surrender charges may apply within the first 10 policy years or attained age 98, whichever come first, of initial base policy coverage and within the first 10 years (or age 98) of any base policy coverage added after issue if you make a withdrawal on a policy with a Type A (Fixed) death benefit, reduce the Basic Insurance Amount, or surrender the policy. |
| **Year** | Year is the policy year illustrated. The premium shown in the first illustrated year includes only those premiums paid from the Policy Values Date to the next policy anniversary. However, policy values reflect all premiums paid up to and including the Policy Values Date. All subsequent premiums are assumed to be paid on the first day of each policy year. If you make payments more frequently than annually, they are assumed to be paid on the first day of each premium payment period. |

**Summary of Policy Information**

This inforce illustration and the values shown on the Policy Status Report that follows have been produced based on the following policy and underwriting information.

| | |
|---|---|
| **PolicyValues Date:** | 01/23/2020 |
| **Policy Number:** | Vxxxxxxx |
| **Insured's Name** | J P H |
| **Sex, Issue Age** | Male, Issue Age 22 |
| **Current Basic Insurance Amount** | $100,000 |
| **Death Benefit Type** | Type A (Fixed) Death Benefit |
| **Cash Value Accumulation Test** | |
| **Insured's Disability Benefit** | |
| **Living Needs Benefit Rider** | |

## Underwriting Information

The following information reflects the current underwriting status of the Insured on this policy.

| | |
|---|---|
| **Underwriting Classification** | Preferred,  Non-Select |

**Policy Status Report**
A summary of important policy information as of the
Policy Values Date.

<div style="border:1px solid black">

**Policy Status**

**Policy #** Vxxxxxxx
**Policy Issue Date** 11/13/2000
**Policy Values Date** 01/23/2020

| | |
|---|---|
| **Current Billed Premium and billing frequency:** | $51.87 Monthly-EFT |
| **Current Target Premium:** | $576.34 |
| **Current Guideline Premium:** | $995.34 |
| **Contract Fund:** | $77.25 |
| **Cash Value:** | $77.25 |
| **Death Benefit:** | $100,000.00 |
| **Total Premium Outlay to Date:** | $9,809.42 |

</div>

The values shown above are based on the current policy and insured's information as of the Policy Values Date only.

The reports that follow show results based on current hypothetical rates of return and current and maximum charges. The reports assume that these hypothetical rates of return and charges are applied to policy values beginning as of the Policy Values Date.

All guarantees, if any, are based on the claims-paying ability of the issuer.

The reports that follow are based on the Summary of Policy Information assuming the following future transactions are made to the policy.

**The following future transactions are assumed in this illustration:**

- Reinstatement payment amount of $395.69 received by Prudential on or prior to **01/23/2020**.

- Premium payments in future policy years.

This policy is currently lapsed and is no longer in effect.  This illustration is provided to an Authorized Claimant whose Claim for Reinstatement Relief has been approved by the Claims Administrator pursuant to the terms of the court-approved settlement ("Settlement") in Richard Behfarin et al. v. Pruco Life Insurance Company et al., Case No. 2:17-cv-05290-MWF-FFM (C.D. California).  The purpose of this illustration is solely to aid the Authorized Claimant in understanding the premium amounts that may be required to keep the Reinstated Class Policy in force on a going forward basis, so that the Authorized Claimant can make an informed decision regarding whether to pursue reinstatement.  The Court has authorized Prudential to provide this illustration for that sole purpose.

Furthermore, this illustration is based on the assumptions set forth herein.  These assumptions include, but are not limited to, that the reinstatement amount of $395.69 is received by Prudential on or prior to 01/23/2020 and that, upon that payment, this policy has returned to active status.  It is also based on non-guaranteed values, which are subject to change.  Please note that, pursuant to the terms of the Settlement, the Authorized Claimant must reinstate the policy on its terms at the time of final lapse.  As such, this illustration assumes that no policy changes have been made.  Any request to reinstate this policy must strictly comply with the reinstatement procedures outlined in the Settlement Agreement and Exhibit C thereto, the Reinstatement Guidelines For Settlement Class Policies, along with any instructions related thereto that are provided by the Claims Administrator or Prudential.

**Comparative Values  - Average Portfolio Allocation**

Comparative Values show how the policy may perform under various hypothetical rates of return and Current and Maximum charges.  The values shown here, including Annual Premium Outlay, are not guaranteed. This report assumes that net premiums have been allocated evenly to all the investment options available with this product.

Policy # VXxxxxxx
J P H, Male, 22, Preferred, Non-Select
$100,000 Variable Universal Life
Type A (Fixed) Death Benefit
Cash Value Accumulation Test
Next Scheduled Monthly-EFT Premium:  $77.00

**At a Hypothetical Annual Gross Rate of Return of  8.00% (Net 6.64%)[@] and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100.  Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.**

### Non-Guaranteed Results Based on Hypothetical Annual Gross Returns and Assumed Charges

| Year | Age | Annual Premium Outlay | 8.00% (Net 6.64%)[@] and Current Charges | | | 8.00% (Net 6.31%)[@] and Maximum Charges | | 6.00% (Net 4.64%)[@] and Current Charges | | 6.00% (Net 4.31%)[@] and Maximum Charges | | 0.00% (Net -1.69%)[@] and Maximum Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 20* | 41 | 693 | 526 | 526 | 100000 | 375 | 100000 | 522 | 100000 | 371 | 100000 | 360 | 100000 |
| Total | | 693 | | | | | | | | | | | |
| 21 | 42 | 924 | 1160 | 1160 | 100000 | 774 | 100000 | 1138 | 100000 | 759 | 100000 | 714 | 100000 |
| 22 | 43 | 924 | 1830 | 1830 | 100000 | 1178 | 100000 | 1778 | 100000 | 1143 | 100000 | 1042 | 100000 |
| 23 | 44 | 924 | 2538 | 2538 | 100000 | 1586 | 100000 | 2441 | 100000 | 1522 | 100000 | 1343 | 100000 |
| 24 | 45 | 924 | 3287 | 3287 | 100000 | 1994 | 100000 | 3128 | 100000 | 1892 | 100000 | 1615 | 100000 |
| 25 | 46 | 924 | 4076 | 4076 | 100000 | 2401 | 100000 | 3838 | 100000 | 2252 | 100000 | 1856 | 100000 |
| 26 | 47 | 924 | 4908 | 4908 | 100000 | 2806 | 100000 | 4572 | 100000 | 2599 | 100000 | 2065 | 100000 |
| 27 | 48 | 924 | 5785 | 5785 | 100000 | 3204 | 100000 | 5328 | 100000 | 2929 | 100000 | 2239 | 100000 |
| 28 | 49 | 924 | 6708 | 6708 | 100000 | 3594 | 100000 | 6108 | 100000 | 3240 | 100000 | 2375 | 100000 |
| 29 | 50 | 924 | 7680 | 7680 | 100000 | 3970 | 100000 | 6911 | 100000 | 3525 | 100000 | 2471 | 100000 |
| 30 | 51 | 924 | 8703 | 8703 | 100000 | 4325 | 100000 | 7737 | 100000 | 3777 | 100000 | 2520 | 100000 |
| Total | | 9933 | | | | | | | | | | | |

* Refer to the definition of Year in the Terms to Help You Understand Your Illustration section for more information regarding values in the first illustrated year.

[@] Refer to page  12 for information about the hypothetical annual gross rates of return used in this illustration.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 13.

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202045509

**Comparative Values  - Average Portfolio Allocation**

**At a Hypothetical Annual Gross Rate of Return of  8.00% (Net 6.64%)[@] and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100.  Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.**

### Non-Guaranteed Results Based on Hypothetical Annual Gross Returns and Assumed Charges

| Year | Age | Annual Premium Outlay | 8.00% (Net 6.64%)[@] and Current Charges | | | 8.00% (Net 6.31%)[@] and Maximum Charges | | 6.00% (Net 4.64%)[@] and Current Charges | | 6.00% (Net 4.31%)[@] and Maximum Charges | | 0.00% (Net -1.69%)[@] and Maximum Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 31 | 52 | 924 | 9776 | 9776 | 100000 | 4651 | 100000 | 8583 | 100000 | 3989 | 100000 | 2517 | 100000 |
| 32 | 53 | 924 | 10897 | 10897 | 100000 | 4939 | 100000 | 9443 | 100000 | 4150 | 100000 | 2454 | 100000 |
| 33 | 54 | 924 | 12068 | 12068 | 100000 | 5180 | 100000 | 10319 | 100000 | 4252 | 100000 | 2325 | 100000 |
| 34 | 55 | 924 | 13289 | 13289 | 100000 | 5362 | 100000 | 11206 | 100000 | 4284 | 100000 | 2122 | 100000 |
| 35 | 56 | 924 | 14561 | 14561 | 100000 | 5475 | 100000 | 12101 | 100000 | 4235 | 100000 | 1840 | 100000 |
| 36 | 57 | 924 | 15880 | 15880 | 100000 | 5510 | 100000 | 12998 | 100000 | 4097 | 100000 | 1473 | 100000 |
| 37 | 58 | 924 | 17242 | 17242 | 100000 | 5450 | 100000 | 13888 | 100000 | 3853 | 100000 | 1012 | 100000 |
| 38 | 59 | 924 | 18646 | 18646 | 100000 | 5277 | 100000 | 14767 | 100000 | 3487 | 100000 | 444 | 100000 |
| 39 | 60 | 924 | 20091 | 20091 | 100000 | 4969 | 100000 | 15629 | 100000 | 2978 | 100000 | END‡ | END‡ |
| 40 | 61 | 924 | 21578 | 21578 | 100000 | 4501 | 100000 | 16469 | 100000 | 2301 | 100000 | | |
| Total | | 19173 | | | | | | | | | | | |
| 41 | 62 | 924 | 23110 | 23110 | 100000 | 3838 | 100000 | 17284 | 100000 | 1425 | 100000 | | |
| 42 | 63 | 924 | 24693 | 24693 | 100000 | 2942 | 100000 | 18077 | 100000 | 314 | 100000 | | |
| 43 | 64 | 924 | 26337 | 26337 | 100000 | 1769 | 100000 | 18848 | 100000 | END‡ | END‡ | | |
| 44 | 65 | 924 | 28082 | 28082 | 100000 | 312 | 100000 | 19631 | 100000 | | | | |
| 45 | 66 | 924 | 29886 | 29886 | 100000 | END‡ | END‡ | 20373 | 100000 | | | | |
| 46 | 67 | 924 | 31735 | 31735 | 100000 | | | 21048 | 100000 | | | | |
| 47 | 68 | 924 | 33619 | 33619 | 100000 | | | 21632 | 100000 | | | | |
| 48 | 69 | 924 | 35532 | 35532 | 100000 | | | 22102 | 100000 | | | | |
| 49 | 70 | 924 | 37468 | 37468 | 100000 | | | 22435 | 100000 | | | | |
| 50 | 71 | 924 | 39420 | 39420 | 100000 | | | 22602 | 100000 | | | | |
| Total | | 28413 | | | | | | | | | | | |

* Refer to the definition of Year in the Terms to Help You Understand Your Illustration section for more information regarding values in the first illustrated year.

[@] Refer to page  12 for information about the hypothetical annual gross rates of return used in this illustration.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 13.

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202145509

**Comparative Values  - Average Portfolio Allocation**

**At a Hypothetical Annual Gross Rate of Return of  8.00% (Net 6.64%)[@] and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100.  Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.**

### Non-Guaranteed Results Based on Hypothetical Annual Gross Returns and Assumed Charges

| Year | Age | Annual Premium Outlay | 8.00% (Net 6.64%)[@] and Current Charges | | | 8.00% (Net 6.31%)[@] and Maximum Charges | | 6.00% (Net 4.64%)[@] and Current Charges | | 6.00% (Net 4.31%)[@] and Maximum Charges | | 0.00% (Net -1.69%)[@] and Maximum Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 51 | 72 | 924 | 41383 | 41383 | 100000 | | | 22570 | 100000 | | | | |
| 52 | 73 | 924 | 43352 | 43352 | 100000 | | | 22302 | 100000 | | | | |
| 53 | 74 | 924 | 45325 | 45325 | 100000 | | | 21761 | 100000 | | | | |
| 54 | 75 | 924 | 47301 | 47301 | 100000 | | | 20899 | 100000 | | | | |
| 55 | 76 | 924 | 49275 | 49275 | 100000 | | | 19654 | 100000 | | | | |
| 56 | 77 | 924 | 51240 | 51240 | 100000 | | | 17947 | 100000 | | | | |
| 57 | 78 | 924 | 53199 | 53199 | 100000 | | | 15700 | 100000 | | | | |
| 58 | 79 | 924 | 55158 | 55158 | 100000 | | | 12816 | 100000 | | | | |
| 59 | 80 | 924 | 57116 | 57116 | 100000 | | | 9163 | 100000 | | | | |
| 60 | 81 | 924 | 59069 | 59069 | 100000 | | | 4561 | 100000 | | | | |
| Total | | 37653 | | | | | | | | | | | |
| 61 | 82 | 924 | 61005 | 61005 | 100000 | | | END‡ | END‡ | | | | |
| 62 | 83 | 924 | 62923 | 62923 | 100000 | | | | | | | | |
| 63 | 84 | 924 | 64827 | 64827 | 100000 | | | | | | | | |
| 64 | 85 | 924 | 66722 | 66722 | 100000 | | | | | | | | |
| 65 | 86 | 924 | 68610 | 68610 | 100000 | | | | | | | | |
| 66 | 87 | 924 | 70491 | 70491 | 100000 | | | | | | | | |
| 67 | 88 | 924 | 72364 | 72364 | 100000 | | | | | | | | |
| 68 | 89 | 924 | 74238 | 74238 | 100000 | | | | | | | | |
| 69 | 90 | 924 | 76147 | 76147 | 100000 | | | | | | | | |
| 70 | 91 | 924 | 78152 | 78152 | 100000 | | | | | | | | |
| Total | | 46893 | | | | | | | | | | | |

* Refer to the definition of Year in the Terms to Help You Understand Your Illustration section for more information regarding values in the first illustrated year.

[@] Refer to page  12 for information about the hypothetical annual gross rates of return used in this illustration.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 13.

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202145509

**Comparative Values  - Average Portfolio Allocation**

**At a Hypothetical Annual Gross Rate of Return of  8.00% (Net 6.64%)[@] and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100.  Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.**

### Non-Guaranteed Results Based on Hypothetical Annual Gross Returns and Assumed Charges

| Year | Age | Annual Premium Outlay | 8.00% (Net 6.64%)[@] and Current Charges | | | 8.00% (Net 6.31%)[@] and Maximum Charges | | 6.00% (Net 4.64%)[@] and Current Charges | | 6.00% (Net 4.31%)[@] and Maximum Charges | | 0.00% (Net -1.69%)[@] and Maximum Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 71 | 92 | 924 | 80346 | 80346 | 100000 | | | | | | | | |
| 72 | 93 | 924 | 82863 | 82863 | 100000 | | | | | | | | |
| 73 | 94 | 924 | 85879 | 85879 | 100000 | | | | | | | | |
| 74 | 95 | 924 | 89636 | 89636 | 100000 | | | | | | | | |
| 75 | 96 | 924 | 94413 | 94413 | 101966 | | | | | | | | |
| 76 | 97 | 924 | 99825 | 99825 | 106813 | | | | | | | | |
| 77 | 98 | 924 | 105660 | 105660 | 112000 | | | | | | | | |
| 78 | 99 | 924 | 111992 | 111992 | 117591 | | | | | | | | |
| 79 | 100 | 0 | 119428 | 119428 | 119428 | | | | | | | | |
| 80 | 101 | 0 | 127358 | 127358 | 127358 | | | | | | | | |
| Total | | 54285 | | | | | | | | | | | |
| 81 | 102 | 0 | 135814 | 135814 | 135814 | | | | | | | | |
| 82 | 103 | 0 | 144832 | 144832 | 144832 | | | | | | | | |
| 83 | 104 | 0 | 154449 | 154449 | 154449 | | | | | | | | |
| 84 | 105 | 0 | 164705 | 164705 | 164705 | | | | | | | | |
| 85 | 106 | 0 | 175641 | 175641 | 175641 | | | | | | | | |
| 86 | 107 | 0 | 187304 | 187304 | 187304 | | | | | | | | |
| 87 | 108 | 0 | 199741 | 199741 | 199741 | | | | | | | | |
| 88 | 109 | 0 | 213003 | 213003 | 213003 | | | | | | | | |
| 89 | 110 | 0 | 227147 | 227147 | 227147 | | | | | | | | |
| 90 | 111 | 0 | 242229 | 242229 | 242229 | | | | | | | | |
| Total | | 54285 | | | | | | | | | | | |

* Refer to the definition of Year in the Terms to Help You Understand Your Illustration section for more information regarding values in the first illustrated year.

[@] Refer to page  12 for information about the hypothetical annual gross rates of return used in this illustration.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 13.

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  01292020145509

**Comparative Values  - Average Portfolio Allocation**

**At a Hypothetical Annual Gross Rate of Return of  8.00% (Net 6.64%)$^{@}$ and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100.  Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.**

### Non-Guaranteed Results Based on Hypothetical Annual Gross Returns and Assumed Charges

| Year | Age | Annual Premium Outlay | 8.00% (Net 6.64%)$^{@}$ and Current Charges | | | 8.00% (Net 6.31%)$^{@}$ and Maximum Charges | | 6.00% (Net 4.64%)$^{@}$ and Current Charges | | 6.00% (Net 4.31%)$^{@}$ and Maximum Charges | | 0.00% (Net -1.69%)$^{@}$ and Maximum Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Contract Fund | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 91 | 112 | 0 | 258314 | 258314 | 258314 | | | | | | | | |
| 92 | 113 | 0 | 275466 | 275466 | 275466 | | | | | | | | |
| 93 | 114 | 0 | 293756 | 293756 | 293756 | | | | | | | | |
| 94 | 115 | 0 | 313262 | 313262 | 313262 | | | | | | | | |
| 95 | 116 | 0 | 334062 | 334062 | 334062 | | | | | | | | |
| 96 | 117 | 0 | 356244 | 356244 | 356244 | | | | | | | | |
| 97 | 118 | 0 | 379899 | 379899 | 379899 | | | | | | | | |
| 98 | 119 | 0 | 405124 | 405124 | 405124 | | | | | | | | |
| Total | | 54285 | | | | | | | | | | | |

* Refer to the definition of Year in the Terms to Help You Understand Your Illustration section for more information regarding values in the first illustrated year.

$^{@}$ Refer to page  12 for information about the hypothetical annual gross rates of return used in this illustration.

‡The policy ends and coverage ceases because the Cash Value is not greater than zero and the Death Benefit Guarantee is not in effect.  You will have taxable income under the policy if the policy ends with an outstanding loan in excess of cost basis.  Please refer to the Additional Information section starting on page 13.

You will find an explanation of many of the terms used in this illustration starting on page 2.

THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202014509

**About the Illustrated Hypothetical Annual Gross Rates of Return**

The table below shows the Gross Annual Returns used to produce this illustration. They represent the assumed gross returns of the Policy's investment options selected for this illustration (see below). These rates are illustrative only and should not be deemed a representation of past or future investment performance.

| Year | Hypothetical Annual Gross Return | Alternative Hypothetical Annual Gross Return |
|------|------|------|
| 20 thru 98 | 8.00% | 6.00% |

Gross Returns less mortality and expense risk charges and fund expenses are the Net Returns. The current mortality and expense risk charges are equal to 0.60% of the investment sub-accounts available. The guaranteed maximum mortality and expense risk charges are equal to 0.90% of the investment sub-accounts.

The current fund expenses deducted are equal to 0.76%, based on the average expenses for all of the investment options available.

Current Fund Expenses may take into account expense reimbursements from the fund companies. These reimbursements are voluntary and can be terminated at any time. Please see your prospectus for more information.

This illustration assumes that net premiums have been allocated evenly to all the investment options available with this product.

Allocations may also be made to the fixed investment option for this product. Refer to the prospectus for more information.

**Investors should consider the investment objectives, risks, and charges and expenses carefully before investing in the contract, and/or underlying portfolios. The prospectus, and, if available, the summary prospectus, contains this information as well as other important information. A copy of the prospectus(es) may be obtained from prudential.com. Contact your financial professional for the prospectus(es). You should read the prospectus(es) carefully before investing.**

**It is possible to lose money by investing in securities.**

**Additional Information**

**Modified Endowment Contract (MEC)**

The Internal Revenue Code limits the amount of money that can be paid in life insurance premiums and still receive favorable income tax treatment with respect to policy distributions (i.e., loans, withdrawals, pledges and assignments). If premiums exceed the limit, the policy is classified as a modified endowment contract (MEC). A policy may also become a MEC if, at any time during the life of the policy:

● the death benefit is decreased or increased, or
● riders or benefits are removed, added, decreased or increased

Distributions from a MEC are taxed less favorably than distributions from a policy that is not a MEC. If a policy is a MEC, any distribution will be taxed on an income-first basis. This means that any amount distributed will be considered taxable earnings to the extent there is a gain in the policy. The gain in the policy is equal to the amount by which the Contract Fund exceeds the Cost Basis of the policy. In general, Cost Basis equals premiums paid minus previous distributions (but not loans or assignments treated as distributions in the case of a MEC) plus prior reported taxable gain.

If a policy becomes a MEC, any distribution made in the two years prior to the policy becoming a MEC is taxable on an income-first basis in the current year.

A distribution from a MEC may also be subject to a 10 percent penalty tax if made before the owner reaches age 59 ½. If a corporation or trust owns the policy, the penalty tax applies for any year in which a distribution is made.

Although a policy may be a MEC, it does not lose the benefit of income tax deferral for policy values which are not distributed, and does not lose the benefit of a generally income tax free death benefit upon the death of the insured.

As illustrated, with a Hypothetical Annual Gross Rate of Return of 8.00% (Net 6.64%) and Current Charges, this policy will not become a modified endowment contract (MEC) through Age 100. Transactions that could result in this policy becoming a MEC are not shown in this illustration after Age 100.

We have presented this information based on our understanding of tax law. You may wish to consult with your tax adviser if you have any tax questions since neither we nor our representatives can provide tax advice.

**Income Tax Information**

The tax information and assumptions in this illustration are not intended to provide legal or tax advice. Some calculations may vary significantly depending upon the income tax rate assumptions used. We make no representations that the income tax rate assumptions used here are appropriate for your situation. You and your tax adviser are responsible for selecting the tax assumptions that are appropriate. You may request additional illustrations based on other income tax rate assumptions.

Unless otherwise indicated, this illustration only addresses income tax consequences, and does not address any other possible tax consequences, such as estate taxation of life insurance or investments. This illustration assumes the policy is owned by J P H. If actual ownership is different, the tax consequences may also be different.

Withdrawals from the policy may be taxable to the extent they exceed the Cost Basis, and in
You will find an explanation of many of the terms used in this illustration starting on page 2.
THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES. THIS ILLUSTRATION ID IS 0129202145509

limited cases, upon a distribution associated with a reduction in benefits during the first 15 policy years.  If the policy is not a MEC and you take no loans and withdrawals, there are no income tax consequences associated with ownership of the policy.

If the policy is transferred, exchanged, or ends (whether illustrated or not), there may be income tax consequences that are not shown here.  If there is an outstanding loan, the amount borrowed may become taxable to the extent that the policy's Net Cash Value, together with any outstanding loan amount, exceeds the policyowner's cost basis in the policy.

The illustration assumes that loan interest is not deductible for income tax purposes.

The policyowner's assumed income tax rate is 34.0%.

**Corridor Increases**
Depending on how much premium you pay, and/or if investment performance is reasonably favorable, the Contract Fund may grow to the point where Pruco Life (the Company) will increase the death benefit in order to ensure that the Policy will satisfy the Internal Revenue Code's definition of life insurance.  This is commonly known as a "corridor increase."  When this happens, the Company reserves the right to limit premium payments.

At the Hypothetical Annual Gross Rate of Return of 8.00% (Net 6.64%) and Current Charges, a corridor increase first occurs in year 75.

**Fund Expenses**
The fund expense is specific to each fund available and varies among the funds.  The fund manager for each fund has sole discretion and may increase or decrease the expense as necessary to meet the costs of administering the funds.  Because the expenses vary by fund, the expenses deducted from Policy values will vary based on the allocation of values among the funds.   The average of all fund expenses associated with the available funds for Variable Universal Life is 0.76%.

**Policy Charges and Expenses**
There are a number of charges and expenses to cover the cost of providing benefits such as:

- Deductions from premiums to cover taxes attributable to premiums and sales charges.
- Daily deductions to cover fund expenses, and mortality and expense risk charges.
- Monthly deductions from the Contract Fund to cover policy administration and cost of insurance charges and, if necessary, charges for extra ratings and the cost of other riders.
- Administrative charges assessed when certain events occur such as a withdrawal or a decrease in the policy's Basic Insurance Amount.

**Time Value of Money**
This illustration does not take into consideration the time value of money. As a result, the illustration does not take into consideration that, because of interest, a dollar paid today is more valuable than a dollar paid in the future.

**Illustration Version Information**

The following provides the specific system version information used to create this illustration: *(This information can provide an accurate*

You will find an explanation of many of the terms used in this illustration starting on page 2.
THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  01292020145509

**Prudential** ISP Version 69.00 Inforce Online Version 19L - DQAMR003Ri  Y38EEHG        1/29/2020 02:55 PM  Page 14 of 15

*record of the exact system components used to produce this illustration.)*

Palette: <19L - DQAMR003Ri  Y38EEHG>
CalcServer: <20.011.21569>
PDFPREPROCESSOR.EXE:    <2020.01.21.569>  Server ID: P20317
PLIAPPLET.INFORCEONLINE: <2020.01.21.569>
PLIAPPLET.INTSENBEFORE: <2020.01.21.569>
PLIAPPLET.INTSEN: <2020.01.21.569>
PLIAPPLET.INTSENANDCLASSIC: <2020.01.21.569>
PRUOEIOR.OCX:  <2020.01.21.569>
INSENR.DLL:    <2020.01.21.569>
ISP Life Passkey Version 69.00 - DOTUTZVLYUKVKZGFGZFSVRAWXUYSSS
PRUVALUES.XML: <26.2.1>
PXBPRUVALUES.XML
RATE BASIS: Original (161)

You will find an explanation of many of the terms used in this illustration starting on page 2.
THIS ILLUSTRATION IS NOT VALID WITHOUT A COMPLETE SET OF PAGES.  THIS ILLUSTRATION ID IS  0129202014509

# EXHIBIT D

**SETTLEMENT EXHIBIT D**

<u>UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA</u>
*Richard Behfarin v. Pruco Life Ins. Co., The Prudential Ins. Co. of America and Pruco Life Ins. Co. of New Jersey*, Case No. 2:17-cv-05290-MWF-FFM

# CLAIMS PROCESS AND SCORING GUIDELINES
## <u>FOR INDIVIDUALIZED RELIEF</u>

A**.**   How To Submit a Claim ................................................................................. 2

B.   The Claim Form ............................................................................................ 2

C.   Rules to Determine Who is an Authorized Claimant ..................................... 4

D.   Supporting Documentation of Identity and Death of Insured(s) ..................... 5

E.   Materials to Be Considered by Class Administrator in Scoring Claims ........... 7

F.   The Numerical Scores .................................................................................... 8

G.   Scoring Factors to Be Considered in Assigning the Score ............................. 9

H.   Claims Scoring Procedure ............................................................................. 10

I.   Notice of Score ............................................................................................. 10

J.   Potential for Limited Appeal to Special Master at Claimant's Expense .......... 11

K.   Settlement Payments to Authorized Claimants ............................................. 11

L.   Settlement Payment Timing ........................................................................... 12

   In accordance with the Stipulation of Settlement and Release (the "Settlement Agreement"), these Claims Process and Scoring Guidelines ("Guidelines") describe the process by which the Claims Administrator[1] will determine whether Claims made on Class Policies that lapsed for a final time during the Class Period and were not reinstated and the insured(s) are deceased (the "Lapsed/Deceased Population") are submitted by Authorized Claimants, and if so, what Score will be applied to each Claim.

---

[1]   Unless otherwise set forth herein, initial capitalized terms have the same definitions as set forth in the Settlement Agreement.  In the event of any inconsistency, the provisions of the Settlement Agreement control.

**SETTLEMENT EXHIBIT D**

As set forth in the Settlement Agreement, the Settlement Class is defined as follows:

All Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are deceased, then also any designated beneficiary(ies) of that Class Policy at the time of final lapse.

Class Policies include all individual universal life or variable universal life insurance policies issued by a Defendant as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed between July 18, 2013 and the date of Preliminary Approval, or which had default cured or was reinstated on or after July 18, 2013 and remains in force on the date of Preliminary Approval.

These Guidelines have been approved by the Court. They can be modified only by written agreement of the Parties, subject to approval by the Special Master.

**A.    HOW TO SUBMIT A CLAIM**

For Class Policies within the Lapsed/Deceased Population, Claims may be submitted by:

(1) Policyowners of the Class Policy, or

(2) where all Policyowners of the Class Policy are deceased, then by:

(a) an authorized legal representative of the Policyowner's Estate; or

(b) by (a) designated beneficiary(ies) (or an authorized representative of (a) designated beneficiary(ies)) of that Class Policy at the time of final lapse.

Claimants may request either Individualized Relief or Basic Relief.

Individualized Relief will consist of a monetary Settlement Payment, the amount of which will be determined by the Guidelines described herein. The Scoring Process is based on an individual analysis and determination of each Claim according to the Guidelines. Basic Relief is a payment of $250. **Only one form of relief may be requested. No more than one payment will be made with respect to each Class Policy.**

To be eligible for Individualized Relief, a Claimant must timely complete and submit a Claim Form, in the form attached to the Settlement Agreement as Exhibit F, which is also available on the Settlement Website (www.LapsedPolicySettlement.com). A Claimant may also contact the Claims Administrator at [ADDRESS], toll-free at 1-855-915-0909, or by email at info@lapsedpolicysettlement.com to request that a paper copy of the Claim Form be provided by mail. A separate Claim Form must be submitted for each Class Policy.

**SETTLEMENT EXHIBIT D**

There are three ways to obtain a Claim Form and submit a Claim for Individualized Relief to the Claims Administrator:

> (1)    Complete an online Claim Form available on the Settlement Website at www.LapsedPolicySettlement.com no later than 11:59 p.m. PST, [DATE], or

> (2)    Download and print a copy of the Claim Form from the Settlement Website, and then mail the completed Claim Form via U.S. Mail postmarked no later than [DATE] to the address indicated on the Claim Form, or

> (3)    Request a copy of the Claim Form from the Claims Administrator, and then mail the completed Claim Form via U.S. Mail postmarked no later than [DATE] to the address indicated on the Claim Form.

A Claim Form will be deemed submitted when posted, if a postmark date on or before [DATE] is indicated on the envelope and mailed First Class, and addressed as indicated on the Claim Form.  In all other cases, a Claim Form will be deemed submitted when actually received by the Claims Administrator.  Claims postmarked or submitted after [DATE] will not be accepted and Claimants submitting such late forms will not be eligible to receive a Settlement Payment.

Claims will not be deemed filed until Claimant has received an acknowledgement by mail or by email if an email address has been provided.  If Claimant does not receive an acknowledgement with [ ] days, Claimant should call the Claims Administrator toll free at 1-855-915-0909.

Claimants electing to complete the Claim Form online will be required to scan and upload the required supporting documents (as explained further below), and provide an electronic signature.

**B.    THE CLAIM FORM**

The Claim Form requires that each Claimant provide certain identifying information to facilitate the Claims Administrator's verification of Claim eligibility, including a determination as to whether the Claimant is an Authorized Claimant under the terms of the Settlement Agreement.

To that end, Claimant must provide, with respect to each Class Policy on which a Claim is made, all information requested on the Claim Form. The Claim Form indicates the minimum information required of the Claimant to match the Claimant to a Class Policy, and to verify the Claim.

The Claimant must provide their personal identifying information, and clear indication of the Claimant's connection to the Class Policy.

**SETTLEMENT EXHIBIT D**

The following information must be provided regarding all insureds (deceased) on the Class Policy:

- Full name;
- Aliases and/or maiden names used by the insured in the past (if any);
- Date of birth;
- Date of death;
- Last known telephone number (if available);
- Last known address (if available); and
- and Social Security Number (if available).

If the Claimant is not the Policyowner, the following information is requested about the Policyowner(s):

- If the Policyowner was the Insured, the name of any authorized representative of the Policyowner (e.g., an Estate Administrator or Executor);
- If the Policyowner was not the Insured, the full name and address of the Policyowner(s);
- Any known changes to the name of the Policyowner(s) in the last five years;
- Telephone number of the Policyowner(s) (if available);
- Policyowner(s) address (if available);
- The Class Policy number (if available); and
- The full name of any beneficiary(s) on the Class Policy (if available).

All information provided on the Claim Form will be checked by the Claims Administrator against the Class Policy and other Prudential records, as well as other sources such as public records.  If any submitted information changes, Claimant must notify the Claims Administrator in writing at [ADDRESS] or at info@lapsedpolicysettlement.com.

**Failure to provide true and accurate information may result in rejection of the Claim.**

In addition, each Claimant must truthfully certify, either individually or jointly with (an)other Claimant(s), that they are entitled to the Settlement Payment related to the Class Policy on which a Claim is made.

Specifically, the Claimant must certify, under penalty of perjury, that the Claimant is or stands in the shoes of the Policyowner of the Class Policy and/or otherwise is entitled to collect a Settlement Payment made with respect to the Class Policy and will distribute such Settlement Payment under law, including making any payments that may be owed to others.

The Claimant must check one of the following boxes on the Claim Form:

**SETTLEMENT EXHIBIT D**

○  Claimant is the sole Policyowner of the Class Policy at the time of final lapse;

○  Claimant is an authorized representative of the sole Policyowner of the Class Policy at the time of final lapse (such as the Administrator or Executor of the Estate of an insured Policyowner);

○  Claimant is one of two or more Policyowners of a Class Policy at the time of final lapse;

○  Claimant is an authorized representative of one of two or more Policyowners of the Class Policy at the time of final lapse (such as the Administrator or Executor of the Estate);

○  Claimant was the sole designated beneficiary of the Class Policy at time of final lapse and the sole Policyowner/Insured is deceased;

○  Claimant was one of two or more designated beneficiaries of the Class Policy at time of final lapse and the sole Policyowner/Insured is deceased; or

○  Claimant is an authorized representative of a designated beneficiary or beneficiaries of the Class Policy at time of final lapse and the sole Policyowner/Insured is deceased.

## C.    RULES TO DETERMINE WHO IS AN AUTHORIZED CLAIMANT

The Claims Administrator shall be responsible for verifying the death(s) and Class Policy information.  If verified, the Claims Administrator will apply the following rules to determine whether a Claimant is an Authorized Claimant:

(1).  Claims by Policyowners (if alive) or their authorized representatives (if deceased) will have priority in the Settlement Payment: *i.e.*, if an Authorized Claim is made on a Class Policy by a Policyowner or their authorized representative, Claims submitted by a beneficiary on that Class Policy will not be approved and Settlement Payment will be made exclusively to the Policyowner.  However, pursuant to the terms of the Settlement Agreement, the Court's Final Order and Judgment, and Claimant's certification on the Claim Form, any Authorized Claimant who accepts a Settlement Payment assumes all responsibilities and liabilities associated with distribution of the Settlement Payment under law, including making any payments that may be owed to others.

(a)  If Claimant was the sole Policyowner of a Class Policy at the time of final lapse or an authorized representative thereof, proof of authorization (e.g., for an Estate, a Court Order appointing an Executor) and proof of identity sufficient to

**SETTLEMENT EXHIBIT D**

satisfy the Claims Administrator will be required.  *See* Supporting Documentation, below.

    (b)    If Claimant was one of two or more Policyowners of a Class Policy at the time of final lapse, in addition to proof of authorization and identity as set forth above, such Claimants must further establish: (i) authority to act on the Class Policy by consent from any or all other individuals or entities who were Policyowners at the time of final lapse; or (ii) proof that other Policyowner(s) are deceased or cannot be located.

(2).    Claims by a designated beneficiary on a Class Policy at the time of final lapse will be eligible for Settlement Payment when all Policyowners of that Class Policy are deceased and no claim is made by an authorized representative(s), or a person or entity purporting to be an authorized representative is determined by the Claims Administrator not to be an Authorized Claimant.  Pursuant to the terms of the Settlement Agreement, the Court's Final Order and Judgment, and Claimant's certification on the Claim Form, any Authorized Claimant who is a beneficiary and who accepts a Settlement Payment assumes any and all obligations and responsibility for distribution of the Settlement Payment as may be required by law.

    (a)    If Claimant was the sole designated beneficiary of a Class Policy at the time of final lapse, and the sole Policyowner is the now-deceased insured on the Class Policy, Claimant's proof of identity sufficient to satisfy the Claims Administrator will be required.

    (b)    If Claimant was one of two or more designated beneficiaries of a Class Policy at the time of final lapse, in addition to proof of identity, such Claimants must further establish: (i) authority to act on the Class Policy by consent from any or all other individuals or entities who were designated beneficiaries at the time of final lapse; or (ii) proof that other designated beneficiary(ies) are deceased or cannot be located.

    (c)    If a Claim is made by a Policyowner or a Court-recognized representative thereof, and a Claim also is made on the same Class Policy by a designated beneficiary at the time of final lapse, the designated beneficiary Claimant will be notified that

**SETTLEMENT EXHIBIT D**

a Policyowner Claim was made and that the Settlement directs payment to the Policyowner.

(d)    If Claims are made with respect to a Class Policy by two or more Claimants who assert that they are the designated beneficiaries at the time of final lapse, the Claims Administrator will review Prudential Records to determine the designated beneficiary.

## D.    SUPPORTING DOCUMENTATION OF IDENTITY AND DEATH OF INSURED(S)

Claimant must provide proof of identity to establish interest in the Class Policy.  Proof of identity may include a copy of a current valid passport, naturalization certificate, driver's license, military ID card or other current government-issued identification.  If a Claimant has changed his or her name such that it no longer matches the name of the Policyowner listed on the Class Policy, Claimant must also provide a certified copy of the applicable name change document, such as a marriage certificate, divorce decree, or court order.  The Claims Administrator will cross-reference Claimant's proof of identity against available written Prudential records for all Class Policies ("Prudential Records," as further defined below) to verify that the Claimant is the Policyowner of the Class Policy and/or otherwise entitled to collect a Settlement Payment.

If Claimant is an authorized representative of a Policyowner or designated beneficiary, such as the Executor, Administrator, or other person with legal authority to act on another's behalf, Claimant must provide a copy of the legal document(s) conferring on Claimant the authority to act on behalf of the Policyowner or designated beneficiary.  Acceptable documents include copies of executed trust agreements, wills, guardianship or conservatorship papers, power of attorney forms, or court orders appointing the Claimant as Executor, Administrator, Trustee, Guardian, or Conservator.

Where more than one person or entity has an ownership interest or right in a Class Policy, all persons claiming such an interest or right in such Policy must act jointly in exercising any right (including any right to exclude him or herself from the Class or to object to this Settlement) created under the Settlement Agreement.  Accordingly, Claimant must provide either: (i) notarized copies of signatures granting Claimant permission to obtain the Settlement Payment; or (ii) proof that other Policyowner(s) or designated beneficiaries are deceased or cannot be located (in accordance with the proof of death requirements set forth below).  However, pursuant to the terms of the Settlement Agreement, the Court's Final Order and Judgment, and Claimant's certification on the Claim Form, the Claimant assumes all responsibilities and liabilities associated with distribution of the Settlement Payment under law, including making any payments that may be owed to others, as set forth above.

**SETTLEMENT EXHIBIT D**

Claimant must also provide due proof of death and the verified date of death of all insureds on the Class Policy.

Proof of death of an insured must be in the form of a certified copy of the insured's death certificate. This can be secured from the Bureau of Vital Statistics or Department of Health for the city, county, or state in which the death occurred. If the death occurred outside the United States, proof of death can be either in the form of a certified copy of the public record of death from that country, or a report of death by a United States consul or agent of the State Department bearing the official seal.

If there have been any changes to the name of the insured such that the name listed on the death certificate is not identical to that on the Class Policy, Claimant must provide a certified copy of the applicable name change document, such as a marriage certificate, divorce decree, or court order.

The Claims Administrator will cross-reference Claimant's proof of death of insured against Prudential Records and public records to verify that the decedent is the Class Policy's insured.

So that the Claims Administrator may utilize Prudential Records to process and score each Claim, the Claimant must execute as part of the Claim Form the Authorization to Release Information authorizing any insurance company, producer, and/or the Medical Information Bureau, Inc. to give their and/or the insured's private personal, health, policy and/or financial information to the Claims Administrator, Prudential and/or its authorized agents. Documents submitted to the Claims Administrator in support of a Claim will not be returned to Claimant.

If the Claim Form is incomplete or missing supporting documentation, the Claims Administrator will notify Claimant in writing at the address provided on the Claim Form. The notification will set forth the deficiencies in the submitted Claim Form, and will provide an opportunity for the Claimant to cure those deficiencies within fifteen (15) business days from the date of the notice.

If Claimant fails to properly complete the Claim Form and provide the necessary supporting documentation, the Claims Administrator will not be required to determine whether a Claimant is an Authorized Claimant and no Settlement Payment will be made.

If the Claims Administrator determines that Claimant is not a Settlement Class Member, Claimant may not, directly or indirectly, participate in the Settlement and any Claim Form submitted by Claimant or on Claimant's behalf will not be accepted.

SETTLEMENT EXHIBIT D

### E.    MATERIALS TO BE CONSIDERED BY CLASS ADMINISTRATOR IN SCORING CLAIMS

If a Claimant is determined to be an Authorized Claimant, the Claims Administrator will proceed to Score the Claim.

In addition to the Claim Form and the specific required supporting documents, Scoring by the Claims Administrator will be based exclusively on Prudential Records and data for all Class Policies.  **Prudential Records** will include:

(1)    **Service Ability Notes ("SA Notes")**:  records of phone calls and communications between a Policyowner (and/or the Policyowner's authorized representative) and Prudential's customer service representative(s).

(2)    **eDocs**:  systematically generated correspondence, including statements and routine notices related to the policy.

(3)    **Prudential Image and Workflow Desktop ("PIWD") Files**:  a combination of internal Prudential files, policy documents, and correspondence, including applications for insurance.

(4)    **Prudential Data:**  Prudential data enumerated below will be provided for all Class Policies as to which an Authorized Claim has been submitted ( together, "Prudential Data"):

(a)    Product name or type;

(b)    Class Policy issuance date;

(c)    Total face amount at time of final lapse;

(d)    Default date;

(e)    Default category (i.e. whether there was a Secondary Guarantee on the Class Policy);

(f)    The requested amount to cure default;

(g)    The deficiency amount if calculated based on Current Charges;

(h)    The number of months that the requested deficiency and/or lapse amount would have carried the Class Policy;

(i)    The reinstatement amount requested (if applicable);

(j)    The reinstatement amount if calculated based on Current Charges;

**SETTLEMENT EXHIBIT D**

    (k)    The number of months that the requested reinstatement amount and/or lapse amount would have carried the Class Policy;

    (l)    The date of final lapse;

    (m)    Loan and/or withdrawal amounts at time of final lapse; and

    (n)    The percentage of the face amount that had been taken out by loans and/or withdrawals.

As set forth in the Settlement Agreement, Prudential will provide Prudential Records to the Claims Administrator in the manner that they are maintained by Prudential in its regular course of business.

All materials and data held by the Claims Administrator regarding Policyowners, Class Policies and/or the Settlement Class shall be strictly confidential and not subject to publication or disclosure by the Claims Administrator.  No person other than the Parties, their attorneys (including their consultants and experts who are bound by a Protective Order in the Action), the Claims Administrator, the Special Master and the Court shall be permitted to obtain or review any Claim Form, or any decision of the Claims Administrator with respect to accepting or rejecting any Claim, except as provided for herein or upon Court Order for good cause shown.

If, after evaluation of Prudential Records and Prudential Data in conjunction with the Scoring Factors (described further below), the Claims Administrator determines that the written record is indeterminate and that additional information is necessary in order to score the Claim, the Claims Administrator may request that Prudential provide recordings of any telephone calls with the Policyowner, any representative of the Policyowner, or a beneficiary in Prudential's records made during the period of time beginning ninety (90) days prior to the date of the default that led to the final lapse of the Class Policy and ending ninety (90) days after the date of final lapse.  The Claims Administrator may request the recordings if and only if the Claims Administrator determines that the written record is not sufficiently clear for purposes of application of the Scoring Factors and that audio call recordings (in addition to the available notes of conversations, which appear in each file where relevant) could provide important additional guidance in applying the Scoring Factors.

**F.    THE NUMERICAL SCORES**

The Individual Relief provided by the Settlement is different depending on the circumstances of each Class Policy.  **Not all Class Policies were affected by the conduct alleged in the Action, and different Class Policies were affected differently**.  Authorized Claims will be scored based upon a four-tiered, 3-2-1-0 scale, as described in detail below:

SETTLEMENT EXHIBIT D

**Score 3**:    A Score of "3" will be assigned if review of the documentation, data, and evaluation of the identified factors results in a showing of a clear link between a request from Prudential to pay an amount in excess of three months of premium at Current Charges and lapse or failure to reinstate. This will include Claims that otherwise meet this standard and where reinstatement was denied because of medical reasons.

**Score 2**:    A Score of "2" will be assigned if review of the documentation, data, and evaluation of the identified factors results in a conclusion that no decisive evidence exists, but the evaluation of factors tends to support, on balance, that a significant reason for lapse or failure to reinstate was because the amount requested by Prudential exceeded three months of premium at Current Charges. In addition, in the absence of evidence that leads to an automatic Score of 0 or 3, if the Policyowner initiated communications with Prudential within ninety (90) days of final default, and such communications are inconclusive but suggest a complaint about the amount requested to cure default or reinstate, and no other evidence exists, the Claim is assigned a Score of "2".

**Score 1**:    A Score of "1" will be assigned if review of the documentation, data and evaluation of the identified factors results in a conclusion that no decisive evidence exists, but the evaluation of factors tends to support, on balance, a decision deeming that an amount requested from Prudential to pay an amount in excess of three months of premium at Current Charges was not a significant reason for lapse or failure to reinstate. If there is no evidence whatsoever in the file or data relevant to any factor, a Score of "1" is assigned.

**Score 0:**    A Score of "0" will be assigned if review of the documentation, data and evaluation of the identified factors results in a decision that the Policyowner was not subjected to a request from Prudential to pay an amount to cure default or reinstate in excess of three months of premium at Current Charges, or, there is clear evidence that the Class Policy lapsed or was not reinstated for reasons unrelated to the amount requested.

## G.    SCORING FACTORS TO BE CONSIDERED IN ASSIGNING THE SCORE

In scoring each Authorized Claim, the Claims Administrator will consider and apply the following Scoring Factors and rules.

- If Prudential Records reflect a documented statement or complaint regarding the out-of-pocket amount requested to either cure the default or reinstate the Class Policy as the reason for lapse, an automatic Score of "3" is assigned.

**SETTLEMENT EXHIBIT D**

- If Prudential Records and/or Prudential Data reflect that the Policyowner attempted to cure the default or reinstate the Class Policy with premium payments based on Current Charges and the attempt to cure or reinstate was denied for insufficiency of payment at Current Charges, an automatic Score of "3" is assigned.

- If Prudential Records reflect the Policyowner initiated communications with Prudential within ninety (90) days of final default and such communications are inconclusive but suggest a complaint about the amount requested to cure or reinstate, AND no other evidence exists that leads to an automatic Score of "0" or "3", an automatic Score of "2" is assigned.

- In the absence of evidence that would otherwise result in a Score of "3", if Prudential Records and/or Prudential Data reflect that loans and/or withdrawals of the Class Policy's cash value prior to lapse are at or in excess of 60%, but less than 75%, AND there was no payment of loan interest or loan principal within 12 months prior to lapse, an automatic Score of "1" is assigned.

- If Prudential Records reflect that the Policyowner requested surrender of the Class Policy within one hundred twenty (120) days prior to default or lapse notice, an automatic Score of "0" is assigned.

- If Prudential Records reflect the Policyowner's clear intent to allow the Class Policy to lapse and/or the Policyowner's clear intent to abandon or otherwise terminate the Class Policy, an automatic Score of "0" is assigned. Examples of such clear intent include, but are not limited to (prior to a request by Prudential, if any, for payment of more than three months' premium), asking if cancellation paperwork needs to be sent in, indicating an intent to invest elsewhere, indicating a wish to withdraw the Cash Value of the contract and abandon insurance, or asking how long coverage would last in the absence of paying any more premiums.

- If Prudential Records and/or Prudential Data reflect all four of the following factors, an automatic Score of "0" is assigned: (i) the Class Policy's face value was at least $250,000; (ii) the requested amount to cure the default was based on a Secondary Guarantee; (iii) the requested amount to cure the default would provide coverage for a period of no more than three months at Current Charges; and (iv) there is no evidence in Prudential Records that a reinstatement amount was requested or provided.

**SETTLEMENT EXHIBIT D**

- If Prudential Records and/or Prudential Data reflect that Prudential requested payment at or below Current Charges in order to cure default or reinstate after lapse, an automatic Score of "0" is assigned.

- In the absence of evidence that would otherwise result in a Score of "3", and Prudential Records and/or Prudential Data reflect that 75% or more of the Class Policy's cash value was taken in loans and/or withdrawals prior to default, an automatic Score of "0" is assigned.

- If Prudential Records and/or Prudential Data reflect that the amounts requested to cure default or reinstate the Class Policy after lapse would carry the Class Policy for a period of less than or equal to 3.5 months at Current Charges, an automatic Score of "0" is assigned.

- If Prudential Records reflect that, prior to default, the Policyowner or Insured obtained other insurance to replace the Class Policy, an automatic Score of "0" is assigned.

- If Prudential Records reflect that an Investor owned the Class Policy at the time of default and/or lapse, an automatic Score of "0" is assigned.

- Prudential Records and/or Prudential Data that reflect that the requested amounts to cure the default AND to reinstate the Class Policy would carry the Class Policy for a period of more than 3.5 months but less than 4 months may result in a lower score.

## H.     CLAIMS SCORING PROCEDURE

For each Authorized Claim where a timely, completed Claim Form is submitted by an Authorized Claimant, the Claims Administrator will have two separate scorers review the Claim, apply the Scoring Factors and assign a Score. If the two individual scorers agree on the Score, that becomes the Final Score. If the two scorers do not agree, the Claim will be sent to a third scorer at the Claims Administrator (without the scores of the two prior reviewers) who will review Prudential Records and Prudential Data and will assign a Score which will stand as the Final Score, absent Limited Appeal described below.

## I.     NOTICE OF SCORE

The Claims Administrator will notify the Authorized Claimant of the Score by way of letter sent via U.S. Mail and if an address is available, by e-mail, and, if applicable, will further notify the Authorized Claimant that the Score was determined by way of resort to a third scorer

**SETTLEMENT EXHIBIT D**

(hereinafter "Notice of Score").  Claimant  will not receive an analysis or the specific reasons
for the Scores they received.

**J.      POTENTIAL FOR LIMITED APPEAL TO SPECIAL MASTER AT
          CLAIMANT'S EXPENSE**

An Authorized Claimant may not appeal a Final Score unless the Final Score was determined
by a third scorer.  No other person or entity including, but not limited to, any Defendant or
Class Counsel may appeal a Final Score.

Limited Appeals can be taken within ten (10) days of receipt of the Final Score.  To file a
Limited Appeal, the Authorized Claimant will be provided instruction regarding how to send a
letter indicating that he or she wishes to appeal the Score.  The letter shall be accompanied by
the Class Policy number, a **check in the amount of $1,000 made payable to "JAMS" and
sent to the following address**:

> JAMS
> Two Embarcadero Center
> Suite 1500
> San Francisco, CA 94111

In reviewing the appeal, the Special Master will review all records obtained by the Claims
Administrator relating to the Claim, including recordings of telephone calls where they were
requested by the Claims Administrator.  The Special Master will not be provided with the
Claims Administrator's recommended Final Score.  Rather, the Special Master will perform an
independent review, utilizing the same Scoring Factors set forth herein for the Claims
Administrator.

The Special Master will notify the Claimant of the Final Score by written notification sent via
U.S. Mail.  The determination of the Special Master shall be final and not subject to any further
appeal.

Neither a Claimant nor any Party have any right of recourse to the Court for purposes of
challenging any Final Score applied by the Claims Administrator or Special Master.

**K.      SETTLEMENT PAYMENTS TO AUTHORIZED CLAIMANTS**

The Settlement Payment to Authorized Claimants will be predicated upon the Final Score as
assigned to the Claim by the Claims Administrator or, if applicable, the Special Master.  The
Settlement Payment will be paid in accordance with the Settlement Agreement, as follows:

> **Final Score 3**.  For a Final Score of "3", the Settlement Payment will be
> equal to 75% of the death benefit amount of the subject Class Policy

**SETTLEMENT EXHIBIT D**

as of the date of death, reduced by 75% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

**Final Score 2.** For a Final Score of "2", the Settlement Payment will be equal to 55% of the death benefit amount of the subject Class Policy as of the date of death, reduced by 55% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

**Final Score 1**. For a Final Score of "1", the Settlement Payment will be equal to 5% of the death benefit amount of the subject Class Policy as of the date of death, reduced by 5% of the amount the Policyowner would have been required to pay to reinstate the Class Policy and keep the policy in force from the date of final lapse to the date of death (calculated using Current Rates and Charges), plus interest at 3% on that payment to be paid from date of death to the date the Settlement Payment is made.

**Final Score 0**. For a Final Score of "0", Basic Relief ($250) will be paid.

## L.    SETTLEMENT PAYMENT TIMING

All Settlement Payments will be calculated after Final Scores have been applied to all Claimants, and after all Limited Appeals are finally adjudicated by the Special Master, as set forth by the Settlement Agreement:

(1)    Within ten (10) days of the date on which all Claims received a Final Score, the Claims Administrator will provide to Prudential the list of Authorized Claimants including the policy number for each Class Policy and the Final Score applied to each Claim.

(2)    For each Claim that receives a Final Score of "3", "2" or "1", Prudential will calculate the death benefit and the minimum premium payment (calculated using Current Rates and Charges) on the Class Policy that would have been required to reinstate the Class Policy and have it stayed in force from time of final lapse to the date of death,

**SETTLEMENT EXHIBIT D**

and within ten (10) business days, provide the results to the Claims Administrator.

(3)    Based upon the Final Score, and within ten (10) days of receiving the calculations provided by Prudential set forth in the above subparagraph (b), the Claims Administrator will determine the Settlement Payment including interest and inform Prudential of the amount required in the Escrow Account to fund all Settlement Payments.

(4)    Within ten (10) business days following receipt of notice from the Claims Administrator of the amount required in the Escrow Account to fund all Settlement Payments, Prudential shall cause sufficient monies to be paid into that account.

(5)    Settlement Payments will not be issued to Authorized Claimants unless and until the Settlement becomes Final. Once the Settlement becomes Final, the Claims Administrator shall issue checks for the Settlement Payments as promptly as possible, but in no more than sixty (60) days following the Settlement becoming Final.

(6)    The Claims Administrator shall perform an address trace for any undeliverable check following receipt of any undeliverable check, and shall re-send the check within sixty (60) days if a different address is found. If a check for a Settlement Payment mailed to an Authorized Claimant and not returned as undeliverable is not cashed within one hundred eighty (180) calendar days, the funds shall revert back to the Escrow Account. The checks and any cover correspondence shall recite that the Claimant must cash the check within one hundred eighty (180) days, or that the check is only valid for one hundred eighty (180) days.

110877841

# EXHIBIT E

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
*Richard Behfarin v. Pruco Life Ins. Co., The Prudential Ins. Co. of America, and Pruco Life Ins. Co. of New Jersey*,
Case No. 2:17-cv-05290-MWF-FFM

## CLAIM FORM FOR REINSTATEMENT RELIEF

**Class Settlement**
**[c/o Settlement Administrator]**
**Toll-Free Number: 1-855-915-0909**
**Email:** info@LapsedPolicySettlement.com
**Website:** www.LapsedPolicySettlement.com

TO BE CONSIDERED FOR REINSTATEMENT RELIEF IN CONNECTION WITH THE PROPOSED SETTLEMENT, YOU MUST COMPLETE AND SIGN THIS CLAIM FORM. YOU MAY ALSO USE THIS CLAIM FORM FOR BASIC RELIEF.

This Claim Form is for Policyowners of a Class Policy that lapsed for a final time during the Class Period (between July 18, 2013 and November 26, 2019) and has not been reinstated to date, where there is at least one living insured.

**Do not use this Claim Form if the insured(s) on the Class Policy is (are) deceased**. A different Claim Form, and different Settlement relief, is available if the insured(s) is (are) no longer alive. You may obtain the appropriate Claim Form either by contacting the Claims Administrator or by electronically submitting or downloading the Claim Form found on the claims administration website at www.LapsedPolicySettlement.com.

YOU MAY SUBMIT THIS FORM ELECTRONICALLY ON THE CLAIMS ADMINISTRATION WEBSITE AT www.LapsedPolicySettlement.com **BY 11:59 P.M. PST on March 31, 2020**; OR MAIL IT TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN March 31, 2020**.

IF YOUR CLAIM IS NOT SUBMITTED OR MAILED BY THE ABOVE DATE, YOU WILL NOT BE ELIGIBLE TO PARTICIPATE IN ANY SETTLEMENT RELIEF PROVIDED BY THE PROPOSED SETTLEMENT. WHETHER OR NOT YOU SUBMIT A CLAIM, IF YOU HAVE NOT REQUESTED TO BE EXCLUDED FROM THE CLASS, YOU WILL BE BOUND BY THE RELEASES IN THE SETTLEMENT AGREEMENT INCLUDING THE COVENANT NOT TO SUE. ALL CLASS MEMBERS ARE BOUND BY THE ORDERS OF THE COURT.

### PLEASE READ

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL OR BY EMAIL, IF YOU HAVE PROVIDED AN EMAIL ADDRESS, WITHIN 10 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT WITHIN 10 DAYS, CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT 1-855-915-0909.**

**DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT, THE PARTIES TO THIS ACTION, OR THEIR COUNSEL. SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR, AS SET FORTH BELOW.**

**PLEASE KEEP A COPY OF THIS COMPLETED FORM FOR YOUR RECORDS.**

**TABLE OF CONTENTS**                                                                    **PAGE #**

**PART I – GENERAL INSTRUCTIONS** ..................................................................................2

**PART II – CLAIMANT IDENTIFICATION** ...........................................................................4

**PART III – REQUEST FOR REINSTATEMENT OR BASIC RELIEF** ................................5

01-CA4744
Z5821 v.05

## PART I – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Class Notice posted on the Settlement Website (the "Class Notice" or "Notice") along with this Claim Form. The Class Notice includes the definition of the Settlement Class, describes the various forms of relief that are offered by the Proposed Settlement to Authorized Claimants, and explains how the Settlement Class is affected by the Proposed Settlement and the manner in which Settlement Class Members may participate. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you certify that you have read and that you understand the Class Notice, including the terms of the Releases described in the Class Notice.

2.      By submitting this Claim Form, you are certifying that you were the Policyowner of a universal life or variable universal life insurance policy issued by Prudential (including Pruco Life Insurance Company, The Prudential Insurance Company of America, or Pruco Life Insurance Company of New Jersey) that lapsed between July 18, 2013 and November 26, 2019. If you do not meet this description, please do not submit this Claim Form for Reinstatement Relief.

3.      After submission of your Claim, the Claims Administrator will determine if you are a Class Member, and an Authorized Claimant for Reinstatement Relief.

The Settlement Class is defined as:

> All Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are deceased, then also any designated beneficiary(ies) of that Class Policy at the time of final lapse.

> Class Policies include all individual universal life or variable universal life insurance policies issued by a Defendant as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed between July 18, 2013, and the date of Preliminary Approval, or which had default cured or was reinstated on or after July 18, 2013, and remains in force on the date of Preliminary Approval.

4.      If the Claims Administrator determines that you are not a Settlement Class Member, **you may not, directly or indirectly, participate in the Settlement and any Claim Form that you submit, or that may be submitted on your behalf, will not be accepted**. Even if you are not a Settlement Class Member, if you have a connection to a Class Policy, you may still be bound by the orders of this Court.

5.      If you submitted a request for exclusion from the Class, submission of this Claim Form will supersede your request to be excluded. That means you will now be bound by the terms of the Settlement.

6.      By submitting this Claim Form, you are requesting Reinstatement Relief for the Lapsed/Alive Population which allows Class Policies to be reinstated without underwriting. You may qualify for Reinstatement Relief if Prudential requested payments on your Prudential policy when it defaulted and/or to reinstate that equaled more than three months' premium at then Current Rates, plus applicable loads or fees. Current Rates mean the monthly cost of insurance rate applicable to the policy. You will not qualify for Reinstatement Relief if certain Gating Rules described in the Settlement Agreement apply to you. If a Gating Rule applies, your policy may still be eligible for Basic Relief of $250.

7.      Submission of this Claim Form does not guarantee that you will receive Reinstatement Relief, Basic Relief, or any relief at all. The procedures for the determination of your Claim are set forth in the Proposed Settlement and Exhibit.

8.       **Please be aware that if your Claim to reinstate your Class Policy is approved, you are required to pay the Reinstatement Amount required in order to reinstate the Class Policy, and to thereafter pay amounts required to keep the Reinstated Class Policy in force. You are not required to pay amounts that would have been required to keep the policy in force from the date of lapse to the date of reinstatement. Your obligations and other information regarding Reinstatement Relief are provided in the Notice and the Settlement Agreement.** After your Claim is evaluated and approved, you will be provided information in order to finalize your Reinstated Class Policy. If at any point you choose not to proceed with reinstatement, your Claim will be considered one for Basic Relief.

9.       All Policyowners must sign this Claim Form and their names must appear as "Claimants" in Part II of this Claim Form.

10.       If the Court approves the Proposed Settlement, all relief determined as part of the claims process will be provided to Claimants pursuant to the Settlement Agreement after any appeals are resolved, and after the completion of claims processing. The claims process will take substantial time to complete fully and fairly. Please be patient.

11.       If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, at the below address, by email at info@LapsedPolicySettlement.com, by toll-free phone at 1-855-915-0909, or you can visit the Settlement website, www.LapsedPolicySettlement.com, where copies of the Claim Form and Notice are available.

<u>**IMPORTANT:**</u> You are required to submit true and correct information when completing the Claim Form. This includes any attestations and warranties regarding or supporting reinstatement of your Class Policy with Prudential. **DO NOT MAKE ANY CHANGES TO THIS FORM. Failure to provide true and correct information can result in denial of your Claim under the Settlement; or if your Class Policy is reinstated, Prudential terminating coverage and denying any policy benefits and taking any other action that may be appropriate.**

## PART II – CLAIMANT IDENTIFICATION

**Please complete this PART II in its entirety. The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing using the contact information above.**

Policyowner's Name:                                    MI:    Last Name:

Joint Owner's Name (if any):                           MI:    Last Name:

Policyowner's Current Street Address:

City:                                                  State:    ZIP Code:

Country:

Telephone Number (Daytime):

Telephone Number (Evening):

If you provide a mobile phone number you are authorizing the Claims Administrator to contact you on your mobile phone and agree to pay any charges associated with calls to your mobile phone.

Email Address (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this Claim.)

Policy Number (if available):

## PART III – REQUEST FOR REINSTATEMENT OR BASIC RELIEF

Complete this Part III if you would like to make a Claim for Reinstatement or Basic Relief.

We will use the Policyowner(s) information provided above for this Claim. In addition, please provide the following information.

### INSURED INFORMATION:

1.  Name of Insured (First/Middle Initial/Last):

First Name: MI: Last Name:

2.  Any change of his or her name in the last five years:

    a.   If yes, provide former name:

3.  Telephone number:

4.  Current address:

City: State: ZIP Code:

5.  Has the insured died since the date the policy lapsed? ☐ Yes ☐ No

    a.   If yes, date of death:

    MM    DD    YYYY

### OTHER INSURED (applicable to survivorship policies only):

1.  Name of Second Insured (First/Middle Initial/Last):

First Name: MI: Last Name:

2.  Any change of his or her name in the last five years? If yes, provide former name*:

3.  Telephone Number*:

4.  Current Address:

City: State: ZIP Code:

5.  Has a second insured died since the date the policy lapsed? ☐ Yes ☐ No

    a.   If yes, date of death:

    MM    DD    YYYY

---

* This information is to be provided to the extent that you have it.


05-CA4744
Z5825 v.05

**ATTESTATIONS AND WARRANTIES**

You are eligible for Reinstatement Relief only if you can attest and warrant to the truth of each of the following statements, and you do so by your initials and signature below. **IF ANY OF THESE STATEMENTS ARE NOT TRUE AS TO YOU, DO NOT INITIAL THAT STATEMENT**. Do not make any changes to the form.

If you do not want to reinstate your policy, or if you cannot truthfully attest to any of the statements below, you may still submit this Claim Form to request the Basic Relief alternative by initialing where indicated for Basic Relief following the statements below.

a. **No Prior Decision to Discontinue Policy.** I (we) did not make a deliberate decision, prior to default, to discontinue the policy for any reason. [Claimant(s) initials]

☐ ☐

b. **Amount Requested by Prudential Directly Impacted Policy Lapse.** If Prudential had requested payment of a lower amount in order to cure the default or reinstate the policy, that was equal to no more than three months of premium based on Current Charges plus required loads/administrative fees, I (we) would have paid that amount and kept the Class Policy in force. [Claimant(s) initials]

☐ ☐

c. **No Replacement/Purchase of Other Insurance.** I (we) did not purchase other insurance to replace the face amount of the Class Policy with any other life insurance prior to notice of final default; nor did I (we) purchase other insurance to replace the face amount of the Class Policy with any other life insurance in an amount equal to or more than 50% of the face amount of the policy, after default and before the policy lapsed. [Claimant(s) initials]

☐ ☐

d. **Owner After Final Lapse.** I (we) am (are) not, nor is any insured or Policyowner of the Class Policy, a life settlement company, investor, or other person or entity who acquired the Class Policy (or any right to the Class Policy) after final lapse without having any familial or employment relationship with the person whose life is insured by the Class Policy. [Claimant(s) initials]

☐ ☐

e. **No Present Intent to Sell/Transfer to Third Party.** I (we) represent that if the policy is reinstated under the Settlement, I (we) have no present intent to sell or transfer the policy (or any interest in the policy benefits, either directly as an owner or named beneficiary or indirectly as a beneficiary or owner of a trust or other entity) to a life settlement company or other investor or individual or entity with whom I (we) have no familial or employment relationship. [Claimant(s) initials]

☐ ☐

f. **Insured is Alive.** I (we) represent that at least one insured on the policy is currently living as of the date of the Claim. [Claimant(s) initials]

☐ ☐

g. **Claimant Entitled to Act.** I (we) am (are) (a) Policyowner(s) and have the right to act with respect to the Class Policy, and assume all responsibility for the liability that may result from filing a Claim in the event that anyone else asserts ownership of the Class Policy or files a claim on the same Class Policy. [Claimant(s) initials]

☐ ☐

**h. Continuing Attestations and Warranties.** I (we) understand that these statements are continuing and that I (we) have an obligation to notify the Claims Administrator while the Claim is pending if any statement I (we) have made is not or no longer true. [Claimant(s) initials]

☐☐

## OR ALTERNATIVE RELIEF:

**Basic Relief alternative:** I (we) **do not want to reinstate the policy** and instead seek only the Basic Relief of $250 provided by the Settlement. [Claimant(s) initials]

☐☐

By signing this Claim Form, I (we) swear to the truth of the statements contained herein and the genuineness of and completeness of the information provided in the submission of this Claim, subject to penalties of perjury under the laws of the United States of America. I (we) understand that the making of false statements may result in the rejection of this Claim; or if the policy is reinstated, termination of the policy and denial of any benefits under the policy; it may further subject me (us) to civil liability or criminal prosecution.

I (we) understand that if I (we) did not initial one or more of the attestations and warranties above (or made any changes thereto) that I (we) will still be a Settlement Class Member and that I (we) will be eligible to receive only Basic Relief.

I (we) hereby acknowledge that, pursuant to the terms set forth in the Settlement, I (we) am (are) bound by all provisions of the Settlement and all orders of the Court including without limitation the Release and Covenant Not to Sue.

I (we) acknowledge that the decision to participate in the Settlement was mine (ours). It was not made based upon advice from Prudential or anyone acting on its behalf, or at the direction or counsel of any Party.

| | Date: | MM – DD – YYYY |
|---|---|---|
| **Claimant(s) Signature(s):** | | |

| | Date: | MM – DD – YYYY |
|---|---|---|
| **Claimant(s) Signature(s):** | | |

**AUTHORIZATION TO RELEASE INFORMATION**

By signing below, I (we) authorize any insurance company or producer and the Medical Information Bureau, Inc. ("MIB"), to give information about me (us) to the Claims Administrator, Prudential, and/or its authorized agents to determine information related to my Claim for Settlement relief.

I (we) further acknowledge and agree that Defendants will be providing Prudential Records, including Class Policy records, for each Settlement Class Member and each insured on a Class Policy to the Claims Administrator. I (we) acknowledge and agree that the Prudential Records are likely to include personal information, and may include Social Security numbers, individually identifiable health information, policy information, and financial information, among other things. I (we) request that the Claims Administrator review the Prudential Records in order to adjudicate my (our) Claim(s). I (we) understand that the Settlement provides that all Prudential Records held by the Claims Administrator shall be confidential and shall not be subject to publication or disclosure by the Claims Administrator. I (we) understand that no person other than the Parties, their attorneys (including their consultants and experts who are bound by a Protective Order in the Action), the Claims Administrator, the Special Master, and the Court shall be permitted to obtain or review any Claim Form, or any decision of the Claims Administrator with respect to accepting or rejecting any Claim, except as provided for in the Settlement Agreement or upon Court Order for good cause shown.

Date: ___ – ___ – ___
      MM     DD     YYYY

**Claimant(s) Signature(s):**

Date: ___ – ___ – ___
      MM     DD     YYYY

**Claimant(s) Signature(s):**

If the Claimant *is not* the insured, all living insureds on the policy must also sign this Authorization to Release Information.

Date: ___ – ___ – ___
      MM     DD     YYYY

**Insured(s) (if not a Claimant) Signature(s):**

Date: ___ – ___ – ___
      MM     DD     YYYY

**Insured(s) (if not a Claimant) Signature(s):**

## REMINDER CHECKLIST

1. Sign the above Release and Certification. If this Claim Form is being made on behalf of Joint Claimants/Joint Policyowners, then both must sign.

2. Review your responses to the Claim Form for accuracy.

3. Keep copies of the completed Claim Form for your own records.

4. The Claims Administrator will acknowledge receipt of your Claim Form by mail, or email if you provided an email address, within 10 days. Your Claim is not deemed filed until you receive an acknowledgement. **(If you do not receive an acknowledgement within 10 days, please contact the Claims Administrator as provided below.)**

5. If your address changes, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address. If you change your name, inform the Claims Administrator. If any of your responses to the Certifications you provided change, you must inform the Claims Administrator.

6. If you have any questions or concerns regarding your Claim, please contact the Claims Administrator at the address below, by email at info@LapsedPolicySettlement.com, by toll-free phone at 1-855-915-0909, or you may visit www.LapsedPolicySettlement.com. DO NOT call Prudential or its counsel with questions regarding your Claim.

THIS CLAIM FORM MUST EITHER BE ELECTRONICALLY SUBMITTED ON THE CLAIMS ADMINISTRATION WEBSITE AT www.LapsedPolicySettlement.com **BY March 31, 2020;** OR BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN March 31, 2020,** ADDRESSED AS FOLLOWS:

Prudential Class Settlement
c/o Claims Administrator
P.O. Box 6869
Portland, OR 97228-6869

A Claim Form received by the Claims Administrator shall be deemed to have been submitted on the date it is postmarked, if a postmark date is indicated on the envelope and it is mailed First-Class, and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

**09-CA4744**
Z5829 v.05

# EXHIBIT F

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
*Richard Behfarin v. Pruco Life Ins. Co., The Prudential Ins. Co. of America, and Pruco Life Ins. Co. of New Jersey*,
Case No. 2:17-cv-05290-MWF-FFM

# CLAIM FORM FOR INDIVIDUALIZED RELIEF

**Class Settlement**
**[c/o Settlement Administrator]**
**Toll-Free Number: 1-855-915-0909**
**Email:** info@LapsedPolicySettlement.com
**Website:** www.LapsedPolicySettlement.com

TO BE CONSIDERED FOR INDIVIDUALIZED RELIEF IN CONNECTION WITH THE PROPOSED SETTLEMENT, YOU MUST COMPLETE AND SIGN THIS CLAIM FORM. YOU MAY ALSO USE THIS CLAIM FORM FOR BASIC RELIEF.

This Claim Form is for the Lapsed/Deceased Population. The Lapsed/Deceased Population is defined by the Settlement Agreement and includes Settlement Class Members associated with policies that lapsed for a final time during the Class Period and were not reinstated, where the insured(s) is (are) deceased. This includes Policyowners of such a Class Policy, and where the Policyowner(s) also is (are) no longer living, then also the designated beneficiaries of that Class Policy.

**Do not use this Claim Form if any insured on the Class Policy is still living.** A different Claim Form and different Settlement relief is available if an insured is still living, as described in the Class Notice. You may obtain the Claim Form for policies where the insured is still living either by contacting the Claims Administrator or by electronically submitting or downloading the Claim Form found on the Claims Administration website at www.LapsedPolicySettlement.com.

YOU MAY SUBMIT THIS FORM ELECTRONICALLY ON THE CLAIMS ADMINISTRATION WEBSITE AT www.LapsedPolicySettlement.com **BY 11:59 P.M. PST on March 31, 2020**; OR MAIL IT TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN March 31, 2020**.

IF YOUR CLAIM IS NOT SUBMITTED OR MAILED BY THE ABOVE DATE, YOU WILL NOT BE ELIGIBLE TO PARTICIPATE IN ANY SETTLEMENT RELIEF PROVIDED BY THE PROPOSED SETTLEMENT. WHETHER OR NOT YOU SUBMIT A CLAIM, IF YOU HAVE NOT REQUESTED TO BE EXCLUDED FROM THE CLASS, YOU WILL BE BOUND BY THE RELEASES IN THE SETTLEMENT AGREEMENT INCLUDING THE COVENANT NOT TO SUE. ALL CLASS MEMBERS ARE BOUND BY THE ORDERS OF THE COURT.

## PLEASE READ

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL OR BY EMAIL, IF YOU HAVE PROVIDED AN EMAIL ADDRESS, WITHIN 10 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT WITHIN 10 DAYS, CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT 1-855-915-0909.**

**DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT, THE PARTIES TO THIS ACTION, OR THEIR COUNSEL. SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR AS SET FORTH ABOVE.**

**PLEASE KEEP A COPY OF THIS COMPLETED FORM FOR YOUR RECORDS.**

**TABLE OF CONTENTS**                                                                                   **PAGE #**

**PART I – GENERAL INSTRUCTIONS** ........................................................................................2

**PART II – CLAIMANT IDENTIFICATION** ...............................................................................4

**PART III – REQUEST FOR INDIVIDUALIZED RELIEF**.......................................................5

01-CA4744
Z5811 v.04

## PART I – GENERAL INSTRUCTIONS

1.      It is important that you read the Class Notice posted on the Settlement Website (the "Class Notice" or "Notice") along with this Claim Form. The Class Notice includes the definition of the Settlement Class, describes the various forms of relief that are offered by the Proposed Settlement to Authorized Claimants, and explains how the Settlement Class is affected by the Proposed Settlement and the manner in which Settlement Class Members may participate. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you certify that you have read and that you understand the Class Notice, including the terms of the Releases described in the Class Notice.

2.      By submitting this Claim Form, you are certifying that the policy on which you are making a Claim was a universal life or variable universal life insurance policy issued by Prudential (including Pruco Life Insurance Company, The Prudential Insurance Company of America, or Pruco Life Insurance Company of New Jersey) that lapsed between July 18, 2013, and November 26, 2019. You further represent that you were a Policyowner of that policy, i.e. that you are an individual who owned and was responsible for payments on the policy when it was in force; or that you are an authorized representative of a Policyowner or the Estate of a Policyholder (if deceased), or that you were a designated beneficiary of that policy (or an authorized representative of a designated beneficiary.) If you do not meet this description, please do not submit this Claim Form for Individualized Relief.

3.      After submission of your Claim, the Claims Administrator will determine if you are a Class Member, and an Authorized Claimant for Individualized Relief.

The Settlement Class is defined as:

> All Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are deceased, then also any designated beneficiary(ies) of that Class Policy at the time of final lapse.

> Class Policies include all individual universal life or variable universal life insurance policies issued by a Defendant as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed between July 18, 2013, and the date of Preliminary Approval, or which had default cured or was reinstated on or after July 18, 2013, and remains in force on the date of Preliminary Approval.

4.      If the Claims Administrator determines that you are not a Settlement Class Member, **you may not, directly or indirectly, participate in the Settlement and any Claim Form that you submit, or that may be submitted on your behalf, will not be accepted.** Even if you are not a Settlement Class Member, if you have a connection to a Class Policy, you may still be bound by the orders of this Court.

5.      If you submitted a request for exclusion from the Class, submission of this Claim Form will supersede your request to be excluded. That means you will now be bound by the terms of the Settlement.

6.      By submitting a Claim Form, you are requesting Individualized Relief for the Lapsed/Deceased Population which allows Authorized Claimants Individualized Relief for Class Policies in the form of a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process conducted by the Claims Administrator.

7.      **Please be aware that if you make a Claim and the Claims Administrator approves Individualized Relief, you agree to assume all responsibilities and liabilities associated with distribution of the Settlement Payment under law, including making any payments that may be owed to others. Your agreement to assume liability and all other obligations for receiving the Individualized Relief are also stated in the Notice and the Settlement Agreement.**

8.      After submission of your Claim, the Claims Administrator will determine if you are an Authorized Claimant, and will apply the Scoring Process. The Scoring Process is based on an individual analysis and determination of each Claim according to Scoring Guidelines. The score will depend upon what that evidence reflects regarding whether, and how, you may have been impacted (if at all) by the conduct alleged in the Action.

9.      **Submission of this Claim Form does not guarantee that you will receive Individualized Relief, Basic Relief, or any relief at all. The procedures for the determination of your Claim are set forth in the Proposed Settlement and Exhibits.**

10.     Use Part III of this Claim Form to supply all required information to request Individualized Relief. You must provide all required documentation listed below to support your Claim. **Failure to provide this information during the requested time period may result in rejection of your Claim**.

11.     If you do not want to request Individualized Relief, you may also submit this Claim Form to request the Basic Relief alternative.

12.     All Claimants must sign this Claim Form and their names must appear as "Claimants" in Part II of this Claim Form.

13.     If the Court approves the Proposed Settlement, all relief determined as part of the claims process will be provided to Claimants pursuant to the Settlement Agreement after any appeals are resolved, and after the completion of all claims processing. The claims process will take substantial time to complete fully and fairly. Please be patient.

14.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, at the below address, by email at info@LapsedPolicySettlement.com, by toll-free phone at 1-855-915-0909, or you can visit the Settlement website, www.LapsedPolicySettlement.com, where copies of the Claim Form and Notice are available for downloading.

<u>**IMPORTANT:**</u> You are required to submit true and correct information when completing the Claim Form. **DO NOT MAKE ANY CHANGES TO THIS FORM. Failure to provide true and correct information can result in denial of your Claim under the Settlement.**

## PART II – CLAIMANT IDENTIFICATION

**Please complete this PART II in its entirety. The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing using the contact information above.**

Claimant's Name (First/Middle Initial/Last) [please insert the name of the person submitting this form and making the Claim. Do not insert the name of the deceased here]

First Name                                          MI    Last Name

Claimant's Current Address

City                                                State   ZIP Code

Country

Joint Claimant's Name (First/Middle Initial/Last) [if there is no other Claimant, skip this section]

First Name                                          MI    Last Name

Joint Claimant's Current Address

City                                                State   ZIP Code

Country

Telephone Number 1 (Daytime)

Telephone Number 1 (Evening)

If you provide a mobile phone number, you are authorizing the Claims Administrator to contact you on your mobile phone and agree to pay any associated charges with calls to your mobile phone.

Email Address 1 (Email address is not required, but if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this Claim.)

Policy Number (if available)

## PART III – REQUEST FOR INDIVIDUALIZED RELIEF

Complete this Part III if you would like to make a Claim for Individualized Relief.

We will use the Claimant(s) information provided above for this Claim. In addition, please provide the following information.

**INSURED INFORMATION: [Please provide the name of the now-deceased individual who was insured by the Class Policy here]**

1. Name of Insured (First/Middle Initial/Last):

First Name                                        MI        Last Name

2. Alias, Former or Maiden Name (if any)*:

3. Last Telephone Number*:

4. Last Address*:

City                                                              State      ZIP Code

5. The Insured's Date of Birth:

MM        DD        YYYY

6. The Insured's Date of Death:

MM        DD        YYYY

7. The Insured's Social Security Number*:

**OTHER INSURED [Applicable to survivorship policies only. Please provide the name of the second now-deceased individual who was insured by the Class Policy here]:**

1. Name of Second Insured (First/Middle Initial/Last):

First Name                                        MI        Last Name

2. Alias, Former or Maiden Name (if any)*:

3. Last Telephone Number*:

4. Last Address*:

City                                                              State      ZIP Code

_____
* This information is to be provided to the extent you have it.

5.  The Other Insured's Date of Birth:

☐☐ – ☐☐ – ☐☐☐☐
MM        DD          YYYY

6.  Other Named Insured's Date of Death:

☐☐ – ☐☐ – ☐☐☐☐
MM        DD          YYYY

7.  The Other Named Insured's Social Security Number*:

☐☐☐ – ☐☐ – ☐☐☐☐

**POLICYOWNER INFORMATION: [The Policyowner is the individual who owned the Class Policy when it was in force. Information on the insured is requested above. Please provide all available information].**

1.  Was the Policyowner Also the Insured?                    ☐ Yes    ☐ No

2.  Is the Policyowner Also the Claimant?                     ☐ Yes    ☐ No

3.  Name of Policyowner (First/Middle Initial/Last):

First Name                                                    MI      Last Name

4.  Any Change of His or Her Name in the Last Five Years? If yes, provide former name*:

5.  Telephone Number*:

6.  Address*:

City                                                         State    ZIP Code

**OTHER POLICYOWNER INFORMATION (if more than one Policyowner):**

1.  Is the Other Policyowner Also an Insured?                 ☐ Yes    ☐ No

2.  Is the Other Policyowner Also a Claimant?                 ☐ Yes    ☐ No

3.  Name of Other Policyowner (First/Middle Initial/Last):

First Name                                                    MI      Last Name

4.  Any Change of His or Her Name in the Last Five Years? If yes, provide former name*:

5.  Telephone Number*:

6.  Address*:

City                                                         State    ZIP Code

_____
* This information is to be provided to the extent you have it.

**CLAIMANT'S CERTIFICATIONS, ATTESTATIONS, AND WARRANTIES**

Check the box that applies to you:

☐   I am the sole Policyowner of the Class Policy at the time of final lapse;

☐   I am an authorized representative of the sole Policyowner of the Class Policy at the time of final lapse (e.g., the Administrator or Executor of the Estate of an insured Policyowner);

☐   I am one of two or more Policyowners of a Class Policy at the time of final lapse;

☐   I am an authorized representative of one of two or more Policyowners of the Class Policy at the time of final lapse (e.g., the Administrator or Executor of the Estate);

☐   I am the sole beneficiary of the Class Policy at the time of final lapse and the sole Policyowner is deceased;

☐   I am one of two or more beneficiaries of the Class Policy at the time of final lapse and the sole Policyowner is deceased; or

☐   I am an authorized representative of a beneficiary or beneficiaries of the Class Policy at the time of final lapse and the sole Policyowner is deceased.

Complete one of the below sections if it applies to you:

<u>If one of two or more Policyowners:</u>

☐   I (we) have authority to act on the Class Policy by consent from any/all individuals or entities who were Policyowners at the time of final lapse;

[OR]

☐   I (we) am (are) one of (part of) two or more Policyowners and have proof that other Policyowner(s) is (are) deceased or cannot be located.

<u>If an authorized representative of a Policyowner Estate:</u>

☐   By making this Claim as an authorized representative, I (we) agree to assume all obligations and responsibility for distribution of any Settlement Payment pursuant to law.

<u>If you are one of two or more living Beneficiaries:</u>

☐   I (we) have authority to act on the Class Policy by consent from any/all other individuals or entities who were Beneficiaries at the time of final lapse;

[OR]

☐   I (we) have proof that other Beneficiary(ies) is (are) deceased or cannot be located.

AND:

☐   I (we) agree to assume all obligations and responsibility for distribution of any Settlement Payment pursuant to law, including (where relevant) any other beneficiaries on the Class Policy.

## SUPPORTING DOCUMENTATION ESTABLISHING RIGHT TO CLAIM

### Proof of Claimant's Identity

The Claims Administrator will cross-reference the proof of identity you provide against Company Records to verify that you are the Policyowner of the Class Policy or otherwise have an interest in the policy and are entitled to collect a Settlement Payment.

As such, you must provide the following information with your Claim:

Proof of your identity to establish interest in the Class Policy. [Proof of identity may include: a copy of a current valid passport, naturalization certificate, driver's license, military ID card, or other current government-issued identification.]

If you are a Policyowner on a Class Policy and have changed your name such that it no longer matches the name of the Policyowner listed on the Class Policy, you must also provide a certified copy of the applicable name change document, such as a marriage certificate, divorce decree, or court order.

If you are an authorized representative of a Policyowner or beneficiary, such as the Executor, Administrator, or other person with legal authority to act on another's behalf, you must provide a copy of the legal document(s) conferring on you the authority to act on behalf of the Policyowner or beneficiary. Acceptable documents include (for example) copies of executed trust agreements, wills, guardianship papers, court orders, or power of attorney forms.

If you are one of multiple persons or entities with an ownership interest or right in a Class Policy, you must provide either: (i) notarized copies of signatures granting you permission to obtain the Settlement Payment; or (ii) proof that other Policyowner(s) or beneficiaries are deceased or cannot be located (in accordance with the proof of death requirements set forth below). In any event, **you must agree to assume all responsibilities and liabilities associated with distribution of the Settlement Payment under law, including making any payments that may be owed to others, as set forth in further detail in the Attestations and Warranties section of Claim Form.**

### Proof of Insured(s) Death

You must also provide proof of the death of all persons insured under the Class Policy. Proof of death of an insured must be in the form of a certified copy of the insured's death certificate (electronic and photocopies are permitted). This can be secured from the Bureau of Vital Statistics or Department of Health for the city, county, or state in which the death occurred.

If the death occurred outside the United States, proof of death can be either in the form of a certified copy of the public record of death from that country, or a report of death by a United States consul or agent of the State Department bearing the official seal.

If there have been any changes to the name of the insured such that the name listed on the death certificate is not identical to that on the Class Policy, you must provide a certified copy of the applicable name change document, such as a marriage certificate, divorce decree, or court order. The Claims Administrator will cross-reference the proof of death you provide against Company Records and public records to verify that the decedent is the Class Policy's insured.

### Evidence of Other Insurance

If, at any time after default of the Class Policy, any other life insurance policy was purchased or obtained on the life of the insured on the Class Policy, you must provide evidence of that insurance, including its face amount, the period of time the policy was in force, and the name of the issuing company. If a death benefit has been claimed or paid by any insurer, you must provide evidence of that claim and/or payment.

IMPORTANT: Documents submitted to the Claims Administrator in support of your Claim will not be returned.

If the Claim Form is incomplete or missing supporting documentation, the Claims Administrator will notify you in writing at the address provided on the Claim Form. The notification will set forth the deficiencies in the submitted Claim Form, and will provide an opportunity for you to cure those deficiencies within ten (10) business days from the date of the notice.

If you fail to properly complete the Claim Form and provide the necessary supporting documentation, the Claims Administrator will not be required to determine whether you are an Authorized Claimant and no Settlement Payment will be made.

**ATTESTATIONS AND WARRANTIES:**
I (we) attest and warrant each of the following statements, and so reflect with my (our) initials and signature below.

**IF ANY OF THESE STATEMENTS ARE NOT TRUE AS TO YOU, DO NOT INITIAL THE STATEMENT.**
Do not make any changes to the form.

I (we) am or stand in the shoes of the Policyowner of the Class Policy and/or was (were) a designated beneficiary of the Class Policy at time of final lapse and am (are) entitled to collect a Settlement Payment. **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) assume all responsibilities and liabilities associated with distribution of the Settlement Payment under law, including making any payments that may be owed to others. **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) acknowledge that all persons claiming an interest or right in the Class Policy(ies) must act jointly in exercising any right such as making this Claim (or any right to exclude him or herself from the Class or to object to the Settlement). **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) understand that the Claims Administrator is the sole determiner of whether I (we) am (are) (an) Authorized Claimant(s). **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) attest that I (we) have disclosed on this Claim Form any life insurance purchased or obtained on the life of the insured on the Class Policy following default, and have disclosed any death benefit claimed or received. **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) understand that there is no recourse to the Court or any other regulatory or judicial body for any determination made by the Claims Administrator pursuant to the Settlement Agreement. **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) understand that the Claims Administrator will determine the Final Score for my (our) Claim and that I (we) will only have a limited appeal to the Special Master upon notification that I (we) qualify. If I (we) have the right to appeal the Final Score to the Special Master, I (we) will be responsible for paying the $1,000 cost of appeal. **[Claimant(s) initials]**

|  |  |
|--|--|

I (we) understand that any payment is a Settlement Payment and is not a death benefit payment (or any other type of payment) under the terms of the Class Policy. **[Claimant(s) initials]**

|  |  |
|--|--|

By signing this Claim Form, I (we) swear to the truth of the statements contained herein and the genuineness of the information provided in the submission of this Claim, subject to penalties of perjury under the laws of the United States of America. I (we) understand that the making of false statements may result in the rejection of this Claim; it may further subject me (us) to civil liability or criminal prosecution.

I (we) hereby acknowledge that, pursuant to the terms set forth in the Settlement, I (we) am (are) bound by all provisions of the Settlement and all orders of the Court including without limitation the Release and Covenant Not to Sue.

I (we) acknowledge that the decision to participate in the Settlement was mine (ours).  It was not made based upon advice from Prudential or anyone acting on its behalf, or at the direction or counsel of any Party.

**Claimant(s) Signature(s):**

Date: MM – DD – YYYY

**Claimant(s) Signature(s):**

Date: MM – DD – YYYY

## AUTHORIZATION TO RELEASE INFORMATION

By signing below, I (we) authorize any insurance company or producer and the Medical Information Bureau, Inc. ("MIB"), to give information about me (us) to the Claims Administrator, Prudential, and/or its authorized agents to determine information related to my Claim for Settlement relief.

I (we) further acknowledge and agree that Defendants will be providing Prudential Records, including Class Policy records, for each Settlement Class Member and each insured on a Class Policy to the Claims Administrator. I (we) acknowledge and agree that the Prudential Records are likely to include personal information, and may include Social Security numbers, individually identifiable health information, policy information, and financial information, among other things. I (we) request that the Claims Administrator review the Prudential Records in order to adjudicate my (our) Claim(s). I (we) understand that the Settlement provides that all Prudential Records held by the Claims Administrator shall be confidential and shall not be subject to publication or disclosure by the Claims Administrator. I (we) understand that no person other than the Parties, their attorneys (including their consultants and experts who are bound by a Protective Order in the Action), the Claims Administrator, the Special Master, and the Court shall be permitted to obtain or review any Claim Form, or any decision of the Claims Administrator with respect to accepting or rejecting any Claim, except as provided for in the Settlement Agreement or upon Court Order for good cause shown.

**Claimant(s) Signature(s):**

Date: MM – DD – YYYY

**Claimant(s) Signature(s):**

Date: MM – DD – YYYY

010-CA4744
Z58110 v.04

## **REMINDER CHECKLIST**

1. Sign the above Release and Certification. If this Claim Form is being made by more than one Claimant, then all Claimants must sign.

2. Review your responses to the Claim Form for accuracy.

3. Be sure you have attached a copy of the insured's death certificate(s) and any other supporting documentation.

4. Keep copies of the completed Claim Form for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, or email if you provided an email address, within 10 days. Your Claim is not deemed filed until you receive an acknowledgement. **(If you do not receive an acknowledgement within 10 days, please contact the Claims Administrator as provided below.)**

6. If your address changes, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address. If you change your name, inform the Claims Administrator. If any of your responses to the Certifications or Attestations you provided change, you must inform the Claims Administrator.

7. If you have any questions or concerns regarding your Claim, please contact the Claims Administrator at the address below, by email at info@LapsedPolicySettlement.com, by toll-free phone at **1-855-915-0909**, or you may visit www.LapsedPolicySettlement.com. DO NOT call Defendants or their counsel with questions regarding your Claim.

THIS CLAIM FORM MUST EITHER BE ELECTRONICALLY SUBMITTED ON THE CLAIMS ADMINISTRATION WEBSITE AT www.LapsedPolicySettlement.com **BY 11:59 P.M. PST on March 31, 2020**; OR BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN March 31, 2020**, ADDRESSED AS FOLLOWS:

<div align="center">

Prudential Class Settlement
c/o Claims Administrator
P.O. Box 6869
Portland, OR 97228-6869

</div>

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before **March 31, 2020** is indicated on the envelope and it is mailed First-Class, and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx                    **Date:** November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                              Court Reporter:
Rita Sanchez                               Not Reported

Attorneys Present for Plaintiff:           Attorneys Present for Defendant:
None Present                               None Present

**Proceedings (In Chambers):** ORDER RE: PLAINTIFF'S MOTION FOR
PRELIMINARY CERTIFICATION OF
SETTLEMENT CLASS, APPOINTMENT OF
CLASS REPRESENTATIVE AND CLASS
COUNSEL, PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, AND DIRECTION
OF NOTICE UNDER FED. R. CIV. P. 23(e) AND (g)
[74]

Before the Court is Plaintiff Richard Behfarin's Motion for Preliminary
Certification of Settlement Class, Appointment of Class Representative and Class
Counsel, Preliminary Approval of Class Action Settlement, and Direction of Notice
(the "Motion"), filed on October 11, 2019 (Docket No. 74). On October 28, 2019,
Defendants Pruco Life Insurance Company ("Pruco"), Pruco Life Insurance Company
of New Jersey ("Pruco NJ"), and The Prudential Insurance Company of America
("PICA") filed a Notice of Non-Opposition. (Docket No. 83).

The Court has read and considered the papers filed on the Motion, and held a
hearing on November 18, 2019.

For the reasons discussed below, the Motion is **GRANTED**. Preliminarily, the
proposed settlement is procedurally and substantively fair with one exception; the
Court has not yet determined whether the Fee Award and the Incentive Award are
substantively fair. The proposed class also appears to meet the requirements of Federal
Rules of Civil Procedure 23(a) and (b)(3). The proposed notices and dissemination

---

**CIVIL MINUTES—GENERAL**                                         1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                  Date:  November 26, 2019
Title:       Richard Behfarin v. Pruco Life Insurance Company

procedure appear effective, and meet the requirements of Federal Rule of Civil
Procedure 23(c).

## I.    **BACKGROUND**

### A.    **Factual and Procedural Background**

On July 18, 2017, Plaintiff filed a class action complaint against Pruco.  (Docket
No. 1).  After Plaintiff filed the Motion, he filed a First Amended Complaint ("FAC")
on October 17, 2019.  (Docket No. 77).  The FAC names two additional Defendants to
Pruco: Pruco NJ, and PICA.  (*See generally* FAC).  Plaintiff also alleges that Pruco is a
wholly-owned subsidiary of PICA, and that Pruco NJ is a wholly-owned subsidiary of
Pruco.  (FAC ¶ 12).

The FAC contains the following allegations:

Defendants impose contractually unauthorized charges on the owners of
universal life or variable universal life insurance policies when they default on their
premium payments or lapse their policies.  (FAC at 2).  Defendants' universal life
policies require that the policy owner pay an amount of premium estimated to keep the
contract in force for three months to cure deficiency.  (*Id.* ¶ 3).  However, without
contractual authorization, Defendants require policy owners who have deficiencies to
pay three months' worth of the maximum allowable premium under the policy from
the date of default, plus lapse and reinstatement payment loads not described in the
policy.  (*Id.*).

Moreover, for policy owners who do not cure a deficiency and suffer a lapse as a
result, Defendants' universal life policies require payment of the amount required to
bring the cash value to zero on the date of default, plus any deductions from the
contract fund that occurred during the grace period, plus sufficient premium after
administrative charges to cover three months of deductions from the contract fund after
reinstatement to reinstate the policy.  (*Id.*).  The policy does not state the rate of those
contract fund deductions, or premium payments.  (*Id.*).  Without contractual
authorization, Defendants impose on policy owners who wish to reinstate an obligation

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019
Title:      Richard Behfarin v. Pruco Life Insurance Company

to pay three months' worth of the maximum allowable contract fund deductions under
the policy from the date of reinstatement, plus reinstatement payment loads not
described in the policy.  (*Id.*).  In addition, Defendants require insureds to meet
underwriting requirements for reinstatement that are more stringent than those
described in their policies.  (*Id.*).

When insureds send in a premium sufficient to cover three months of insurance
costs at the rates Defendants have actually been charging rather than the maximum
rates allowed by contract, Defendants return that premium, without any contractual
authorization to do so.  (*Id.*).  This return of premium manufactures a lapse in the
policy, which then enables Defendants to re-underwrite the policy.  (*Id.*).  By forcing
insureds out of coverage when they can no longer qualify for their original rate
classification, Defendants then avoid the risk they have been paid to undertake.  (*Id.*).

Behfarin brings the action on behalf of himself and a nationwide class, which is
defined as follows: "All persons in the United States and its territories who owned
universal life insurance policies issued by Defendants and who, within four years prior
to the commencement of this litigation, either: (a) suffered deficiencies, defaults or
lapses of their policies and paid either maximum cost of insurance charges or lapse and
reinstatement payment loads, or both, to cure that deficiency or default or to reinstate
the lapsed policy; or (b) suffered the lapse of their policies because they were unable to
pay or chose not to pay maximum cost of insurance charges or lapse and reinstatement
payment loads, or both, to cure that deficiency or default or to reinstate the lapsed
policy; (c) suffered a lapse of their policies and paid either maximum cost of insurance
charges or reinstatement payment loads, or both, to reinstate their policies; (d) suffered
a lapse of their policies and could not or did not reinstate because they were unable to
pay or chose not to pay maximum cost of insurance charges or reinstatement payment
loads, or both; or (e) suffered a lapse of their policies and could not reinstate because
they were no longer qualified for the same risk classification but were still insurable
for universal life at some risk classification."  (*Id.* ¶ 25).

Plaintiff's Complaint alleges five claims for relief: (1) breach of contract; (2)
breach of the implied covenant of good faith and fair dealing; (3) violation of Business

---

**CIVIL MINUTES—GENERAL**                                              3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019
Title:      Richard Behfarin v. Pruco Life Insurance Company

and Professions Code § 17200, *et seq.*, also known as the California Unfair
Competition Law ("UCL"); (4) declaratory relief under 28 U.S.C. § 2201(a); and
(5) injunctive relief.  (*Id.* ¶¶ 32-75).

## B.      Discovery and Mediation

The parties conducted extensive negotiations spanning nearly four months with
the Honorable William J. Cahill, a highly regarded mediator associated with JAMS
who has handled multiple other class action mediations.  (Motion at 5).

Plaintiff conducted formal discovery and investigation of the claims, defenses,
and underlying events and transactions involved in the action.  (*Id.* at 6; Declaration of
Steven C. Shuman ("Shuman Decl.") ¶¶ 17-22, 31 (Docket No. 74-1)).  The
investigation included discovery responses and document production, consultation with
life insurance experts, and the deposition of Behfarin.  (Shuman Decl. ¶¶ 17-22, 31).

On January 25, 2019, the parties participated in a full-day mediation session
before Judge Cahill.  (Motion at 6).  The parties attended a second full-day session on
February 20, 2019 and engaged in conference calls with Judge Cahill on March 1,
2019 and April 26, 2019.  (*Id.*).  The parties conducted a third full-day mediation
session at JAMS on April 30, 2019, reached an agreement in principle, and finalized a
written term sheet with Judge Cahill's guidance.  (*Id.*).  Since then, the parties
continued negotiation over matters not specified in the April 30, 2019 Term Sheet.
(Motion at 7).

## C.      The Settlement

The Stipulation of Settlement (the "Stipulation" or "Settlement Agreement") is
attached to the Declaration of Steven C. Shuman.  (Shuman Decl., Ex. 2).  The
Stipulation contains the following key class definition, relief, notice, and release
provisions:

- "Settlement Class Members" are defined as: "all Policyowners of Class Policies
  and, where all Policyowners and insureds of a Class Policy are also deceased,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 17-5290-MWF-FFMx**                    **Date:  November 26, 2019**
**Title:**       Richard Behfarin v. Pruco Life Insurance Company

then also any designated beneficiary(ies) of that Class Policy at time of final lapse."  (Stipulation §§ II.zz, V.D.);

- "Class Policy" or "Class Policies" are defined as "one or more individual universal life or variable universal life insurance policies issued by a Defendant, as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed between July 18, 2013 and the date of Preliminary Approval, or which had default cured or was reinstated on or after July 18, 2013 and remains in force on the date of Preliminary Approval."  (Stipulation §§ II.m and V.D.);

- "Guaranteed Rate(s)" is defined as "with respect to a Class Policy, the monthly cost of insurance rate applicable to the particular policy and insured that is guaranteed by the policy contract as a rate that cannot be exceeded when determining the Current Rate."  (Stipulation § II.cc).  "Guaranteed Charge(s)" is defined as "with respect to a Class Policy, the monthly cost of insurance that a Policyowner would be charged with respect to a particular policy and insured if calculated based on Guaranteed Rate(s), along with guaranteed maximum applicable charges including, but not limited to, sales loads and administrative fees."  (Stipulation § II.bb);

- "Class Period" is defined as "July 18, 2013 to and through the date of Preliminary Approval."  (Stipulation § II.l);

- The Stipulation divides the Settlement Class Member into three categories: (1) Lapsed/ Alive Population; (2) Lapsed/ Deceased Population; and (3) Current Policyholders.  The Stipulation provides for the following benefits for each category:

  o The "Lapsed/ Alive Population" refers to "Settlement Class Members associated with Class Policies that lapsed for a final time during the Class Period and have not been reinstated to date where there is at least one living insured." (Stipulation § II.ee);

---

**CIVIL MINUTES—GENERAL**                                              **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 17-5290-MWF-FFMx                    **Date:** November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

- ▪ "[Defendants] will offer Authorized Claimants who fall within Lapsed/Alive Population and who have not timely and validly excluded themselves from the Settlement, the opportunity to reinstate their Class Policy/ies, upon the same contract terms and face amount as existed at the time of final lapse, without underwriting, at Current Rates and Current Charges as of the date of reinstatement, but subject to both (a) the Gating Rules . . . and (b) Claimants' timely submission of a completed Claim Form . . ." (*Id.* § III.A.1.). The Stipulation defines the "Gating Rules," "Gating Process," and "Required Claimant Certifications" in Section III.A.2 and III.A.3 of the Stipulation. "The Gating Rules and Claim Form certifications are intended to cull out Class Members not affected or harmed by the practice sued upon. (Motion at 9);

- ▪ Claimants subject to the Gating Rules/ Exceptions in Section III.A.2, and Claimants who are unable to truthfully sign the requisite Claimant Certifications described in Section III.A.3, or any other Claimant who elects such relief shall be eligible for Basic Relief. (Stipulation § III.A.4). Basic Relief is $250. (*Id.* § II.d);

- ▪ "[I]f [Defendants'] existing records confirm that the Policyowner submitted a timely application for reinstatement pursuant to that policy's contract terms, the final lapse occurred during the Class Period but before February 25, 2019, and an application for reinstatement was submitted and not approved," Class Policies may be entitled to "Enhanced Relief." (Stipulation § III.B.1). Specifically, if the Settlement Class Member meets all the requirements, "at the beginning of the fourth and fifth year following the Reinstatement Date, [Defendants] will pay on the Policyowner's behalf and apply the policy the amount of premium (inclusive of all premium/tax loads) necessary to satisfy the cost of insurance for the policy, based on the then-Current Rates and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019
Title:     Richard Behfarin v. Pruco Life Insurance Company

Current Charges for that year." (*Id.* § III.B.2).  The criteria and
benefit of Enhanced Relief is detailed in Section III.B.2 of the
Stipulation;

o  The "Lapsed/ Deceased Population" refers to "Settlement Class Members
   associated with policies that lapsed for a final time during the Class
   Period and were not reinstated where the insured(s) are deceased."
   (Stipulation § II.ff);

   ▪  "[Defendants] will offer individualized relief to Authorized
      Claimants who fall within the Lapsed/Deceased Population, and
      who have not timely and validly excluded themselves from the
      Settlement."  (Stipulation § III.C.1).  "The individualized relief will
      be in the form of a monetary Settlement Payment . . ., the amount of
      which will be determined by a Claim Scoring Process."  (*Id.*).  "The
      Claim Scoring Process is based on an individual analysis and
      determination of each Claim according to Scoring Guidelines
      developed and agreed to by the Parties."  (*Id.*).  The Scoring
      Guidelines and related details are provided in Section III.C of the
      Stipulation;

o  The Current Policyowners will get the following benefit:

   ▪  "Defendants will maintain policies and procedures to ensure that,
      from the date of this Settlement Agreement going forward, with
      respect to universal life and variable universal life policies issued
      by a Defendant in the United States and that remain in force, in the
      absence of a contract term providing for a different or lower amount
      or a different calculation formula . . ., and in the absence of a state
      statutory or regulatory or administrative directive to the contrary,
      the amount requested to cure a default or to reinstate a policy will
      be calculated by reference to Current Rates and then-Current

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019
Title:      Richard Behfarin v. Pruco Life Insurance Company

Charges and not by reference to Guaranteed Rates.  (Stipulation §
III.D.1);

- Within 21 days after the date of entry of the Preliminary Approval Order,
  Defendants will provide to the Claims Administrator the names, addresses, and
  email addresses to the extent available in Defendants' records.  (Stipulation
  § VI.B);

- Within 28 days thereafter, the Claims Administrator shall send summary notice
  of the Settlement by U.S. Mail to all Settlement Class Members, and notice via
  e-mail with a link to the website to all Settlement Class Members with known
  email addresses.  (Stipulation §§ VI.E, VI.F);

- No later than 2 days prior to the date on which Direct Notice is to be mailed,
  notice shall be provided on a website at an available settlement URL which shall
  include the ability to file Claim Forms online.  (Stipulation § VI.G);

- "The obligations incurred pursuant to this Stipulation are in consideration of: (a)
  the full and final disposition of Action as against Defendants; and (b) the
  Releases provided" in Section IV of the Stipulation.  (Stipulation § IV.A).  The
  Released Claims "include all claims that have been, could have been, may be, or
  could be alleged or asserted in this Action regarding or concerning directly or
  indirectly any Class Policy, by Plaintiff, any Settlement Class Member, or any
  Releasing Party, against any of the Releasees."  (Stipulation § IV.B);

- Settlement Class Members may exclude themselves from the Class by sending a
  Request for Exclusion to the Claims Administrator by the Objection/Exclusion
  Deadline.  (Stipulation § VII.A);

- Defendants may unilaterally withdraw from and terminate the Settlement
  Agreement if five percent (5%) or more of Class Policies and/or the Settlement
  Class validly elect to exclude themselves from the Settlement.  (Stipulation
  § XI.D);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx**                **Date:  November 26, 2019**
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

- A Settlement Class Member who does not request exclusion may object to the fairness, reasonableness, or adequacy of the proposed Settlement by filing a written statement or objection.  (Stipulation § VII.D);

- Once the Settlement becomes final, Plaintiff and Settlement Class Members will release and discharge Defendants from any and all claims that have been, could have been, may be, or could be alleged or asserted in this action that directly or indirectly concern any Class Policy.  (Stipulation §§ IV.A.2, IV.B).

## II.    **PRELIMINARY APPROVAL OF SETTLEMENT**

        "Approval of a class action settlement requires a two-step process — a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).  The standard of review differs at each stage. At the preliminary approval stage, the Court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009).

        "[P]reliminary approval of a settlement has both a procedural and a substantive component."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Procedurally, the Ninth Circuit emphasizes that the parties should have engaged in an adversarial process to arrive at the settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted).  "A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Spann*, 314 F.R.D. at 324 (quoting *In re Heritage Bond Litig.*, 2005 WL 1594403, *9 (C.D. Cal. June 10, 2005)).

        Substantively, the Court should look to "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive

---

**CIVIL MINUTES—GENERAL**                                                              9

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 17-5290-MWF-FFMx** | **Date:  November 26, 2019** |
| Title:      Richard Behfarin v. Pruco Life Insurance Company | |

compensation of attorneys." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (quoting *West v. Circle K Stores, Inc.*, No. 04-cv-0438-WBS, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006)).

### A.    **Procedural Component**

The proposed settlement appears to be procedurally fair to Settlement Class Members.

Plaintiff's counsel have extensive experience working in the areas of business torts, insurance bad faith, life insurance matters that arose out of failure to pay death benefits and that arose out of contract breaches and torts, and other complex litigation. (*See* Shuman Decl. ¶¶ 67, 85).  Plaintiff's firm Engstrom, Lipscomb & Lack has also served as class counsel, lead or co-lead counsel, or steering committee member in more than 15 different mass and class actions in California, both in state and federal courts. (*Id*. ¶¶ 68-84).

The Court is familiar with the action and is confident that they were vigorously litigated on both sides.  The parties conducted formal discovery over the course of this action, including written discovery, document production, and deposition of Plaintiff. (Shuman Decl. ¶¶ 17-22).  Plaintiff also fully briefed a motion for class certification, which was pending when this Settlement was reached.  (Docket Nos. 50, 51).  Given the parties' vigorous and often contentious litigation of this case, the Court has no doubt that the settlement is "the product of an arms-length, non-collusive, negotiated resolution[.]"  *Rodriguez*, 563 F.3d at 965.

Additionally, the parties attended three full-day mediation sessions with Judge Cahill and the parties engaged in settlement negotiations over multiple months. (Shuman Decl. ¶¶ 34-36).  During the last session at JAMS on April 30, 2019, the parties reached an agreement in principle and were able to finalize a written term sheet with Judge Cahill's guidance.  (*Id.* ¶ 36).  The fact that the parties utilized an experienced mediator to reach the settlement agreement supports the notion that it was the product of an arms-length negotiation.  *See Alberto*, 252 F.R.D. at 666-67 (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019**
**Title:      Richard Behfarin v. Pruco Life Insurance Company**

litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (citing *Parker v. Foster*, No. 05-cv-0748-AWI, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006)); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007)).

The Court concludes that the proposed class is represented by experienced counsel who engaged in meaningful discovery and motion practice while pursuing arms-length settlement negotiations.  The procedural component of the inquiry is met.

### B.    Substantive Component

The proposed settlement also appears to be generally reasonable and fair to Settlement Class Members.

As discussed above, pursuant to the Stipulation, Defendants have agreed to compensate Settlement Class Members who have suffered the practice alleged in this action and change their practice going forward for Current Policyholders.  (Motion at 16).  The Settlement places those who are insured and still alive in exactly the position they would have been in had the challenged practice not occurred.  (*Id.*).  For those whose insureds are deceased, the Settlement will enable them to recover a portion of the death benefit as a Settlement recovery even though the policy was not in force.  (*Id.* at 16-17).  The Settlement also confers a benefit on current policyowners through Defendants' change in practice.  (*Id.* at 17).

Specifically, qualified claimants in the Lapsed/Alive population will get an opportunity to reinstate the Class Policy on the same terms that existed at the time of the final lapse.  (*Id.* at 9).  Qualified claimants in the Lapsed/Deceased population will receive an individualized monetary Settlement Payment calculated by a Claim Scoring Process administered by the Claims Administrator using Defendants' records and data.  (*Id.* at 10).  The Claims Administrator will determine the Claim Score on a scale of zero to three, which will then trigger application of either Basic Relief ($250) or a percentage of death benefit minus a percentage of premium that would have been paid to calculate the actual award, plus 3% interest from the date of death.  (*Id.*).  For the benefit of the all current and future universal and variable universal policyholders,

---

**CIVIL MINUTES—GENERAL                                              11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019**
**Title:      Richard Behfarin v. Pruco Life Insurance Company**

Defendants have also agreed to end the challenged business practices and ensure that
the amount billed to cure a default or to reinstate a policy will be calculated based on
current rates (or less), and not Guaranteed Rates.  (*Id.* at 11).

As Plaintiff contends, there are certain risks should he continue to pursue his
action.  (Motion at 17-18).  First, Plaintiff asserts that there was a risk posed by the
inevitable battle of experts, with the parties advancing competing insurance practices
and actuarial analyses.  (Shuman Decl. ¶ 39).  Plaintiff also asserts that there was a risk
that the class would not be certified for lack of uniformity.  (Motion at 17).  For
example, policy holders lapsed their policies for different reasons, not all of which
trace back to the conduct alleged.  (*Id.* at 18).  Some policyholders had no-lapse
guarantees, which put them on a different footing than others.  (*Id.*).  Moreover,
Defendants did not always bill for curing at Guaranteed Rates, and not all
policyowners requested or received reinstatement notices.  (*Id.*).  Plaintiff asserts that
the Settlement structure accounts for causation issues while awarding some
compensation to all Settlement Class Members, even where lapse did not result from
conduct alleged.  (*Id.*).

The Court determines that the proposed settlement provides a reasonable level of
compensation to those affected by Defendants' challenged practices.  *See, e.g.*, *Nat'l
Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.
2004) (emphasizing the requirement that courts "consider the vagaries of litigation and
compare the significance of immediate recovery by way of the compromise to the mere
possibility of relief in the future, after protracted and expensive litigation") (citation
omitted).

## 1.    Fee Award and Incentive Award

In the Ninth Circuit, there are two primary methods to calculate attorneys' fees:
the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental
Antitrust Litig.*, 779 F.3d at 949 (citation omitted).

"The lodestar method requires 'multiplying the number of hours the prevailing
party reasonably expended on the litigation (as supported by adequate documentation)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx     **Date:** November 26, 2019
**Title:**   Richard Behfarin v. Pruco Life Insurance Company

by a reasonable hourly rate for the region and for the experience of the lawyer.'" *Id.*
(citation omitted). "Under the percentage-of-recovery method, the attorneys' fees
equal some percentage of the common settlement fund; in this circuit, the benchmark
percentage is 25%." *Id.* (citation omitted). However, the "benchmark percentage
should be adjusted, or replaced by a lodestar calculation, when special circumstances
indicate that the percentage recovery would be either too small or too large in light of
the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz.
Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

"The Ninth Circuit has identified a number of factors that may be relevant in
determining if the award is reasonable: (1) the results achieved; (2) the risks of
litigation; (3) the skill required and the quality of work; (4) the contingent nature of the
fee; (5) the burdens carried by class counsel; and (6) the awards made in similar
cases." *Martin v. Ameripride Services, Inc.*, No. 08-cv-440–MMA, 2011 WL
2313604, at *8 (S.D. Cal. June 9, 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d
1043, 1048–50 (9th Cir. 2002)). The choice of "the benchmark or any other rate must
be supported by findings that take into account all of the circumstances of the case."
*Vizcaino*, 290 F.3d at 1048.

The Stipulation provides that Class Counsel may apply to the Court for
attorneys' fees up to $3.5 million and costs and expenses up to $500,000 (the "Fee
Award") to be paid by Defendants. (Stipulation § IX.A). The Stipulation also
provides that Class Counsel may apply for an Incentive Award to be given to the Class
Representative for an amount up to $50,000. (*Id.* § IX.D).

The Court does not determine at this stage whether the Fee Award or the
Incentive Award is reasonable. The parties have not provided sufficient information to
determine whether an attorneys' fee award of $3,500,000 would be reasonable under
either the lodestar method or the percentage-of-recovery method. Moreover, while
named Plaintiff Behfarin appears to have been closely involved in the litigation,
Plaintiff has not demonstrated why an incentive award of $50,000 is reasonable.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-5290-MWF-FFMx                **Date:**  November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

However, Plaintiff asserts that he is not seeking approval of the amount of the awards, but rather, only the form of notice informing Settlement Class Members of the proposed amount of Defendants' payment.  (Motion at 13).  Moreover, the Stipulation states that "[t]he procedures for, and the allowance or disallowance by the Court of, any Fee Award or Incentive Award are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation."  (Stipulation § IX.B).  Accordingly, the Court only determines at this stage that the form of notice is reasonable, but does not determine whether the amount requested under the Fee Award or the Incentive Award is reasonable.

The Court finds the Agreement to be procedurally fair.  The Court also finds the Agreement – excluding the provisions regarding the Fee Award and the Incentive Award – to be substantively fair.  The Motion is therefore **GRANTED** insofar as the Agreement is preliminarily **APPROVED**.

## III.    CLASS CERTIFICATION

Plaintiffs seeks certification of a class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3).  A court may certify a class for settlement purposes only.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942.  In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained the differences between approving a class for settlement and for litigation purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.  But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019
Title:       Richard Behfarin v. Pruco Life Insurance Company

is litigated, to adjust the class, informed by the proceedings as they
unfold.

*Id.* at 620.

As discussed above, the proposed Settlement Class is defined in the Stipulation
as: "all Policyowners of Class Policies and, where all Policyowners and insureds of a
Class Policy are also deceased, then also any designated beneficiary(ies) of that Class
Policy at time of final lapse."  (Stipulation §§ II.zz, V.D.)

Federal Rule of Civil Procedure 23(a) requires the putative class to meet four
threshold requirements: numerosity, commonality, typicality, and adequacy of
representation.  *Id.*; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir.
2013).  In addition, the proposed class must satisfy Rule 23(b)(3), which requires that
"questions of law or fact common to class members predominate over any questions
affecting only individual members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3).  Considering these requirements, the Court concludes that class certification
is appropriate.

###    A.    Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members
is impracticable . . . ."  *Id.*  The Settlement Class encompasses approximately 32,585
lapsed Policies in addition to Current Policyholders.  (Motion at 20-21).  This is more
than enough to satisfy Rule 23(a)(1)'s numerosity requirement.

###    B.    Commonality

Rule 23(a)(2) requires that the case present "questions of law or fact common to
the class."  *Id.*  The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564
U.S. 338 (2011), clarified that to demonstrate commonality, the putative class must
show that their claims "depend upon a common contention . . . that it is capable of
classwide resolution — which means that determination of its truth or falsity will

---

**CIVIL MINUTES—GENERAL**                                    **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-5290-MWF-FFMx                    **Date:**  November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

resolve an issue that is central to the validity of each one of the claims in one stroke."
*Id.* at 350.  That requirement is met here, as (if this case were to proceed to trial) each
member of the Settlement Class would seek resolution of the same legal and factual
issues: whether Defendants breached the terms of their contract and violated other laws
by billing amounts in excess of the current cost of insurance and load rates for policy
holders to cure or reinstate their policies.  (Motion at 21).  The commonality
requirement is satisfied.

### C.      <u>Typicality</u>

Rule 23(a)(3) requires the putative class to show that "the claims or defenses of
the representative parties are typical of the claims or defenses of the class."  *Id.*  The
claims of the representative parties need not be identical to those of the other putative
class members; "[i]t is enough if their situations share a 'common issue of law or fact,'
and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for
relief.'"  *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171,
1175 (9th Cir. 1990) (internal citations omitted).  Here, the named Plaintiff's claims
are premised on exactly the same practice as those of the absent settlement class
members:  Defendants' required payment from Plaintiff based on guaranteed cost of
insurance and load rates, instead of current rates, at the time he tried to cure the default
and when he tried to reinstate his policy.  (Motion at 22).  The typicality requirement is
satisfied.

### D.      <u>Adequacy</u>

Finally, Rule 23(a)(4) requires the representative parties to "fairly and
adequately protect the interests of the class."  *Id.*  "In making this determination, courts
must consider two questions: '(1) do the named plaintiffs and their counsel have any
conflicts of interest with other class members and (2) will the named plaintiffs and
their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law
Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon v.
Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Additionally, "the honesty and
credibility of a class representative is a relevant consideration when performing the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx                **Date:** November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation omitted).

As to the first prong, the Court perceives no obvious conflicts between Plaintiff and his counsel on the one hand and the absent Settlement Class Members on the other. As to the second prong, as discussed above, Plaintiff and his counsel have vigorously prosecuted this action, Plaintiff's counsel have substantial experience litigating similar types of class actions, and there is no reason to believe that Plaintiff and his counsel would not vigorously pursue this action on behalf of the Settlement Class. The adequacy requirement is satisfied.

The requirements imposed by Rule 23(a) are thus satisfied. The Court next considers whether the additional requirements of Rule 23(b)(3) are met.

### E.      **Predominance**

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). That is, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

Here, all claims turn on Defendants' determining the payment owed to cure or reinstate the policies using guaranteed instead of current cost of insurance and load rates. (Motion at 23). Therefore, common issues predominate regarding Plaintiff's claims. *See In re Med. Capital Sec. Litig.*, No. SACV-09-1048 DOC, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (collecting cases and concluding that "[c]ourts routinely certify class actions involving breaches of form contracts."). While the amount of payments to individual Settlement Class Members may differ, such a difference does not defeat class action treatment. *See Yokoyama v. Midland Nat. Life*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 17-5290-MWF-FFMx** | **Date:  November 26, 2019** |
| Title:    Richard Behfarin v. Pruco Life Insurance Company | |

*Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (noting that the "amount of damages is invariably an individual question and does not defeat class action treatment"). Accordingly, the predominance requirement is also satisfied.

### F.    **Superiority**

Rule 23(b)(3)'s superiority requirement is also met.  Rule 23(b)(3) sets out four factors that together indicate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1779 at 174 (3d ed. 2005)).

When deciding whether to certify a settlement class, the fourth superiority factor need not be considered.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . .").  The three relevant factors favor certifying the proposed settlement class:

*First*, individual Settlement Class Members would likely have little interest in prosecuting separate actions.  Each putative class member's claim is likely too small to justify the cost or risk of litigation.  Thus, a class action is a more efficient means for each individual class member to pursue his or her claims.  *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx**                    **Date:  November 26, 2019**
Title:      Richard Behfarin v. Pruco Life Insurance Company

an individual basis, this factor weighs in favor of class certification.").  Moreover, because the claims of all putative class members are virtually identical, there is no reason that any given class member should need to pursue his or her claims individually.  *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) ("Here, no one member of the Class has an interest in controlling the prosecution of the action because the claims of all members of the Class are virtually identical.").

    ***Second***, there does not appear to be any other litigation currently or previously pending concerning similar claims to those at issue in this action.

    ***Third***, Plaintiff, as resident of California who was charged guaranteed rates when he attempted to cure his policy, has alleged that Defendants' practices violate California law.  Therefore, this District Court is a proper forum for resolution of the action.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 495 (C.D. Cal. 2006) ("[B]ecause plaintiffs have alleged an overarching fraudulent scheme and include a California sub-class, it is desirable to consolidate the claims in this forum.").

    Accordingly, the Motion is **GRANTED** insofar as the proposed class is **CERTIFIED** for purposes of settlement.

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

    After the Court certifies a class under Rule 23(b)(3), it must direct to class members the best notice practicable under the circumstances.  Fed. R. Civ. P. 23(c)(2)(B).

    The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance though an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx                   Date:  November 26, 2019**
**Title:       Richard Behfarin v. Pruco Life Insurance Company**

(vii) the binding effect of a class judgment on members under Rule
23(c)(3).

*Id.*  Class notice must be "reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an opportunity to
present their objections."  *Mullane v. Central Hanover Trust*, 339 U.S. 306, 314
(1950).

The Agreement sets forth a highly detailed notice regime involving, in short, the
Settlement Administrator acquiring the mailing addresses and email addresses for the
Settlement Class Members from Defendants' records and then disseminating a Class
Notice via U.S. Mail and e-mail.  (Stipulation § VI).  The Class Notice will explain the
Settlement, give directions or a link to a website notice that provides all the
information needed for Class Members to make informed decisions, and provide an
avenue for Settlement Class Members to exclude themselves from the Class.  (*Id.*
§§ VI, VII.A).  The Court has reviewed the contemplated notice regime and the form
and substance of the proposed notices, and concludes that the proposed class notice
satisfies the requirements set forth in Rule 23(c)(2)(B).

Accordingly, the proposed notices and plan of dissemination are **APPROVED**.

## V.    APPOINTMENT OF COUNSEL FOR THE SETTLEMENT CLASS

Plaintiff also asks that the Court appoint Engstrom, Lipscomb & Lack and
Robert B. Mobasseri P.C. as Class Counsel.  (Motion at 24).

In appointing class counsel, the court must consider: "(i) the work counsel has
done in identifying or investigating potential claims in the action; (ii) counsel's
experience in handling class actions, other complex litigation, and the types of claims
asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx**                     **Date:  November 26, 2019**
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

resources that counsel will commit to representing the class."  Fed. R. Civ. P.
23(g)(1)(A).

Here, the proposed Class Counsel have experience handling class actions, have
shown knowledge of the legal issues relating to Defendants' conduct, have retained
experts and consultants to address relevant issues, and negotiated a favorable
settlement.  *See* Shuman Decl. ¶¶ 41-57, 67-86.

Accordingly, Plaintiff's request to appoint Engstrom, Lipscomb & Lack and
Robert B. Mobasseri P.C. as Class Counsel is **APPROVED**.

## VI.  **CONCLUSION**

For the reasons discussed above, the Motion is **GRANTED** insofar as the
proposed settlement agreement is preliminarily **APPROVED**; the class is provisionally
**CERTIFIED** for purposes of settlement only; the notices and plan of dissemination
are **APPROVED**; and the appointment of Class Counsel is **APPROVED**.

The Proposed Order Preliminarily Approving Class Action Settlement Class,
Approving Proposed Notice, and Scheduling Final Approval Hearing (Docket No. 74-
3) is adopted and incorporated into this Order, as Exhibit A.

The Final Approval Hearing shall be scheduled for **April 20, 2020 at 10 a.m.**

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 17-5290-MWF-FFMx**                **Date:  November 26, 2019**
Title:      Richard Behfarin v. Pruco Life Insurance Company

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx         **Date:** November 26, 2019

**Title:**    Richard Behfarin v. Pruco Life Insurance Company

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| RICHARD BEHFARIN, individually and on behalf of a class of similarly situated individuals, <br><br>         Plaintiff, <br><br>    v. <br><br> PRUCO LIFE INSURANCE COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY <br><br>         Defendants | No. 2:17-cv-05290-MWF-FFM <br><br> **[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CERTIFYING SETTLEMENT CLASS, APPROVING PROPOSED NOTICE, AND SCHEDULING FINAL APPROVAL HEARING** |

Upon review and consideration of Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Docket No. 74), the Stipulation of Settlement and Release and its exhibits ("Settlement Agreement") (Dkt. No. 74-1, Ex. 2), which have been filed with the Court, and the presentations of counsel, it is hereby ORDERED and ADJUDGED as follows:

     1.      The parties have agreed to settle and dismiss with prejudice *Richard Behfarin, et al. v. Pruco Life Insurance Company, The Prudential Insurance Company*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019**
**Title:       Richard Behfarin v. Pruco Life Insurance Company**

*of America, Pruco Life Insurance Company of New Jersey*, Case No. 2:17-cv-05290-

MWF-FFM (C.D. California) (the "Action"), upon the terms and conditions set forth in

the Settlement Agreement.  The definitions in the Settlement Agreement are hereby

incorporated as though fully set forth in this Order.  This Court has jurisdiction over

the subject matter and all parties to this Action, including the proposed Settlement

Class, pursuant to 28 U.S.C. § 1332(d)(2).

2.       This Court finds that, subject to the Final Approval Hearing, the

Settlement Agreement, including all exhibits thereto, is preliminarily approved as fair,

reasonable and adequate, and in the best interests of the Settlement Class.  The Court

further finds that the Settlement Agreement substantially fulfills the purposes and

objectives of the class action, and provides substantial relief to the Settlement Class

without the risks, burdens, costs or delays associated with continued litigation, trial

and/or appeal.  The Settlement is not a finding or admission of liability by the

Defendants or any other person, nor a finding of the validity of any claims asserted in

the Action or of any wrongdoing or any violation of law.

3.       The Plaintiff, by and through his counsel, has investigated the pertinent

facts and law, has engaged in discovery, and has evaluated the risks associated with

continued litigation, trial, and/or appeal.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 17-5290-MWF-FFMx | **Date:** November 26, 2019 |
| Title:     Richard Behfarin v. Pruco Life Insurance Company | |

4.     The Court finds that the Settlement Agreement was reached in the absence
of collusion, is the product of informed, good-faith, arms-length negotiations between
the parties and their capable and experienced counsel, and was reached with the
assistance of a well-qualified and experienced mediator, the Honorable William J.
Cahill (Ret).

5.     The following Settlement Class shall be certified pursuant to Federal
Rules of Civil Procedure 23(a), 23(b)(3) and 23(e), for settlement purposes only and
for purposes of disseminating Class Notice, and without prejudice to Defendants' right
to contest class certification if the Settlement Agreement is not approved:

> All Policyowners of Class Policies and, where all Policyowners and
> insureds of a Class Policy are deceased, then also any designated
> beneficiary(s) of that Class Policy at the time of final lapse.
>
> Class Policies include all individual universal life or variable universal
> life insurance policies issued by a Defendant as to which Guaranteed
> Charges were applicable to the calculation of the deficiency and/or
> reinstatement amount, and which policy either entered into default or
> lapsed between July 18, 2013 and the date of Preliminary Approval, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 17-5290-MWF-FFMx** **Date:** **November 26, 2019**
**Title:** Richard Behfarin v. Pruco Life Insurance Company

which had default cured or was reinstated on or after July 18, 2013 and

remains in force on the date of Preliminary Approval.

6. The Court finds for purposes of the Settlement Agreement only and

without prejudice to Defendants' right to contest class certification if the Settlement is

not approved, that the Settlement meets the requirements of Federal Rules of Civil

Procedure 23(a), 23(b)(3), and 23(e).

7. The Settlement Agreement confers substantial benefits upon the

Settlement Class and avoids the costs, uncertainty, delays, and other risks associated

with continued litigation, trial, and/or appeal.

8. The named Plaintiff in the Action, Richard Behfarin, is appointed as Class

Representative. This Court finds that Plaintiff Behfarin will adequately protect the

interests of the Settlement Class.

9. For purposes of settlement only, the following attorneys are appointed as

Class Counsel for the Settlement Class: Steven C. Shuman of Engstom, Lipscomb &

Lack and Robert B. Mobasseri of Robert B. Mobasseri, P.C. The Court finds that these

attorneys are competent and capable of exercising the responsibilities of Class Counsel

and will adequately represent the whole Settlement Class.

10. Pursuant to the recommendation of the parties, the Court appoints Epiq

Class Action & Claims Solutions, Inc. as the Claims Administrator who shall perform

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx                **Date:** November 26, 2019
**Title:**     Richard Behfarin v. Pruco Life Insurance Company

the Claims Administration duties assigned to it by this Order and the Settlement

Agreement.

11.    The Court hereby appoints the Honorable William J. Cahill (Ret.), of

JAMS, to serve as the Special Master as provided for by the Settlement Agreement.

12.    The Court approves the plan to disseminate Notice to the Settlement

Class,  all forms of Notice to the Settlement Class, and the Claim Forms, as set forth in

Section VI of the Settlement Agreement and the Exhibits thereto.  The Court finds that

the plan to disseminate Notice complies with Rule 23(c)(2)(A) and 23(c)(2)(B).  The

Notice explains the general terms of the Settlement Agreement, the general terms of

the proposed Fee Award and Incentive Award, and a description of Settlement Class

Members' rights to object to the Settlement Agreement, request exclusion from the

Class and appear at the Settlement Hearing.  The Court finds that the proposed plan to

disseminate Notice is reasonable and calculated to provide due, adequate and sufficient

notice to all persons entitled to receive notice.  Thus, no notice other than that

specifically identified in the Settlement Agreement is necessary in this Action.  The

Parties, by agreement, may revise the Notice and Claim Forms in ways that are not

material, or in ways that are appropriate to update those documents for purposes of

accuracy or formatting.

13.    Pursuant to Section VI and VIII of the Settlement Agreement, the Claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 17-5290-MWF-FFMx**          **Date:  November 26, 2019**
Title:       Richard Behfarin v. Pruco Life Insurance Company

Administrator is directed to publish the Notice and Claim Form on the Settlement

Website and to send direct notice via U.S. Mail and email (where available) in

accordance with the plan to disseminate Notice called for by the Settlement Agreement

and within the time frame set forth therein.  The Claims Administrator shall also

maintain the Settlement Website to provide full information about the Settlement and

allow for the filing of claims online.  The Settlement Website shall prominently display

the right of the Settlement Class to object to the Settlement Agreement, request

exclusion from the Class, and appear at the Settlement Hearing.

14.     Defendants are directed to provide Prudential Records, including Class

Policy records, with respect to the Settlement Class and Class Policies to the Claims

Administrator as necessary to effectuate the Notice Plan and to inform the Claims

process.  These materials will include personal information, and may include Social

Security numbers, individually identifiable health and/or financial information,

regarding Class Members.  Class Counsel has authorized and agreed to the provision of

this information on behalf of the Settlement Class.  Claim Forms submitted in this

Action, and all materials and data held by the Claims Administrator regarding

Defendants' Policyholders, Class Policies and/or the Settlement Class shall be strictly

confidential and not subject to publication or disclosure.  No person other than the

Parties, their counsel (including their consultants and experts who are bound by the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 17-5290-MWF-FFMx | Date: November 26, 2019 |
|---|---|---|
| Title: | Richard Behfarin v. Pruco Life Insurance Company | |

Protective Order in this Action), the Claims Administrator, the Special Master, and the Court shall be permitted to obtain or review any Claim Form, or any decision of the Claims Administrator with respect to accepting or rejecting any Claim, except as provided for herein or upon Court Order for good cause shown.

15.     The Objection/Exclusion Deadline is February 25, 2020.

16.     A Class Member may request to be excluded from the Settlement Class by sending a timely written request postmarked on or before the Objection/Exclusion Deadline.  To exercise the right to be excluded (or "opt out"), the Class Member must individually or through an attorney timely send a written request for exclusion to the Claims Administrator providing (1) his/her name and address; (2) the Policy Number of the applicable Class Policy(ies), (3) a statement that the person seeking exclusion is authorized to act on behalf of the Class Policy; (4) a signature, (5) the name and civil action number of the case; (6) and a clear statement that he or she, on behalf of the Class Policy associated with them, wishes to be excluded from the Settlement Class for purposes of this Settlement.  A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, or is not sent by an authorized representative, shall be invalid, and the person(s) serving such a request and the subject

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 17-5290-MWF-FFMx**                   **Date:** **November 26, 2019**
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

Class Policy shall be a member(s) of the Settlement Class and shall be bound as a

Settlement Class Member by this Agreement, if approved.

17.   Any request for exclusion that is served by a person who is not a Class

Member or an attorney representing a Class Member shall not be valid, and the person

serving the attempted exclusion and the Class Policy shall remain subject to all terms

of this Settlement Agreement.  Likewise, any request for exclusion that purports to opt

out fewer than all Policyowners and/or fewer than all designated beneficiary(s) at time

of final lapse of a Class Policy shall not be valid.  The request for exclusion must be

personally signed by each person requesting exclusion.  No request for exclusion may

be made on behalf of a group of Class Policies owned by different Policyowners.

"Mass" opt outs, and/or attempts to opt out a "class," shall not be allowed.

18.   Any member of the Settlement Class who validly elects to be excluded

from the Settlement Agreement shall not:  (i) be bound by any orders or the Final

Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights

by virtue of the Settlement Agreement or (iv) be entitled to object to any aspect of the

Settlement Agreement.

19.   Upon receiving any request(s) for exclusion, the Claims Administrator

shall stamp on the original the date it was received and shall promptly notify Class

Counsel and Defendants' Counsel of such request(s) by email no later than two (2)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 17-5290-MWF-FFMx                      Date:  November 26, 2019**
**Title:       Richard Behfarin v. Pruco Life Insurance Company**

calendar days after receipt.  In doing so, the Claims Administrator shall indicate

whether such request is timely received, and provide copies of the request(s) for

exclusion, the mailing envelope and any accompanying documentation, by email.

20.     Any Settlement Class Member who has not filed a written request for

exclusion for all of his/her/its Class Policies and who wishes to object to the fairness,

reasonableness or adequacy of the Settlement Agreement must do so in writing and any

such objection or appearance must be received by the Court and by Class Counsel and

Defendants' Counsel no later than the Objection/Exclusion Deadline.  The objection

must be personally signed by the objector, and must include:  (1) the objector's name

and address; (2) an explanation of the basis upon which the objector claims to be a

Settlement Class Member, including the Policy Number of the applicable Class

Policy(ies), and a statement that the person seeking to object is authorized to act on

behalf of the Class Policy per Section VII of the Settlement Agreement; (3) all grounds

for the objection, including all citations to legal authority and evidence supporting the

objection; (4) the name and contact information of any and all attorneys, brokers,

advisors or others who are representing, advising, or in any way assisting the objector

in connection with the preparation or submission of the objection or who may profit

from the pursuit of the objection (the "Objecting Attorneys and Advisors"); and (5) a

statement indicating whether the objector intends to appear at the Final Approval

---

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx                    Date:  November 26, 2019**
**Title:      Richard Behfarin v. Pruco Life Insurance Company**

Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules).  Any attorney who wishes to appear must file an appearance so indicating.  Any objection that purports to be submitted on behalf of fewer than all Policyowners and/or fewer than all designated beneficiary(s) at the time of final lapse shall not be valid or recognized by the Court.

21.    If a Settlement Class Member or any of the Objecting Attorneys and Advisors has objected to any class action settlement in a different case where the objector or the Objecting Attorneys or Advisors asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must also include a statement identifying each such case by full case caption and amount of payment received.

22.    All Claim Forms must be submitted by no later than March 31, 2020.  A Claim Form shall be deemed to be submitted when submitted by the online Claims process or when postmarked, if mailed by first-class mail and addressed in accordance with the instructions thereon.

23.    Class Counsel shall file their Motion for Final Approval and Motion for Class Counsel's Attorneys' Fees and Cost Reimbursement and Incentive Awards to Class Representative no later than February 11, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 17-5290-MWF-FFMx** **Date:** **November 26, 2019**
**Title:** Richard Behfarin v. Pruco Life Insurance Company

24. The Parties shall file any responses to Objections and any other papers supporting Final Approval no later than April 6, 2020.

25. Any person wanting to appear at the Final Approval Hearing should file and serve a Notice of Appearance or otherwise indicate an intent to appear no later than March 30, 2020.

26. The Court schedules the Final Approval Hearing on April 20, 2020 at 10:00 a.m.

27. The Final Approval Hearing will (i) consider the fairness, reasonableness and adequacy of the Settlement Agreement; (ii) consider entry of the Final Order and Judgment approving the Settlement Agreement and the dismissal with prejudice of the Action; (iii) provide the Settlement Class with the opportunity to object to the proposed Settlement Agreement; (iv) consider Class Counsel's application for a Fee Award and for an award of costs; (v) consider the payment of an Incentive Award to the Class Representative and (vi) consider such other matters as the Court may deem necessary or proper under the circumstances in accordance with Federal Rule of Civil Procedure 23.

28. The Final Approval Hearing may be postponed, adjourned, or continued by Order of the Court. The new date of Hearing, if any, shall be published on Court's docket and on the Settlement Website without further notice to the Class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 17-5290-MWF-FFMx | Date: November 26, 2019 |
| Title: | Richard Behfarin v. Pruco Life Insurance Company | |

29.     After the Final Approval Hearing, the Court may enter a Final Order and Judgment in accordance with the Settlement Agreement.

30.     Pending the Final Approval Hearing, other than proceedings necessary to carry out or to enforce the terms and conditions of the Settlement Agreement, this matter is stayed.

31.     The Settlement Agreement, by its terms, may be terminated at the sole option and discretion of Defendants or Plaintiff if (a) this Court, or any appellate court(s), rejects, modifies or denies approval of any portion of the Proposed Settlement that the terminating party in its (or their) sole judgment and discretion reasonably determines is material and adverse to the terminating party; or (b) this Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment that the terminating party in its (or their) sole judgment and discretion reasonably determines is material and adverse to the terminating party. Defendants may terminate the Settlement Agreement at their sole discretion if the opt out limit in Section IX, D. of the Settlement Agreement is triggered.

32.     If the Settlement Agreement does not receive Final Approval, or if Final Approval is reversed on appeal, or if the Settlement Agreement is terminated or otherwise fails to become effective, the Court's grant of class certification shall be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-5290-MWF-FFMx                **Date:  November 26, 2019**
Title:      Richard Behfarin v. Pruco Life Insurance Company

vacated and the Settlement Agreement shall become null and void.  Plaintiff, the

Settlement Class and the Defendants shall be restored to their respective positions prior

to the entry of this Order.  In such case, neither the certification of the Settlement Class

for settlement purposes, nor any other act relating to the negotiation or execution of the

Settlement Agreement shall be considered as a factor in connection with any class

certification issue(s).

33.     Prudential may continue to act on, respond to and otherwise address

matters in the usual course of business that pertain to Class Policies or originate with

Settlement Class Members; provided, however, that after the Class Notice mailing and

before the implementation of Settlement Relief for a particular Class Policy, any offer

of relief by Prudential in response to any complaint concerning a Class Policy will be

accompanied by a copy of the Settlement Agreement.

34.     Class Counsel and Counsel for Defendants are hereby authorized to

employ all reasonable procedures in connection with approval and administration of

the Settlement Agreement that are not materially inconsistent with this Order or the

Settlement Agreement.

35.     The dates of performance contained herein may be extended by Order of

the Court, for good cause shown.  Any further Orders of this Court, including any

Case 2:17-cv-05290-MWF-FFM Document 87 Filed 11/26/19 Page 36 of 38 Page ID #:1903

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-5290-MWF-FFMx                    **Date:** November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

revision(s) or amendment(s) to this Preliminary Approval Order shall be published on

the Court docket and on the Settlement Website without further notice to the Class.

36.    All further proceedings in the Action are ordered stayed until Final

Judgment or termination of the Settlement Agreement, whichever occurs earlier,

except for those matters necessary to obtain and/or effectuate final approval of the

Settlement Agreement.

37.    The Settlement Class shall be bound by all determinations and judgments

in the Action concerning the Action and/or Settlement Agreement, whether favorable

or unfavorable.

38.    The Court retains jurisdiction to consider all further applications arising

out of or connected with the proposed Settlement Agreement.  The Court may approve

the Settlement Agreement, with such modifications as may be agreed to by the Parties,

if appropriate, without further notice to the Class.

39.    Any Settlement Class Member and any Settlement Class Policy as to

whom/which a timely and valid exclusion is not received:  (a) shall be bound by the

terms of the Settlement Agreement and all proceedings, determinations, orders and

judgments in the Action relating thereto, including, without limitation, the Final Order

and Judgment and the Releases provided for in the Settlement Agreement, whether

favorable or unfavorable to the Settlement Class; and (b) shall forever be barred and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 17-5290-MWF-FFMx          **Date:** November 26, 2019
**Title:**      Richard Behfarin v. Pruco Life Insurance Company

enjoined from directly or indirectly filing, commencing, instituting, prosecuting,

maintaining or intervening in any action, suit, cause of action, arbitration, claim,

demand or other proceeding in any jurisdiction, or before any administrative body

(including any state Department of Insurance or other regulatory entity) whether in the

United States or elsewhere, on their own behalf or in a representative capacity, that is

based upon or arises out of any or all of the Released Claims, whether or not a Claim

Form is required or submitted, as more fully described in the Settlement Agreement.

40.     Neither this Order, the Settlement Agreement (whether or not

consummated), including the Exhibits thereto (inclusive of any modification(s) that

may be made or approved by the Court or Special Master), the negotiations leading to

the execution of the Settlement Agreement, nor any proceedings taken pursuant to or in

connection with the Settlement Agreement and/or approval of the Settlement including

any arguments proffered in connection therewith: (a) shall be referred to or offered

against any of the Releasees as evidence of, or construed as, or deemed to be evidence

of any presumption, concession or admission by any of the Releasees with respect to

the truth of any allegation, the validity of any claim or the deficiency of any defense

that has been or could have been asserted in the Action or in any other litigation,

including the appropriateness of the litigation class, or of any liability, negligence,

fault, or other wrongdoing of any kind of any of the Releasees, in any civil, criminal or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 17-5290-MWF-FFMx | Date: November 26, 2019 |
|---|---|---|
| Title: | Richard Behfarin v. Pruco Life Insurance Company | |

administrative action or proceeding; or (b) shall be construed against any of the Releasees or Releasing Parties as an admission, concession, or presumption that the consideration to be given represents the amount which could be or would have been recovered after trial; provided, however, that, notwithstanding the foregoing, if the Settlement Agreement is approved by the Court, the Parties and the Releasees and their respective counsel may file or refer to the Settlement Agreement or the Judgment in any action that may be brought to enforce its terms.

41.     Pending final determination of whether the proposed Settlement Agreement should be approved, neither the Class Representative nor any Settlement Class Member, directly or indirectly, or in a representative or any other capacity, shall commence or prosecute against Defendants and the other Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims.

**IT IS SO ORDERED.**

# EXHIBIT H

| | |
|---|---|
| **From:** | mail@msgbsvc.com on behalf of Behfarin v. Pruco Settlement |
| | <do_not_reply@lapsedpolicysettlement.com> |
| **Sent:** | Thursday, January 09, 2020 4:39 AM |
| **To:** | |
| **Subject:** | HTML Sample -- Behfarin v. Pruco Settlement |

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Unique ID: ▮▮▮▮▮▮▮

Dear ▮▮▮▮▮▮▮

### COURT-AUTHORIZED NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**If you are or were an owner or beneficiary of a Prudential universal or variable universal life insurance policy that entered default or lapsed between July 18, 2013, and November 26, 2019, your rights will be affected, and you may be entitled to relief.**

www.LapsedPolicySettlement.com

A settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured, or were reinstated between July 17, 2013, and November 26, 2019 ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(ies) may also be Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers the following: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the Policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions, and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250.00. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your Policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** Enter your Unique ID (shown at the top of this email) on the Settlement Website to be directed to the Claim Form that appears correct for you based on Prudential's records. You must submit a timely and properly completed Claim Form **no later than March 31, 2020**. Claim Forms are available online at www.LapsedPolicySettlement.com or by contacting the Claims Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF.**

**What Are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **February 25, 2020**. If you exclude yourself, you cannot get settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If you stay in the Settlement Class, you may object to the Settlement in writing by **February 25, 2020**. The Detailed Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **April 20, 2020**, to consider whether to approve the Settlement, whether to approve

Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000.00), and whether to award the Class Representative $50,000.00 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit www.LapsedPolicySettlement.com.

*Please note: This email message was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*

If you would prefer not to receive further messages from this sender, please Click Here and confirm your request.

| | |
|---|---|
| **From:** | mail@msgbsvc.com on behalf of Behfarin v. Pruco Settlement |
| | <do_not_reply@lapsedpolicysettlement.com> |
| **Sent:** | Tuesday, January 07, 2020 12:01 PM |
| **To:** | |
| **Subject:** | HTML Sample -- Behfarin v. Pruco Settlement |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Unique ID: █████████
Dear ███████████

## COURT-AUTHORIZED NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**If you are or were an owner or beneficiary of a Prudential universal or variable universal life insurance policy that entered default or lapsed between July 18, 2013, and November 26, 2019, your rights will be affected, and you may be entitled to relief.**

www.LapsedPolicySettlement.com

A settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Settlement Class Member?** Our records indicate you may be a Settlement Class Member. Settlement Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured or were reinstated between July 17, 2013, and November 26, 2019 ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(ies) may also be Settlement Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers the following: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions, and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250.00. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** *Current Policyowners do not need to submit a Claim to benefit from the Settlement relief and should not submit a Claim Form.* If you are eligible to make a Claim on a lapsed policy, you must submit a timely and properly completed Claim Form **no later than March 31, 2020.** Claim Forms are available online at www.LapsedPolicySettlement.com or by contacting the Claims Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF.**

**What Are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **February 25, 2020**. If you exclude yourself, you cannot get Settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If

you stay in the Settlement Class, you may object to the Settlement in writing by **February 25, 2020**. The Class Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **April 20, 2020** to consider whether to approve the Settlement, whether to approve Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000.00), and whether to award the Class Representative $50,000.00 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit www.LapsedPolicySettlement.com.

*Please note: This email message was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*

If you would prefer not to receive further messages from this sender, please <u>Click Here</u> and confirm your request.

| From: | mail@msgbsvc.com on behalf of Behfarin v. Pruco Settlement |
| | <do_not_reply@lapsedpolicysettlement.com> |
| Sent: | Tuesday, January 07, 2020 11:17 AM |
| To: | |
| Subject: | HTML Sample -- Behfarin v. Pruco Settlement |

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Unique ID: 
Dear ███████████,

### COURT AUTHORIZED NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**If you are or were an owner or beneficiary of a Prudential universal or variable universal life insurance policy that entered default or lapsed between July 18, 2013 and November 26, 2019, your rights will be affected and you may be entitled to relief.**

www.LapsedPolicySettlement.com

A Settlement has been reached in a class action lawsuit claiming that Pruco Life Insurance Company ("Pruco"), The Prudential Insurance Company of America, and Pruco Life Insurance Company of New Jersey (collectively, "Prudential" or "Defendants"), requested payments from Policyowners in excess of the amounts allowed under Defendants' universal and variable universal life insurance, when those policies entered default or lapsed. The Settlement is not a finding or admission of liability by Prudential, which denies all allegations of wrongful conduct.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are Policyowners of individual universal life or variable universal life insurance policies issued by any Prudential company identified above which entered default, lapsed, were cured or were reinstated between July 17, 2013 and November 26, 2019 ("Class Policies"). Where all Policyholders and insureds are deceased, the designated beneficiary(s) may also be Class Members.

**What Can I Get?** If approved by the Court, the Settlement offers: (1) For lapsed Class Policies where an insured is alive, you can choose to reinstate the Policy without underwriting on the same contract terms as existed at the time of final lapse, subject to certain rules, conditions and exclusions in the Settlement. If approved, you will have to pay all amounts required to reinstate and to keep the policy in force, but will not owe premium for the time from lapse to the time of reinstatement. If you previously unsuccessfully applied to reinstate, additional relief may be available. If you do not qualify for reinstatement under the Settlement rules or do not choose to reinstate, you may qualify for a basic claim payment of $250. (2) For lapsed Class Policies where no insured is alive, you may be entitled to a monetary Settlement Payment, the amount of which will be determined by a Claim Scoring Process described in the Settlement. (3) For Class Policies that are still in force, Prudential has agreed to change the way your Policy is administered at default and lapse, as described in the Settlement.

**How Do I Get Settlement Relief?** *You may be eligible for Reinstatement with Enhanced Relief.* Enter your Unique ID (shown at the top of this email) on the settlement website to be directed to the Claim Form that is correct for you based on Prudential's records. You must submit a timely and properly completed Claim Form **no later than March 31, 2020.** Claim Forms are available online at www.LapsedPolicySettlement.com or by contacting the Settlement Administrator at 855-915-0909. **FILING A CLAIM FORM DOES NOT GUARANTEE THAT YOU WILL RECEIVE RELIEF.**

**What are My Other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **February 25, 2020**. If you exclude yourself, you cannot get settlement relief, but you will keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. If

you stay in the Settlement Class, you may object to the Settlement in writing by **February 25, 2020**. The Detailed Notice available at the website explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **April 20, 2020** to consider whether to approve the Settlement; whether to approve Class Counsel's request for attorneys' fees (up to $3.5 million) and costs (up to $500,000); and whether to award the Class Representative $50,000 for his services in helping to bring and settle this case. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit www.LapsedPolicySettlement.com.

*Please note: This email message was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*

If you would prefer not to receive further messages from this sender, please Click Here and confirm your request.