UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 17-5290-MWF-FFMx | Date:  June 3, 2020 |
| Title: | Richard Behfarin v. Pruco Life Insurance Company | |

**Present:**   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS AND INCENTIVE AWARD FOR CLASS REPRESENTATIVE [92] [93]; MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE [98]

Before the Court are two motions:

First, there is Plaintiff Richard Behfarin's Motion for Final Certification of Settlement Class and Final Approval of Proposed Nationwide Class Settlement Agreement, and Approval of Notice Under Fed. R. Civ. P. 23(e) and (g) ("Settlement Motion").  (Docket No. 98).  On April 6, 2020, Plaintiff filed a Reply.  (Docket No. 107).

Second, there is Plaintiff's Motion for Attorney Fees and Costs and Incentive Award for Class Representative ("Fee Motion"), filed on February 11, 2020.  (Docket No. 92).

On March 30, 2020, Defendants Pruco Life Insurance Company ("Pruco"), Pruco Life Insurance Company of New Jersey ("Pruco NJ"), and The Prudential Insurance Company of America ("PICA") filed a Statement of Non-Opposition, stating that they do not oppose either motion.  (Docket No. 103).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-5290-MWF-FFMx**                                **Date:  June 3, 2020**
Title:     Richard Behfarin v. Pruco Life Insurance Company

The motions were noticed to be heard on April 20, 2020.  The Court read and considered the papers on the motions and deemed the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The hearing was therefore **VACATED** and removed from the Court's calendar.  Vacating the hearing was further required by the Continuity of Operations Plan arising from the COVID-19 emergency.

For the reasons discussed below, the motions are ruled upon as follows:

- The Settlement Motion is **GRANTED**.  The settlement agreement is fair, reasonable, and adequate to serve the interests of the class members.

- The Fee Motion is **GRANTED** *in part*.  The requested attorneys' fees and costs are fair compensation for counsel's efforts and reimbursements for their expenses.  However, the Court determines that the requested incentive award of $50,000 is excessive and reduces the award to $25,000.

## I.  BACKGROUND

### A.  Factual and Procedural Background

The Court previously discussed the following factual and procedural background to this action in an Order preliminarily approving the settlement.  (*See generally* "Preliminary Approval Order" (Docket No. 87)).  Accordingly, the Court will only include the facts necessary for these motions below.

On July 18, 2017, Plaintiff filed a class action complaint against Pruco.  (Docket No. 1).  After Plaintiff filed the Motion for Preliminary Certification of Settlement Class, Appointment of Class Representative and Class Counsel, Preliminary Approval of Class Action Settlement, and Direction of Notice (the "Preliminary Certification Motion"), he filed a First Amended Complaint ("FAC") on October 17, 2019.  (Docket No. 77).  The FAC names two additional Defendants to Pruco: Pruco NJ, and PICA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 17-5290-MWF-FFMx | Date:  June 3, 2020 |
| Title:      Richard Behfarin v. Pruco Life Insurance Company | |

(*See generally* FAC).  Plaintiff also alleges that Pruco is a wholly-owned subsidiary of PICA, and that Pruco NJ is a wholly-owned subsidiary of Pruco.  (FAC ¶ 12).

The FAC contains the following allegations:

Defendants impose contractually unauthorized charges on the owners of universal life or variable universal life insurance policies when they default on their premium payments or lapse their policies.  (FAC at 2).  Defendants' universal life policies require that the policy owner pay an amount of premium estimated to keep the contract in force for three months to cure deficiency.  (*Id.* ¶ 3).  However, without contractual authorization, Defendants require policy owners who have deficiencies to pay three months' worth of the maximum allowable premium under the policy from the date of default, plus lapse and reinstatement payment loads not described in the policy.  (*Id.*).

Moreover, for policy owners who do not cure a deficiency and suffer a lapse as a result, Defendants' universal life policies require payment of the amount required to bring the cash value to zero on the date of default, plus any deductions from the contract fund that occurred during the grace period, plus sufficient premium after administrative charges to cover three months of deductions from the contract fund after reinstatement to reinstate the policy.  (*Id.*).  The policy does not state the rate of those contract fund deductions, or premium payments.  (*Id.*).  Without contractual authorization, Defendants force policy owners who wish to reinstate an obligation to pay three months' worth of the maximum allowable contract fund deductions under the policy from the date of reinstatement, plus reinstatement payment loads not described in the policy.  (*Id.*).  In addition, Defendants require insureds to meet underwriting requirements for reinstatement that are more stringent than those described in their policies.  (*Id.*).

When insureds send in a premium sufficient to cover three months of insurance costs at the rates Defendants have actually been charging rather than the maximum rates allowed by contract, Defendants return that premium, without any contractual authorization to do so.  (*Id.*).  This return of premium manufactures a lapse in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 17-5290-MWF-FFMx | Date: June 3, 2020 |
| Title: Richard Behfarin v. Pruco Life Insurance Company | |

policy, which then enables Defendants to re-underwrite the policy. (*Id.*). By forcing insureds out of coverage when they can no longer qualify for their original rate classification, Defendants then avoid the risk they have been paid to undertake. (*Id.*).

Plaintiff brings the action on behalf of himself and a nationwide class, which is defined as follows: "All persons in the United States and its territories who owned universal life insurance policies issued by Defendants and who, within four years prior to the commencement of this litigation, either: (a) suffered deficiencies, defaults or lapses of their policies and paid either maximum cost of insurance charges or lapse and reinstatement payment loads, or both, to cure that deficiency or default or to reinstate the lapsed policy; (b) suffered the lapse of their policies because they were unable to pay or chose not to pay maximum cost of insurance charges or lapse and reinstatement payment loads, or both, to cure that deficiency or default or to reinstate the lapsed policy; (c) suffered a lapse of their policies and paid either maximum cost of insurance charges or reinstatement payment loads, or both, to reinstate their policies; (d) suffered a lapse of their policies and could not or did not reinstate because they were unable to pay or chose not to pay maximum cost of insurance charges or reinstatement payment loads, or both; or (e) suffered a lapse of their policies and could not reinstate because they were no longer qualified for the same risk classification but were still insurable for universal life at some risk classification." (*Id.* ¶ 25).

The FAC alleges five claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of Business and Professions Code § 17200, *et seq.*, also known as the California Unfair Competition Law ("UCL"); (4) declaratory relief under 28 U.S.C. § 2201(a); and (5) injunctive relief. (*Id.* ¶¶ 32-75).

### B. Discovery and Mediation

The parties conducted extensive negotiations spanning nearly four months with the Honorable William J. Cahill, a highly regarded mediator associated with JAMS who has handled multiple other class action mediations. (Preliminary Certification Motion at 5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 17-5290-MWF-FFMx | Date:  June 3, 2020 |
| Title:     Richard Behfarin v. Pruco Life Insurance Company | |

Plaintiff conducted formal discovery and investigation of the claims, defenses, and underlying events and transactions involved in the action.  (*Id.* at 6; Declaration of Steven C. Shuman ("Shuman Decl.") ¶¶ 17-22, 31 (Docket No. 74-1)).  The discovery and investigation included discovery responses and document production, consultation with life insurance experts, and the deposition of Behfarin.  (Shuman Decl. ¶¶ 17-22, 31).

On January 25, 2019, the parties participated in a full-day mediation session before Judge Cahill.  (Preliminary Certification Motion at 6).  The parties attended a second full-day session on February 20, 2019 and engaged in conference calls with Judge Cahill on March 1, 2019 and April 26, 2019.  (*Id.*).  The parties conducted a third full-day mediation session at JAMS on April 30, 2019, reached an agreement in principle, and finalized a written term sheet with Judge Cahill's guidance.  (*Id.*).  Since then, the parties continued negotiation over matters not specified in the April 30, 2019 Term Sheet.  (*Id.* at 7).

### C. **The Settlement**

The Stipulation of Settlement (the "Stipulation," "Settlement Agreement," or "Agreement") is attached to the Declaration of Steven C. Shuman.  (Shuman Decl., Ex. 2).  The Stipulation contains the following key class definition, relief, notice, and release provisions:

- "Settlement Class Members" are defined as: "all Policyowners of Class Policies and, where all Policyowners and insureds of a Class Policy are also deceased, then also any designated beneficiary(ies) of that Class Policy at time of final lapse."  (Stipulation §§ II.zz, V.D.);

- "Class Policy" or "Class Policies" are defined as "one or more individual universal life or variable universal life insurance policies issued by a Defendant, as to which Guaranteed Charges were applicable to the calculation of the deficiency and/or reinstatement amount, and which policy either entered into default or lapsed between July 18, 2013 and the date of Preliminary Approval, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                     Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

which had default cured or was reinstated on or after July 18, 2013 and remains in force on the date of Preliminary Approval." (Stipulation §§ II.m and V.D.);

- "Guaranteed Rate(s)" is defined as "with respect to a Class Policy, the monthly cost of insurance rate applicable to the particular policy and insured that is guaranteed by the policy contract as a rate that cannot be exceeded when determining the Current Rate." (Stipulation § II.cc). "Guaranteed Charge(s)" is defined as "with respect to a Class Policy, the monthly cost of insurance that a Policyowner would be charged with respect to a particular policy and insured if calculated based on Guaranteed Rate(s), along with guaranteed maximum applicable charges including, but not limited to, sales loads and administrative fees." (Stipulation § II.bb);

- "Class Period" is defined as "July 18, 2013 to and through the date of Preliminary Approval." (Stipulation § II.l);

- The Stipulation divides the Settlement Class Member into three categories: (1) Lapsed/Alive Population; (2) Lapsed/Deceased Population; and (3) Current Policyholders. The Stipulation provides for the following benefits for each category:

    o The "Lapsed/Alive Population" refers to "Settlement Class Members associated with Class Policies that lapsed for a final time during the Class Period and have not been reinstated to date where there is at least one living insured." (Stipulation § II.ee);

        ▪ "[Defendants] will offer Authorized Claimants who fall within Lapsed/Alive Population and who have not timely and validly excluded themselves from the Settlement, the opportunity to reinstate their Class Policy/ies, upon the same contract terms and face amount as existed at the time of final lapse, without underwriting, at Current Rates and Current Charges as of the date of reinstatement, but subject to both (a) the Gating Rules . . . and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                              Date:  June 3, 2020
Title:      Richard Behfarin v. Pruco Life Insurance Company

> (b) Claimants' timely submission of a completed Claim Form . . ." (*Id.* § III.A.1.).  The Stipulation defines the "Gating Rules," "Gating Process," and "Required Claimant Certifications" in Section III.A.2 and III.A.3 of the Stipulation.  "The Gating Rules and Claim Form certifications are intended to cull out Class Members not affected or harmed by the practice sued upon. (Preliminary Certification Motion at 9);

- Claimants subject to the Gating Rules/Exceptions in Section III.A.2, and Claimants who are unable to truthfully sign the requisite Claimant Certifications described in Section III.A.3, or any other Claimant who elects such relief shall be eligible for Basic Relief.  (Stipulation § III.A.4).  Basic Relief is $250.  (*Id.* § II.d);

- "[I]f [Defendants'] existing records confirm that the Policyowner submitted a timely application for reinstatement pursuant to that policy's contract terms, the final lapse occurred during the Class Period but before February 25, 2019, and an application for reinstatement was submitted and not approved," Class Policies may be entitled to "Enhanced Relief."  (Stipulation § III.B.1). Specifically, if the Settlement Class Member meets all the requirements, "at the beginning of the fourth and fifth year following the Reinstatement Date, [Defendants] will pay on the Policyowner's behalf and apply the policy the amount of premium (inclusive of all premium/tax loads) necessary to satisfy the cost of insurance for the policy, based on the then-Current Rates and Current Charges for that year."  (*Id.* § III.B.2).  The criteria and benefit of Enhanced Relief is detailed in Section III.B.2 of the Stipulation;

o The "Lapsed/Deceased Population" refers to "Settlement Class Members associated with policies that lapsed for a final time during the Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 17-5290-MWF-FFMx | **Date:** June 3, 2020 |
| **Title:** Richard Behfarin v. Pruco Life Insurance Company | |

Period and were not reinstated where the insured(s) are deceased." (Stipulation § II.ff);

- "[Defendants] will offer individualized relief to Authorized Claimants who fall within the Lapsed/Deceased Population, and who have not timely and validly excluded themselves from the Settlement." (Stipulation § III.C.1). "The individualized relief will be in the form of a monetary Settlement Payment . . ., the amount of which will be determined by a Claim Scoring Process." (*Id.*). "The Claim Scoring Process is based on an individual analysis and determination of each Claim according to Scoring Guidelines developed and agreed to by the Parties." (*Id.*). The Scoring Guidelines and related details are provided in Section III.C of the Stipulation;

o The Current Policyowners will get the following benefit:

- "Defendants will maintain policies and procedures to ensure that, from the date of this Settlement Agreement going forward, with respect to universal life and variable universal life policies issued by a Defendant in the United States and that remain in force, in the absence of a contract term providing for a different or lower amount or a different calculation formula . . ., and in the absence of a state statutory or regulatory or administrative directive to the contrary, the amount requested to cure a default or to reinstate a policy will be calculated by reference to Current Rates and then-Current Charges and not by reference to Guaranteed Rates. (Stipulation § III.D.1);

- Within 21 days after the date of entry of the Preliminary Approval Order, Defendants will provide to the Claims Administrator the names, addresses, and email addresses to the extent available in Defendants' records. (Stipulation § VI.B);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

- Within 28 days thereafter, the Claims Administrator shall send summary notice of the Settlement by U.S. Mail to all Settlement Class Members, and notice via e-mail with a link to the website to all Settlement Class Members with known email addresses.  (Stipulation §§ VI.E, VI.F);

- No later than 2 days prior to the date on which Direct Notice is to be mailed, notice shall be provided on a website at an available settlement URL which shall include the ability to file Claim Forms online.  (Stipulation § VI.G);

- "The obligations incurred pursuant to this Stipulation are in consideration of: (a) the full and final disposition of Action as against Defendants; and (b) the Releases provided" in Section IV of the Stipulation.  (Stipulation § IV.A).  The Released Claims "include all claims that have been, could have been, may be, or could be alleged or asserted in this Action regarding or concerning directly or indirectly any Class Policy, by Plaintiff, any Settlement Class Member, or any Releasing Party, against any of the Releasees."  (Stipulation § IV.B);

- Settlement Class Members may exclude themselves from the Class by sending a Request for Exclusion to the Claims Administrator by the Objection/Exclusion Deadline.  (Stipulation § VII.A);

- Defendants may unilaterally withdraw from and terminate the Settlement Agreement if five percent (5%) or more of Class Policies and/or the Settlement Class validly elect to exclude themselves from the Settlement.  (Stipulation § XI.D);

- A Settlement Class Member who does not request exclusion may object to the fairness, reasonableness, or adequacy of the proposed Settlement by filing a written statement or objection.  (Stipulation § VII.D);

- Once the Settlement becomes final, Plaintiff and Settlement Class Members will release and discharge Defendants from any and all claims that have been, could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

have been, may be, or could be alleged or asserted in this action that directly or indirectly concern any Class Policy.  (Stipulation §§ IV.A.2, IV.B).

## II. DISCUSSION

Plaintiff seeks final approval of the Agreement and Certification of the Settlement Class.  (*See generally* Settlement Motion).  Additionally, Class Counsel seek fees in the amount of $3.5 million, or 17.89% of the estimated Class recovery, reimbursement expenses of $500,000, and a $50,000 incentive award for the named class representative.  (*See generally* Fee Motion).

### A. Final Approval of the Class Action

Before approving a class action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted) (applying the factors announced in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026).  "The involvement of experienced class action counsel and the fact that the settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234, 1234 (9th Cir. 1998).

"In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the Court is satisfied that the Agreement is not the product of collusion between the parties. The parties reached their settlement after conducting extensive negotiations spanning four months with Judge Cahill of JAMS, including participating in several full-day mediation sessions. (*See* Preliminary Approval Order at 4). Moreover, Class Counsel have extensive experience litigating class actions, have shown knowledge of the legal issues relating to Defendants' conduct, and have retained experts and consultants to address relevant issues. (*See id.* at 21). Finally, the action was vigorously litigated on both sides, with each of the parties conducting formal discovery over the course of this action. (*Id.* at 4). The arms-length nature of the negotiation resulting in the Agreement and the recommendation of experienced class action counsel support final approval. *See Linney*, 1997 WL 450064, at *5.

Moreover, consideration of the *Hanlon* factors dictates final approval of the proposed settlement:

> **1.  Strength of Plaintiff's case and risk, expense, complexity, and likely duration of further litigation**

When assessing the strength of a plaintiff's case, the Court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-5290-MWF-FFMx            Date: June 3, 2020
Title:      Richard Behfarin v. Pruco Life Insurance Company

Plaintiff acknowledge that, despite the strength of their case, "a candid assessment discloses some significant risks in pressing those claims through continued litigation." (Settlement Motion at 16). Specifically, Plaintiff notes that there was a risk of being unable to meet the commonality requirement for class certification because policy owners might have defaulted or lapsed on their policies for various reasons, and not necessarily for Defendants' overbilling for curing a deficiency or reinstating. (*Id.*). Furthermore, Plaintiff was concerned that if Defendants could mount an attack on him as class representative, the action would fail for lack of any other class representative as no one else had emerged as willing. (*Id.*). Plaintiff also faced a battle of experts over industry standards concerning advance payment requirements. (*Id.* at 17).

Moreover, as Plaintiff notes, significant party and judicial resources would be expended in further deposition and expert discovery, motion practice, trial, and potentially appeals following trial. Accordingly, this factor weighs in favor of final approval of the Agreement.

### 2. Amount offered in the Agreement

The Court concludes the settlement is fair and reasonable. The Court looks at "the complete package taken as a whole, rather than the individual component parts" in making this determination. *Officers for Justice*, 688 F.2d at 628.

Pursuant to the Agreement, qualified claimants with at least one insured alive will be able to restore the status quo without having to pay premium for the time the policy was lapsed and without additional underwriting. (Settlement Motion at 18). Moreover, qualified claimants whose insureds are all deceased have an opportunity under the Agreement to recover an amount equating to the majority of the death benefit (less a corresponding portion of unpaid premium to date of death) if Defendants' records indicate it was likely or highly likely that the lapse resulted from the challenged conduct. (*Id.* at 18-19). Class Members who fall in either groups who pass the gating rules but do not want to reinstate, or who do not qualify for the percentage-of-death-benefit equivalent, can still collect $250 if they submit the claim form. (*Id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                        Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

19).  Moreover, Defendants have changed procedures so the challenged practice will not occur.  (*Id.*).

Because much of the Settlement's value is in the opportunity to Class Members to reinstate the policies that had lapsed, Plaintiff retained Actuarial Strategies, an independent actuarial firm, to value the opportunity created by the Settlement.  (*Id.* at 19; Declaration of Steven C. Shuman ISO Fee Motion ("Shuman Supp. Decl." (Docket No. 97-1) ¶ 76).  Actual Strategies has valued the Settlement as being worth from $19,562,792 to $93,249,879 depending on assumptions made.  (*Id.*; Shuman Supp. Decl. ¶ 76, Ex. 4).

The class is comprised of holders of 45,488 policies.  (Settlement Brief at 2).  The deadline for submitting claims were initially set for March 31, 2020.  However, due to a ransomware attack on Epiq Class Actions & Claims Solutions, Inc.'s ("Epiq") servers, the settlement website was taken down between March 4, 2020 and March 17, 2020.  (Docket Nos. 99, 100, 101).   Therefore, the deadline to submit claims was extended to April 21, 2020.  (Docket No. 101).

As of April 6, 2020, holders of 1,134 class policies have made claims for Reinstatement Relief (reinstatement of policies with living insureds or for basic relief of $250); holders of 16 class policies made claims for Enhanced Relief (reinstatement of policies with living insureds where requested reinstatement was previously denied); and holders of 53 class policies made claims for Individualized Relief (a settlement payment based on the scoring system for class policies with deceased insureds).  (*Id.*).  Because the process of qualification is just getting underway, Class Counsel have not yet provided information on how many policies will be reinstated and in what face amounts.  (*Id.*).  However, Class Counsel estimate a total of $42,600,000 in insurance coverage will be restored, and a total of $3,104,000 in cash component of the Settlement before reduction for premium and addition of interest.  (*Id.* at 3).

When considered in light of the potential litigation risks, the Settlement appears fair and reasonable.  If this litigation were to continue, Plaintiff may not prevail on his claims and Defendants may have prevailed in arguing that they were within their rights

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                         Date:  June 3, 2020
Title:      Richard Behfarin v. Pruco Life Insurance Company

by contract and regulatory law to bill the insurance costs that had to be paid to cure defaults and reinstate policies at the maximum rates.  (*See* Shuman Supp. Decl. ¶ 63).  Moreover, continued litigation would result in considerable additional expenses, especially in light of the experts that would be utilized on both sides.  Accordingly, this factor also weighs in favor of final settlement approval.

### 3.     Extent of discovery completed and stage of the proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney*, 151 F.3d at 1239.  The parties conducted substantial discovery over the course of this action and Plaintiff filed a motion for class certification before any settlement discussions occurred.  (Settlement Motion at 20).  The Court concludes that the parties had ample information with which to make informed settlement decisions.

Accordingly, this factor weighs in favor of final settlement approval.

### 4.     Experience and views of counsel

Plaintiff's counsel have extensive experience litigating complex class actions and life insurance cases.  (Settlement Motion at 22).  Counsel have invested many hours steeped in the details of the case, and are of the opinion that "the Settlement is fair, reasonable, and adequate under the circumstances."  (Shuman Supp. Decl. ¶ 69).  Accordingly, this factor weighs in favor of final settlement approval.

### 5.     Reaction of the class members to the Agreement

The Settlement Administrator received no filed objections to and only two requests for exclusion from the Agreement.  (Settlement Motion at 22; Settlement Reply at 1; Docket No. 113).

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm'cns*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                    Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004); *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).

Accordingly, this factor also weighs in favor of final settlement approval.

Plaintiff additionally seeks final certification of the Settlement Class. (Settlement Motion at 23-25). For the same reason issued in the Preliminary Approval Order, the Settlement Class is certified for purposes of settlement.

### B.     **Attorneys' Fees**

In the Ninth Circuit, there are two primary methods to calculate attorney's fees: the lodestar method and the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 (citation omitted). "The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *Id.* (citation omitted).

"Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *Id.* (citation omitted). However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). "The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Martin v. Ameripride Services, Inc.*, No. 08-cv-440-MMA, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). The choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                              Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

    Class Counsel request fees in the amount of $3,500,000.  (Fee Motion at 2).  Class Counsel assert that the settlement affords at least $19,562,792 in benefits to the Class, and therefore, the requested fees represent 17.89% of the total Class recovery.  (*Id.* at 11-12).  Counsel further assert that this estimate is a conservative value because it does not include the value of prospective relief – Defendants' agreement to end the challenged business practices and to ensure that the amount billed to cure a default or to reinstate a policy will be calculated on current rates (or less).  (*Id.* at 12).

    The Court notes that there is some uncertainty regarding the total value of the Settlement in part because the process of qualification for reinstatement has not been completed.  However, based on the evidence Class Counsel have provided, the Court is persuaded that the settlement will result in significant benefit to Class Settlement with a valuation of at least approximately $20 million.  Because the requested fee amount falls within the Ninth Circuit's 25% benchmark, the Court determines that this fee amount is reasonable and fair.  (*See* Fee Motion at 14-15) (citing cases where similar requests for fees were approved).

    A lodestar crosscheck supports the reasonableness of the 25% award.  While counsel have not submitted an itemized billing summary, they have provided specific billing rates and hours for those working on the case.  Class Counsel have devoted 789.65 hours to this action, which the Court views as reasonable given the length of the case, the issues involved, and the mediation and negotiations that occurred.  (Shuman Supp. Decl. ¶¶ 86-96).  Class Counsel used the rates established by the so-called "Laffey Matrix," with billing rates of $847–$918 for Mr. Shuman, $886-$915 for Ms. Crooke, $847–$918 for Mr. Mobasseri, and $673 for Ms. Rohr.  (*See id.*).  While the rates are on the high end of the range, the Court concludes that it is reasonable for the range of experience of counsel working on the case, especially given that three counsel have more than 20 years of practice and one counsel has 9 years of experience.  (*Id.* ¶ 89).  Multiplying the hours by the rates documented results in a total lodestar of $796,164, and therefore, the $3,500,000 fee award represents a multiplier of 4.4.  (*Id.* ¶¶ 89-96; Fee Motion at 20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                     Date:  June 3, 2020
Title:     Richard Behfarin v. Pruco Life Insurance Company

A multiplier of 4.4 is higher than the range of multipliers applied in common fund cases.  *See Vizcaino*, 290 F.3d at 1051 n.6 (noting that most (83%) of fee awards are 1 to 4 times higher than lodestar, with the bare majority (54%) 1.5 to 3 times higher than lodestar).  Nonetheless, the Court determines that 4.4 multiplier is justified given the complexity of the case, the risks involved from contingent fee litigation, and the work that Counsel have performed and will likely need to perform following the submission of this motion.  *See Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("Although this multiplier [of 6.85] is higher than those in many common fund cases, . . ., it still falls well within the range of multipliers that courts have allowed.").  Counsel exercised considerable skill in the investigation of the case, discovery, and settlement negotiations, and they did so against experienced, highly skilled opposing counsel and on an entirely contingent basis.  (Fee Mot. at 13-19).

Accordingly, the Court concludes that Class Counsel's request for attorneys' fees is reasonable.

### C.     Reimbursement of Litigation Expenses

Class Counsel next seek reimbursement of litigation expenses in the amount of $500,000 in costs and expenses incurred in the prosecution of this action.  (Fee Motion at 22).  Counsel assert that they incurred costs in excess of $500,000 but is capping the request at $500,000.  (*Id.* at 23; Shuman Supp. Decl. ¶ 97).

Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Counsel did not provide a detailed breakdown of the costs but provided a summary of total costs broken down by category.  (Shuman Supp. Decl. ¶ 97; Ex. 7 ("Cost Summary")).  The vast majority of the costs ($467,163.53 out of $500,000) were for expert Theodore Affleck, Consultant Steven Roth, expert Actuarial Services, and Judge Cahill of JAMS.  (Shuman Supp. Decl. ¶ 97; Cost Summary).  In a declaration, Counsel explain the role each expert, consultant, and meditator played in this action.  (Shuman Supp. Decl. ¶¶ 38-40, 47, 51, 53, 55-59, 98-99, 102-104).  In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-5290-MWF-FFMx                                  Date:  June 3, 2020
Title:      Richard Behfarin v. Pruco Life Insurance Company

addition, Counsel assert that they incurred $32,836.47 in other expenses, such as court fees, filing and subpoena fees, legal research and Class Member outreach, transcripts, and travel.  Attorneys routinely bill clients for such expenses, and it is therefore appropriate to allow counsel to recover these costs from the settlement fund.

Class members were also notified that counsel would seek reimbursement of litigation expenses of up to $500,000.  (*See* Preliminary Approval Order at 13).

Accordingly, the Court concludes that counsel's request for litigation expenses of $500,000 is fair and reasonable.

### D.    Incentive Award

Plaintiff also seeks an incentive award of $50,000 for Plaintiff Richard Behfarin for his participation in this action.  (Fee Motion at 23-25).

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton*, 327 F.3d at 977 (9th Cir. 2003).  When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Id.*

The Fee Motion contends that the incentive award is appropriate here because Plaintiff "put in impressive hours to assist counsel in discovery and attended every mediation session," "negotiated the terms of the Settlement and the Stipulation, side-by-side with Counsel, and pushed both Class Counsel and the defendants for the best possible settlement."  (Fee Motion at 24).  Class Counsel further assert that Plaintiff brought expertise to the case due to his having been a licensed as a life agent.  (*Id.*).

"In this district, a $5,000 payment is presumptively reasonable," and "[i]ncentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (citing cases).  Here, Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 17-5290-MWF-FFMx**                    Date:  **June 3, 2020**
Title:     Richard Behfarin v. Pruco Life Insurance Company

requests a $50,000 award, which is nearly 10 times the amount that is deemed presumptively reasonable.  The Court finds that a $50,000 award would be excessive given that this action only lasted several years and did not proceed to trial.  Nonetheless, Plaintiff's declaration demonstrates that he expended significant time and effort in this action and provided expertise throughout the litigation process.  (*See* Docket No. 92-2).  Therefore, the Court finds the award of $25,000 appropriate.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (approving, in the context of a recovery of more than $14 million, an incentive payment of $25,000 to one named plaintiff who "spent hundreds of hours with his attorneys and provided them with 'an abundance of information'").

### III.  CONCLUSION

For the reasons discussed above, the Settlement Motion is **GRANTED** and the Fee Motion is **GRANTED** *in part*.  The Court awards Class Counsel $3,500,000 in fees and $500,000 in litigation costs, to be paid by Defendants.  The Court also awards Named Plaintiff an incentive award of $25,000.

Upon completion of administration of the Settlement, the parties shall file a declaration that includes the following: (1) the total number of claims submitted (broken out by group and by requested relief); (2) the total number of claims approved (broken out by group and by requested relief); and (3) a summary and amount of the settlement relief granted (broken out by group and requested relief).

A separate judgment will issue.

IT IS SO ORDERED.