UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RICHARD BEHFARIN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PRUCO LIFE INSURANCE COMPANY, et al.<br><br>Defendants. | No. 2:17-cv-05290-MWF-FFM |

# DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

I, Cameron Azari, declare as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale legal notification plans. Hilsoft is a business unit of Epiq.

4. I previously executed my *Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan* [Dkt. 74], on October 10, 2019, in which I detailed Hilsoft's class action notice

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

US_Active\118289612\V-3

experience and attached Hilsoft's *curriculum vitae*. I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs. Subsequently, I executed my *Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan* [Dkt. 98], on February 18, 2020 ("*Implementation Declaration*"), and my *Supplemental Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan* [Dkt. 107], on April 6, 2020 ("*Supplemental Declaration*"), in which I detailed the implementation of the Settlement Notice Plan ("Notice Plan" or "Plan") and notices (the "Notice" or "Notices") and provided my opinion that the Notice Plan implemented in this case satisfied the requirements of due process as well as Rule 23. In addition, I executed my *Declaration of Cameron R Azari, Esq. Regarding Settlement Exclusion Requests* [Dkt. 109], on April 14, 2020.

5. As requested by the Court, this declaration provides the final claims administration statistics and information regarding the distribution of Settlement Relief to Class Members for *Behfarin v. Pruco Life Insurance Company, et al*, No. 2:17-cv-05290-MWF-FFM (C.D. California) (the "Settlement"). The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues from Hilsoft and Epiq.

## CLAIMS REVIEW

6. Epiq received a total of 1,259 unique claims submitted within the claims period.[1] These claims consisted of:

- 556 requests for Basic Relief ($250) on Class Policies,

---

[1] Duplicate claims submissions from a claimant pertaining to the same policy are not included in the count of unique claims.

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

2

- 643 requests for Reinstatement Relief on Class Policies (including 18 potentially eligible for Enhanced Relief [forgiveness of two years' of premium in the future]),

- 40 Individualized Relief claims (claims where insureds are deceased) on Class Policies,

- 14 claims submitted by Current Policyowners, as to whom a claim form was not required to receive Settlement relief, and

- Six ineligible claims submitted by individuals not included in the Settlement Class (for policies that were not included in the Settlement).

7. Epiq also received five late claim submissions that were submitted and received after the April 21, 2020 extended claim submission deadline. These claims were denied by Epiq and are not included in the total number of unique claims reported in paragraph 6.

### *Reinstatement Relief Claims*

8. In accordance with the Settlement Agreement, Epiq applied the Gating Rules to the Class Policies as to which Reinstatement Relief claims were submitted, and determined that 119 of the 643 Class Policies failed to pass the Gating Rules. Therefore, these claimants were eligible for only Basic Relief.

9. On July 14, 2020, Epiq mailed and emailed 195 deficiency notices to claimants with potentially eligible Reinstatement Relief Claims to give claimants an opportunity to confirm (where questions arose) that they had submitted the correct claim form and to submit a new claim form if necessary, and/or to cure defects in their claims in order for the subject Class Policies to be determined authorized for the Reinstatement Relief requested.

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

3

US_Active\118289612\V-3

10. Following this process, a total of 393 Class Policies were authorized for reinstatement under the Settlement terms, and could proceed to reinstate by timely submtting the Request for Reinstatement Form and Reinstatement Amount to Prudential.

11. In accordance with the Settlement Agreement and Reinstatement Guidelines (filed as Settlement Exhibit C [Dkt. 98]), Epiq sent each of the 393 claimants on Class Policies authorized for Reinstatement Relief two letters by both email and U.S. mail to the addresses provided on the Claim Form. The first letter notified each Authorized Claimant that their claim for reinstatement of the Class Policy was Authorized. The second letter provided details of the Reinstatement Amount required for the Class Policy, the opportunity to obtain a Settlement illustration (in the form approved by the Court as Settlement Exhibit C [Dkt. 98-1]), and the deadline to return an enclosed Request for Reinstatement Form to Prudential. Claimants were permitted to request a 90-day extension of the deadline to return their Reinstatement Amount payment to Prudential if they indicated they had been impacted by COVID-19.

12. Ultimately, 101 of the Class Policies Authorized for Reinstatement Relief (including 11 who requested Enhanced Relief) were reinstated. With respect to one of those Class Policies, the claimant later requested reversal of that reinstatement and the claimant was awarded Basic Relief, so a total of 100 Class Policies remained reinstated. Three Authorized Claimants who had received the second reinstatement letter subsequently notified Epiq and Prudential that the insured on the Class Policy had died, and those claims were subsequently treated as claims for Individualized Relief. The Authorized Claimants who did not timely request reinstatement of their policy or notify Epiq that the insured had died received Basic Relief, as described in the following paragraphs.

*Basic Relief*

13. As noted in paragraph 6 above, as to 556 Class Policies a claim was submitted requesting Basic Relief instead of Reinstatement.

14. As to another 119 Class Policies, Basic Relief was awarded because while claimants requested Reinstatement Relief, they did not pass the Gating Rules required for Reinstatement Relief under the Settlement.

15. As to an additional 130 Class Policies, Basic Relief was awarded because the submitted claim for Reinstatement Relief had material defects and clamant(s) failed to timely cure the deficiencies.

16. Finally, as to 290 Class Policies Authorized for Reinstatement Relief where claimants did not timely submit their Request for Reinstatement Form and Resentment Amount to Prudential, these received Basic Relief.

17. Epiq distributed Basic Relief checks to each of the 1,095 claimants Authorized for Basic Relief. The total amount distributed in Basic Relief was $274,000[2].

18. As of June 21, 2020, 1,045 Basic Relief checks totaling $261,250 have been cashed, seven checks totaling $1,750 are undeliverable, and 44 checks totaling $11,000 remain outstanding and have not been cashed. For checks returned as undeliverable, Epiq attempted to obtain better addresses by using a third-party lookup service. Upon successfully locating better addresses, checks were promptly re-issued. Where a better address could not be located, Epiq

---

[2] This amount includes 1,096 checks for $250 because one claimant was identified by Prudential as having missed the deadline to request reinstatement, but was subsequently granted an extension due to COVID-19, and was ultimately reinstated. Thus, one claimant whose Policy was reinstated also received a Basic Relief payment.

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

5

US_Active\118289612\V-3

attempted to contact the claimant by phone and email to obtain a better address directly from the claimant.

### *Individualized Relief*

19. As noted in paragraph 6 above, Epiq initially received 40 claims for Individualized Relief relating to Class Policies where the insured had died.

20. Subsequently, four claims that were originally submitted as claims for Reinstatement Relief were changed to Individualized Relief Claims because Epiq was notified that the insured on the Class Policy had died.

21. One of the 44 claims for Individualized Relief was subsequently determined not to be an Authorized Claim; Epiq sent a denial letter to the claimant's address and email address.

22. In total, Individualized Claims were scored and paid on 43 Class Policies. Each claim was scored according to the Claims Process and Scoring Guidelines for Individualized Relief ("Scoring Guidelines"), which were filed as Settlement Exhibit D [Dkt. 98].

23. Pursuant to the Settlement Agreement, claimants whose Final Score was determined by a third scorer were eligible for a Limited Appeal right, which permitted them to have their claim reviewed by the Special Master who would score the claim in accordance with the Scoring Guidelines without knowledge of any of the prior scores. Only one claimant appealed the Final Score assigned by a third scorer at Epiq to the Special Master. The Honorable William Cahill (Ret.) scored the claim, and his score became the Final Score for that claimant.

24. Epiq calculated the Settlement Payment amount for each Authorized Individualized Relief Claim in accordance with the Settlement Agreement and Scoring Guidelines. The calculations were reviewed by the Parties prior to payments being issued. In total, Epiq

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

6

US_Active\118289612\V-3

distributed 43 Individualized Relief checks totaling $5,513,947.43. All of the checks reflecting Individualized Relief Payments have been cashed.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on June 22, 2021.

                                                                           Cameron R. Azari

DECLARATION OF CAMERON R. AZARI, ESQ. FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS

7

US_Active\118289612\V-3